UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JOHN DOE**, *an individual*,

     Plaintiff,

vs.

Case No.: 18-cv-11776
Hon. Arthur J. Tarnow
Mag. Elizabeth A. Stafford

**UNIVERSITY OF MICHIGAN** (as to Title
IX violations), **BOARD OF REGENTS OF
THE UNIVERSITY OF MICHIGAN**, *a
constitutional corporate body* (as to Title IX &
ELCRA violations), **PAMELA HEATLIE**,
**ROBERT SELLERS**, **MARTIN
PHILBERT**, **ERIK WESSEL**, **LAURA
BLAKE JONES**, **E. ROYSTER HARPER**,
**SUZANNE MCFADDEN**, and **PAUL
ROBINSON**, *employees of the University of
Michigan*, *sued in his or her personal and
official capacities*, *jointly and severally*,

     Defendants.

---

**DEBORAH GORDON LAW**
**Deborah L. Gordon (P27058)**
**Elizabeth A. Marzotto Taylor (P82061)**
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

---

**PLAINTIFF'S MOTION FOR TEMPORARY
<u>RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

NOW COMES Plaintiff John Doe ("Plaintiff"), by and through his attorneys Deborah Gordon Law, and for his Motion for Temporary Restraining Order and Preliminary Injunction states as follows:

1.      Plaintiff hereby moves this Court for a temporary restraining order and a preliminary injunction pursuant to the authority of Fed. R. Civ. P. 65(a) and (b), immediately enjoining individual Defendants Heatlie, Sellers, Philbert, Wessel, Jones, Harper, McFadden, and Robinson (collectively, "Defendants") to release the "hold" placed on his official transcript and degree on April 19, 2018, and cease the unconstitutional investigation process into whether he has violated the University's Policy and Procedures on Student Sexual and Gender-Based Misconduct and Other Forms of Interpersonal Violence ("Sexual Misconduct Policy"), now underway, which may have consequences of the utmost importance, which are quasi-criminal in nature, and which deprive him of his constitutional right to due process.

2.      On, May 29, 2018 counsel for Defendants was notified of Plaintiff's intent to file this motion.

3.      The facts set forth in Plaintiff's Complaint and Demand for Jury Trial ("Complaint") (Dkt. #1) are incorporated herein as if they were fully restated and have been verified by Plaintiff under penalty of perjury. **Ex. C**.

4.      The factual recitations and legal arguments in Plaintiff's Brief in Support of His Motion for Temporary Restraining Order and Preliminary Injunction

("Brief in Support"), which is filed contemporaneously herewith, are incorporated herein as if they were fully restated.

5.    As more fully stated in the Complaint and Brief in Support, Plaintiff has a strong likelihood of prevailing on the merits of his claims against Defendants for their violations of Plaintiff's due process rights; the Sixth Circuit Court of Appeals has recently ruled on the issues raised in the Complaint.

6.    Unless Defendants are restrained or enjoined by order of this Court, Plaintiff will suffer immediate and irreparable injury, loss, and damages as set forth more fully in the Complaint and Brief in Support.

7.    The granting of injunctive relief will not cause greater harm to the Defendants than to Plaintiff.

8.    It is in the public interest to enjoin Defendants from violating fundamental due process norms.

WHEREFORE this Court should enter a temporary restraining order and a preliminary injunction immediately releasing the "hold" on Plaintiff's official transcript and graduation credentials; halting the investigation and process currently under way, which intentionally deprives Plaintiff of due process; and enjoining Defendants from using, for any student, the Sexual Misconduct Policy in any case where credibility is an issue.

Dated: June 5, 2018                     **DEBORAH GORDON LAW**
                                        **/s/Deborah L. Gordon (P27058)____**

**Elizabeth A. Marzotto Taylor (P82061)**
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JOHN DOE**, *an individual*,

      Plaintiff,

vs.

      Case No.: 18-cv-11776
      Hon. Arthur J. Tarnow
      Mag. Elizabeth A. Stafford

**UNIVERSITY OF MICHIGAN** (as to Title
IX violations), **BOARD OF REGENTS OF
THE UNIVERSITY OF MICHIGAN**, *a
constitutional corporate body* (as to Title IX &
ELCRA violations), **PAMELA HEATLIE**,
**ROBERT SELLERS**, **MARTIN
PHILBERT**, **ERIK WESSEL**, **LAURA
BLAKE JONES**, **E. ROYSTER HARPER**,
**SUZANNE MCFADDEN**, and **PAUL
ROBINSON**, *employees of the University of
Michigan*, *sued in his or her personal and
official capacities*, *jointly and severally*,

      Defendants.

---

**DEBORAH GORDON LAW**
**Deborah L. Gordon (P27058)**
**Elizabeth A. Marzotto Taylor (P82061)**
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

---

**PLAINTIFF'S MOTION FOR TEMPORARY
<u>RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

## INTRODUCTION

Plaintiff John Doe (hereinafter, "Plaintiff") completed all degree requirements to graduate from the University of Michigan as of April 2018.

Plaintiff has brought this action pursuant to 42 U.S.C. § 1983 against Defendants Heatlie, Sellers, Philbert, Wessel, Jones, Harper, McFadden, and Robinson (collectively, "Defendants") for due process violations under the Fourteenth Amendment to the United States Constitution. Plaintiff's claim arises out of actions taken by Defendants based on an allegation that Plaintiff violated the University's Policy and Procedures on Student Sexual and Gender-Based Misconduct and Other Forms of Interpersonal Violence (hereinafter, the "Sexual Misconduct Policy"). A complaint was filed against Plaintiff by a female student on March 12, 2018, alleging that Plaintiff had a sexual encounter with her that was not consensual. Plaintiff states that it was consensual. There were no witnesses to the encounter. There is no finding yet as to whether Plaintiff violated the policy.

On the basis of this mere allegation, Defendants have placed an indefinite "hold" on Plaintiff's official transcript and degree. Plaintiff has been admitted to graduate schools, which begin in Fall 2018. The "hold" is now adversely affecting his ability to pursue his education and to obtain any employment that requires a degree.

Defendants are in the process of an investigation into the allegation against Plaintiff, with the penalty of expulsion. Even though this is an uncomplicated investigation, 85 days have now passed with no end in sight. The Sexual Misconduct Policy under which the investigation is being pursued intentionally deprives Plaintiff of his due process rights to notice and an opportunity to be heard. The Sixth Circuit Court of Appeals has made clear that where the credibility of the parties is at stake, as here, cross examination is required:

> The Due Process Clause guarantees fundamental fairness to state university students facing long-term exclusion from the educational process. Here, the University's disciplinary committee necessarily made a credibility determination in finding John Doe responsible for sexually assaulting Jane Roe given the exclusively "he said/she said" nature of the case. Defendants' failure to provide any form of confrontation of the accuser made the proceeding against John Doe fundamentally unfair.

*Doe v. Univ. of Cincinnati*, 872 F.3d 393, 396 (6th Cir. 2017).

In a recent Brief filed in case pending in the Sixth Circuit, the University of Michigan Defendants **admitted** that "this Court has required limited cross-examination in a case, *University of Cincinnati*, that it described as an 'exclusively he said/she said' case, and the allegations 'rested solely' on the complainant's allegations." *See Doe v. Baum*, 2018 WL 1409626, at *34-35 (6th Cir. Mar. 19, 2018) (quoting *Univ. of Cincinnati*, 872 F.3d at 396, 405).

In spite of clear legal precedent and their own admission, Defendants continue to deprive students accused of sexual misconduct of due process

protections while simultaneously providing full due process to all students accused of wrongdoing *other* than sexual misconduct, including a live hearing and questioning of parties and witnesses. Defendants have taken it upon themselves to carve out a subset of students they deem not entitled to constitutional protections. This is a flagrant and intentional violation of Plaintiff's constitutional rights.

## STATEMENT OF FACTS

Plaintiff reiterates and relies on the factual assertions set forth in his Complaint and Demand for Jury Trial ("Complaint") (Dkt. # 1), which have been verified by Plaintiff under penalty of perjury, **Ex. C**, for the factual background of this Motion as if the factual assertions were fully restated herein, as set forth below.

In April, 2014, Plaintiff enrolled at the University of Michigan as an undergraduate student. As of April 2018, Plaintiff had successfully achieved all the University's requirements necessary to graduate, *cum laude*, with the degree of Bachelor of Science in Engineering. The cost of the degree was approximately $260,000.

On February 26, 2018, Plaintiff was admitted to the University's College of Engineering master's degree program to begin on September 4, 2018. He accepted the offer of admission and secured a research position. He registered for classes on March 30, 2018. He was admitted to other graduate engineering programs as well,

one of which is now awaiting his official transcript, due June 8, 2018, in order to be admitted.

On March 12, 2018, a complaint was filed against Plaintiff with the Office for Institutional Equity ("OIE") by a female student ("Claimant") alleging that a non-consensual sexual encounter had occurred four months earlier, on November 11, 2017. There were no witnesses to the encounter, which occurred in Plaintiff's residence hall room. No alcohol or drugs were involved. The complaint is false; the sexual encounter was consensual. Earlier in the evening on November 11, 2018, the Claimant contacted Plaintiff and asked him to get together. In reply, Plaintiff suggested that she come to his residence hall room. She did so. They watched movies and engaged in sexual intercourse. Claimant later left the room and returned to her own residence hall two or more hours after she left Plaintiff's room.

In the next several weeks Claimant sent text and Snapchat messages to Plaintiff several times. She also ran into Plaintiff at a campus dining hall, asked to eat dinner with him, to which he obliged, and they chatted pleasantly. In one of Claimant's text messages to Plaintiff she suggested that she come to his resident hall room to have sex again. Plaintiff declined. In another one of Claimant's texts to Plaintiff she asked him what it meant to their relationship now that they had engaged in sex. Plaintiff responded that all he could offer was friendship.

5

Four months went by before Claimant filed a report with the OIE, on March 12, 2018. Plaintiff was first advised that a report against him had been filed via an email from the OIE on April 2, 2018, which was sent and received while Plaintiff attended a lecture, two weeks before his final exams began. After Claimant filed her sexual misconduct report with the OIE, the OIE commenced an investigation to determine if Plaintiff had violated the Sexual Misconduct Policy, which continues to this day.

It is the responsibility of the OIE investigator, Defendant McFadden, to investigate the Claimant's complaint and to make a determination in a final report as to whether a violation of the Sexual Misconduct Policy has occurred. The Sexual Misconduct Policy states that the investigation process, through the final report, should not take more than 60 days. Here, 85 days have now passed and the investigation and report are not complete. No findings have been made. There are no parameters for the amount of time to complete the entire process, including a sanctioning/penalty process if a violation has occurred, and an appeal, which can be filed by either party. It is likely that the process may not be complete for many months.

On April 19, 2018, the OIE notified Plaintiff that

given the pending OIE investigation and your approaching graduation, an administrative hold has been placed on your student account until the OIE investigation is complete [this was later clarified to include the entire process, including any appeal, which will take an indeterminate

6

period of time]. While the hold is in place, you will not be able to register for classes or receive an official copy of your transcript.

This "hold" has barred Plaintiff from receiving his official transcript or credentials that he has graduated and therefore bars him from enrolling in school elsewhere or obtaining any employment. This has occurred despite the fact that there is no finding that Plaintiff has violated any policy.

The issue to be determined here is whether the sexual encounter between Plaintiff and the Claimant was consensual. Because there are no witnesses to the encounter the findings will be based on a credibility determination. The Due Process Clause of the United States Constitution guarantees fundamental fairness to state university students facing exclusion from the educational process based on discipline. A student must be provided with notice and an opportunity to be heard. *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 633-34 (6th Cir. 2017). The Sixth Circuit has clearly established that where, as here, credibility is at stake, in that one party maintains that the sexual encounter was consensual and the other says it was not, a live hearing in front of the ultimate fact finder, with some form of cross-examination is required. *Doe v. Miami Univ.*, 882 F.3d 579, 600 (6th Cir. 2018); *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 396, 401-02 (6th Cir. 2017).

Defendants are intentionally refusing to provide Plaintiff with the required due process protections. In fact, Defendants refuse to provide ***any*** student accused of a violation of the Sexual Misconduct Policy with the required due process

protections. This is because the University maintains two separate and very unequal policies governing student misconduct and the due process that will be provided. The University's "Statement of Student Rights and Responsibilities" (the "Statement") applies to all University students other than those accused of "sexual" misconduct, including, in part, those accused of: physically harming another including killing; stalking; stealing, vandalizing or destroying property; and possession, manufacturing or distribution of drugs. **Ex. A**, at 3-4. The Statement requires that a complaint or report against a student is made **in writing**. The Statement also guarantees the accused: a live hearing in front of the fact finder(s) where both parties are present and witnesses can be called; **cross-examination of parties and witnesses** is allowed; **a complete packet of all evidence is produced by the University and provided prior to the hearing**; the **right to make statements** on the record; and an **audio recording of the hearing**, which will be made available to the parties. **Ex. A**, at 6-7

In sharp contrast, the Sexual Misconduct Policy does not require that a complaint be in writing. It does not allow for a live hearing, in front of the fact finder(s), attended by both the accuser and the accused, or the ability to cross-examine the accuser or any witness. It provides that the accused will attend one private interview with an OIE investigator. Even though the accuser will have already been privately interviewed, the investigator does not provide any

information to the accused with regard to the allegations made by the accuser. The accused does not learn the names of the witnesses until the investigation is concluded. The accused is not provided with all of the evidence accumulated, only that evidence that the investigation deems important. *See* **Ex. B**, at 23-29. If Plaintiff is found to have violated the Sexual Misconduct Policy, because "penetration" occurred during the sexual encounter, the "sanction" or penalty will be expulsion (this rule is not in writing but University documents demonstrate that this is the practice).

Plaintiff was interviewed one time by the OIE investigator, on April 3, 2018. Plaintiff was not given notice of the charges against him sufficient for him to be able to defend himself. He was advised only that he "may have engaged . . . in unwanted [sexual relations] without consent." The OIE investigator had interviewed the Claimant on March 29, four days earlier, but she did not share with that with Plaintiff or provide him with any of the very detailed allegations of the encounter she had elicited from Claimant.

Because Plaintiff had no notice of the allegations against him he was unable to respond to many key issues. Had a hearing been held as set forth in the Statement, Plaintiff would have heard Claimant's allegations as she made them, been able to respond immediately, and put questions to her. Claimant made multiple allegations against Plaintiff that he was not told about or allowed to respond to during his one

9

interview; he only became aware of them at the end of the investigation. Because there was no hearing or cross-examination Plaintiff was unable to show the falsity of these allegations. Because there was no cross-examination, or even pointed questions put to the Claimant by the investigator, key exculpatory evidence was completely missed, putting Plaintiff in grave danger of never receiving his degree. Nor was Plaintiff provided with the names of alleged witnesses to events that occurred after the sexual encounter, which Claimant had already provided to the investigator at the time of Plaintiff's interview.

The investigator subsequently interviewed witnesses on unknown dates. She did not contact Plaintiff to advise him of what these witnesses said or give him an opportunity to respond. Had a hearing been held as provided in the Statement, Plaintiff would have heard the witness statements as they were made, been able to respond immediately, and put questions to them.

On May 24, 2018, 51 days after Plaintiff's only interview with the OIE investigator, he was provided with her "Executive Summary," which contained summaries of all statements and evidence she had obtained, including detailed false allegations made by Claimant. After receipt of the Executive Summary, Plaintiff had 5 days within which to provide written "feedback," which may or may not be included in the Final Report and Findings. On May 29, 2018, Plaintiff submitted his "feedback." He now awaits the findings of the OIE investigator.

10

If there is an appeal of the OIE Investigator's findings to the External Reviewer, that person will have no ability to see or assess the credibility and demeanor of either party or any witness. Id. In spite of that, the External Reviewer will have the authority to "modif[y]" the findings by setting aside the decision of the investigator. Ex. B, at 34-35.

Plaintiff has been and continues to be irreparably harmed with each day that passes as set forth herein.

## LEGAL ARGUMENT

The Sixth Circuit has explained that "the purpose of a [temporary restraining order] under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Trust, Co.*, 78 F.3d 219,227 (6th Cir. 1996) (citing Fed. R. Civ. P. 65(a)). The standard of issuing a temporary restraining order is the same as for a preliminary injunction; however, the temporary restraining order standard places an emphasis on the element of irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo. *See Motor Vehicle Bd. of Calif. v. Fox*, 434 U.S. 1345, 1347 n.2 (1977); *see also Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) (stating that a court considers the same factors when determining whether to issue a temporary restraining or a preliminary injunction).

When considering a motion for a temporary restraining order or a preliminary injunction, courts must balance: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *PACCAR Inc. v. TeleScan Techs., L.L.C.*, 319 F.3d 243, 249 (6th Cir. 2003). "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003), *abrogated on other grounds*, *Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015).

Although it is "generally useful for the district court to analyze all four of the preliminary injunction factors," *Certified Restoration Dry Cleaning v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (internal citation omitted), a court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issues, *Jones*, 341 F.3d at 476 (citing *Mascio v. Pub. Emps. Ret. Sys. of Ohio*, 160 F.3d 310, 312 (6th Cir. 1998) (affirming the district court's grant of a preliminary injunction because the plaintiff had demonstrated a substantial likelihood of success on the merits)). The weight a district court gives to each of the four factors and resulting decision to grant or deny preliminary injunctive relief is examined under the abuse

of discretion standard. *PACCAR*, 319 F.3d at 249; *see also N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 166 (6th Cir. 1989) (noting that a "district judge's weighing and balancing of the equities should be disturbed on appeal only in the rarest of cases").

## I. Plaintiff Has a Strong Likelihood of Success on the Merits

Plaintiff's Verified Complaint alleges five causes of action, but for the purposes of this Motion and its accompanying Brief, Plaintiff relies on the likelihood of success of Count I (Defendants' violations of Plaintiff's Fourteenth Amendment Procedural Due Process Rights of Property and Liberty), brought under 42 U.S.C. § 1983. Section 1983 creates a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights. *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). To state a prime facie case under § 1983, a plaintiff must allege that (1) the action occurred "under color of law," and that (2) the action was a deprivation of a constitutional right or a federal statutory right. As stated in Plaintiff's Complaint, Plaintiff has sufficiently alleged that the individual Defendants acted under color law, and Plaintiff's causes of action are for deprivations of his constitutional rights.

### A. Defendants Are Currently Proceeding with an Investigation that May Result in Severe Disciplinary Action against Plaintiff in Violation of the Law of the Sixth Circuit Court of Appeals. Plaintiff Will Succeed on the Merits of this Claim.

As set forth in Plaintiff's Complaint (Dkt. #1 ¶¶ 52–55), Defendants maintain two distinct and unequal policies with regard to student misconduct. Students accused of all types of misconduct other than "sexual misconduct" are provided with full due process rights, including a live hearing in front of a panel and cross-examination of witnesses. *See* **Ex. A**, Statement of Student Rights and Responsibilities, at 6–8. If there is an appeal taken after the decision is returned, it goes to an Appeals Board, which cannot reverse the panel's findings (unless the panel found against the accused), but may only return the matter to the original investigator for further review. *Id.* at 8.

Under the Sexual Misconduct Policy, students accused of sexual misconduct have no such rights and are limited to a private interview with an investigator from the University's Office for Institutional Equity ("OIE"), who also privately interviews the claimant and other witnesses. At the conclusion of the investigation, the OIE investigator compiles a summary, which is provided to the accused. There, for the first time, the accused is able to see the statements made by other witnesses and all the allegations against them. The accused is allowed to provide written "feedback," only, which may or may not be included in the Final Report and Findings, composed by the OIE investigator. There is no live hearing and no cross-examination of any kind. *See* **Ex. B**, at 23-29.

Further, under the Sexual Misconduct Policy, either party can appeal to an External Reviewer. *Id.* at 33. However, unlike the rights of other accused students, the Reviewer has the authority to "modif[y]" the findings below and ability to find against the accused, reversing the decision of the OIE investigator, with no reference back to the original decision-maker. *Id.* at 35-36. The External Reviewer never sees or hears from any witness or party at the time of his decision.

This process clearly violates the law. The Sixth Circuit Court of Appeals has held that, as here, where one party claims that the sexual activity was without consent, and the other party says there was consent, the credibility of the parties is at stake, and a live hearing and cross-examination are required. *See e.g.*, *Doe v. Miami Univ.*, 882 F.3d 579, 600 (6th Cir. 2018); *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 396, 404-06 (6th Cir. 2017); *Flaim, v. Med. Coll. of Ohio*, 418 F.3d 629, 641 (6th Cir. 2005);

*Flaim v. Medical College of Ohio*, 418 F.3d 629 (6th Cir. 2005) was decided in 2005. *Flaim* was a "unique" case: "It was not a case involving factual disputes where many of the additional procedures would be helpful in determining 'whether the misconduct has occurred.'" *Id.* at 643 (quoting *Goss v. Lopez*, 419 U.S. 565, 574 (1975)). The Court in *Flaim* explained that it was "unique" for one reason: "Medical College of Ohio based its decision essentially upon a certified record of a recent felony conviction," and therefore, that "makes Flaim's case quite different from the

15

ordinary disciplinary case, . . . render[ing] many of the ordinarily required procedures constitutionally unnecessary." *Id.*

Even so, the *Flaim* Court parsed the due process provided, noting that "Flaim was provided with an opportunity to appear in person before the committee to present his defense[,]. . . . to listen to adverse witnesses[,] and to rebut that testimony while addressing the committee with his version of events." *Flaim*, 418 F.3d at 640. Those procedures were "far from ideal and certainly could have been better," i*d.* at 637, but, because of Flaim's guilty plea for a drug offense, the result would have been no different if questions had been allowed, in that "cross-examination would have been a fruitless exercise" in the face of a felony conviction. *Id.* at 641.

Apart from the uniqueness of *Flaim*'s facts, the *Flaim* Court endorsed the necessity of cross-examination "'if this case had resolved itself into a problem of credibility.'" *Id.* (quoting *Winnick v. Manning*, 460 F.2d 545, 550 (2d Cir. 1972)).

In *Doe v. University of Cincinnati*, the plaintiff was provided with a live hearing in front of the University's Administrative Review Committee (ARC). 872 F.3d 393, 397 (6th Cir. 2017). Cross-examination was allowed through written questions to the ARC.[1] *Id.* at 396. But the plaintiff's accuser did not appear at the

---

[1] During a hearing, ARC panelists hear the allegations, review the evidence, and question the participating witnesses. *Univ. of Cincinnati*, 872 F.3d at 396. Accused students appear live, present evidence, and explain their story in their own words. *Id.* They may submit written questions to the ARC panel. *Id.*

hearing. *Id.* at 395. The plaintiff "maintained that UC could not constitutionally find him responsible for sexually assaulting Roe without 'any opportunity to confront and question' her." *Id.* at 398. The Sixth Circuit noted that "the circumstances of the present case pose the credibility contest we contemplated in *Flaim*: John Doe maintains that their sex was consensual; Jane Roe claims that it was not." *Id.* at 401. Without Roe being present, the ARC Chair "read a summary of the Title IX Office's report," which contained each party's account based on their interview statements, and "a summary of witness statements from four of Jane Roe's friends." *Id.* at 397. Doe appeared at the hearing but stated: "Well, since she's not here, I can't really ask anything of the report. . . . I don't have any questions for the report." *Id.* The hearing then concluded. *Id.*

The Sixth Circuit noted that UC "proffered no other evidence 'to sustain the University's findings and sanctions' apart from Roe's hearsay statements." *Id.* at 401 (citations omitted). UC argued that because the plaintiff was able to draw attention to the alleged inconsistencies in Roe's statement, cross-examination would have been futile. *Id.* The Sixth Circuit disagreed, stating that "the panel resolved this 'problem of credibility' without assessing Roe's credibility. In fact, it decided plaintiff's fate without seeing or hearing from Roe at all. That is disturbing and, in this case, a denial of due process." *Id.* at 402 (emphasis added) (internal citations omitted). The Court's decision carefully analyzed whether the "preapproved written

questions" procedure allowed at the live hearing comported with due process and noted that "[Doe] does not challenge our determination . . . that UC's 'circumscribed form of cross-examination' is constitutional. [Doe] asks only to question Roe through the ARC panel . . . ." *Id.* at 403-04 (internal citations omitted). The Court was clear that "[w]hat matters for credibility purposes is the [] panel's ability to assess the demeanor of both the accused and his accuser." *Id.* at 406. The Court concluded that "[u]ltimately, the ARC must decide . . . whether Roe's allegations against him are true. And in reaching this decision '[t]he value of cross-examination to the discovery of truth cannot be overemphasized.'" *Univ. of Cincinnati*, 872 F.3d at 404 (internal citation omitted).

> "The ability to cross-examine is most critical when the issue is the credibility of the accuser." Cross-examination takes aim at credibility like no other procedural device. A cross-examiner may "delve into the witness' story to test the witness' perceptions and memory." He may "expose testimonial infirmities such as forgetfulness, confusion, or evasion . . . thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony."

*Id.* at 401-02 (internal citations omitted).

In the present case, there was no live hearing or cross-examination at any point. The Plaintiff never saw a single party or witness. While Plaintiff agrees that he was allowed to tell his story to the OIE investigator at his one private meeting (without knowing what his accuser or any witness had said), this Court found in *University of Cincinnati* that the ability to make a statement to the adjudicative body

at a live hearing did not provide due process where there was no ability to question the accuser.

**B. The University Intentionally Prohibits Due Process for Students Accused of Sexual Misconduct, while Providing Due Process for All Other Students. Providing Due Process in this Case Would Not Be Burdensome.**

The University's Sexual Misconduct Policy intentionally prohibits students from receiving the due process protections available to all other students. Defendants offer no explanation for this. Under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), a three-factor test is used to determine if a university student is entitled to a hearing and cross-examination: (1) the nature of the private interest affected by the deprivation; (2) the risk of an erroneous deprivation of rights through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) **the fiscal and administrative burdens of providing the additional or substitute safeguards** (emphasis added). *See also Doe v. Cummins*, 662 F. App'x 437, 446 (6th Cir. 2016). Here, each of the factors favors Plaintiff.

With regard to the third factor, in *Doe v. University of Cincinnati* the Court was concerned with "saddl[ing] school officials with the burden of overseeing . . . cross-examination." 872 F.3d at 404 (alteration and omission in original). But that is not a concern in this case. In the University's Statement, see **Ex. A**, the University guarantees all 40,000 of its students accused of misconduct **other** than sexual misconduct the right to a live hearing, a packet of all information prepared by the

University and distributed in advance, the names of witnesses, "the right to question the complainant . . . and to call any witness with information that is relevant to the case . . . that is not redundant," and an audio recording of the hearing. Clearly, there is no burden on Defendants to provide Plaintiff with the same due process protections Defendants already provide to other students.

### C.   Defendants Have Deprived Plaintiff of His Property Right to His Education by Placing a "Hold" on His Official Transcript in Spite of No Finding against Him

"The fundamental requisite of due process of law is the opportunity to be heard . . . ." *Goss v. Lopez*, 419 U.S. 565, 578 (1975) (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)). "At the very minimum . . . students facing suspension and the consequent interference with a protected property interest must be . . . afforded some kind of hearing." *Id.* The hearing, at which the accused is given "an opportunity to present his side of the story," **must occur prior to the deprivation of the accused's protected property interest**. *Id.* at 581. *See also Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 927 (6th Cir. 1988) (an accused has the right to a pre-discipline hearing **before** an impartial trier of fact); *Ashiegbu v. Williams*, 129 F.2d 1263 (6th Cir. 1997) (same). There is no case law which allows such a deprivation without a finding of wrongdoing.

\* \* \*

Accordingly, Plaintiff is likely to succeed on the merits of his due process claim with regard to the removal of the "hold" on his student record.

## II.     Plaintiff Will Suffer Irreparable Harm without Injunctive Relief.

Generally, "[t]o demonstrate irreparable harm, the plaintiff[] must show that . . . [he] will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 549, 552 (6th Cir. 2006). Harm is irreparable if it cannot be fully compensated by monetary damages. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). "**When constitutional rights are threatened or impaired, irreparable injury is presumed**." *Univ. of Cincinnati*, 872 F.3d at 407 (emphasis added) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *Overstreet*, 305 F.3d at 578). *See also, e.g.*, *Bonnel v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001); *Hillside Prods. Inc. v. Duchane*, 249 F. Supp. 2d 880, 900 (E.D. Mich. 2003) (where a plaintiff's procedural due process rights were likely violated, a finding of irreparable harm should follow as a matter of law); *Conn v. Bd. of Ed. of the City of Detroit*, 586 F. Supp. 2d 852, 865 (E.D. Mich. 2008) (holding that the loss of constituional rights, even for minimal periods, unquestionably constitutes irreparable injury).

When a student confronts removal from a university, irreparable harm is easily demonstrated. *See, e.g.*, *Univ. of Cincinnati*, 872 F.3d at 407 (affirming the

grant of a preliminary injunction enjoining the university from suspending the plaintiff where the proposed suspension would cause the plaintiff "reputational harm both on and off campus based on a finding rendered at an unfair hearing"); *Doe v. Jones v. Bd. of Governors of Univ. of N.C.*, 704 F.2d 713, 716 (4th Cir. 1983) (affirming the grant of a preliminary injunction ordering reinstatement of a nursing student pending resolution of her due process challenge to disciplinary action taken against her); *Marshall v. Ohio Univ.*, 2015 WL 1179955, at *9 (S.D. Ohio Mar. 13, 2015) (finding irreparable harm to plaintiff where a suspension from defendant university "effectively denied him the benefit of the work already performed in the classes this semester and delayed the completion of his degree," and because plaintiff would "forever have this disciplinary action on his academic record, which my impact his ability to enroll at another institution, or affect his future career possibilities"); *Boman v. Bluestem Unified Sch. Dist. No. 205*, 2000 WL 297167, at *3 (D. Kan. Jan. 28, 2000) (noting that suspension of student constitutes irreparable harm); *Bhandari v. Trs. of Columbia Univ. in N.Y.*, 2000 WL 310344, at *15–16 (S.D.N.Y. Mar. 27, 2000) (finding irreparable injury because requiring Plaintiff to "repeat[] the courses he is currently taking after serving his suspension . . . would forever deny him the benefit of the work he has already performed this semester and would necessarily delay his ultimate fulfillment of the requirements for a degree.").

In *Doe v. Middlebury College*, the plaintiff brought suit in the District of Vermont against Middlebury College seeking a preliminary injunction enjoining Middlebury College from expelling him and from preventing him from attending other courses. *Doe v. Middlebury Coll.*, 2015 WL 5488109, at *1 (D. Vt. Sept. 16, 2015). The *Middlebury* Court granted the plaintiff's motion for preliminary injunction, finding that the plaintiff was likely to suffer irreparable harm if he was expelled from the college because:

> If Plaintiff is not permitted to begin his senior year in September 2015, he will not complete his degree before July 2016 and will lose the job [offer]. Plaintiff asserts another job in this field will be difficult to secure because the job offers stem from successful completion of an internship offered to students entering their senior year of college. While Plaintiff may recover money damages to compensate for lost wages, money damages cannot compensate for the loss of his senior year in college with his class, the delay in the completion of his degree, or the opportunity to begin his career in July 2016 with this particular employment. Further, Plaintiff would have to explain, for the remainder of his professional life, why his education either ceased prior to completion or contains a gap. Money damages cannot provide an adequate remedy for such imminent and non-speculative harm.

*Id.* (internal citations omitted).

Because Defendants' actions have threatened and impaired Plaintiff's constitutionally protected property interst in his education and future employment, this Court presumes irreparable injury. *See, e.g.*, *Univ. of Cincinnati*, 872 F.3d at 407. Moreover, beyond just a presumption, the University's "hold" on his degree and official transcript is irreparably harming Plaintiff by preventing him from

attending another graduate engineering program, which requires him to submit his official transcript, by June 8, 2018, in order to finalize his admission.

## III.   The Injunctive Relief Sought Will Not Harm Any Individual.

No party will be harmed by this Court granting Plaintiff the injunctive relief sought. Plaintiff has already fulfilled all the requirements to graduate, and receive his diploma and official transcript. If Plaintiff were to return to the University to complete the master's degree program in to which he has already been accepted, as opposed to attending the other master's degree program in to which he has been accepted (but for the University's unconstituional withholding of his official transcript), his classes and course work will be limited to the University's North Campus, which is several miles and at least 20 minutes by University bus away from where the Claimant's classes and course work are. As a result, Plaintiff is unlikely to see or interfere with the Claimant or her right to an education.

Similarly, the University and Defendants would not be harmed. Although the University will argue that it has an interest in instituting its disciplinary policy without hindrance, the process provided for in the Sexual Misconduct Policy is insufficient and unconstitutional per *University of Cincinnati* and *University of Miami*. The University will have to change its current version of the Sexual Misconduct Policy regardless because of its constitutional deficincies.

**IV.    The Public Interest Would Be Served by Granting the Requested Injunctive Relief.**

The determination of where the public interest lies is dependent on a determination of the likelihood of success on the merits of the party's constitutional challenge because "it is always in the public interest to prevent the violation of a party's constitutional rights." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998); *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). The public interest almost always favors the applicant for injunctive relief if the applicant demonstrates both a likelihood of success on the merits and irreparable injury. *AT&T Co. v. Winback & Conserve Program*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994).

In this case, Plaintiff has demonstrated a strong likelihood of success on the merits, given that the process provided for in the Sexual Misconduct Policy has denied him any form of cross-examination, which has already been found to be unconstitutional by the Sixth Circuit Court of Appeals. *See Miami Univ.*, 882 F.3d at 600; *Univ. of Cincinnati*, 872 F.3d at 401. Further, Plaintiff has shown that he will suffer irreparable harm to his education and career if the requested injunctive relief is not granted. Moreover, because it is always in the public interest to prevent a violation of Plaintiff's constitutional rights, the public interest would be served by granting the relief Plaintiff seeks in this case.

## RELIEF REQUESTED

Based upon the foregoing and Plaintiff's Complaint (Dkt. # 1), Plaintiff respectfully requests that this Court immediately enjoin Defendants from:

(1)   Withholding Plaintiff's official transcript and degree;

(2)   Continuing their investigation, sanctions, and appeals process under the Sexual Misconduct Policy;

(3)   Continuing to use the Sexual Misconduct Policy and require the Defendants to provide all students the same protections as contained in the University's Statement of Student Rights and Responsibilities.

Dated: June 5, 2018

**DEBORAH GORDON LAW**
**/s/Deborah L. Gordon (P27058)**
**Elizabeth A. Marzotto Taylor (P82061)**
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com