UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOHN DOE**, *an individual*, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 18-cv-11776 |
| | : | |
| **UNIVERSITY OF MICHIGAN** (as to Title | : | Hon. Arthur J. Tarnow |
| IX violations), **BOARD OF REGENTS OF** | : | Mag. Elizabeth A. Stafford |
| **THE UNIVERSITY OF MICHIGAN,** *a* | : | |
| *constitutional corporate body* (as to Title IX | : | **DEFENDANTS' RESPONSE** |
| & ELCRA violations), **PAMELA** | : | **TO PLAINTIFF'S MOTION** |
| **HEATLIE, ROBERT SELLERS,** | : | **FOR TEMPORARY** |
| **MARTIN PHILBERT, ERIK WESSEL,** | : | **RESTRAINING ORDER** |
| **LAURA BLAKE JONES, E. ROYSTER** | : | **AND PRELIMINARY** |
| **HARPER, SUZANNE MCFADDEN,** *and* | : | **INJUNCTION** |
| **PAUL ROBINSON,** *employees of the* | : | |
| *University of Michigan, sued in his or her* | : | |
| *personal and official capacities, jointly and* | : | |
| *severally*, | : | |
| | : | |
| Defendants. | : | |

---

DEBORAH GORDON LAW
Deborah L. Gordon (P27058)
Elizabeth A. Marzotto Taylor (P82061)
*Attorneys for Plaintiff*
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan  48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

SAUL EWING ARNSTEIN & LEHR LLP
Joshua W.B. Richards
*Application for Admission Submitted*
Amy L. Piccola
*Attorneys for Defendants*
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102
(215) 972-7737
joshua.richards@saul.com
amy.piccola@saul.com

MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
Brian M. Schwartz (P69018)
*Attorney for Defendants*
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
schwartzb@millercanfield.com

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

STATEMENT OF FACTS ......................................................................4

   I.   THE UNIVERSITY'S POLICY AND PROCEDURES ON STUDENT SEXUAL AND
      GENDER-BASED MISCONDUCT AND OTHER FORMS OF INTERPERSONAL
      VIOLENCE. ...................................................................................4

   II.  THE STATUS OF INVESTIGATION OF THE ALLEGATIONS AGAINST DOE. ..............8

LEGAL STANDARD..............................................................................12

ARGUMENT ..........................................................................................13

   I.   PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS. ....................................13

     A.  Plaintiff's claims fail to present a case or controversy and are not
         ripe for decision...........................................................................14

     B.  Plaintiff's constitutional claims must be evaluated in the context of a
         school disciplinary proceeding and consistent with the Sixth Circuit's
         guidance........................................................................................16

     C.  In *University of Cincinnati* the Sixth Circuit did not hold that traditional
         cross-examination is required any time a credibility determination is
         required.........................................................................................18

     D.  The University's procedures are consistent with the Sixth Circuit's
         instructions. ..................................................................................19

   II.  PLAINTIFF CANNOT DEMONSTRATE THAT ABSENT INJUNCTIVE RELIEF HE WILL
      SUFFER IRREPARABLE HARM. HIS HARM IS PURELY SPECULATIVE. .................21

   III.  BOTH THE UNIVERSITY AND CLAIMANT WILL BE HARMED IF DOE'S REQUESTED
       RELIEF IS GRANTED. ......................................................................23

   IV.  DOE HAS NOT DEMONSTRATED THAT THE RELIEF HE SEEKS IS IN THE PUBLIC
       INTEREST.....................................................................................24

CONCLUSION ......................................................................................25

# TABLE OF AUTHORITIES

CASES

*Advance Am. v. FDIC*,
   257 F. Supp. 3d 56 (D.D.C. 2017)......................................................................4

*B.P.C. v. Temple Univ.*,
   No. 13-7595, 2014 WL 4632462 (E.D. Pa. Sept. 16, 2014)...............................16

*Bakhshetsyan v. Regents of the Univ. of Mich.*,
   No. 17-000134-MM (Mich. Ct. Cl. Oct. 9, 2017) .............................................18

*Bonnell v. Lorenzo*,
   241 F.3d 800 (6th Cir. 2001) .............................................................................24

*Cleveland Bd. of Educ. v. Loudermill*,
   470 U.S. 532 (1985)...........................................................................................22

*Connection Distrib. Co. v. Reno*,
   154 F.3d 281 (6th Cir. 1998) .............................................................................22

*Cox v. Jackson*,
   579 F. Supp. 2d 831 (E.D. Mich. 2008) ............................................................13

*Doe v. Cummins*,
   662 F. App'x 437 (6th Cir. 2016) ......................................................................18

*Doe v. Miami Univ.*,
   882 F.3d 579 (6th Cir. 2018) ................................................................ vi, 2-3, 19

*Doe v. The Ohio State University*,
   136 F. Supp. 3d 854 (S.D. Ohio 2016) ...................................................16, 23, 24

*Doe v. Univ. of Cincinnati*,
   872 F.3d 393 (6th Cir. 2017) ............................................ vi, 2, 3, 18, 19, 20, 21

*Doe v. Univ. of Cincinnati*,
   No. 1:15-CV-600, 2015 WL 5729328 (S.D. Ohio Sept. 30, 2015)....................25

*Flaim v. Med. Coll. of Ohio*,
   418 F.3d 629 (6th Cir. 2005) ........................................... vi, 2, 17, 18, 19, 20, 21

*Garlock, Inc. v. United Seal, Inc.*,
　404 F.2d 256 (6th Cir. 1968) ...............................................................13

*Goss v. Lopez*,
　419 U.S. 565 (1975).................................................................. vi, 17, 18

*Griffith v. Fed. Labor Relations Auth.*,
　842 F.2d 487 (D.C. Cir. 1988).............................................................22

*Jaksa v. Regents of the Univ. of Mich.*,
　597 F. Supp. 1245 (E.D. Mich. 1984), *aff'd*, 787 F.2d 590 (6th Cir.
　1986) ..................................................................................................17

*Jones v. Caruso*,
　569 F.3d 258 (6th Cir. 2009) ...............................................................25

*Leary v. Daeschner*,
　228 F.3d 729 (6th Cir. 2000) .................................................................4

*Lucero v. Detroit Pub. Sch.*,
　160 F. Supp. 2d 767 (E.D. Mich. 2001) ...............................................21

*Marshall v. Ohio Univ.*,
　No. 15-cv-775, 2015 WL 1179955 (S.D. Ohio Mar. 13, 2015) ..................24, 25

*Mayfield v. Miles*,
　No. 13-10341, 2014 WL 5605301 (E.D. Mich. Nov. 4, 2014) ..................13, 14

*Morriem v. Univ. of Tenn.*,
　No. 12–2891, 2013 WL 5673619 (W.D. Tenn. Oct. 17, 2013)..........................16

*Norton v. Ashcroft*,
　298 F.3d 547 (6th Cir. 2002) ...............................................................15

*Olim v. Wakinekona*,
　461 U.S. 238 (1983)..............................................................................22

*Ramik v. Darling Int'l, Inc.*,
　161 F. Supp. 2d 772 (E.D. Mich. 2001) ...............................................13

*Richardson v. Twp. of Brady*,
　218 F.3d 508 (6th Cir. 2000) ...............................................................22

*Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*,
    134 F.3d 749 (6th Cir. 1998) ...........................................................................vi, 12

*Seal v. Morgan*,
    229 F.3d 567 (6th Cir. 2000) .....................................................................16, 23

*Shvartsman v. Apfel*,
    138 F.3d 1196 (7th Cir. 1998) ............................................................................23

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981)............................................................................................13

*Warshak v. United States*,
    532 F.3d 521 (6th Cir. 2008) ............................................................... vi, 14, 15

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)................................................................................................13

## OTHER AUTHORITIES

Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.) ...........................22

## <u>STATEMENT OF THE ISSUE PRESENTED</u>

Whether the Court should decline to issue mandatory, preliminary injunctive relief that would change the status quo by disrupting an ongoing student disciplinary investigation of Plaintiff John Doe when Doe's claims of harm are speculative because there has not yet been any finding or determination as to the truth of the allegations against Doe?

**Answer:  Yes**

## <u>CONTROLLING AUTHORITY</u>

*Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018)

*Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017)

*Flaim v. Med. Coll. of Ohio*, 418 F.3d 629 (6th Cir. 2005)

*Goss v. Lopez*, 419 U.S. 565 (1975)

*Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749 (6th Cir. 1998)

*Warshak v. United States*, 532 F.3d 521 (6th Cir. 2008)

**INTRODUCTION**

On March 20, 2018, a student complained to Defendant the University of Michigan (the "University") that Plaintiff John Doe ("Plaintiff," or "Doe") had forcibly raped her, anally, vaginally, and orally.  The University commenced an investigation.

The University's investigator, who investigates, finds facts, and ultimately determines whether any policy violation occurred, has thus far provided Plaintiff with written notice of the allegations, and interviewed, in person, the complaining student (the "Claimant"), Doe, and three witnesses.  The investigator has also prepared a preliminary draft investigation report (without proposed findings), which she has shared with both the Claimant and Doe for their comments.  After initially providing only modest edits, Doe later provided eighty-eight pages of additional proposed edits and follow up for the investigator, including posing specific questions to the Claimant.  The feedback has necessarily delayed the completion of the investigation.  The investigator has since interviewed the Claimant two more times, asking her additional questions suggested by Doe.  This is as far as the investigation has progressed.

Without so much as a preliminary finding – let alone a final decision following the appeals process to which Doe is entitled – Doe filed suit seeking a mandatory preliminary injunction to alter the status quo and stop the process.  Doe

primarily asserted that: (1) he believes he is entitled to a live hearing with cross examination of the Claimant; and (2) the University had, in his view, wrongfully placed a hold on his transcript.   (The University voluntarily released Doe's transcript on June 12, 2018, two days before the Court's June 14, 2018 Order). The transcript issue now aside, the immediate and dispositive issue on this motion is that there cannot be any irreparable harm to Doe when we do not yet know what the outcome of the investigation will be, let alone whether it will cause cognizable harm to Doe.

Just as important, and contrary to Plaintiff's characterization of *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017), the Sixth Circuit has <u>not</u> held that due process requires live cross-examination in all cases, and *Cincinnati*'s narrow holding is not outcome determinative here.   The Sixth Circuit in *Cincinnati* held that the "[the university's] obligations here are narrow: it must provide a means for the [factfinder] panel to evaluate an alleged victim's credibility, not for the accused to physically confront his accuser."   872 F.3d at 406.   Thus, the due process inquiry in this case will focus on whether the accused is afforded an opportunity to "respond, explain, and defend," *Flaim v. Medical College of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005), and whether the process will "provide a way for the adjudicat[or] to evaluate the victim's credibility and 'to assess the demeanor of both the accused and his accuser.'"   *Doe v. Miami Univ.*, 882 F.3d 579, 600 (6th

Cir. 2018). The record demonstrates clearly that both of these things occurred. That the University's process does not include a live hearing or an opportunity for Doe to *directly* confront Claimant is not determinative as to whether Doe will have "an opportunity to be heard" because that is not what precedent requires.

In summary, under the University's process, which the University has closely followed here, after written notice of the allegations is provided to the accused, the University's investigator conducts live, in-person interviews during which the parties can "respond, explain, and defend" and the investigator can assess their credibility. The parties can also suggest specific questions to be asked of any other party or witness by the investigator, thereby providing precisely the sort of limited cross-examination contemplated by the Sixth Circuit in *Cincinnati*. Using that information, the investigator finds facts, then applies the University's Policy to those facts to determine responsibility. This process is on all fours with the principles articulated by the Sixth Circuit. Plaintiff's cross-examination allegations are accordingly completely without merit, and as a result he cannot succeed on his request for injunctive relief.

For all the reasons that follow, Plaintiff's motion should be denied.

## STATEMENT OF FACTS

John Doe relies on his factual assertions in his Complaint as his sole evidence on this motion. Doe alleges[1] that: (1) the Claimant filed a report against him on March 12, 2018; (2) the University's Office for Institutional Equity ("OIE") notified him of the report on April 2, 2018; (3) he was interviewed by the OIE investigator one time on April 3, 2018; (4) he was provided summaries of the statements and evidence collected during the investigation on May 24, 2018; and (5) he was permitted to provide feedback on the summaries, which he did on May 29, 2018. The facts presented by Doe fail to acknowledge the scope of both the investigation thus far and Doe's participation in the process, which is explained in greater detail below.

### I. The University's Policy and Procedures on Student Sexual and Gender-Based Misconduct and Other Forms of Interpersonal Violence.

The University's Policy and Procedures on Student Sexual and Gender-Based Misconduct and Other Forms of Interpersonal Violence (the "Policy")[2]

---

[1] Unlike on a motion to dismiss, the allegations in Plaintiff's complaint are not entitled to the presumption of truth. On a motion for preliminary injunction, a plaintiff must *prove* with evidence of record – not merely plead – a likelihood of success on the merits. *E.g.*, *Advance Am. v. FDIC*, 257 F. Supp. 3d 56, 64 (D.D.C. 2017) (comparing applicable standards). Indeed, "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

[2] The Policy is attached as Exhibit 1 to the Declaration of Brian M. Schwartz, Esq. ("Schwartz Declaration") filed concurrently with this brief.

govern claims of sexual assault alleged to have been perpetrated by one student against another.  *See* Policy at 1, 12, 14-16.  The Policy sets forth a process for investigating such claims that includes written notice, interviews of parties and witnesses, review of relevant evidence, preparation of a preliminary investigation report, solicitation of feedback on the report and witness statements, preparation of a final investigation report and determination, procedures for determining any sanctions, and rights of appeal.  *See generally id.* at 1-36.

If a violation of the Policy is alleged and reported, a claim then proceeds through either a formal resolution process or an alternative resolution process.  *See id* at 9-10, 18.  The formal resolution process, which governs Doe's case, "involves an investigation and, if applicable, an appeal and sanctions."  *Id.* at 18.  The participation of parties and witnesses in the University's process is voluntary.  *See id.* at 24.  The investigation is led by an investigator who serves both as a factfinder and decision-maker as to whether a violation of the Policy has occurred. *See id.* at 23-29.

A formal resolution begins with written notice to the respondent.  *Id.* at 24. "The written information . . . include[s] the identities of the parties, if known, a concise summary of the conduct at issue, and potential Policy violations."  *Id.*  The investigation affords both the claimant and respondent "a full and fair opportunity to be heard, to submit information and other evidence, and to identify witnesses."

*Id.* at 23.   During an investigation, the investigator meets separately with the parties and pertinent witnesses, "offer[s] the parties the equal opportunity to submit and/or identify related and relevant information or evidence," and "gather[s] other relevant information or evidence, including documents, photographs, communications between the parties, medical records (subject to the consent of the applicable person) and other electronic records as appropriate." *Id.*

Following the interviews, each party or witness is "provided with a draft summary of their statement so that they have the opportunity to comment on the summary and ensure its accuracy and completeness." *Id.*  During this process, the parties "may suggest questions to the investigator to be asked of any party or witness." *Id.*  "The investigator will determine which questions may be relevant or appropriate and will pose any such questions in a form the investigator deems best suited to be obtaining relevant information." *Id.*

The investigator reviews "all information identified or provided by the parties and will determine the appropriateness, relevance, and probative value of the information developed or received during the investigation." *Id.* at 25.  All information deemed relevant by the investigator is provided to the parties for their review and comment. *Id.*  After the parties have had an opportunity to comment on their statements, identify witnesses and other information, and suggest questions,

and after the investigator has completed witness interviews and the gathering of evidence, the investigator prepares a preliminary report.  *See id.* at 28.

The preliminary report includes the parties' statements, any witnesses' statements, and any other relevant information collected during the investigation.  *See id.*  The preliminary report does not include any findings of fact.  The parties may provide feedback on the preliminary report, submit additional evidence or information they deem relevant, and request additional investigation.  *See id.*  If new information is subsequently incorporated into the preliminary report, the parties are given a second opportunity to review the report and provide additional feedback.  *See id.*

Thereafter, the investigator proceeds to determine, by a preponderance of the evidence, whether the respondent has committed a violation of the Policy.  *See id.*  The investigator prepares a final written report containing "all information from the preliminary report, as supplemented by the relevant feedback submitted," along with "any additional information gathered[,] the investigator's findings[,] and a summary of the investigator's rationale in support of the findings."  *Id.* at 29.  If the respondent is found to have committed a violation of the Policy, the University will initiate a sanctioning process facilitated by the Office of Student Conflict Resolution.  *Id.* at 29-30.

Parties may appeal a final report and findings if, among other reasons, "[a] review of all available and relevant information indicates that the evidence clearly does not support the finding(s). . . ." *Id.* at 34. Appellate review is conducted by an external retired federal judge who "has the authority to determine the appropriateness of evidence, including whether certain evidence should be considered, and the strength and value that evidence will be given," *id.* at 35.

The University "strive[s] to complete resolution of any matter" within 75 days, which clock starts with the notice of an investigation to the respondent and concludes with the completion of the investigation and sanctioning phase, if applicable.[3] *Id.* at 18. This timeframe may be extended for good cause, such as when additional time is needed to ensure a complete investigation or to accommodate the availability of witnesses, among other reasons. *See id.*

## II.    The status of investigation of the allegations against Doe.

On March 20, 2018, the Claimant requested an investigation arising from her allegation that Doe had raped her. *See* Declaration of Suzanne Q. McFadden ("McFadden Decl."), attached as Exhibit 2 to the Schwartz Declaration, ¶ 3.

---

[3] As a portion of that 75 days, the University strives to issue a finding within 60 days of notice to the respondent. *See id.* at 27-28. Doe was notified of the investigation in this case on April 2, 2018. *See* Complaint, ECF No. 1, ¶ 30. As of the date of this filing, the investigation has been pending for 74 days. Doe is mistaken in asserting that 85 days had passed as of June 5, 2018. *See* Motion for Temporary Restraining Order (Doc. No. 4) at 3, 6.

Claimant met in person with the investigator, Ms. McFadden, on March 29, 2018. *See* McFadden Decl. ¶ 4.

On April 2, 2018, the investigator e-mailed Doe and notified him that the University would conduct an investigation. The April 2nd e-mail read, in relevant part, that "we have received a report that you may have engaged in the following behavior toward [Claimant]: unwanted oral, vaginal, and anal penetration without consent, at [redacted] residence hall on or about November 11, 2018 [sic]. The potential policy violation that OIE will be investigating is: Sexual Assault." *Id.* ¶ 5; *see also id.* Exhibit A. The April 2 e-mail also contained Claimant's name,[4] and linked to and attached a copy of the Policy.

The investigator requested two meetings with Doe: a first meeting to explain the allegations, the Policy, the investigation process, as well as to answer any questions, and a second meeting for Doe to respond to the allegations. *Id.* ¶ 6. Two meetings were then scheduled with dates and times selected by Doe, the first to be held on April 3, 2018 and the second on April 5, 2018. *Id.* ¶ 7.

Doe met in person with the investigator on April 3, 2018, at which time he was advised of the Policy, OIE's neutral role, the investigation process, the availability of interim measures and supportive resources for respondents, the

---

[4] In asserting that he was not given notice of the charges against him sufficient for him to be able to respond, Doe selectively quotes from the investigator's April 2nd e-mail in paragraph 60 of his Complaint and omits the specific details provided.

prohibition on retaliation, and Doe's option of having an advisor present with him at the meeting. *Id.* ¶ 8. Doe was encouraged to ask questions at any time and was asked to identify witnesses, documents, text messages, social media communications, and any other information he considered relevant to the investigation. *Id.* ¶ 9. After the investigator advised Doe of the allegations, Doe asked to respond to the allegations immediately so that he would not have to return for a second meeting. *Id.* ¶ 10. Doe did respond to the allegations, and the April 5th meeting was cancelled at his request. *Id.*

On April 11, 2018, the investigator sent Doe a written summary of his interview and asked Doe to submit any comments he might have. *Id.* ¶ 11. Doe submitted very minor comments on the same day, which the investigator considered and incorporated as appropriate. *Id.* ¶ 12.

Thereafter, Doe continued to actively participate in the investigation and made multiple requests for additional investigation. On May 15, 2018, Doe sent the investigator an e-mail requesting that a copy of the RA Duty Log from the night of the incident be considered in the investigation. *Id.* ¶ 13. The next day, Doe requested that the investigator include in the investigation report a copy of a statement from a woman he previously engaged in a sexual relationship with and a copy of his Eagle Scout certificate. *Id.* ¶ 14. Doe also identified six additional witnesses and requested that the investigator interview them. *Id.* Three of those

witnesses agreed to be interviewed; a fourth declined, stating that he had no relevant information, and the remaining two witnesses did not respond. *Id.* ¶ 15. The three witnesses were interviewed, provided a summary of their respective statements, and then submitted feedback on their statements. *Id.* ¶ 16.

More than a month after finalizing his statement, and unprompted by OIE, on May 16, 2018 Doe sent significant changes to his statement. *Id.* ¶ 17. Among other things, Doe changed his statement from indicating that *he* had initiated anal sex to indicating Claimant suggested they have anal sex and, when asked by Doe to confirm her intention, "Claimant verbally responded without any hesitation that she wanted to have anal sex." *Id.* Although the additional feedback was offered well past the deadline for doing so, and materially altered Doe's statement with respect to several aspects of his version of events, the investigator nevertheless considered the feedback and incorporated the information as appropriate. *Id.*

On May 24, 2018, the investigator sent a copy of the preliminary investigation report[5] to both Claimant and Doe, who were invited to provide feedback. *Id.* ¶ 18. On May 29, 2018, the investigator sent an e-mail to the parties asking whether they would like to propose questions to be asked of the other party and/or any witnesses. *Id.*; *see also id.* Exhibit B. Both parties submitted comments on the preliminary report on May 29, 2018. *Id.* ¶ 19. Claimant did not

---

[5] The University has not attached a copy of the preliminary report to its brief, but would be happy to provide a copy at the Court's request and subject to a seal order.

propose any questions to be asked of Doe or any of the witnesses, but Doe proposed a number of questions to be asked of Claimant and the witnesses. *Id.* Doe's comments in total exceeded eighty pages, and accommodating Doe's requests necessarily extended the length of the investigation. *Id.*

Specifically, in responding to Doe's feedback, the investigator spoke with Claimant again by phone on May 31 and June 4, 2018 to ask questions proposed by Doe. *Id.* ¶ 20. Claimant was provided a written summary of the information she provided on these dates, and submitted her feedback on June 8, 2018. *Id.* ¶ 21. In addition, the investigator followed up with certain witnesses by e-mail to ask questions raised by Doe. *Id.* ¶ 22. With respect to all requested changes, the party and witness feedback was considered and incorporated into their respective statements as appropriate. *Id.* ¶ 25.

## LEGAL STANDARD

In evaluating a motion for a preliminary injunction, a court considers four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998). The movant bears the burden of establishing each of these

-12-

elements by clear and convincing evidence.  *See Garlock, Inc. v. United Seal, Inc.,* 404 F.2d 256, 257 (6th Cir. 1968); *see also Winter v. Nat. Res. Def. Council*, *Inc.*, 555 U.S. 7 (2008).

The primary purpose of emergency injunctive relief is "to preserve the relative positions of the parties" until a merits determination can be made.  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Ramik v. Darling Int'l, Inc.*, 161 F. Supp. 2d 772, 778 (E.D. Mich. 2001).  Courts in this District have thus held there are "three types of particularly disfavored preliminary injunctions:  (1) preliminary injunctions that *alter the status quo*; (2) *mandatory* preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits."  *Cox v. Jackson*, 579 F. Supp. 2d 831, 855 n.8 (E.D. Mich. 2008) (emphasis added) (internal marks omitted); *Mayfield v. Miles*, No. 13-10341, 2014 WL 5605301, at *5 (E.D. Mich. Nov. 4, 2014) (same).[6]  For the reasons set forth below, Plaintiff's request for a mandatory preliminary injunction that would alter the status quo should be denied.

## ARGUMENT

**I.      Plaintiff is not likely to succeed on the merits.**

Plaintiff has premised his request for emergency relief solely on alleged violations of Fourteenth Amendment procedural due process rights.  *See* Doc. No.

---

[6] Unpublished cases are attached as Exhibit 3 to the Schwartz Declaration.

4 at 13.   In particular, Plaintiff claims that the Policy "intentionally deprives [him] of his due process rights and an opportunity to be heard" because the Policy does not provide a right to live cross examination at a hearing.  *Id.* at 3.  This argument is not supported by the facts or the law, so Plaintiff's request for emergency relief fails.

> ### A.      Plaintiff's claims fail to present a case or controversy and are not ripe for decision.

Plaintiff's claims fail at the outset because they do not present a live case or controversy.  "A claim is not 'amenable to . . . the judicial process,' when it is filed too early (making it unripe)."  *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998)).  In *Warshak*, the Sixth Circuit summarized the ripeness doctrine:

> Like standing, ripeness "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."  The ripeness doctrine serves to "avoid[ ] ... premature adjudication" of legal questions and to prevent courts from "entangling themselves in abstract" debates that may turn out differently in different settings.  In ascertaining whether a claim is ripe for judicial resolution, we ask two basic questions:  (1) is the claim "fit[ ] ... for judicial decision" in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass? and (2) what is "the hardship to the parties of withholding court consideration"?

*Id.* (quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003)).

Plaintiff concedes that the investigator has not decided whether he has violated University policy, let alone imposed a penalty upon him that interferes with his liberty or property interests.[7]   In the absence of a decision determining Plaintiff violated the Policy and imposing a significant sanction, Plaintiff has no claim to be adjudicated.  Instead, he presents only an abstract question:  *assuming* the University finds him responsible for a violation, and *further assuming* that the University imposes a severe consequence such as expulsion, would any alleged defects in the process by which those decisions were made rise to the level of deprivation of property or liberty without due process?

As the Sixth Circuit observed *en banc*, "Answering difficult legal questions before they arise and before the courts know how they will arise is not the way we typically handle constitutional litigation."   *Warshak*, 532 F.3d at 526.  "Ripeness doctrine exists 'to ensure that courts decide only existing, substantial controversies, not hypothetical questions or possibilities.'"  *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) (citations omitted).  Absent a deprivation of a protected right, the question of whether the deprivation happened with due process of law becomes purely advisory.

---

[7] To the extent Plaintiff relied upon the hold on his transcript as a cognizable harm, that issue is moot.  The University has voluntarily released Doe's transcript.  *See* Schwartz Declaration ¶ 4.

In *Doe v. The Ohio State University*, 136 F. Supp. 3d 854 (S.D. Ohio 2016), much as here, the plaintiff was a student accused of misconduct.  He sought an injunction against the University continuing with its investigation of his conduct based on his claim that the proceedings would violate his due process rights.  The court denied injunctive relief noting that where the investigation was at an early stage, with no adverse finding against the plaintiff, the claim was not ripe for disposition.  *See also Morriem v. Univ. of Tenn.*, No. 12–2891, 2013 WL 5673619, at *12 (W.D. Tenn. Oct. 17, 2013) (same); *B.P.C. v. Temple Univ.*, No. 13-7595, 2014 WL 4632462, at *5 (E.D. Pa. Sept. 16, 2014) (same).

Because Plaintiff has experienced no concrete harm and may very well never experience any such harm, his claim fails as unripe.

> **B.  Plaintiff's constitutional claims must be evaluated in the context of a school disciplinary proceeding and consistent with the Sixth Circuit's guidance.**

"Schools . . . have an unquestionably powerful interest in maintaining the safety of their campuses and preserving their ability to pursue their educational mission."  *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000).  These interests are directly and particularly implicated in the efforts of universities to ensure students are protected from sexual misconduct, efforts mandated by federal law and the

requirements of Title IX.[8]   Courts have emphasized that federal court review of university disciplinary actions is "circumscribed," and "limited to determining whether the procedures used . . . were constitutional." *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 638 (6th Cir. 2005).   Full-scale adversarial hearings in school disciplinary proceedings have never been required by the Due Process Clause." *Id.* at 640-41; *see also Jaksa v. Regents of the Univ. of Mich.*, 597 F. Supp. 1245, 1250 (E.D. Mich. 1984) ("While a university cannot ignore its duty to treat its students fairly, neither is it required to transform its classrooms into courtrooms."), *aff'd*, 787 F.2d 590 (6th Cir. 1986).

Instead, students are entitled to two basic due process protections: (1) notice and (2) an opportunity to be heard.  *Flaim*, 418 F.3d at 634.  A student accused of misconduct must be given "an explanation of the evidence the authorities have and an opportunity to present his [or her] side of the story."  *Goss v. Lopez*, 419 U.S. 565, 581 (1975).  This opportunity to be heard, "whether formal, informal, live or not, must be meaningful and must provide the accused with the opportunity to 'respond, explain, and defend.'"  *Flaim*, 418 F.3d at 635 (quoting *Gorman v. Univ.*

_____

[8] Title IX requires educational institutions to take action to eliminate sexual harassment and sexual assault, prevent its recurrence, and address its effects. *See* Office for Civil Rights ("OCR"), "Q&A on Campus Sexual Misconduct" (Sept. 2017) (the "2017 Q&A"), attached to the Schwartz Declaration as Exhibit 4, at 1. As relevant here, OCR requires colleges and universities to investigate and adjudicate complaints of sexual assault that are brought by or against a student of the University.

*of R.I.*, 837 F.2d 7, 13 (1st Cir. 1988)).  Provided the disciplinary review process affords a student an "opportunity to characterize his conduct and put it in what he deems the proper context," the procedures can fall well short of a formal, trial-like proceeding.  *Goss*, 419 U.S. at 584.  "An informal give-and-take between student and disciplinarian" is sufficient.  *Id.*[9]

### C. In *University of Cincinnati* the Sixth Circuit did not hold that traditional cross-examination is required any time a credibility determination is required.

Consistent with *Goss*, *Flaim*, and their progeny, even on its own unique facts *Cincinnati* contemplates only a "circumscribed form of cross-examination," in which "written questions" are submitted through a factfinder who both screens and asks the questions.  *Cincinnati*, 872 F.3d at 396-97, 404-06 (internal marks omitted); *see also Doe v. Cummins*, 662 F. App'x 437, 439, 448 (6th Cir. 2016). *Cincinnati* announced a narrow holding arising under the unique circumstances of that case and related to the Court's explicit concern that the complaining party **had**

---

[9] Plaintiff also argues in error that his due process rights were violated because the Policy provides different procedures in matters of sexual misconduct than for other categories of misconduct. Pl. Br. at 8, 19.  However, the law is clear that "[t]he Due Process Clause . . . sets only a floor or lowest level of procedures acceptable." *Flaim*, 418 F3d at 637-38; *see also Bakhshetsyan v. Regents of the Univ. of Mich.*, No. 17-000134-MM (Mich. Ct. Cl. Oct. 9, 2017).  Whether due process was provided is thus an objective inquiry: does the Policy meet that floor? Whether procedures greater than the floor are provided under different circumstances is not part of the analysis, so Plaintiff's argument is without merit.

*never* appeared in-person before the factfinder. *Cincinnati*, 872 F.3d at 401. Such is manifestly not the case here.

Where the resolution of a disciplinary proceeding "pose[s] [a] credibility contest," that is, where the situation is one of word-versus-word, limited cross examination to test witness credibility is in some cases required. *Id.* Contrary to Plaintiff's characterization of *Cincinnati*, however, the Sixth Circuit has not held that a live hearing with cross-examination is required in all cases, and *Cincinnati* is not controlling under the circumstances present here.

The ultimate due process question is whether the accused is afforded an opportunity to "respond, explain, and defend." *Flaim*, 418 F.3d at 635; *Cincinnati*, 872 F.3d at 400. "[I]f the credibility of an alleged victim is at issue," then the touchstone – the critical feature for due process – is that the university "provide a way for the adjudicat[or] to evaluate the victim's credibility and 'to assess the demeanor of both the accused and his accuser.'" *Miami Univ.*, 882 F.3d at 600 (quoting *Cincinnati*, 872 F.3d at 406). As set forth below, the record demonstrates that the University process provides all these features.

### D.   The University's procedures are consistent with the Sixth Circuit's instructions.

Absolutely critical here, and as the *Cincinnati* court "emphasize[d]:" "[the university's] obligations here are narrow: it must provide a means for the

-19-

[factfinder] panel to evaluate an alleged victim's credibility, not for the accused to physically confront his accuser."  872 F.3d at 406.

The University's Policy generally and as applied in this case comports with this principle.  As explained at the status conference on June 11, 2018, under the Policy, the same University officer – the investigator – ***both*** conducts live, in-person interviews of the parties and witnesses during which she can assess their credibility ***and*** is the ultimate factfinder.  That is what happened in this case.[10]  Likewise, under the Policy, a claimant or respondent may suggest questions to the investigator to be asked of any party or witness.  That too is what happened here.[11]  Finally, the investigator, after seeking input from the parties at multiple junctures, "make[s] a determination, by a preponderance of the evidence, whether the Respondent has committed a violation of [the] policy."  Policy at 28.  As noted, this has not yet happened in this case.

As in *Flaim*, under the Policy "the trier of fact [is] able to listen to and observe" the parties as they share their sides of the story.  *Cincinnati*, 872 F.3d at 402 (quotations omitted).  And, as in *Cincinnati*, the parties are able to submit

---

[10] *See* Policy at 23 (investigator meets separately with the claimant, respondent and pertinent witnesses; offers the parties the equal opportunity to submit and/or identify related and relevant information or evidence); *see also* McFadden Decl. ¶¶ 4, 8, 23 (investigator in Doe's case met with both parties and three witnesses live).

[11] *See* Policy at 23; *see also* McFadden Decl. ¶¶ 18-20 (investigator solicited questions from Doe and posed them to Claimant).

questions to the trier of fact to be asked of the other party and/or witnesses, thereby providing effective "cross-examination." *Id.* at 396-97, 404-06. That the University's process does not include a live hearing or an opportunity for Doe to *directly* confront Claimant is not determinative as to whether Doe will have "an opportunity to be heard" under controlling precedent.

Under the University's Policy, the investigator – the finder of fact – has had the opportunity to evaluate the parties' credibility and Plaintiff has had, and continues to have in his ongoing investigation, a full opportunity to "respond, explain, and defend." *Flaim*, 418 F.3d at 635. There is accordingly no due process problem with the University's Policy.[12]

## II. Plaintiff cannot demonstrate that absent injunctive relief he will suffer irreparable harm. His harm is purely speculative.

"To constitute irreparable harm, an injury must be certain, great, and actual." *Lucero v. Detroit Pub. Sch.*, 160 F. Supp. 2d 767, 801 (E.D. Mich. 2001). "Irreparable harm cannot be speculative; 'the injury complained of [must be] of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.'" *Id.* (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674

---

[12] This case also differs from *Cincinnati* because although Plaintiff does not disclose this in his papers, this case is not an exclusively word-versus-word case. Claimant has identified a witness, who was interviewed in person by the investigator, who has stated that he observed a large bruise on Claimant's body shortly after the alleged assault. McFadden Decl. ¶ 24.

(D.C. Cir. 1985) (alteration in original)).  A party may show an irreparable injury sufficient to satisfy the preliminary injunction standard if "an alleged deprivation of a constitutional right is involved."  Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.); *see also Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).  Here, there is no actual harm because Doe will not be deprived of a constitutionally-protected property or liberty interest unless he is ultimately found to have violated the Policy at the conclusion of the investigation and sanctioned.

Doe claims that the investigatory *procedures* in the Policy violate his due process rights, but those procedures cannot form the basis of a due process claim because Doe does not have a protected property interest in the procedures, only in his enrollment.  *See, e.g.*, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("[T]he Due Process Clause provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures.  The categories of substance and procedure are distinct.").[13]

---

[13] *See also Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself.  Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."); *Richardson v. Twp. of Brady*, 218 F.3d 508, 518 (6th Cir. 2000) (rejecting claim that plaintiff had a property interest in procedures); *Griffith v. Fed. Labor Relations Auth.*, 842 F.2d 487, 495 (D.C. Cir. 1988) (rejecting claim that plaintiff had a constitutional right to use certain adjudicatory procedures, explaining that property interest was the substantive cause of action, not the procedural specifications, and recognizing that procedural safeguards cannot create a property interest for due process purposes).

To hold that such procedures create property rights "would make the scope of the Due Process Clause virtually boundless," and would mean that a person may not be deprived of a hearing without having a hearing.  *See Shvartsman v. Apfel*, 138 F.3d 1196, 1199-1200 (7th Cir. 1998).

Independently, "if a court finds it unlikely that a plaintiff will succeed on the merits of a constitutional claim, the 'argument that he is entitled to a presumption of irreparable harm based on the alleged constitutional violation is without merit,'" and "[t]he Court must look elsewhere for irreparable harm." *Ohio State Univ.*, 136 F. Supp. 3d at 871 (quoting *Overstreet v. Lexington–Fayette Urban Cty. Gov't*, 305 F.3d 566, 578-79 (6th Cir. 2002)).  Because Doe has not shown he is likely to succeed on the merits of his due process claims, he is not entitled to a presumption of irreparable harm.  *See* Section I., *supra*.[14]  In short, Doe cannot demonstrate that he will be irreparably harmed absent a preliminary injunction, and his motion must be denied.

## III.   Both the University and Claimant will be harmed if Doe's requested relief is granted.

Universities have an "unquestionably powerful interest in maintaining the safety of their campuses." *Seal*, 229 F.3d at 574.  Indeed, the power of a university

---

[14] While Doe claims that the University's hold on his "official transcript is irreparably harming [him] by preventing him from attending another graduate engineering program," Motion at 23-24, that claim is moot now that the University has removed the hold on his official transcript. *See* Schwartz Declaration ¶ 4.

to "regulate its student body, including investigating and disciplining its students for sexual misconduct," is required by Title IX, and a failure to do so "could jeopardize its federal funding." *Ohio State Univ.*, 136 F. Supp. 3d at 871; *see also Bonnell v. Lorenzo*, 241 F.3d 800, 822 (6th Cir. 2001) ("A college's or university's interest in maintaining a hostile-free learning environment, particularly as it relates to its Title IX funding, is well recognized.").

Forcing the University to modify its procedures midstream, before a final decision, diminishes the integrity of that process, and the University's ability to enforce it in this and other cases. *See Marshall v. Ohio Univ.*, No. 15-cv-775, 2015 WL 1179955, at *10 (S.D. Ohio Mar. 13, 2015) (explaining that "[i]ssuing a temporary restraining order . . . would likely interfere with [the University's] ability to enforce its disciplinary standards"). Finally, Doe is not the only student with interests in the outcome of this proceeding, and any harm to Doe must be balanced against the harm to the Claimant.

## IV. Doe has not demonstrated that the relief he seeks is in the public interest.

The Sixth Circuit has recognized "allegations of sexual harassment inherently address a matter of public concern . . . because of the public interest in knowing that such goings on are properly investigated and not allowed to continue in any given arena." *Bonnell*, 241 F.3d at 826. Consequently, "granting a temporary restraining order would likely disturb the University's ability to enforce

-24-

its disciplinary procedures, which would not be in the public interest." *Doe v. Univ. of Cincinnati*, No. 1:15-CV-600, 2015 WL 5729328, at *3 (S.D. Ohio Sept. 30, 2015); *see also Marshall*, 2015 WL 1179955, at *10  ("Issuing a temporary restraining order in this case, and in others similar to it, would likely interfere with OU's ability to enforce its disciplinary standards").  Moreover, because Plaintiff is unlikely to succeed on the merits of his claim, this factor weighs in favor of denying the injunction.  *See Jones v. Caruso*, 569 F.3d 258, 278 (6th Cir. 2009) ("[I]f the regulation in question is likely to be deemed constitutional, the public interest will not be harmed by its enforcement.").

## <u>CONCLUSION</u>

For the foregoing reasons, and any other reasons that may appear to the Court, Defendants respectfully request that the Court deny Plaintiff's request for injunctive relief.

<div style="margin-left:40%">

Respectfully submitted,

</div>

June 15, 2018

<div style="margin-left:40%">

/s/Brian M. Schwartz (P69018)
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
Brian M. Schwartz (P69018)
*Attorney for Defendants*
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
schwartzb@millercanfield.com

</div>

SAUL EWING ARNSTEIN & LEHR LLP
Joshua W.B. Richards
*Application for Admission Submitted*
Amy L. Piccola
*Attorneys for Defendants*
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102
(215) 972-7737
joshua.richards@saul.com
amy.piccola@saul.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2018, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to:

<div align="center">

Deborah L. Gordon
dgordon@deborahgordonlaw.com

</div>

/s/Brian M. Schwartz (P69018)
MILLER, CANFIELD, PADDOCK
AND STONE, P.L.C.
*Attorneys for Defendants*
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
schwartzb@millercanfield.com