UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JOHN DOE**, *an individual*,

    Plaintiff,

vs.

Case No.: 18-cv-11776
Hon.  Arthur J. Tarnow
Mag.  Elizabeth A. Stafford

**UNIVERSITY OF MICHIGAN** (as to Title IX violations),  *et, al.*,

    Defendants.

---

**DEBORAH GORDON LAW**
**Deborah L. Gordon (P27058)**
**Elizabeth A. Marzotto Taylor (P82061)**
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

**MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.**
**Brian M. Schwartz (P69018)**
Attorney for Defendants
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
(313) 963-6420
schwartzb@millercanfield.com

**SAUL EWING ARNSTEIN & LEHR LLP**
**Joshua W.B. Richards**
**Amy L. Piccola**
Attorneys for Defendants
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102
(215) 972-7737
joshua.richards@saul.com
amy.piccola@saul.com

---

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

I.  Plaintiff's claim is ripe......................................................................................................1

II. The Policy lacks the requisite due process protections.....................................................3

    A.  Questioning by the OIE investigator in a private meeting does not satisfy due process requirements..............................................................................3

    B.  The Policy calls for an external reviewer, who never assesses credibility, to be the ultimate fact finder...................................................................................5

III. Defendants should provide full cross examination for students accused of sexual assault, as they do for students accused of other misconduct ..............................5

IV. Defendants will not be harmed by a TRO.........................................................................7

Certificate of Service..................................................................................................................8

i

# TABLE OF AUTHORITIES

**Cases**            **Page**

*Berry v. Schmitt*,
   688 F.3d 290 (6th Cir. 2012) ................................................................................... 2

*Doe v. Cummins*,
   662 Fed. App'x 437 (6th Cir. 2016) ........................................................................ 2

*Doe v. Miami Univ.*,
   882 F.3d 578 (6th Cir. 2018) ................................................................................... 7

*Doe v. The Ohio State Univ.*,
   136 F. Supp. 3d 854 (S.D. Ohio 2016) ................................................................... 3

*Doe v. Univ. of Cincinnati*,
   872 F.3d 393 (6th Cir. 2017) ........................................................................ passim

*Goss v Lopez,*
   419 U.S. 565 (1975) ................................................................................................ 4

*Matthews v. Eldridge*,
   424 U.S. 319 (1976) ................................................................................................ 7

*Obama for Am. v. Husted*,
   697 F.3d 423 (6th Cir. 2012) ................................................................................... 2

Defendants' argument fails. They are unable to cite to any case which approves of the process contained in their convoluted Sexual Misconduct Policy. But even if they were correct, and a private interview with the OIE investigator provided due process on the basis that the investigator could assess credibility, the Policy is still unconstitutional because the OIE investigator is *not* the "ultimate fact finder" as Defendants claim. Defs.' Br. at 20 (Dkt. #21). Defendants intentionally misstate how the Policy works. It provides for an appeal where an "external reviewer" has the authority, without seeing or hearing from anyone, to set aside the investigator's report and findings and substitute his own, which are final. This fact is fatal to Defendants' argument. Nor do Defendants make any attempt to explain, as a matter of law, why they do not allow students accused of sexual misconduct the same due process protections they already provide to all other students.

## I.     Plaintiff's claim is ripe.

Defendants erroneously argue that Plaintiff's claim is not ripe. To determine ripeness, the Court considers three factors: "(1) the likelihood that the harm alleged by the plaintiff[] will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in

the proceedings." *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012). Here, Plaintiff satisfies all three factors.

The harm alleged by Plaintiff – the deprivation of his liberty and property interest – has already occurred. "[A]llegations of sexual assault may 'impugn [a student's] reputation and integrity, thus implicating a protected liberty interest." *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017) (quoting *Doe v. Cummins*, 662 Fed. App'x 437, 445 (6th Cir. 2016) (alternations in original). Here, Plaintiff has been falsely accused of sexual assault. Furthermore, although Defendants released his official transcript after Plaintiff's Motion was filed, Plaintiff was deprived of credentials showing he had graduated for approximately 50 days, during a pivotal period when he was attempting to finalize plans for graduate school. Plaintiff is still subject to expulsion, suspension, or revocation of his degree pursuant to Defendants' "No Contact Directive," which significantly limits his ability to move freely about, or to participate in activities, including "social or public event[s]." **Ex. C**, No Contact Directive and Email from Defendant McFadden. The Sixth Circuit has explained that "[w]hen constitutional rights are threatened or impaired, irrepable injury is presumed." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012). Accordingly, because Plaintiff's constitutional rights have been both threatened and impaired, the harm he has suffered is sufficient under the ripeness inquiry. The harm Plaintiff has suffered is also not

speculative, because he has already been denied proper and complete notice of the charges against him, and under no circumstances will Defendants provide Plaintiff with the opportunity to cross examine witnesses (even in a circumscribed manner) during a live hearing. *See Doe v. Univ. of Cincinnati*, 872 F.3d 393, 406 (6th Cir. 2017); **Ex. B**, Policy at 23-29.

Defendants erroneosuly analogize this case to *Doe v. The Ohio State Univ.*, 136 F. Supp. 3d 854 (S.D. Ohio 2016). There, the court held that the plaintiff's claim was not ripe because he had not yet completed the university's disciplinary process, which would have afforded him an opportunity to be heard and cross examine adverse witnesses. *Id.* at 864. In stark contrast, here, the University's procedure for students accused of sexual misconduct lacks any type of live hearing or opportunity to cross examine live witnesses. Thus, there are no "contingent future events" that could result in constitutionally suffcient process for Plaintiff. *Id.*

Plaintiff's claim also satisfies the second and third factors of the ripness test. The factual record is sufficiently developed to produce a fair adjuication of his claim – on its face, the Policy denies Plaintiff procedural due process. Finally, without the Court's intervention in Defendants' unlawful procedures, the hardship to Plaintiff is substantial as irrepable injury is presumed in this context.

**II.    The Policy lacks the requisite due process protections.**

    **A.    Questioning by the OIE investigator in a private meeting does not satisfy due process requirements.**

Defendants have no case law to rely on in support of their flawed, separate Policy which prohibits a hearing or cross examination for students accused of sexual misconduct. Hence, they seek support from inapplicable cases such as *Goss*, taking the position that "'[a]n informal give-and-take between student and disciplinarian' is sufficient," Defs.' Br. at 18, even though *Goss* specifically states "[w]e should also make it clear that we have addressed ourselves solely to the short suspension, not exceeding 10 days. Longer suspensions or expulsions . . . may require more formal procedures." *Goss v Lopez,* 419 U.S. 565, 584 (1975).

In fact, *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017) controls. Defendants admit that cross examination is required in a "credibility contest." But they erroneously argue that because the Policy provides for the OIE investigator to meet with the parties she can "access credibility" and this "comports" with the due process requirements of *Cincinnati*. Defendants' argument fails for two reasons. First, *Cincinnati* does not stand for the proposition that it is only important that the fact finder be able to access credibility. Rather, the student is the natural driver of questions to be put to the accuser. It is his educational future that is at stake and the University is playing a role that is presumably neutral.[1] As a matter of law, cross examination is designed to assist the

---

[1] Moreover, University officials may not pose questions that are at all adversarial or pointed to claimants. The University of Michigan Sexual Assault

4

accused student as well the fact finder. As the Sixth Circuit explained, the burden is on the accused and accuser to become the "cross-examiner [who] may 'delve into the witnesses story to test the witnesses' perceptions and memory" and "expose testimonial infirmities such as forgetfulness, confusion or evasion . . . thereby calling to the attention of the fact finder the reasons for giving scant weight to the witnesses' testimony." *Id.* at 402. The Court made clear that allowing the accused to "confront and question" the accussor would aid the "truth seeking process." *Id* at 404. The *Cincinnati* Court also explained that if a case depends on "credibility," then cross examination may be "essential to a fair hearing" to ensure that the parties have the opportunity to "listen to and observe" testimony. *See id.* at 401-04.

Second, the Policy provision that allows the parties to "suggest questions" to the investigator who will then decide whether or not to privately put the question to

---

and Prevention Awareness Center (which reports to Defendant E. Royster Harper) advises any supporter to "*[b]elieve* what the survivor is telling you. No matter what, the survivor is not to be blamed." *See* https://sapac.umich.edu/article/sapac-general-information#HowToSupport. The President of the University signed the March 25, 2016, Proclamation in support of the "Start by Believing" Public Awareness Campaign. This Campaign is part of the End Violence Against Women International Program, the purpose of which is to promote automatic belief in whatever a "victim" says. *See* University of Michigan Proclamation, https://storage.googleapis.com/dpss-wordpress-prod/2/2017/03/proclamation.pdf. The concept of "survivor" and the requirement to "believe" has found its way into Defendants' Response. Defendants describe what Plaintiff is accused of as "rape," a word not contained in the Policy or in Michigan statutes. OIE investigator Suzanne McFadden uses the word "raped" in her affidavit and suggests in ¶ 17 that Plaintiff has wrongly changed his story. Dkt. #21-1 (Ex. 2 at 1, 8).

5

the accuser, **Ex. B**, Policy at 23, is not a substitute for cross examination and the ability to observe responses. The Policy does not require the investigator to re-interview the parties once questions are suggested, and on information and belief, the investigator poses additional questions via email, where there is no opportunity for observation of credibility.

### B. The Policy calls for an external reviewer, who never assesses credibility, to be the ultimate fact finder.

Defendants falsely state that the OIE investigator "is the ultimate fact finder."[2] Either party may appeal the investigator's findings to an "external reviewer" who is the ultimate fact finder and has the "authority" to determine what evidence should be considered and the weight it should be given. *See* **Ex. B**, Policy at 35-36. The external reviewer may reverse the findings of the investigator and send the matter directly to the sanctioning phase. *Id.* It is uncontested that this external reviewer never has an opportunity to personally assess credibility. Thus, regardless of the OIE investigator's interview process, the Policy remains unconstitutional because the external reviewer can reverse the investigator without holding a hearing. *See Cincinnati*, 872 F.3d at 401.

### III. Defendants should provide full cross examination for students accused of sexual assault, as they do for students accused of other misconduct.

---

[2] Defendants also falsely state that the appeal is conducted by a "retired federal judge." In fact, the external reviewer is "most often an attorney outside of the University with significant legal experience, knowledge and judgement" and "will be chosen by the Office of General Counsel." (**Ex. B** at 34-35).

6

Due process protections are essential here because a finding of sexual misconduct by Defendants is quasi-criminal in nature in that it would place a "lifetime of stigma and preclusion from further educational and employment opportunities." *See Doe v. Miami Univ.*, 882 F.3d 578, 602 n.8 (6th Cir. 2018). Although Defendants provide for full cross examination for students accused of other forms of misconduct, students accused of sexual misconduct are stripped of this due process protection. Students accused of anything other than sexual misconduct have access to all information and have the right to question the complainant, the Resolution Coordinator, and all witnesses. **Ex. A**, Statement at 7. Therefore, by permitting this same process for students accused of sexual misconduct, Defendants would not suffer an additional burden. *See Matthews v. Eldridge*, 424 U.S. 319, 334-35 (1976). The only reason that the *Cincinnati* Court approved of the school's existing procedure of suggesting written questions to witnesses was because, unlike here, the school was "ill-equipped" to oversee cross examination. *Cincinnati*, 872 F.3d at 404.

### IV. Defendants will not be harmed by a TRO.

Defendants would not be harmed if the TRO is granted. Requiring the University to modify its unconstitutional procedures "midstream" would only ensure that other students are not deprived of their constitutional rights as well. Defendants erroneously rely on *Doe v. Ohio State Univ.* to support their claim that

7

altering their policy would place their federal funding in jeopardy. Plaintiff does not allege that the University did not have jurisdiction to investigate the allegation of misconduct, rather, the University's current procedures fail to pass constitutional muster.

Respectfully submitted,

**DEBORAH GORDON LAW**
/s/ Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

DATED: June 19, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2018, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing and service of said documents to all parties through their counsel of record.

**DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
