UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE,

Plaintiff,

v.

UNIVERSITY OF MICHIGAN, ET AL.,

Defendants.

Case No. 18-11776

SENIOR UNITED STATES DISTRICT
JUDGE ARTHUR J. TARNOW

MAGISTRATE JUDGE ELIZABETH A.
STAFFORD

_____/

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [4]**

Plaintiff, John Doe, a student who has completed all of the requirements to receive his undergraduate degree at the University of Michigan, has been accused of sexual assault and faces a possible penalty of expulsion. In the midst of the University's investigation into his alleged conduct, Plaintiff commenced this 42 U.S.C. § 1983 action claiming, *inter alia*, that the University of Michigan's Policy and Procedures on Student Sexual and Gender-Based Misconduct and Other Forms of Interpersonal Violence ("Policy") deprives students of due process in violation of the Fourteenth Amendment.

Before the Court is Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [4] filed on June 5, 2018. Plaintiff argues that due process requires that he be given a live hearing and the opportunity for cross-examination of his accuser.

For the reasons explained below, Plaintiff's Motion for TRO [4] is **GRANTED in part and DENIED in part**.

## FACTUAL BACKGROUND

### I. Policy and Procedures on Student Sexual and Gender-Based Misconduct and Other Forms of Interpersonal Violence

The Policy, enacted on February 7, 2018, governs claims of sexual assault on campus. Where a student reports sexual misconduct to the University's Office of Institutional Equity ("OIE"), the Policy sets forth two resolution processes: 1) formal resolution, involving an investigation, and where necessary, an appeal and sanctions; and 2) alternative resolution. The formal resolution process is challenged here.

Pursuant to the Policy, once a claimant files a report of an alleged violation, the OIE investigator meets privately with the claimant and conducts an interview. Thereafter, the accused is notified in writing of the start of an investigation. The investigator meets separately with the accused, who may have an attorney or advisor present. The investigator takes statements from both parties and asks them to identify possible witnesses.

After the interviews, the investigator provides the accused with a draft summary of his statement so he may comment and ensure its accuracy. The accused may submit suggested questions to the investigator to be asked of the claimant or other witnesses, but it remains within the investigator's discretion to determine whether and how to ask the questions.

The investigator is responsible for reviewing the information provided by the parties and determining its relevance and probative value. Once the parties have had the opportunity to comment on their statements, identify witnesses, and submit suggested questions, the investigator prepares a Preliminary Investigation Report. The Preliminary Investigation Report includes a summary of all witness interviews, but does not contain any findings. The parties are given a copy of the Report and may comment and offer feedback.

When the investigator has completed gathering evidence, she makes a determination, by a preponderance of the evidence, as to whether the accused has violated the Policy. No live hearing is held. The investigator drafts a final written report ("Final Report") summarizing her findings and rationale in support. The Final Report is reviewed by the Title IX Coordinator and the Office of General Counsel before it is given to the parties. The University strives to complete this entire process within sixty days.

Either party may appeal the investigator's findings. An external reviewer, reviews the Final Report and the parties' written submissions. If the external reviewer determines that there are no issues of concern, he may affirm the investigator's findings. Alternatively, if he identifies any issues of concern, he may remand or make necessary modifications to the report. The Policy authorizes the external reviewer to reverse an investigator's finding of no violation.

Where a student is found responsible for violating the Policy, the University imposes sanctions which may include: probation, suspension, expulsion, and revocation of the student's degree.

**II. Doe Investigation**

In April 2014, John Doe enrolled at the University as an undergraduate student. Throughout his four-year tenure, Doe successfully completed the University's requirements for graduation in April 2018. During his senior year, Doe was a Residence Advisor. On February 26, 2018, he was accepted to the University's College of Engineering Master's Degree Program to begin in September 2018. He has since been accepted to out-of-state graduate engineering programs as well.

On March 20, 2018, a female student ("Claimant") filed a complaint with the OIE alleging that a non-consensual sexual encounter had occurred between her and Doe on November 11, 2017. No witnesses were present.

Doe and Claimant had known each other prior to the sexual encounter in November 2017. In the weeks that followed, they continued to speak to each other via text and in person. Doe maintains that Claimant asked to have sex again and he declined, telling her he just wanted to be friends.

Defendant Suzanne McFadden, the OIE investigator, commenced an investigation into the complaint. On March 29, 2018, she interviewed Claimant and took notes contemporaneously. The interview was not recorded.

On April 2, 2018, Doe received an email from the OIE stating that a report had been filed against him. The report alleged the following conduct: "unwanted oral, vaginal, and anal penetration without consent, at [] residence hall on November, 11, 2018 [sic]." The OIE informed Doe that it would investigate a potential policy violation of sexual assault and that he may retain a support person, such as an attorney.

On April 3, 2018, McFadden interviewed Doe. During the interview, she advised him of the allegations against him and asked him to identify witnesses and other evidence.

On April 11, 2018, McFadden provided Doe with a copy of his statement and an opportunity to submit comments. Doe made comments on the same day. He also provided McFadden with six additional witnesses and evidence.

McFadden interviewed three of Doe's witnesses.[1] She also interviewed two other witnesses, presumably at Claimant's request.

On April 19, 2018, the University informed Doe that an administrative hold had been placed on his student account, rendering him unable to register for classes or receive a copy of his transcript.

On May 24, 2018, McFadden issued an Executive Summary (Preliminary Investigation Report). On May 29, 2018, Doe submitted 88-pages of feedback. On May 31, 2018 and June 4, 2018, McFadden spoke with Claimant, over the phone and via email, to ask additional questions. McFadden issued a Second Preliminary Report on June 21, 2018. She has not yet made findings with respect to whether Doe committed a Policy violation.

### III. Procedural History

On June 4, 2018, Doe, through counsel, commenced this action alleging that the Policy violates the Fourteenth Amendment, Title IX, and Michigan's Elliot-Larsen Civil Rights Act. On June 5, 2018, Doe filed the instant Motion for TRO [4] which asserts that the Policy deprives him of due process. On this basis, Plaintiff requests that the Court immediately enjoin Defendants from: 1) withholding his

---

[1] Of the six proposed witnesses, one declined to participate and two did not respond to McFadden's request.

official transcript and degree; 2) continuing their investigation, sanctions, and appeals process; and 3) continuing to use the Policy and requiring Defendants to provide all students the protections set forth in the Statement of Student Rights and Responsibilities.

On June 11, 2018, the Court held a telephone conference at which defense counsel agreed to recommend to the University that it provide Doe with a copy of his official transcript, pending the conclusion of the investigation. On June 14, 2018, the Court issued an Order [19] granting in part Plaintiff's Motion for TRO to reflect the parties' agreement with respect to the transcript.[2] Defendants filed a Response [21] to Plaintiff's Motion for TRO on June 15, 2018. Plaintiff filed a Reply [23] on June 19, 2018.

On June 28, 2018, the Court held a hearing at which it ordered the University to stay publication of its Final Report pending its ruling on Plaintiff's Motion for TRO.

## ANALYSIS

Plaintiff seeks a preliminary injunction immediately enjoining Defendants from continuing their investigation, sanctions, and appeals process under the Policy and requiring Defendants to provide all students accused of sexual assault the

---

[2] Plaintiff received a copy of his undergraduate transcript on June 12, 2018.

protections guaranteed in the University's Statement of Student Rights and Responsibilities.

## I. Plaintiff's case is ripe for review

As an initial matter, Defendants argue that Plaintiff's claims fail because they are not ripe for decision. According to Defendants, in the absence of a finding that Plaintiff violated the Policy or University-imposed sanctions, Plaintiff has no due process claim to be adjudicated.

"[T]he ripeness requirement prevents courts from hearing premature or abstract disagreements." *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 769 F.3d 447, 451 (6th Cir. 2014) (internal citations omitted). "Three factors guide the ripeness inquiry: (1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings." *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012) (internal citation and quotation marks omitted).

All three factors support a finding that this case satisfies the ripeness requirement. First, Plaintiff, who may presently be without sufficient due process protections, is at immediate risk of expulsion. Moreover, he has already suffered

injury – sexual assault allegations may "'impugn [his] reputation and integrity, thus implicating a protected liberty interest.'" *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017) (quoting *Doe v. Cummins*, 662 Fed. App'x 437, 445 (6th Cir. 2016)).

Second, additional facts are unnecessary to fairly adjudicate the merits of Plaintiff's claims. The Court, having examined the Policy and the relevant case law, is well-equipped to determine whether the Policy adequately protects Plaintiff's due process rights. Particularly for purposes of deciding this Motion, the record is sufficiently developed.

Finally, if the Court denies this Motion, but ultimately finds that the Policy violates due process, Plaintiff will have been forced to defend himself against serious sexual assault allegations without adequate constitutional safeguards.

Defendants essentially ask the Court to sit back and wait for the investigator to issue findings against Plaintiff before intervening in this action. But, at this very moment, the University may be denying Plaintiff due process protections to which he is entitled. The Court cannot, and will not, simply standby as the fruit continues to rot on the tree. This case is ripe for adjudication.

## II. Plaintiff is entitled to a preliminary injunction

In evaluating a motion for a preliminary injunction, courts consider the following factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001) (quoting *Rock & Roll Hall of Fame v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998)). It is the plaintiff's burden to prove that the circumstances clearly demand injunctive relief. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

### A. Likelihood of Success on the Merits

Plaintiff argues that he is likely to succeed on the merits of his claim that the Policy violates due process. Plaintiff submits that in cases such as this one, where the credibility of the parties is at stake, due process requires a live hearing and cross-examination.

In the school disciplinary context, "[n]otice and an opportunity to be heard remain the most basic requirements of due process [but] [w]ithin this framework . . . the additional procedures required will vary based on the circumstances and the

three prongs of *Mathews* [*v. Eldridge*, 424 U.S. 319 (1976).]" *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005).

To determine "how much process is due," courts consider the following factors: 1) how the private interest will be affected by the official action; 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 334-35.

Additionally, the Sixth Circuit has explained that the accused must be given the opportunity to share his version of the events at some kind of hearing. *Doe v. Univ. of Cincinnati*, 872 F.3d at 399–400. The hearing need not be live, but must be meaningful and "provide the accused with the opportunity to respond, explain, and defend." *Flaim*, 418 F.3d at 635 (internal citation and quotation marks omitted).

### i. Private interest

Plaintiff's private interest at stake here is significant – he is at risk of expulsion and the revocation of his degree. Furthermore, in addition to its damaging effect on educational and employment opportunities, "[a] finding of responsibility for a sexual offense can have a lasting impact on [Plaintiff's] personal life" and reputation. *Doe*

*v. Univ. of Cincinnati*, 872 F.3d at 400 (internal citation and quotation marks omitted).

> ii. **Risk of an erroneous deprivation and value of additional procedural safeguards**

Plaintiff argues that he is entitled to additional procedures safeguards which include the opportunity to cross-examine witnesses at a live hearing. In *Doe v. Univ. of Cincinnati*, the Sixth Circuit recently addressed the issue of what procedural safeguards may be necessary to adequately protect a student's right to due process in this context. In *Doe*, Jane Roe reported to the University of Cincinnati ("UC") that John Doe had sexually assaulted her. 872 F.3d at 401. Doe maintained that the sex was consensual; Roe claimed it was not. *Id.* Following the investigation and interviews, a live hearing was held at which a panel, made up of students and faculty, heard the allegations, reviewed evidence, and questioned witnesses. *Id.*

Roe did not appear at the hearing, but the Chair read Roe's statement to the panel. *Id.* at 397. Because Roe was absent, neither Doe nor the panel had the opportunity to ask her questions. After the hearing and appeal, Doe was found responsible for violating UC's sexual assault policy. *Id.*

Doe moved for a preliminary injunction against UC, arguing that it could not constitutionally find him responsible for sexual assault without having had the opportunity to question or confront Roe. *Id.* at 398. The Sixth Circuit agreed,

explaining that "[c]ross-examination is 'not only beneficial, but essential to due process' in a case that turns on credibility because it guarantees that the trier of fact makes this evaluation on both sides." *Id.* at 402 (quoting *Flaim*, 418 F.3d at 641).

Here, Plaintiff appropriately notes that *Doe* requires a form of cross-examination in cases, such as this one, which involve credibility determinations. But, the problem the Sixth Circuit identified in *Doe* was that the panel made a credibility determination without having assessed Roe's credibility. *Id.* at 402. Although the Sixth Circuit stressed the importance of cross-examination, it did not strike down UC's policy of authorizing a "circumscribed form of cross-examination" that "involves submitting written questions to the [] panelists." *Id.* at 396-97.

While the Sixth Circuit has affirmed disciplinary procedures which provide for a hearing at which questions are asked of the claimant via panel, it has not ruled on whether a circumscribed form of cross-examination is constitutional in the absence of a live hearing. In fact, in this Circuit, nearly all other sexual misconduct policies that have been subject to judicial review provide the accused with the opportunity to appear at a live hearing. *See, e.g.*, *Doe v. Miami Univ.*, 882 F.3d 579, 587 (6th Cir. 2018); *Doe v. Univ. of Cincinnati*, 872 F.3d at 400; *Cummins*, 662 F. App'x at 448; *Flaim*, 418 F.3d at 635; *Doe v. The Ohio State Univ.*, 136 F. Supp. 3d 854, 862 (S.D. Ohio 2016).

Unlike the policies which the Sixth Circuit has upheld, this Policy deprives Plaintiff of a live hearing and the opportunity to face his accuser. Because of the University's method of private questioning through the investigator, Plaintiff has no way of knowing which questions are actually being asked of Claimant or her response to those questions. Without a live proceeding, the risk of an erroneous deprivation of Plaintiff's interest in his reputation, education, and employment is significant. Additional procedural safeguards would both assist the truth-seeking process and help to ensure the protection of Plaintiff's constitutional rights.

### iii. Fiscal and administrative burden on the University

The University uses a bifurcated system to address student misconduct. The Policy challenged here, which does not provide the accused with the opportunity to face his accuser at a hearing, governs sexual misconduct. The University's Statement of Student Rights & Responsibilities, which does provide the accused the opportunity to appear at a hearing, governs non-sexual misconduct. Because the University already conducts hearings for students accused of misconduct at which they may question witnesses, requiring the University to hold live hearings for students accused of sexual assault would be neither fiscally nor administratively burdensome.

### iv. Plaintiff is likely to succeed on the merits

Based on its assessment of the *Mathews*' factors, and taking into considering the relevant circumstances of this case, the Court concludes that Plaintiff is likely to succeed on the merits of his claim that the University's Policy, which affords neither a live hearing nor cross-examination, violates his right to due process.

### B. Irreparable Harm

To demonstrate irreparable harm, Plaintiff must show that the harm is actual and imminent, as opposed to speculative or unsubstantiated. *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by money damages." *Overstreet*, 305 F. 3d at 573.

Where, as here, a plaintiff's constitutional right to due process is "threatened or impaired" the Court may presume irreparable injury. *Doe v. Univ. of Cincinnati*, 872 F.3d at 407. Plaintiff faces an immediate threat of expulsion, a penalty that could drastically curtail future educational and employment opportunities. *See Doe v. Middlebury Coll.*, No. 1:15-CV-192-JGM, 2015 WL 5488109, at *3 (D. Vt. Sept. 16, 2015). Money damages cannot compensate Plaintiff for the reputational harm he

has already suffered and will continue to suffer as a consequence of sexual assault allegations. Accordingly, this factor weighs in Plaintiff's favor.

**C. Harm to others**

In considering the potential harm an injunction may impose on the University, the Court acknowledges the University's strong interest in maintaining campus safety and disciplining students who have committed sexual misconduct.

The Court also considers the emotional harm and trauma Claimant may suffer if the Court orders the University to provide a live hearing with questioning. "Allowing an alleged perpetrator to question an alleged victim directly may be traumatic or intimidating, thereby possibly escalating or perpetuating the same hostile environment Title IX charges universities with eliminating." *Doe v. Univ. of Cincinnati*, 872 F.3d at 403 (internal citation and quotation marks omitted). The Court does not take lightly the potential implications for Claimant. Nonetheless, "[w]hile protection of victims of sexual assault from unnecessary harassment is a laudable goal, the elimination of such a basic protection for the rights of the accused raises profound concerns." *Id.* at 404 (quoting *Doe v. Brandeis University*, 177 F. Supp.3d 561, 604-05 (D. Mass. 2016)).

Consequently, in determining whether relief is warranted, the Court endeavors to strike the appropriate balance between guaranteeing due process and mitigating harassment of Claimant. *See Michigan v. Lucas*, 500 U.S. 145, 150 (1991).

**D. Public Interest**

"The final factor, the public interest, primarily addresses impact on non-parties." *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 244 (6th Cir. 2011) (internal quotation marks omitted). Protecting a person's constitutional right to due process is always in the public interest. *See Am. Civil Liberties Union Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 649 (6th Cir. 2015) ("[W]hen a constitutional violation is likely . . . the public interest militates in favor of injunctive relief because it is always in the public interest to prevent violation of a party's constitutional rights." (quoting *Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010))).

Although the public interest is served "by the robust enforcement of constitutional rights," it is also served by ensuring the safety and well-being of students on university campuses. *Nokes v. Miami Univ.*, No. 1:17-CV-482, 2017 WL 3674910, at *14 (S.D. Ohio Aug. 25, 2017) (citing *Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp.*, 698 F.3d 885, 896 (6th Cir. 2012)). This factor is neutral. *Doe v. Univ. of Cincinnati*, 872 F.3d at 407.

## CONCLUSION

On balance, the aforementioned factors favor an award of preliminary relief. Despite Plaintiff's request for campus-wide changes to the University's policies and procedures on sexual misconduct, the preliminary relief granted here will be limited to Plaintiff and the ongoing investigation into his alleged conduct. *See Sony/ATV Publ'g, LLC v. Marcos*, 651 F. App'x 482, 487 (6th Cir. 2016) (internal citations omitted) ("A preliminary injunction must be no more burdensome than necessary to provide a plaintiff complete relief . . . .").

As soon as practicable, the University is hereby ordered to provide Plaintiff with the opportunity for a live hearing in accordance with the procedures set forth in the Statement of Student Rights and Responsibilities. *See* Ex. A, Section VI. However, to the extent that the Statement authorizes Plaintiff to question Claimant directly, the Court revokes that authorization. At the hearing, Plaintiff may engage only in circumscribed cross-examination, a process through which he may submit questions to the Resolution Officer ("RO"), Resolution Coordinator ("RC"), or Student Resolution Panel to be asked of Claimant.[3]

Accordingly,

---

[3] This procedure has been recommended for the claimant's wellbeing by the Department of Education's Office for Civil Rights. *See Doe v. Univ. of Cincinnati*, 872 F.3d at 403.

**IT IS ORDERED** that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [4] is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that the University provide Plaintiff with the procedures set forth in its Statement of Student Rights and Responsibilities, excluding the provision in Stage 2, ¶ C, which authorizes the respondent to question the complainant directly. At the hearing, Plaintiff may question Claimant through the RO, RC, or Student Resolution Panel.

**SO ORDERED**.

Dated: July 6, 2018
s/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 6, 2018.

s/D. Tofil
Deborah Tofil, Case Manager