UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOHN DOE**, | : | |
| | : | Case No. 18-cv-11776 |
| Plaintiff, | : | |
| | : | Hon. Arthur J. Tarnow |
| v. | : | Mag. Elizabeth A. Stafford |
| | : | |
| **UNIVERSITY OF MICHIGAN**, *et al.*, | : | **DEFENDANTS' MOTION** |
| | : | **TO STAY PENDING** |
| Defendants. | : | **APPEAL** |
| | : | |
| | : | |

---

DEBORAH GORDON LAW
Deborah L. Gordon (P27058)
Elizabeth A. Marzotto Taylor (P82061)
*Attorneys for Plaintiff*
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan  48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

SAUL EWING ARNSTEIN &
 LEHR LLP
Joshua W. B. Richards
Amy L. Piccola
*Attorneys for Defendants*
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102
(215) 972-7737
joshua.richards@saul.com
amy.piccola@saul.com

MILLER,  CANFIELD,  PADDOCK
AND STONE, P.L.C.
Brian M. Schwartz (P69018)
*Attorney for Defendants*
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
schwartzb@millercanfield.com

Defendants move pursuant to Rule 62 of the Federal Rules of Civil Procedure for an order staying this Court's July 6, 2018 Order granting in part and denying in part plaintiff's motion for temporary restraining order and preliminary injunction (ECF No. 30) pending the disposition of defendants' appeal of the July 6th Order to the United States Court of Appeals for the Sixth Circuit. In support of this motion, defendants rely upon the attached brief in support.

Counsel for defendants requested concurrence in the relief sought by this motion, conferred with counsel for plaintiff on July 9-12, 2018, and explained the nature of this motion and offered to stay the University's proceedings pending appeal. Counsel for plaintiff did not agree to the relief sought.

WHEREFORE, defendants respectfully request that the Court grant defendants' motion to stay the Court's July 6th Order pending appeal.

Respectfully submitted,

July 25, 2018
/s/*Joshua W. B. Richards*
SAUL EWING ARNSTEIN & LEHR LLP
Joshua W. B. Richards
Amy L. Piccola
*Attorneys for Defendants*
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102
(215) 972-7737
joshua.richards@saul.com
amy.piccola@saul.com

MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
Brian M. Schwartz (P69018)
*Attorney for Defendants*
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
schwartzb@millercanfield.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOHN DOE**, | : | |
| | : | Case No. 18-cv-11776 |
| Plaintiff, | : | |
| | : | Hon. Arthur J. Tarnow |
| v. | : | Mag. Elizabeth A. Stafford |
| | : | |
| **UNIVERSITY OF MICHIGAN**, *et al.*, | : | **BRIEF IN SUPPORT OF** |
| | : | **DEFENDANTS' MOTION** |
| Defendants. | : | **TO STAY PENDING** |
| | : | **APPEAL** |
| | : | |

---

DEBORAH GORDON LAW
Deborah L. Gordon (P27058)
Elizabeth A. Marzotto Taylor (P82061)
*Attorneys for Plaintiff*
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan  48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

SAUL EWING ARNSTEIN &
 LEHR LLP
Joshua W. B. Richards
Amy L. Piccola
*Attorneys for Defendants*
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102
(215) 972-7737
joshua.richards@saul.com
amy.piccola@saul.com

MILLER,  CANFIELD,  PADDOCK
AND STONE, P.L.C.
Brian M. Schwartz (P69018)
*Attorney for Defendants*
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
schwartzb@millercanfield.com

# **TABLE OF CONTENTS**

STATEMENT OF THE ISSUE PRESENTED ..................................................... iv

CONTROLLING AUTHORITY ............................................................................v

INTRODUCTION ................................................................................................1

BACKGROUND ..................................................................................................3

LEGAL STANDARD ...........................................................................................5

ARGUMENT .......................................................................................................5

   I.    Defendants Have a Likelihood of Prevailing on Appeal. .............................5

   II.   Defendants Will Suffer Irreparable Harm Absent a Stay. ...........................8

   III.  A Stay Would Not Substantially Injure Plaintiff But Would Protect the Claimant's Interests. .......................................................................................14

   IV.  A Stay Would Serve the Public Interest. ...................................................15

CONCLUSION ..................................................................................................16

## TABLE OF AUTHORITIES

**CASES**

*Bonnell v. Lorenzo*,
  241 F.3d 800 (6th Cir. 2001) .........................................................................2, 9

*Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.*,
  600 F. Supp. 1326 (E.D. Mich. 1985) (Feikens, C.J.), *aff'd*, 753
  F.2d 1354 (6th Cir. 1985) .................................................................................14

*Cox v. Jackson*,
  579 F. Supp. 2d 831 (E.D. Mich. 2008) ............................................................9

*Doe v. Cummins*,
  662 F. App'x 437 (6th Cir. 2016) .......................................................................7

*Doe v. Miami Univ.*,
  882 F.3d 579 (6th Cir. 2018) .....................................................................v, 7, 8

*Doe v. Ohio State Univ.*,
  136 F. Supp. 3d 854 (S.D. Ohio 2016) ..............................................................9

*Doe v. Univ. of Cincinnati*,
  872 F.3d 393 (6th Cir. 2017) ..........................................................................v, 7

*Flaim v. Med. Coll. of Ohio*,
  418 F.3d 629 (6th Cir. 2005) ................................................................v, 2, 6, 7

*Grutter v. Bollinger*,
  137 F. Supp. 2d 874 (E.D. Mich. 2001) ............................................................5

*Karcher v. Daggett*,
  455 U.S. 1303 (1982)..........................................................................................2

*Marshall v. Ohio Univ.*,
  No. 15-cv-775, 2015 WL 1179955 (S.D. Ohio Mar. 13, 2015) .......................10

*Mayfield v. Miles*,
  No. 13-10341, 2014 WL 5605301 (E.D. Mich. Nov. 4, 2014) ...........................9

*Ramik v. Darling Int'l, Inc.*,
  161 F. Supp. 2d 772 (E.D. Mich. 2001) ............................................................9

*Schrier v. Univ. of Colo.*,
    427 F.3d 1253 (10th Cir. 2005) ..............................................................9

*Seal v. Morgan*,
    229 F.3d 567 (6th Cir. 2000) .................................................................9

*Simon Prop. Grp., Inc. v. Taubman Ctrs., Inc.*,
    262 F. Supp. 2d 794 (E.D. Mich. 2003) ................................................9

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981).............................................................................9

STATUTES

28 U.S.C § 1292(a)(1) ...............................................................................5

OTHER AUTHORITIES

11 Charles Alan Wright, *et al.*, *Federal Practice and Procedure*
    § 2904 (3d ed. 2012) ............................................................................5

6 Cir. R. 31(c)(2)(A) ...........................................................................4, 14

Fed. R. Civ. P. 62 .......................................................................................5

## <u>STATEMENT OF THE ISSUE PRESENTED</u>

Whether the Court should stay its July 6, 2018 Order granting in part and denying in part plaintiff's motion for temporary restraining order and preliminary injunction (ECF No. 30) pending the disposition of defendants' appeal of the Order to the Sixth Circuit because: (1) without a stay, defendants will be irreparably harmed because adhering to the Court's Order will set an irreversible internal University precedent that departs from the University's written policies governing claims of sexual misconduct; (2) defendants have a likelihood of success on the merits of their appeal based on Sixth Circuit precedent; (3) any alleged harm to plaintiff is outweighed by the harm to the University and other interested parties, including the student who has alleged plaintiff assaulted her; and (4) the public interest favors granting a stay.

**Proposed Answer:  Yes.**

## <u>CONTROLLING AUTHORITY</u>

*Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018)

*Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017)

*Flaim v. Med. Coll. of Ohio*, 418 F.3d 629 (6th Cir. 2005)

## **INTRODUCTION**

The University of Michigan respectfully requests that the Court stay its July 6, 2018 mandatory injunction ordering the University to alter its student sexual misconduct procedures and provide plaintiff with a live hearing "as soon as practicable."  (ECF No. 30 at 18) (the "Order").

First, despite language in the Order seeking to cabin the Court's holding to this particular case, the Order as a matter of logic and law should apply in all cases: if the Court were correct that the Constitution requires a university to provide a live adjudicatory hearing to a student alleged to have sexually assaulted another student, the same due process requirement should apply in *all* such cases, including all other student sexual assault cases at the University of Michigan.  In other words, if the Court does not grant a stay, there is nothing – not even the ripeness doctrine – to prevent any other Michigan student who does not like the current policy to rush into court before an investigation is complete and seek a preliminary injunction blocking the University from proceeding under its current policy.  The University has other student sexual misconduct cases pending.  Without a stay, neither the University nor its students can have any certainty about the effect of the Court's Order and how the University should resolve existing and new cases.

Second, that type of extraordinarily disruptive impact is particularly premature, and should be stayed, given the as-yet unsettled state of the law.  *See*

*Karcher v. Daggett*, 455 U.S. 1303, 1306 (1982) (entering stay of three-judge district court ruling pending appeal given "[t]he importance of a definitive answer from this Court as to the proper interpretation" of the constitutional issue and the broad, nationwide impact that could result from the decision); *Bonnell v. Lorenzo*, 241 F.3d 800, 808, 826 (6th Cir. 2001) (emphasizing that preliminary injunctions should not be issued in "cases which are doubtful or do not come within well-established principles of law").  Like the University, colleges and universities throughout the United States use a single-investigator, non-hearing model[1] to resolve student sexual misconduct cases.  *See generally* Exhibit D to the Declaration of Joshua W. B. Richards, Esq. (the "Richards Declaration").  Despite numerous challenges to student sexual misconduct policies in recent years in state and federal courts, no court had ever held that an investigative process without a live hearing is unconstitutional.  To the contrary, courts have held that "[f]ull-scale adversarial hearings in school disciplinary proceedings have never been required by the Due Process Clause."  *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 640-41 (6th Cir. 2005).  The issue in this case is one of first impression and presents a pure

---

[1] A "single-investigator model" is one in which an investigator, rather than a live hearing panel, gathers and weighs evidence to determine whether an accused student is responsible for a policy violation.  It is in that regard very similar to the sort of disciplinarian "give-and-take" blessed by the United States Supreme Court in *Goss v. Lopez*, 419 U.S. 565, 584 (1975).

question of law; and the legal *effect* of the Court's Order is *not narrow and not limited to this case*.

The University respectfully submits that the prudent path would be to give the Sixth Circuit time to decide the weighty, widely consequential legal question before requiring the University, and all other colleges and universities in the Sixth Circuit that use an investigatory process, to radically alter their student sexual misconduct policies immediately, over the summer, and without an opportunity for study.

Plaintiff already has his transcript, and there is no ongoing proceeding to resolve the allegations of sexual misconduct. He would face no harm whatsoever if the Court's Order is stayed while the important legal question is decided.

For these reasons, and those set forth more fully below, the Court should enter a stay of its Order.

## **BACKGROUND**

The University resolves allegations that a student sexually assaulted another student under its Policy and Procedures on Student Sexual and Gender-Based Misconduct and Other Forms of Interpersonal Violence (the "Policy," attached as Exhibit A to the Richards Declaration). For complaints of other types of non-sexual misconduct, the University follows the procedures outlined in its Statement

of Student Rights and Responsibilities (the "Statement," attached as Exhibit B to the Richards Declaration).

In March of 2018, a female student (the "Claimant") accused plaintiff of sexual assault.  Dissatisfied with the University's use of the Policy rather than the Statement to investigate the complaint, on June 4, 2018, plaintiff filed this action challenging the constitutionality of the University's process.  (ECF No. 1).

On June 5, 2018, plaintiff filed a motion for temporary restraining order and preliminary injunction ("Plaintiff's Motion") seeking an order enjoining the University from withholding plaintiff's transcript and continuing its investigation under the Policy.  (ECF No. 4).  The University voluntarily released plaintiff's transcript on June 12, 2018 and filed a response to Plaintiffs' Motion on June 15, 2018.  (ECF No. 21).  On June 28, 2018, the Court held a hearing on Plaintiff's Motion, and on July 6, 2018, the Court issued an Order directing the University to provide plaintiff with a live hearing in accordance with the procedures set forth in its Statement rather than the Policy.  (ECF No. 30).

On July 25, 2018, defendants filed a Notice of Appeal of the Court's Order to the United States Court of Appeals for the Sixth Circuit.  The Sixth Circuit schedules expedited briefing for appeals from orders granting preliminary injunctions.  *See* 6 Cir. R. 31(c)(2)(A).

## LEGAL STANDARD

Litigants in the federal courts have an express statutory right to immediately appeal "[i]nterlocutory orders of the district courts of the United States . . . granting . . . injunctions . . . ." 28 U.S.C § 1292(a)(1).

Federal Rule of Civil Procedure 62 permits this Court to suspend its award of an injunction during the pendency of an appeal. When an appeal has been taken, "there is no reason why the district court should not make an order preserving the status quo during the expected appeal." 11 Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 2904 (3d ed. 2012).

Courts consider the following factors under Rule 62: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Grutter v. Bollinger*, 137 F. Supp. 2d 874, 875 (E.D. Mich. 2001).

## ARGUMENT

## I.   Defendants Have a Likelihood of Prevailing on Appeal.

The Court's ruling on plaintiff's due process claim breaks new ground. As the Court acknowledged in its Order, "the Sixth Circuit . . . has not ruled on whether a circumscribed form of cross-examination is constitutional in the absence

of a live hearing." (ECF No. 30 at 13). In addition, plaintiff's request for an injunction was granted before plaintiff had demonstrated that he had been deprived of any recognized property interest.[2]

The Court's ruling on the constitutional question was at best a close call on a matter of first impression requiring the Court to anticipate how the Sixth Circuit would rule. Given this uncertainty (and its interplay with the injunction standard in the first instance), the Court's mandatory preliminary injunction should be stayed in favor of maintaining the status quo pending a ruling from the Court of Appeals.

Respectfully, defendants are likely to succeed on appeal because this Court has applied the Sixth Circuit's precedents in a manner unsupported by the plain language of the controlling cases, as the Court recognized in part during oral argument and in its Order. *See* (ECF No. 29 at 56 ("[W]e don't know what the Sixth Circuit is going to say no matter what I rule.")). Specifically, the Court's Order acknowledges that to satisfy due process, a hearing "need not be live," (ECF No. 30 at 11), so long as it "provide[s] the accused with the opportunity to respond, explain, and defend," *id.* (quoting *Flaim*, 418 F.3d at 635). "Full-scale adversarial

---

[2] Plaintiff mistakenly claims that the mere deprivation of appropriate investigatory *procedures* violates his due process rights, but there is no constitutional right to procedures absent the deprivation of a protected property right. *See* ECF No. 21 at 22-23.

6

hearings in school disciplinary proceedings have never been required by the Due Process Clause." *Flaim*, 418 F.3d at 640-41.

*Cincinnati* contemplates only a "circumscribed form of cross-examination," in which "written questions" are submitted through a factfinder who both screens and asks the questions. *Cincinnati*, 872 F.3d at 396-97, 404-06 (internal marks omitted); *see also Doe v. Cummins*, 662 F. App'x 437, 439, 448 (6th Cir. 2016). "[I]f the credibility of an alleged victim is at issue," then the touchstone is that the university "provide a way for the adjudicat[or] to evaluate the victim's credibility and 'to assess the demeanor of both the accused and his accuser.'" *Doe v. Miami Univ.*, 882 F.3d 579, 600 (6th Cir. 2018) (quoting *Cincinnati*, 872 F.3d at 406). It is vital to appreciate the procedural posture in *Cincinnati*: the respondent there had no opportunity to proffer questions to the claimant because she did not appear at an adjudicatory hearing; thus testimonial evidence from her was submitted to the factfinder without any possibility that questions could be posed to her by the respondent or factfinder. As explained by the Sixth Circuit, even there, the university's "obligations [w]ere are narrow: it must provide a means for the [factfinder] panel to evaluate an alleged victim's credibility, not for the accused to physically confront his accuser." *Cincinnati*, 872 F.3d at 406.

The problems with the approach rejected in *Cincinnati* are obvious. There are, however, no such similar problems in the University's process. The

University's investigator interviewed the Claimant in a live, in-person meeting during which she could assess the Claimant's credibility and spoke with the Claimant thereafter to ask questions proposed by plaintiff.  (ECF No. 21 at 1, 8-12, 20-21).  Plaintiff posed numerous questions to be asked of the Claimant by the investigator.  Plaintiff had an opportunity – assisted by counsel, with sufficient time – to prepare feedback on the Claimant's answers and suggest additional questions.  Under these circumstances, that the University's process does not include a live hearing for plaintiff to *directly* confront Claimant in no way prevented plaintiff from having an opportunity to be heard.  *See Miami Univ.*, 882 F.3d at 600.

Finally, as to the likely scope of the Court's Order, it is worth noting that an informal, non-exhaustive survey revealed that more than one hundred public universities around the country, including at least twenty within the Sixth Circuit, use models similar or identical to the University's to investigate allegations of sexual assault.[3]  Every one of those institutions' obligations to their students is brought into question by the Court's Order.

## II.    Defendants Will Suffer Irreparable Harm Absent a Stay.

The Court's Order constitutes a mandatory preliminary injunction that alters the status quo.  Courts in this Circuit and elsewhere disfavor this type of

---

[3]  *See* Richards Declaration Exhibit D.

injunction.  *See Cox v. Jackson*, 579 F. Supp. 2d 831, 855 n.8 (E.D. Mich. 2008) (citing *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005)); *Mayfield v. Miles*, No. 13-10341, 2014 WL 5605301, at *5 (E.D. Mich. Nov. 4, 2014) (same); *see also Bonnell*, 241 F.3d at 808, 826 (emphasizing that preliminary injunctions should not be issued in "cases which are doubtful or do not come within well-established principles of law").[4]

Indeed, the primary purpose of emergency injunctive relief is "to preserve the relative positions of the parties" until a merits determination can be made. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Ramik v. Darling Int'l, Inc.*, 161 F. Supp. 2d 772, 778 (E.D. Mich. 2001); *Simon Prop. Grp., Inc. v. Taubman Ctrs., Inc.*, 262 F. Supp. 2d 794, 798 (E.D. Mich. 2003).  Staying the imposition of a mandatory injunction pending appeal would acknowledge the Sixth Circuit's strong aversion to such steps.

Universities have an "unquestionably powerful interest in maintaining the safety of their campuses."  *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000).  The power of a university to "regulate its student body, including investigating and disciplining its students for sexual misconduct," is required by Title IX, and a failure to do so "could jeopardize its federal funding."  *Doe v. Ohio State Univ.*, 136 F. Supp. 3d 854, 871 (S.D. Ohio 2016).  Forcing the University to modify its

---

[4]  Unpublished cases are attached as Exhibit C to the Richards Declaration.

procedures midstream, before a final decision, diminishes the integrity of that process, and the University's ability to enforce it in this case and other cases. *See Marshall v. Ohio Univ.*, No. 15-cv-775, 2015 WL 1179955, at *10 (S.D. Ohio Mar. 13, 2015) (explaining that "[i]ssuing a temporary restraining order . . . would likely interfere with [the University's] ability to enforce its disciplinary standards").

Respectfully, the Court's Order dramatically alters the status quo by doing nothing less than rewriting the University's disciplinary procedures.   The University's methods for resolving allegations of sexual misconduct arose from the painstaking efforts of a team of experts retained by the University, including nationally-recognized legal experts who specialize in student conduct matters. Those experts were tasked with creating effective policies to address sexual misconduct on campus using a process that is fair to all parties and provides multiple layers of due process protections.

While the Court's Order purports to be limited to the plaintiff in this case, that narrowness is of little practical effect in the lawsuit that will inevitably be brought by the next affected student.  Instead, the Court's Order – which requires the University to use policies not designed for sexual assault allegations to decide sexual assault allegations – amounts to a wholesale substitution of the Court's views for that of subject-matter experts as to what the University's internal

procedures for adjudicating student conduct should be.  That decision affects not only the University, but also the more than one hundred public universities around the country, including at least twenty within the Sixth Circuit, that use the single-investigator model.

Moreover, in this particular case restarting the process under the Statement and providing the "live hearing" described in the Court's Order presents several serious concerns and practical difficulties that, respectfully, appear not to have been considered by the Court, including:

- **Witness availability.**  The Statement provides that participants in the hearing may question any witnesses who have presented information.  *See* Statement at 7.  Five witnesses have provided information in the investigation of the allegations against plaintiff, but there is a pronounced risk that these witnesses will not be available to participate in a hearing held during the summer, when few students are on campus.  Some of these witnesses may not be back on campus until the fall (if at all), which may jeopardize the integrity of the investigation and/or hearing.  Furthermore, it is uncertain from the Order whether all the information gathered by the investigator must be destroyed and whether Claimant would have to serve as her own advocate and obtain witness testimony

11

without the ability to require witnesses to attend the hearing (particularly during the summer).

- **Resolution Officer versus Student Resolution Panel.**  Under the Statement, plaintiff may choose to have either a Resolution Officer or Student Resolution Panel arbitrate the dispute.  *See* Statement at 6. Although the University has (only just barely) a sufficient number of students available to serve on a Student Resolution Panel during the summer, these students <u>have not been trained</u> to handle matters involving claims of sexual misconduct (which, for example, requires understanding the University's Title IX obligations).  Asking these students to hear plaintiff's dispute would raise a number of clear potential problems.

Taken together, these challenges could mean that as a result of the Court's ruling, the University cannot proceed against plaintiff *at all*, which the University does not believe the Court intended as a consequence of its Order.  Additionally:

- **Burden of Proof.**  The Court's Order requiring the University to apply the Statement's procedures materially changes the burden of proof for adjudicating the allegations against plaintiff.  The burden of proof provided in the Statement is a clear and convincing standard, *see* Statement at 6, whereas the Policy uses the preponderance of the evidence standard, *see* Policy at 28.  In theory, plaintiff could be found

12

not responsible under the Statement's clear and convincing standard, but then undergo a new process and face a potentially different finding under the Policy's preponderance of the evidence standard if the Sixth Circuit rules in the University's favor. And the Order's extraordinary impact of changing the burden of proof in all student sexual misconduct policies at the University, whether intended or otherwise, is inconsistent with courts' strong views disfavoring mandatory injunctions.

- **An irreversible precedent.** Although the Court's Order limited the relief "to Plaintiff and the ongoing investigation into his alleged conduct," (ECF No. 30 at 18), the Court's ruling draws into question the constitutionality of the single-investigator model and whether defendants may proceed with this model under the Policy in other student sexual misconduct cases. By complying with the Order now and proceeding with the allegations against plaintiff under the Statement (rather than the Policy), the University will have set a precedent that it will depart from its written policies governing claims of sexual misconduct.

The significant and irreversible consequences of complying with the Court's Order prior to the Sixth Circuit's resolution of the underlying due process issue weigh heavily in favor of issuing a stay of the Court's Order pending appeal.

13

**III.    A Stay Would Not Substantially Injure Plaintiff But Would Protect the Claimant's Interests.**

In contrast to the harm that defendants will suffer if the injunction and Order are not suspended, a stay of the Order would only minimally delay the live hearing and investigation under the University's Statement if the Sixth Circuit affirms the Court's Order.  Indeed, some amount of delay is likely inevitable to the extent witnesses are unavailable to participate in a hearing during the summer and the potential need to train a new panel to hear plaintiff's case.

On the other hand, it is undisputed that plaintiff has a copy of his transcript and diploma (ECF No. 30 at 7) and does not plan to enroll at the University for graduate school (ECF No. 29 at 56).  Additionally, should the Court grant this motion and stay its Order, there is no possibility that plaintiff will be deprived of a constitutionally-protected property or liberty interest during the pendency of the appeal because the status quo will be maintained and defendants will not issue a finding.  A short delay for the Sixth Circuit to hear the appeal will not substantially harm plaintiff.  *See Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.*, 600 F. Supp. 1326, 1332 (E.D. Mich. 1985) (Feikens, C.J.), *aff'd*, 753 F.2d 1354 (6th Cir. 1985); *see also* 6 Cir. R. 31(c)(2)(A) (Sixth Circuit schedules expedited briefing for appeals from orders granting preliminary injunctions).

On the other hand, the University likely will have completed the process required by the Court's Order prior to the Sixth Circuit's ruling on the appeal.  If

14

the injunction is not stayed and the University prevails on appeal, the University will have dramatically altered its procedures and standards to conduct the Court-ordered hearing, and will have confused students and administrators alike concerning the applicable procedures for sexual misconduct investigations, as detailed in the preceding section.

It bears emphasis that there is a young woman in this case who also has an interest in the integrity of the process and ultimate finding with respect to the allegations she has brought against plaintiff.  Deviating from the established procedures for handling claims of sexual misconduct and applying a materially different burden of proof injures the Claimant's interests as well as those of defendants, and outweighs any *de minimis* harm to plaintiff that could result from issuing the stay.

## IV.    A Stay Would Serve the Public Interest.

The Sixth Circuit's resolution of the issue on appeal will significantly affect the future course of public universities' resolution of sexual misconduct and Title IX claims.  As described, more than one hundred public universities use a single investigator model in the investigation of allegations of sexual misconduct, including at least twenty within the Sixth Circuit.  *See* Richards Decl. Ex. D. Despite the purported narrowness of the Court's Order, there is no question that it has the potential for much wider influence at the University, within this Circuit,

and elsewhere.  Given how common this model is among public universities, *see id.*, the public interest is best served by awaiting a definitive ruling from the Sixth Circuit.

## **CONCLUSION**

Defendants respectfully request that the Court grant defendants' motion to stay the Court's July 6th Order pending appeal.

Respectfully submitted,

July 25, 2018

/s/*Joshua W. B. Richards*
SAUL EWING ARNSTEIN & LEHR LLP
Joshua W. B. Richards
Amy L. Piccola
*Attorneys for Defendants*
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102
(215) 972-7737
joshua.richards@saul.com
amy.piccola@saul.com

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
Brian M. Schwartz (P69018)
*Attorney for Defendants*
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
schwartzb@millercanfield.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 25, 2018, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to:

Deborah L. Gordon
dgordon@deborahgordonlaw.com

/s/*Joshua W. B. Richards*
SAUL EWING ARNSTEIN & LEHR LLP
Joshua W. B. Richards
*Attorneys for Defendants*
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102
(215) 972-7737
joshua.richards@saul.com