UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JOHN DOE**, *an individual*,

      Plaintiff,

vs.

**UNIVERSITY OF MICHIGAN** (as to Title IX violations), **BOARD OF REGENTS OF THE UNIVERSITY OF MICHIGAN**, *a constitutional corporate body* (as to Title IX & ELCRA violations), **PAMELA HEATLIE**, **ROBERT SELLERS**, **MARTIN PHILBERT**, **ERIK WESSEL**, **LAURA BLAKE JONES**, **E. ROYSTER HARPER**, **SUZANNE MCFADDEN**, and **PAUL ROBINSON**, *employees of the University of Michigan*, *sued in his or her personal and official capacities*, *jointly and severally*,

      Defendants.

Case No.: 18-cv-11776
Hon.  Arthur J. Tarnow
Mag.  Elizabeth A. Stafford

---

**DEBORAH GORDON LAW**
**Deborah L. Gordon (P27058)**
**Elizabeth A. Marzotto Taylor (P82061)**
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

**MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.**
**Brian M. Schwartz (P69018)**
Attorney for Defendants
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
(313) 963-6420
schwartzb@millercanfield.com

**SAUL EWING ARNSTEIN & LEHR LLP**
**Joshua W.B. Richards**
**Amy L. Piccola**

Attorneys for Defendants
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102
(215) 972-7737
joshua.richards@saul.com
amy.piccola@saul.com

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO STAY PENDING APPEAL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ii

I.      INTRODUCTION ..........................................................................................1

II.     STANDARD OF REVIEW ............................................................................1

III.    ANALYSIS .....................................................................................................2

        A.      Defendants Mis-State Their Burden and Fail to Make a "Strong
                Showing" of their Likelihood of Success on Appeal .............................2

        B.      Defendants Fail to Show that They will be Irreparably Harmed
                Without a Stay ........................................................................................6

                1.      Alleged Harm of Drafting Constitutionally Deficient Policy in
                        Vein.............................................................................................7

                2.      Alleged Harm of Disrupting the Parties' Relative Positions...................9

                3.      Alleged Harm to Enforce Rules Prohibiting Sexual Misconduct
                        on Campus ................................................................................ 11

                4.      Alleged Harm Due to Witness Availability ............................................ 11

                5.      Alleged Harm Stemming From Untrained Panel Members................. 12

                6.      Alleged Harm Due to Different Burdens of Proof Under
                        Statement and Policy ................................................................. 13

                7.      Alleged Harm in Future Sexual Misconduct Cases ............................. 13

        C.      The Balance of Harms and Public Interest Favor Denial of a Stay ................. 15

IV.     CONCLUSION ............................................................................................ 16

        CERTIFICATE OF SERVICE ..................................................................... 17

# INDEX OF AUTHORITIES

**Cases**                                                                                          **Page**

*Doe v. Brandeis Univ.,*
   177 F. Supp. 3d 561, 607 (D. Mass. 2016) ........................................................... 8

*Doe v. Cummins,*
   662 F. App'x 437, 451 (6th Cir. 2016)..................................................................... 4

*Doe v. Univ. of Cincinnati,* '
   872 F.3d 393, 407 (6th Cir. 2017)............................................................. 1, 3, 4, 9,

*Grutter v. Bollinger,*
   137 F. Supp. 2d 874, 876 (E.D. Mich. 2001)......................................... 2, 7, 10, 16

*Hilton v. Braunskill,*
   481 U.S. 770, 776 (1987) ......................................................................................... 2

*Simon Prop. Grp., Inc. v. Taubman Centers, Inc.,*
   262 F. Supp. 2d 794, 798-9 (E.D. Mich. 2003) .................................................... 10

*Univ. of Tx. V. Camenisch,*
   451 U.S. 390, 395 (1981) ....................................................................................... 10


**Rules**
Federal Rule of Civil Procedure 62(c) ............................................................. 1, 2, 3


**Other Authorities**
Oral Argument Before Sixth Circuit Court of Appeals in Case No. 17-2213,
   *John Doe v. David Baum et al.,*
     http://www.opn.ca6.uscourts.gov/internet/court_audio/aud1.php, at 29:06—
     29:26 (August 2, 2018)......................................................................................... 8

## I.   INTRODUCTION

A stay of the Court's Order granting Plaintiff's TRO is not legally warranted in this case; Defendants cannot meet the basic elements of FRCP 62(c). They argue that a mere "likelihood" of success on the merits is the standard when the Rule requires a "strong showing." In fact, given the law of this Circuit, Defendants have virtually no chance of succeeding on their appeal of well-settled questions of law. A policy providing far more due process than that of Defendants' –-cross-examination in the form of written questions at a live hearing—has been found inadequate where the accuser was not present to be questioned by the accused. *See Doe v. Univ. of Cincinnati*, 872 F.3d 393, 407 (6th Cir. 2017). Defendants' arguments that irreparable harm will befall them or others without a Stay are unsupported by any case law. And as to the facts presented here, Defendants again fail to mention that their Statement of Student Rights and Responsibilities provides full due process for students, including live cross-examination, and yet the rules of the school continue to be enforced, claims are adjudicated, and sanctions are meted out. Finally, the public interest lies clearly in favor of denying a stay, and ensuring that Plaintiff is granted his constitutional right to due process.

## II.   STANDARD OF REVIEW

A motion to stay an injunction pending appeal is governed by Federal Rule of Civil Procedure 62(c), which states:

> When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party

Fed. R. Civ. P. 62(c). In deciding such a motion, the court considers the following factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill,* 481 U.S. 770, 776 (1987). As discussed below, the Sixth Circuit has provided extensive guidance on how each of these four factors are to be applied.

## III.   ANALYIS

### A.   Defendants Mis-State Their Burden and Fail to Make a "Strong Showing" of their Likelihood of Success on Appeal

Defendants fail to satisfy their burden of making a "strong showing" of a likelihood of success on appeal. Defendants erroneously assert that a mere "likelihood" of success on the merits of their appeal is sufficient to satisfy their burden under Rule 62. In *Grutter v. Bollinger*, this Court rejected the argument that even a "<u>reasonable</u> possibility of success" on appeal was sufficient to justify a stay of a preliminary injunction. *See Grutter v. Bollinger*, 137 F. Supp. 2d 874, 876 (E.D. Mich. 2001) (emphasis added). Movants are <u>always</u> required to show more

2

than the mere possibility of reversal, even if the other Rule 62 factors are met. *See id*. Rather, in order to merit a stay, the movant must make a "<u>strong</u> showing" that they are likely to succeed on appeal, demonstrating at minimum "serious questions going to the merits." *See id.* (emphasis added). In this case, Defendants struggle to raise the specter of a mere possibility of reversal—let alone a <u>strong</u> showing that they would succeed on appeal.

Defendants falsely argue that this factor is satisfied because the Court's decision to grant the preliminary injunction was "a close call on a matter of first impression." In other words, Defendants claim that the questions of law the Court decided could go either way—an argument which certainly does not amount to a strong showing that <u>Defendants</u> would ultimately prevail. Moreover, as this Court rightly pointed out, there are no serious legal questions regarding whether Defendants' Policy meets the requirements of the due process clause. The legal concepts at issue in Plaintiff's motion for a preliminary injunction are already well-settled in this Circuit.

In stating that the Sixth Circuit has not yet decided whether a circumscribed cross-examination is constitutional in the absence of a live hearing, this Court appeared to emphasize the constitutional deficiencies of Defendants' "Policy," *i.e.*, that it does not even meet the bare minimum due process protections approved by the Sixth Circuit in *Doe v. Univ. of Cincinnati, Doe v. Miami Univ., and Doe v.*

*Cummins*. *See* Dkt. #30 at 13. The Court was not asserting that its grant of the preliminary injunction decided a novel legal issue. In fact, there is no legal authority holding that a private interview and email correspondence, which may include additional questions, alone provide adequate due process, as the following recent decisions make clear:

- *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017): "Few procedures safeguard accuracy better than adversarial questioning. In the case of competing narratives, 'cross-examination has always been considered a most effective way to ascertain the truth," (citations omitted)

- *Doe v. Cummins,* 662 F. App'x 437, 451 (6th Cir. 2016): The Court found that appellants were able to conduct modified [live] cross-examination at the hearing, and that therefore they had been provided with appropriate due process.

There can be no question but that this "circumscribed" form of cross-examination by the parties themselves, in person, is a floor for what the Sixth Circuit will approve of. Defendants argument that their unworkable Policy (in effect since only February 2, 2018) where students get to read summaries written by an investigator, and then suggest questions to be put to the other side by the investigator via email or phone in a non-adversarial manner, is a substitute for due process is a complete non-starter.

Furthermore, Defendants falsely assert that this Court applied existing Sixth Circuit precedent incorrectly when it granted the preliminary injunction. Defendants' conclusion that their "Policy" has none of the flaws the Sixth Circuit

4

addressed in *Cincinnati* is flatly wrong. It is well-settled that "cross-examination is not only beneficial, but essential to due process in a case that turns on credibility." *Cincinnati*, 872 F.3d at 402. The value of cross-examination in such circumstances "cannot be overemphasized." *Id.* at 404 (quoting from *Newsome*, 842 F.2d at 924). Defendants' contention that email correspondence with an investigator is a constitutionally adequate substitute for cross-examination is at odds with well-settled principles of constitutional law in the Sixth Circuit. *Id.* at 402.

Additionally, Defendants' claim that they are under no obligation to provide Plaintiff the opportunity to confront his accuser is also flatly contradicted by the holding in *Cincinnati*, which specifically found that preventing the accused to confront his accuser would be "fundamentally unfair." *Id.* at 396. In cases that turn on credibility, like this one, allowing the accused to "confront and question" the accuser is "essential to a fair hearing" and aids the "truth seeking process." *Id.* at 401-04. Defendants' attempts to substitute one-on-one interviews and email correspondence with an investigator for a hearing and cross-examination do not pass constitutional muster. Defendants have no legal basis to challenge this well-settled principle of law in the Sixth Circuit.

Furthermore, this Court accurately recognized that the "Policy's" appellate process, which allows an external reviewer to change the investigator's findings of fact and ultimate decision on the basis of the record alone, would result in a denial

of due process, because it allows the decision maker to make credibility determinations without assessing the credibility of any parties or witnesses. **Ex. A**, The University of Michigan Policy and Procedures on Student Sexual and Gender-Based Misconduct ("The Policy") at 4. Defendants' Motion does not even address the constitutional implications of the Policy's appellate procedure. Notably, in *Cincinnati*, the Sixth Circuit explicitly held that a process which allowed a decision-maker to determine a party's fate without seeing or hearing from their opponent was "disturbing" and constituted a denial of due process. *Cincinnati*, 872 F.3d at 402. If a one-sided live hearing was found unconstitutional, the Policy's appellate procedure likewise is unconstitutional, because it allows the external reviewer to make a final, un-appealable decision without having to assess the parties' and witnesses' credibility.

Sixth Circuit precedent requires a live hearing and cross-examination in cases where credibility is at issue and grave discipline may result from the university's determination. Defendants' Policy provides for none of these constitutional protections. Accordingly, Defendants are unable to even show the mere <u>possibility</u> of their success on appeal. Defendants neither addressed nor met their burden of making a "strong showing" of their likelihood of success. Their Motion for Stay must therefore be denied.

**B.    Defendants Fail to Show that They will be Irreparably Harmed Without a Stay**

6

There are three factors the Court must evaluate in determining whether irreparable harm will result to Defendants absent a stay of the preliminary injunction. *See Grutter*, 137 F. Supp. 2d at 876. First, the Court should consider the substantiality of the harm alleged; second, the likelihood of its occurrence; and third, the adequacy of the proof of such harm. *Id.* In addition, the movant must show that the harm alleged is certain and immediate, not speculative or theoretical. *Id.* Because the burden of showing irreparable harm is so heavy, it is infrequently met. *See id.* (motions seeking a stay are commonly denied). To successfully make a showing of irreparable harm, Defendants should have addressed each factor in turn, providing specific facts and affidavits supporting their assertions that these facts exist. *Id.* Defendants contend that the preliminary injunction would harm them in several ways; however, Defendants fail to address or provide any evidence to satisfy the legal standard set forth above.

### 1.    Alleged Harm of Drafting Constitutionally Deficient Policy in Vain

First, Defendants argue that the preliminary injunction will harm them because it would mean that the "painstaking efforts of the team of experts" that devised its Policy would have gone to waste. Although Defendants assert that they wasted considerable time and money in devising an unconstitutional process for adjudicating sexual misconduct claims, they provide no proof of these efforts.

7

Specifically, Defendants provide no evidence regarding the make-up of this team, its efforts, or related expenditures. Defendants' and their "experts" intentionally ignored the Sixth Circuit's September 25, 2017 ruling in *Doe v. University of Cincinnati*. They also ignored the U.S. Department of Education Office for Civil Rights Q&A on Campus Sexual Misconduct issued in September 2017, which made clear that Universities should not have two different standards—a lower one for sexual misconduct and another for all other offenses. Indeed, the Department of Education explained that under *Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561, 607 (D. Mass. 2016),

> "The lowering of the standard appears to have been a deliberate choice by the university to make cases of sexual misconduct easier to prove—and thus more difficult to defend, both for guilty and innocent students alike. It retained the higher standard for virtually all other forms of student misconduct. The lower standard may thus be seen, in context, as part of an effort to tilt the playing field against students, which is particularly troublesome in light of the elimination of other basic rights of the accused." *See* **Ex. C**, Dept. of Education Q&A on Campus Sexual Misconduct at 5.

In fact, with regard to the University of Michigan's failure to follow the law of due process, a Sixth Circuit Court of Appeals Judge stated, "I can't get past the University's indifference, defiance or whatever you want to call it to our Circuit precedent and the basic principles of due process." *See* Oral Argument Before Sixth Circuit Court of Appeals in Case No. 17-2213, *John Doe v. David Baum et al.*, http://www.opn.ca6.uscourts.gov/internet/court_audio/aud1.php, at 29:06—29:26 (August 2, 2018).

8

Notably, Defendants cite no legal authority supporting their contention that such wasted resources constitute harm that this Court may properly consider in deciding whether to grant a stay. In sum, Defendants offer no adequate proof of the existence, let alone the substantiality, likelihood, certainty, or immediacy of this alleged harm.

### 2.    Alleged Harm of Disrupting the Parties' Relative Positions

Defendants falsely argue that the Court's Order should be stayed because it would have the effect of disrupting the parties' relative positions. Notably, the Sixth Circuit found that a preliminary injunction preventing the University of Cincinnati from effectuating a student's one-year suspension was appropriate relief in *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 407 (6th Cir. 2017), even where the opinion may have affected others. The relief provided in *Cincinnati* mirrors what the Court has ordered here. The preliminary injunctions in both *Cincinnati* and the instant case maintained the status quo of the parties by ensuring that students entitled to due process protections were not forced to forego those protections before a decision could be made on the merits of their lawsuit. Contrary to Defendants' assertions, allowing Defendants to proceed against Plaintiff under an unconstitutional Policy does not preserve the parties' relative positions, but rather subjects Plaintiff to the certain risk of irreversible harm.

Defendants cite the distinguishable case of *Simon Prop. Grp., Inc. v. Taubman Centers, Inc.*, in support of their request for a stay. In that case, the Court granted a stay because without one, an irreversible change in company ownership would have inevitably taken place. *Simon Prop. Grp., Inc. v. Taubman Centers, Inc.*, 262 F. Supp. 2d 794, 798-9 (E.D. Mich. 2003). This is completely distinguishable from the instant case, where effectuating the Court's order will have no irreversible effects on the parties' relative positions—under the order Defendants will still be able to investigate Plaintiff and, if warranted, impose sanctions on him using procedures that Defendants themselves designed.

Defendants also argue that the Court's Order should be stayed because it would work some undefined, speculative harm on the 100 other schools which allegedly also use a single-investigator process to adjudicate sexual misconduct claims. This claim fails to take account of the fact that when determining whether to grant a stay, the Court evaluates harm to the parties, not non-parties—like the 100 other entities that are strangers to the instant lawsuit. *See Univ. of Tx. V. Camenisch*, 451 U.S. 390, 395 (1981). Defendants must show how the preliminary injunction will harm them, not others. *See Grutter,* 137 F. Supp. 2d at 875. Even if it were proper for the Court to consider the alleged harm to these other institutions, Defendants do not even define the harm or address whether it is substantial or likely to occur. Defendants provide no adequate proof that this harm would ever

10

take place, and therefore fail to show the requisite certainty or immediacy required to obtain a stay.

### 3. Alleged Harm to Enforce Rules Prohibiting Sexual Misconduct on Campus

Next, Defendants argue that immediate enforcement of the preliminary injunction would prevent the University from enforcing its rules prohibiting sexual misconduct on campus. Defendants offer no evidence whatsoever that applying the Statement in Plaintiff's case would result in the University being unable to regulate its student body. To the contrary, the preliminary injunction leaves Defendants free to enforce all of their rules with procedural changes designed to make the rules fundamentally fair and constitutional.

Defendants offer only their speculation that the preliminary injunction could potentially leave them vulnerable to "the next lawsuit that will inevitably be brought by the next affected student." *See* Defs.' Brief at 10. Defendants are not subject to irreparable harm simply because their unlawful Policy exposes them to the possibility that other students whose constitutional rights may be violated may file suit against them.

### 4. Alleged Harm Due to Witness Availability

Defendants allege that if the preliminary injunction is immediately enforced, there is a "risk" that witnesses will not be available to attend a hearing held over the summer break, thereby jeopardizing the integrity of the investigation and

hearing. Defendants fail to articulate how this supposed risk is at all unique to the proceeding provided for by the Court's Order. Witness participation is entirely voluntary under the Policy and the Statement. *See* **Ex. A**, The Policy at 24; *see also* **Ex. B**, The Statement of Student Rights and Responsibilities ("The Statement") at 7. Accordingly, witnesses are equally as able and likely to decline to participate whether Defendants proceed under either process, immediately or at a later date. **Ex. A**, The Policy at 24. Furthermore, Defendants' concern is merely speculative. *See* Defs.' Brief at 11-12. They provide no proof that key witnesses are actually unable to participate in an immediate hearing, or that their unavailability would be an insurmountable barrier to adjudicating the Claimant's complaint. Finally, classes begin September 4, 2018, less than four weeks away. Accordingly, Defendants fail to meet the applicable legal standard to obtain a stay.

### 5.   Alleged Harm Stemming From Untrained Panel Members

Defendants next argue that the integrity of the hearing would be jeopardized by the fact that the student panel members are untrained on issues regarding sexual misconduct. Defendants offer no proof of what training student panel members, resolution officers, investigators, or external reviewers do or do not receive. Defendants similarly offer no proof that they would be unable to provide student panel members adequate training in sexual misconduct issues prior to a hearing. Furthermore, under the Statement, although the parties are allowed to indicate their

preference as to whether their case should be adjudicated by a student panel or resolution officer, this decision ultimately rests with the University. **Ex. B**, The Statement at 6-7. Assuming, *arguendo*, that a student panel would be unfit to adjudicate Plaintiff's case, the University already reserves the right to decline a party's request to send their case to a student panel. Therefore, it is impossible for the panel's lack of training to compromise the integrity of the adjudicatory process.

### 6. Alleged Harm Due to Different Burdens of Proof Under Statement and Policy

Defendants lastly speculate that they would be harmed because the differing burdens of proof under the Statement and Policy could result in inconsistent outcomes should they prevail on appeal. Defendants provide no proof or explanation of how this scenario would work immediate, irreparable harm on them; and thus fail to meet the requisite legal standard to obtain a stay. Moreover, Defendants fail to mention that the U.S. Department of Education has most recently directed that, "[t]he standard of evidence for evaluating a claim of sexual misconduct should be consistent with the standard the school applies in other student misconduct cases . . . When a school applies special procedures in sexual misconduct cases, it suggests a discriminatory purpose and should be avoided." *See* **Ex. C**, Dept. of Education Q&A on Campus Sexual Misconduct at 5. Accordingly, applying a consistent burden of proof could not possibly harm Defendants.

### 7. Alleged Harm in Future Sexual Misconduct Cases

13

Finally, Defendants falsely assert that the Court's order draws into question the propriety of applying the Policy to other open and future cases of sexual misconduct. Again, Defendants do not set forth any evidence of the existence of any certain, immediate, irreparable harm that the Court's order will cause them, but merely speculate as to its possible future effects, all of which are unlikely to occur. Nonetheless, even if the Court were to engage with this final alleged claim of harm, Defendants' claim fails. The Policy itself specifically reserves the University's right to apply whichever policy it deems most suitable under the circumstances of any given complaint of sexual misconduct. **Ex. A**, The Policy at 2. Since the University's Policy directly contemplates situations where it would adjudicate a complaint of sexual misconduct under some other authority or procedure, the Court's order cannot possibly set any harmful "irreversible university precedent." Moreover, the Policy itself states that it is subject to annual review and modification to reflect "changes in legal requirements and resolution of cases from that year." *Id.* at 39. Accordingly, the Court's order that Defendants deviate from the Policy in order to adhere to the legal requirements of the Constitution cannot harm Defendants because they expressly contemplated and provided for such changes.

In sum, Defendants have not met the requisite legal standard to show that they will certainly suffer immediate, irreparable harm absent a stay. Defendants'

"concerns and difficulties" with the Court's Order are not legitimate concerns at all, but are rather speculative, artificial issues born of Defendants' desperation to avoid providing Plaintiff the ordered relief.

### C.     The Balance of Harms and Public Interest Favor Denial of a Stay

The balance of harms in this case and the public's interest weigh in favor denying a stay. Plaintiff would be substantially harmed by a stay of the preliminary injunction. His eligibility to continue his graduate education could be curtailed or even destroyed by Defendants finding that he sexually assaulted another student, and any resultant sanctions. It is also undeniably in the Claimant's best interest to proceed immediately under the Court's order, before the integrity of the adjudicatory process is negatively impacted by fading memories, and witnesses becoming unavailable or unwilling to participate.

Notably, Defendants have completely reversed their position on this issue for the purposes of requesting a stay that serves their legal strategy, rather than any of the parties' substantive interests in the outcome of the disciplinary proceeding. When arguing against Plaintiff's motion for the preliminary injunction, Defendants insisted that they, "cannot commit to stop the process," because it would be unfair to make the Claimant wait for an outcome simply because legal proceedings had been initiated against the University. *See* Dkt. # 29 at 57:10-21.

Furthermore, ensuring that the process Defendants use to adjudicate sexual misconduct claims comports with the Constitution will only bolster the integrity of the outcome, which is best for all concerned. In fact, there is a strong public interest in ensuring that public institutions, like University of Michigan, follow the Constitution. *See Grutter*, 137 F. Supp. 2d at 879.

## IV.    CONCLUSION

WHEREFORE, because Defendants failed to meet the legal standards that would entitle them to a stay of this Court's July 6, 2018 Order, Plaintiff requests that this Honorable Court deny Defendants' Motion[1].

<div style="margin-left:40%">

Respectfully submitted,

**DEBORAH GORDON LAW**
**/s/ Deborah L. Gordon (P27058)**
**Elizabeth Marzotto Taylor (P82061)**
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

</div>

DATED:  August 8, 2018

---

[1] In opposing Defendants' Motion for a Stay, Plaintiff does not intend to waive any arguments in support of his position on cross-appeal before the Sixth Circuit that he should be afforded direct ("live") cross-examination during his disciplinary hearing rather than circumscribed cross-examination as this Court ordered on July 6, 2018.

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2018, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing and service of said documents to all parties through their counsel of record.

**DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com