UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JOHN DOE**,                    :
                                 : Case No. 18-cv-11776
                    Plaintiff,   :
                                 : Hon. Arthur J. Tarnow
          v.                     : Mag. Elizabeth A. Stafford
                                 :
**UNIVERSITY OF MICHIGAN**, *et al.*,  : **DEFENDANTS'**
                                 : **EMERGENCY MOTION**
                    Defendants.  : **FOR RECONSIDERATION**
                                 :

---

DEBORAH GORDON LAW
Deborah L. Gordon (P27058)
Elizabeth A. Marzotto Taylor (P82061)
*Attorneys for Plaintiff*
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan  48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

SAUL EWING ARNSTEIN &
LEHR LLP
Joshua W. B. Richards
Amy L. Piccola
*Attorneys for Defendants*
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102
(215) 972-7737
joshua.richards@saul.com
amy.piccola@saul.com

MILLER, CANFIELD, PADDOCK
AND STONE, P.L.C.
Brian M. Schwartz (P69018)
*Attorney for Defendants*
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
schwartzb@millercanfield.com

Defendants move pursuant to Rule 7.1(h) of the Local Rules of the United States District Court for the Eastern District of Michigan for reconsideration of the Court's May 1, 2019 Order: (1) requiring the President of the University of Michigan to attend the conference to be scheduled at a date to be determined in May 2019; and (2) declining to refer settlement discussions in this matter to a colleague on the Court.  In support of this motion, defendants rely upon the attached brief in support.

Counsel for defendants conferred with counsel for plaintiff on May 3, 2019 and explained the nature of this motion and its legal basis.  Counsel for defendants requested, but did not obtain, concurrence in the relief sought in this motion.

WHEREFORE, defendants respectfully request that the Court grant defendants' emergency motion for reconsideration of the Court's May 1, 2019 Order and (1) permit the University to bring, in lieu of the University's President, another University administrator with full settlement authority to the upcoming conference, and (2) refer this matter to another member of the Court to the extent the purpose of the conference is to discuss settlement.

Respectfully submitted,

May 6, 2019

/s/*Joshua W. B. Richards*
SAUL EWING ARNSTEIN & LEHR LLP
Joshua W. B. Richards
Amy L. Piccola
*Attorneys for Defendants*
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102
(215) 972-7737
joshua.richards@saul.com
amy.piccola@saul.com

MILLER,  CANFIELD,  PADDOCK  AND
STONE, P.L.C.
Brian M. Schwartz (P69018)
*Attorney for Defendants*
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
schwartzb@millercanfield.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOHN DOE**, | : | |
| | : | Case No. 18-cv-11776 |
| Plaintiff, | : | |
| | : | Hon. Arthur J. Tarnow |
| v. | : | Mag. Elizabeth A. Stafford |
| | : | |
| **UNIVERSITY OF MICHIGAN**, *et al.*, | : | **BRIEF IN SUPPORT OF** |
| | : | **DEFENDANTS'** |
| Defendants. | : | **EMERGENCY MOTION** |
| | : | **FOR RECONSIDERATION** |
| | : | |

---

DEBORAH GORDON LAW
Deborah L. Gordon (P27058)
Elizabeth A. Marzotto Taylor (P82061)
*Attorneys for Plaintiff*
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan  48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

SAUL EWING ARNSTEIN &
LEHR LLP
Joshua W. B. Richards
Amy L. Piccola
*Attorneys for Defendants*
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102
(215) 972-7737
joshua.richards@saul.com
amy.piccola@saul.com

MILLER, CANFIELD, PADDOCK
AND STONE, P.L.C.
Brian M. Schwartz (P69018)
*Attorney for Defendants*
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
schwartzb@millercanfield.com

# **TABLE OF CONTENTS**

STATEMENT OF THE ISSUES PRESENTED.......................................................... iv

RELEVANT AUTHORITY .........................................................................................v

INTRODUCTION ........................................................................................................1

LEGAL STANDARD...................................................................................................2

ARGUMENT ...............................................................................................................3

    I.     Respectfully, the Court's Stated Reasons for Requiring the University's President to Attend the Upcoming Conference Constitute an Abuse of Discretion. .............................................................................3

          A.    Respectfully, Requiring the University's President to Attend a Settlement Conference Constitutes an Abuse of Discretion When the University Has Committed to Bring Another Official with Full Settlement Authority to the Settlement Conference.........................4

          B.    Respectfully, Requiring the University's President to Attend a Conference to Defend the Policy Pursuant to the Court's Understanding of the President's Responsibilities Constitutes an Abuse of Discretion..........................................................................8

          C.    Respectfully, the Proceedings Throughout This Matter Provide Additional Reasons Why the University's Chief Executive Officer Should Not Be Personally Ordered to Attend Future Proceedings.12

    II.    Respectfully, the Court Should Refer This Matter to Another Member of the Court to Conduct Settlement Discussions......................................13

CONCLUSION ..........................................................................................................15

i

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Ayotte v. Planned Parenthood of N. New England*,
  546 U.S. 320 (2006)..................................................................................v, 13

*Bonner Farms, Ltd. v. Fritz*,
  355 F. App'x 10 (6th Cir. 2009) ..................................................................v, 14

*Brady v. Office of Sergeant at Arms*,
  520 F.3d 490 (D.C. Cir. 2008)..........................................................................10

*Consol. Cigar Corp. v. Reilly*,
  218 F.3d 30 (1st Cir. 2000), *rev'd in part on other grounds sub
  nom., Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001) ............................14

*Doe v. Baum*,
  903 F.3d 575 (6th Cir. 2018) ....................................................................10, 15

*Doe v. University of Cincinnati*,
  872 F.3d 393 (6th Cir. 2017) ............................................................................15

*Flaim v. Med. Coll. of Ohio*,
  418 F.3d 629 (6th Cir. 2005) ........................................................................v, 14

*Freedman v. State of Md.*,
  380 U.S. 51 (1965)........................................................................................v, 14

*Furnco Constr. Corp. v. Waters*,
  438 U.S. 567 (1978)............................................................................................10

*In re Stone*,
  986 F.2d 898 (5th Cir. 1993) ...............................................................v, 3, 5, 6

*Printz v. United States*,
  521 U.S. 898 (1997)........................................................................................v, 9

*S.E.C. v. Bravata*,
  3 F. Supp. 3d 638 (E.D. Mich. 2014) .............................................................14

*Sequal Techs., Inc. v. Stern*,
    No. 10CV2655 DMS NLS, 2012 WL 474464
    (S.D. Cal. Feb. 14, 2012) ........................................................................6

*Turner v. City of Detroit*,
    No. CIV.A. 11-12961, 2012 WL 4839139
    (E.D. Mich. Oct. 11, 2012) .......................................................................7

*United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio
    Reg'l Transit Auth.*,
    163 F.3d 341 (6th Cir. 1998) ...............................................................v, 13

*United States v. Harper*,
    No. 13-20246, 2016 WL 465495 (E.D. Mich. Feb. 8, 2016) ...............................2

*United States v. U.S. Dist. Court for N. Mariana Islands*,
    694 F.3d 1051 (9th Cir. 2012), *as amended* (Oct. 16, 2012)...........................v, 6

*Virginia v. Am. Booksellers Ass'n, Inc.*,
    484 U.S. 383 (1988)...........................................................................v, 13

## OTHER AUTHORITIES

28 U.S.C. § 753 .....................................................................................13

Fed. R. Civ. P. 16(c)(1)..............................................................................7

Fed. R. Evid. 408 ....................................................................................4

Local Rule 7.1(h)(3)...................................................................................2

Local Rule 16.6 ......................................................................................5

Mich. Const. Art. 8, § 5 .....................................................v, 8, 9, 10, 11, 13

U.S. Const. amend. X..............................................................................v, 9

## STATEMENT OF THE ISSUES PRESENTED

Whether the Court should grant reconsideration of its May 1, 2019 Order and:

(1) Permit the University to bring, in lieu of the University's President, another University administrator with full settlement authority to the upcoming conference, to the extent the purpose of the conference is to discuss settlement; and

**Proposed Answer:  Yes.**

(2) To the extent the purpose of the upcoming conference is to discuss settlement, refer this matter to another member of the Court to conduct the conference given that a stated purpose of the conference is to discuss issues involving the University's sexual misconduct policy that the Court may ultimately be required to rule upon, particularly with respect to any injunctive relief requested by the plaintiff.

**Proposed Answer:  Yes.**

## RELEVANT AUTHORITY

### Cases

*Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320 (2006)

*Bonner Farms, Ltd. v. Fritz*, 355 F. App'x 10 (6th Cir. 2009)

*Flaim v. Med. Coll. of Ohio*, 418 F.3d 629 (6th Cir. 2005)

*Freedman v. State of Md.*, 380 U.S. 51 (1965)

*In re Stone*, 986 F.2d 898 (5th Cir. 1993)

*Printz v. United States*, 521 U.S. 898 (1997)

*United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341 (6th Cir. 1998)

*United States v. U.S. Dist. Court for N. Mariana Islands*, 694 F.3d 1051 (9th Cir. 2012), *as amended* (Oct. 16, 2012)

*Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988)

### Constitutional Provisions

Mich. Const. Art. 8, § 5

U.S. Const. amend. X

## **INTRODUCTION**

On May 1, 2019, the Court held a telephonic status conference at which the Court ordered the President of defendant the University of Michigan (the "University") to appear in person at a conference to be held at a date to be determined in May 2019. Despite requests for clarification, the purpose of this conference remains unclear. The Court has suggested that the conference is for settlement purposes, while at other times it has suggested that the purpose is to discuss the University's sexual misconduct policy, which the Court expects the University's President to defend on behalf of the University, even though that policy is not in the record before the Court and no motion pertaining to the policy is pending. In either case, the University respectfully submits that it would be improper to require the University's President to attend the conference.

Defendants respectfully request that the Court reconsider its May 1, 2019 Order (the "Order") and permit the University to bring, in lieu of the University's President, another University administrator with full settlement authority to any upcoming settlement conference. While the University acknowledges the Court's inherent authority to require the participation of a party representative with full settlement authority at a settlement conference, the Court exceeded the bounds of its discretion by specifically requiring the University's President to attend the conference when: (1) the University assured the Court that another administrator

with full settlement authority would be available for the conference; and (2) the President has no duty or responsibility to defend the University's sexual misconduct policy in the manner suggested by the Court.

In addition, because this Court will be the ultimate decision-maker on the equitable relief plaintiff seeks in this civil action involving the University's sexual misconduct policy – the very same policy to be discussed at the conference – the University respectfully requests that the Court reconsider its decision declining to refer this matter to another member of the Court to the extent the purpose of the conference is to discuss settlement.

## **LEGAL STANDARD**

A party seeking reconsideration of an Order issued by this Court ordinarily "must demonstrate a palpable defect by which the court has been misled and must also show that correcting the defect will result in a different disposition." *United States v. Harper*, No. 13-20246, 2016 WL 465495, at *1 (E.D. Mich. Feb. 8, 2016);[1] *see also* Local Rule 7.1(h)(3).

"[S]ubject to the abuse-of-discretion standard, district courts have the general inherent power to require a party to have a representative with full

---

[1] Unpublished cases are attached as Exhibit B to the accompanying Declaration of Joshua W. B. Richards, Esq. (the "Richards Declaration").

2

settlement authority present – or at least reasonably and promptly accessible – at pretrial conferences." *In re Stone*, 986 F.2d 898, 903 (5th Cir. 1993).

## ARGUMENT

I. **Respectfully, the Court's Stated Reasons for Requiring the University's President to Attend the Upcoming Conference Constitute an Abuse of Discretion.**

During the telephonic status conference on May 1, 2019, and in response to the University's counsel's inquiry as to the purpose for requiring the University's President to attend the upcoming conference, the Court explicitly and emphatically stated two grounds for requiring the University's President to attend: (1) to ensure that the University will be capable of approving any changes to the University's sexual misconduct policy (or any other agreements reached during the settlement conference) without needing to be later approved by any other University official;[2] and (2) to "defend" the University's sexual misconduct policy pursuant to what the Court stated is "part of [the President's] qualifications for the job" (May 1, 2019 Tr. at 10:17-24).[3]   Requiring the University's President to attend the conference for either reason constitutes an abuse of discretion.

---

[2] The Court explained: "I don't want anything that we decide to have to be reviewed by the President which as I understand university structure, this is the kind of decision that ultimately would have to be at least okayed by the President." (May 1, 2019 Tr. at 8:23-9:1.)

[3] The transcript of the May 1, 2019 telephonic status conference is attached as Exhibit A to the Richards Declaration.

The degree to which the proposed proceedings are undefined compound the Court's error in ordering the University's chief executive officer to appear personally.   For example, and for obvious reasons, settlement negotiations do not occur in open court.   *See, e.g.*, Fed. R. Evid. 408.   But based on the Court's statements about policy and the Court's views about the President's duty to defend policy choices, it is not clear what type of proceeding the Court would be ordering the President to attend, and whether that proceeding would be on or off the record. And if the Court intends only to oversee private settlement discussions, that is an additional reason why the University should be able to send a senior official with full settlement authority.

> ### A.  Respectfully, Requiring the University's President to Attend a Settlement Conference Constitutes an Abuse of Discretion When the University Has Committed to Bring Another Official with Full Settlement Authority to a Settlement Conference.

Counsel for the University represented to the Court that the University would bring another University administrator with full settlement authority to the conference and whose agreement to any terms would not need to be later approved by any other University official.   (*See* May 1, 2019 Tr. at 8:18-20, 9:25-10:4, 10:12-15.)   The University's proposal satisfied the first of the Court's articulated purposes for requiring the University's President to attend a settlement conference.

The University's President is the chief executive officer of an extraordinarily complicated three-campus enterprise with annual budgeted revenues of more than $8 billion, including more than 61,000 students, roughly 28,000 employees, a nearly $4 billion academic medical center, and a $1.5 billion research budget. The President's daily schedule reflects those myriad responsibilities and more. The obligations on the President's time arise and are set months in advance. It would be a significant burden on the University for the President to be diverted from his duties as an officer of the State of Michigan and the constitutionally-created University to attend a settlement conference in this matter. The University is involved in approximately sixty current pending litigation matters. Requiring the President to attend settlement conferences in these matters is impractical and unnecessary when the President has delegated full settlement authority to other University officials. This concern is particularly acute here where an administrator with authority delegated by the President is competent to perform the task at hand with no articulable prejudice to the Court or the parties.

While the Court has discretion to require that *a party representative with full settlement authority* attend a settlement conference, *see* Local Rule 16.6, that discretion is not unbounded. Requiring the attendance of a high-ranking official at a settlement conference "is a power to be very sparingly used." *See In re Stone*, 986 F.2d 898, 900, 904-05 (5th Cir. 1993) (holding on petitions seeking writs of

mandamus that district court abused its discretion by requiring a high-ranking government official to attend settlement conferences and requiring district court to "adjust [its] directives accordingly").

While the Sixth Circuit has not spoken directly on the impropriety of requiring a specific high-ranking government official to attend a settlement conference, the Fifth and Ninth Circuits have squarely addressed this issue on petitions for writ of mandamus.  In both instances, these Courts of Appeals ruled that requiring a high-ranking official to attend a settlement conference constitutes an abuse of discretion when a district court does not "consider less drastic steps." *See id.* at 905; *United States v. U.S. Dist. Court for N. Mariana Islands*, 694 F.3d 1051, 1061 (9th Cir. 2012), *as amended* (Oct. 16, 2012) (granting petition for writ of mandamus because district courts "should consider less drastic steps before" requiring "the government to send a [particular] representative with full settlement authority to a pretrial conference").

*Stone* and *Northern Mariana Islands* both involved officials from the United States Department of Justice in whom ultimate settlement authority was vested *by regulation*.  *See id.*  Here, there are no such regulations casting the President of the University for purposes of this proceeding, and therefore even less reason to insist on his attendance.  *Cf. Sequal Techs., Inc. v. Stern*, No. 10CV2655 DMS NLS, 2012 WL 474464, at *2 (S.D. Cal. Feb. 14, 2012) (denying motion to require

president to attend settlement conference and holding that "there is no good cause to require [Plaintiff] to bring any particular representative to the Mandatory Settlement Conference, so long as the representative it chooses has the requisite [settlement] authority"); *Turner v. City of Detroit*, No. CIV.A. 11-12961, 2012 WL 4839139, at *2 (E.D. Mich. Oct. 11, 2012) (explaining that the "apex doctrine" protects high-ranking officials from having to testify when other persons within an organization can "provide the necessary information"); Fed. R. Civ. P. 16(c)(1) ("If appropriate, the court may require that a party or its representative be present or ***reasonably available by other means*** to consider possible settlement.") (emphasis added).

In this case, the Court has already acknowledged that the University's President "can delegate. Obviously, with such a large institution there are all sorts of delegations made." (May 1, 2019 Tr. at 9:17-19.) And the Court has already acknowledged that any official the University would send to a settlement conference would possess full settlement authority:

> **[COUNSEL]:** Respectfully, your Honor, if the Court's concern is that the person at the conference will not have authority to make an agreement without consulting with the President, I can assure the Court that the person at the conference will have that authority.
>
> **THE COURT:** I believe you 100 percent.

7

(May 1, 2019 Tr. at 9:25-10:5.)  Given the Court's findings, it would, respectfully, be an abuse of discretion for the Court not to take less drastic steps than ordering the University's chief executive officer.

In the event this Court has determined in its discretion that it is in the interest of justice to hold a conference with attendance by the parties,[4] the Court's authority to require attendance by a specific party representative must be supported by reasons that satisfy the abuse of discretion standard.  The Court has not done so here, and has accordingly abused its discretion.  The University respectfully urges the Court to reconsider its Order.

### B. Respectfully, Requiring the University's President to Attend a Conference to Defend the Policy Pursuant to the Court's Understanding of the President's Responsibilities Constitutes an Abuse of Discretion.

The Court's second stated reason for requiring the University's President to attend the conference also represents an abuse of discretion.  The Court asserts that the University President's responsibilities require him to "defend" the University's sexual misconduct policy, *see* May 1, 2019 Tr. at 10:17-24, but, respectfully, the Court does not define the President's responsibilities: the Regents of the University of Michigan do.  *See* Mich. Const. Art. 8, § 5.  The Court's conscription of the

---

[4] The University further notes for the record that the Court has ordered a representative from the University to attend the conference, but has not ordered the plaintiff to attend in person.

University's President – an officer of the state – to perform a task the President would not otherwise be required to perform by the Regents is "fundamentally incompatible with our constitutional system of dual sovereignty" and violates the Tenth Amendment. *See Printz v. United States*, 521 U.S. 898, 935 (1997); U.S. Const. amend. X; *see also Strahan v. Coxe*, 127 F.3d 155, 169 (1st Cir. 1997) ("[T]he commands of the Tenth Amendment apply to all branches of the federal government, including the federal courts . . . .").

Federal district courts have very narrow jurisdictional power and authority limited by the U.S. Constitution (including separation of powers), federal statutes (which create district courts) and a variety of doctrines (like mootness and standing) fleshing out the requirement that district courts only may rule on judicial questions arising in specific cases or controversies that otherwise clear applicable federal jurisdictional hurdles. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Thus, for example, and respectfully, this Court lacks Article I power to rewrite Title IX with respect to the University's policies, lacks Article II power to promulgate Title IX regulations for the U.S. Department of Education, and significantly, and again respectfully, this Court lacks power under Article 8, Section 5 of the Michigan Constitution to write University policy or supervise its President, who is an Ex Officio Member of the Board of Regents. *See* Mich.

9

Const. Art. 8, § 5. The University emphasizes these fundamental principles because they highlight why the Court's explicit stated purposes for ordering the University's chief executive to attend proceedings are not in accord with the law.

*First*, whether a policy change is "wise" or unwise as a policy matter is for Congress, the Department of Education, or the University of Michigan to decide – not for the Court. *See Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 496 (D.C. Cir. 2008) ("It is not the Judiciary's place to micro-manage an employer's . . . policies.") (citing *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 578 (1978) ("Courts are generally less competent than employers to restructure business practices, and unless mandated to do so by Congress they should not attempt it.")); *see also infra.*, n.6 (collecting cases holding that courts should not rewrite state law). But the Court has specifically premised its ruling on this very basis:

> **THE COURT:** For example, *it might be wise* that the Cross-Examination could be done by an independent person or trained, independent person or a lawyer but not by the accused.

(May 1, 2019 Tr. at 6:14-17 (emphasis added)). The Court did not examine the policy – which is not in the record – and suggest the policy was not lawful; it instead suggested that "it might be wise" for the University to change a policy the Court has not seen. Moreover, the Sixth Circuit's decision in *Doe v. Baum*, 903 F.3d 575, 583 (6th Cir. 2018), explicitly provides universities a choice between allowing the parties or their agents to conduct cross-examination. Ordering the

10

President into Court in order to instruct him regarding the Court's views on the wisdom of University policies where binding Circuit precedent provides the University with a choice in the matter is not a proper exercise of federal judicial power.

*Second*, under the Michigan Constitution, it is the Regents, not the Court, who have authority to supervise the University's President. *See* Mich. Const. Art. 8, § 5 ("Each board shall, as often as necessary, elect a president of the institution under its supervision. He shall be the principal executive officer of the institution, be ex-officio a member of the board without the right to vote and preside at meetings of the board."). The Court's explicitly stated basis for its Order would, respectfully, usurp the Board's authority to supervise the President. Thus, when asked about the basis for the Court's decision, the Court cited its views of the President's job qualifications, why he was hired, why he retains his position, and what the Court considers to be his job responsibilities:

> I don't have to explain myself, but I will. And it's I think the President, part of his qualifications for the job when he was hired and when he continued in the job, is the public [scrutiny][5] that the university is regularly under and he should be a part of this [process] so that he can defend whatever is [agreed] to and explain to the media, to the public, and perhaps most importantly to the faculty and the students. **So he shall be here**.

---

[5] The bracketed terms in this quotation correct errors in the transcript.

(May 1, 2019 Tr. at 10:16-24 (emphasis added).)

The next stated basis for the Order has the Court prioritizing the President's work obligations: "Let me say this.  This should be more important to him than almost anything going on at the university."  (May 1, 2019 Tr. at 14:19-21.) Reducing the incidence of sexual misconduct, providing fair processes, and supporting students who have been subject to sexual assault are critically important goals for the *entire* leadership of the University.  But, respectfully, it is not for the Court to set the priorities and specific obligations of the President of the constitutionally created University.

### C.    Respectfully, the Proceedings Throughout This Matter Provide Additional Reasons Why the University's Chief Executive Officer Should Not Be Personally Ordered to Attend Future Proceedings.

The uncertainty as to the purpose of the upcoming conference leaves the University with even more concern, given other problematic instances in this case.[6] Confusion has already arisen in this case from discussions in chambers, without a court reporter present, leaving the lawyers, litigants, and (it would, respectfully, appear) the Court further in dispute and uncertain as to what the Court has required, which has necessitated further communications with the Court's staff, not-insignificant burdens on the litigants, and a follow-up telephonic conference.

---

[6] (*See, e.g.*, ECF No. 20, June 11, 2018 Tr. at 5:14-17, 6:13-17.)

(*See* May 1, 2019 Tr. at 9:13-14 ("And both of you, it doesn't matter what was said at that conference.")); *see also* 28 U.S.C. § 753.

For these and other reasons, the University continues to object to the Court's Order that it expose its chief executive officer to an uncertain, ill-defined process.[7]

## II.  Respectfully, the Court Should Refer This Matter to Another Member of the Court to Conduct Settlement Discussions.

During the telephonic status conference on May 1, 2019, the Court also expressed an intention to facilitate changes to the University's sexual misconduct policy in furtherance of settlement to avoid protracted litigation.[8]  (*See* May 1, 2019 Tr. at 11:24-12:5.)

---

[7] As the University informed the Court's staff on May 3, 2019, "the schedule for the President of the University is set weeks, often months, in advance and he is not available at either of the times proposed by the Court.  The President does have some availability at other times, but the University also wishes to advise the Court that it intends to file a motion on Monday for reconsideration of the Court's order requiring the President to appear on the basis that the Court's stated reasons for requiring his attendance are not in accord with the law."

[8] Given that under the Constitution of the State of Michigan, the University is a branch of the Michigan state government, Mich. Const. Art. 8, § 5, the Court should proceed with caution in taking on a legislative or administrative function by actively presiding over attempts to change the internal policies of a state entity, particularly where the proposed changes are not squarely required by authority from the Court of Appeals.  *See, e.g.*, *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006) ("[M]indful that our constitutional mandate and institutional competence are limited, we restrain ourselves from rewrit[ing] state law to conform it to constitutional requirements . . . .") (marks omitted); *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 397 (1988) ("[W]e will not rewrite a state law to conform it to constitutional requirements."); *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d

The Court should avoid conducting a settlement conference itself, when, as here, the Court (and not a jury) could be the ultimate decision-maker on a claim for equitable relief in a case involving the very same policy.  *See Bonner Farms, Ltd. v. Fritz*, 355 F. App'x 10, 18 (6th Cir. 2009) ("[T]he determination of equitable defenses and equitable remedies is a matter for the court to decide, not the jury.") (quoting *Smith v. World Ins. Co.*, 38 F.3d 1456, 1462 (8th Cir. 1994)); *S.E.C. v. Bravata*, 3 F. Supp. 3d 638, 643 (E.D. Mich. 2014) ("[T]he Court, not a jury, must decide" equitable remedies).

Plaintiff seeks equitable relief from the Court in his First Amended Complaint.  (*See* ECF No. 28 at 34.)  That requested relief could require the Court to decide challenges to the University's sexual misconduct policy.  *See Bonner Farms*, 355 F. App'x at 18; *Bravata*, 3 F. Supp. 3d at 643.  Indeed, the Court has already heard argument and entered equitable relief in this case once.

---

341, 362 (6th Cir. 1998) ("We will not, however, rewrite the [state agency's] guidelines to cure their substantial infirmities."); *see also Consol. Cigar Corp. v. Reilly*, 218 F.3d 30, 56 (1st Cir. 2000) (stating courts must "take care not to trample legislative or executive province of state authorities by making unduly substantive additions or changes to laws and regulations"), *rev'd in part on other grounds sub nom., Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001); *Freedman v. State of Md.*, 380 U.S. 51, 60-61 (1965) ("How or whether [a State] is to incorporate the required procedural safeguards in the statutory scheme is, of course, for the State to decide."); *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 638 (6th Cir. 2005) (federal court review of university disciplinary procedures is "circumscribed," and "limited to determining whether the procedures used . . . were constitutional").

14

The Court's justification for declining to make such a referral in this case was that another judge "would have to start over in terms of understanding the scope of the conference, the scope of at least the Doe case." (May 1, 2019 Tr. at 13:19-21.)  Respectfully, however, this justification does not reflect the reality that: (1) the University's current policy is not even in the record before the Court, so the Court does not have any familiarity with the current policy yet either; and (2) the features of that policy that plaintiff objects to, which would be the subject of the proposed conference, are also limited; and (3) the case law governing the issues is narrow and recent: the Sixth Circuit's recent opinions in *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) and *Doe v. University of Cincinnati*, 872 F.3d 393 (6th Cir. 2017).  A colleague on the Court could get up to speed on these issues in very short order.

To encourage a full exchange of ideas, and more importantly to eliminate the potential for influencing the Court's views on a matter the Court may ultimately be required to rule upon, the University respectfully requests that the Court reconsider its decision and refer this matter to another member of the Court to conduct the upcoming conference to the extent its purpose is to discuss settlement.

## CONCLUSION

Defendants respectfully request that the Court grant defendants' motion for reconsideration of the Court's May 1, 2019 Order and (1) permit the University to

bring, in lieu of the University's President, another University administrator with full settlement authority to the upcoming conference, and (2) refer this matter to another member of the Court to the extent the purpose of the conference is to discuss settlement.

Respectfully submitted,

May 6, 2019

/s/*Joshua W. B. Richards*
SAUL EWING ARNSTEIN & LEHR LLP
Joshua W. B. Richards
Amy L. Piccola
*Attorneys for Defendants*
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102
(215) 972-7737
joshua.richards@saul.com
amy.piccola@saul.com

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
Brian M. Schwartz (P69018)
*Attorney for Defendants*
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
schwartzb@millercanfield.com

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2019, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to:

Deborah L. Gordon
dgordon@deborahgordonlaw.com

/s/*Joshua W. B. Richards*
SAUL EWING ARNSTEIN & LEHR LLP
Joshua W. B. Richards
*Attorneys for Defendants*
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102
(215) 972-7737
joshua.richards@saul.com