UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JOHN DOE**, | : |
| | :   Case No. 18-cv-11776 |
| Plaintiff, | : |
| | :   Hon. Arthur J. Tarnow |
| v. | :   Mag. Elizabeth A. Stafford |
| | : |
| **UNIVERSITY OF MICHIGAN**, *et al.*, | : |
| | : |
| Defendants. | : |
| | : |

---

## <u>DECLARATION OF JOSHUA W. B. RICHARDS, ESQ.</u>

I, JOSHUA W. B. RICHARDS, declare as follows:

1.     I am admitted to practice before this Court.

2.     I am a partner at the law firm Saul Ewing Arnstein & Lehr LLP, counsel for defendants in this proceeding.

3.     I submit this declaration in support of defendants' emergency motion for reconsideration.

4.     In support of defendants' emergency motion for reconsideration, I attach true and correct copies of the following exhibits:

a.     <u>Exhibit A</u>: Transcript of the May 1, 2019 telephonic status conference; and

b.      Exhibit B: Unpublished cases cited in defendants' emergency motion for reconsideration, which include:

i.      *Sequal Techs., Inc. v. Stern*, No. 10CV2655 DMS NLS, 2012 WL 474464 (S.D. Cal. Feb. 14, 2012);

ii.      *Turner v. City of Detroit*, No. CIV.A. 11-12961, 2012 WL 4839139 (E.D. Mich. Oct. 11, 2012); and

iii.      *United States v. Harper*, No. 13-20246, 2016 WL 465495 (E.D. Mich. Feb. 8, 2016).

I declare that the foregoing is true and correct.

Respectfully submitted,

May 6, 2019                        /s/*Joshua W. B. Richards*
                                 SAUL EWING ARNSTEIN & LEHR LLP
                                 Joshua W. B. Richards
                                 *Attorneys for Defendants*
                                 1500 Market Street, 38th Floor
                                 Philadelphia, Pennsylvania  19102
                                 (215) 972-7737
                                 joshua.richards@saul.com

# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JOHN DOE,**

              Plaintiff,           **HONORABLE ARTHUR J. TARNOW**

    v.

                                 **No. 18-11776**

**UNIVERSITY OF MICHIGAN, ET**
**AL.,**

              Defendants.
_____/


**MOTION HEARING**


**Wednesday, May 1, 2019**


Appearances:

FOR THE PLAINTIFF:          DEBORAH GORDON, ESQ.
FOR THE DEFENDANT:          JOSH RICHARDS, ESQ.
                              PATRICK NUGENT. ESQ.
                              BRIAN SCHWARTZ, ESQ.

                         -   -   -

*To obtain a certified transcript, contact:*
*Lawrence R. Przybysz, MA, CSR, RPR, RMR, CRR*
*Official Federal Court Reporter*
*Theodore Levin United States Courthouse*
*231 West Lafayette Boulevard, Room 124*
*Detroit, Michigan  48226*
*(313)414-4460.  Lawrence_Przybysz@mied.uscourts.gov*

*Proceedings recorded by mechanical stenography.*
*Transcript produced by computer-aided transcription.*

**I  N  D  E  X**

–   –   –

MOTION HEARING....................................P. 3

*Motion Hearing*
*Wednesday, May 1, 2019*

Page 3

 1                          Detroit, Michigan

 2                          Wednesday, May 1, 2019

 3                          2:30 p.m.

 4                          -   -   -

 5          **THE COURT:**  Good afternoon.

 6          **MS. GORDON:**  Good afternoon, Judge Tarnow.

 7          **THE COURT:**  Who is do we have, please?

 8          **MS. GORDON:**  Deborah Gordon on behalf of the

 9   plaintiff.

10          **MR. RICHARDS:**  And Josh Richards, your Honor, for the

11   university and Patrick Nugent joins me in my office.  He's on

12   the briefs as well.

13          **THE COURT:**  And?

14          **MR. SCHWARTZ:**  Brian Schwartz.

15          **THE COURT:**  We are on the record.  It's my

16   understanding there was a request for this phone conference for

17   a clarification of the meeting that we will have in a couple

18   weeks and we have to pick a date for that meeting.

19          **MR. RICHARDS:**  Yes, your Honor.

20          **THE COURT:**  Please identify yourself when you speak

21   because there are three voices that sound similar for the

22   defendant unless -- if you can coordinate it and all three of

23   you speak at the same time saying the same thing, we have a

24   baritone here if you have the rest of the harmony down.

25          **MR. RICHARDS:**  For the university, your Honor, yes,

*18-11776; John Doe v. University of Michigan, et al.*

*Motion Hearing*
*Wednesday, May 1, 2019*

Page 4

1   we made the request for clarification because when we read the

2   e-mail from the Court, it wasn't clear to us whether the Court

3   had changed its view on the Cross-Examination issue and if that

4   was the case, we wanted a chance to discuss that.  And, in

5   addition, as the Court just alluded to, to discuss the purpose

6   of the Status Conference to be set in a couple weeks.

7           **THE COURT:**  Okay.  Is that it for the reason for this

8   conference, those two items?

9           **MR. RICHARDS:**  From the university's end, this is

10  Mr. Richards, your Honor, yes.

11          **THE COURT:**  What about from the plaintiff's end?

12          **MS. GORDON:**  Yes, I have no issues, Judge.

13          **THE COURT:**  Okay.  Both requests are reasonable and

14  I'm going to add another thing to the agenda and that is, if

15  and when, not if, but when we have the conference, is there any

16  objection to also touching on the other case where the same

17  attorneys are involved and the same defendant, different

18  plaintiff, the ███████ came?

19          **MS. GORDON:**  None from plaintiff, Judge.

20          **MR. RICHARDS:**  Brian Schwartz.  I'm not sure what not

21  issues will be raised.

22          **THE COURT:**  I am not sure what issues will be raised

23  but I can conceive that there could be none because I note that

24  there is a hearing on the 14th in front of Magistrate Mazoub

25  and everything might be resolved in the ███████ case on that

*Motion Hearing*
*Wednesday, May 1, 2019*

Page 5

1   date.  But if not or if there is anything remaining, that

2   should be discussed or could be discussed and save some time

3   and paper and electronic bites.

4           **MR. SCHWARTZ:**  I agree that would make sense.

5   Hopefully everything will be resolved with the Magistrate.  But

6   if not, I'm sure we could use that time.

7           **THE COURT:**  Now, in terms of the Cross-Examination

8   issue, what are your thoughts?  And I will ask Ms. Gordon first

9   whether it looks like you are going to be able to resolve it.

10          **MS. GORDON:**  Judge --

11          **THE COURT:**  Or is it worthwhile waiting and talking

12   about it at the meeting?

13          **MS. GORDON:**  So per your prior instruction, I am

14   prepared by tomorrow is my cut-off date to send to defense

15   counsel my listing of concerns with the new policy which you

16   had instructed we do and then you said they would have seven

17   days to respond at which point we will have some better idea

18   whether we are going to be able to agree on the process and

19   whether we will simply go forward on the process or we will

20   need the Court's assistance.  So I am ready to go on that and I

21   have a draft.

22          **THE COURT:**  Okay.  Stop.  Stop.  You don't have to

23   say it again.

24          **MS. GORDON:**  Okay.

25          **THE COURT:**  Who is going to speak for the defendant?

*Motion Hearing*
*Wednesday, May 1, 2019*

Page 6

1          **MR. RICHARDS:**  Josh Richards, your Honor.

2          **THE COURT:**  Do you have any problem with keeping to

3     the schedule?

4          **MR. RICHARDS:**  No, your Honor.  That schedule is fine

5     with the university.

6          **THE COURT:**  Okay.  And I am going to include it as a

7     topic that we are going to talk about at the conference with

8     the President because I may have over simplified the definition

9     of Cross-Examination being congruent with the criminal case.

10    And on further consideration, I don't want you guys to agree

11    fully with me and then my having to tell you that it may not be

12    congruent to the extent that -- and this is something I want

13    the two of you to talk about -- what limitations on the

14    Cross-Examination which would protect both parties.  For

15    example, it might be wise that the Cross-Examination could be

16    done by an independent person or trained, independent person or

17    a lawyer but not by the accused.

18          **MS. GORDON:**  May I, Judge?

19          **THE COURT:**  Sure.

20          **MS. GORDON:**  Okay.  So I have taken all of that into

21    account.  I heard what you said.  I am working off of the

22    university's current January 2019 policy language.  They have

23    given some thought already to whether they want to have a third

24    party do the questioning.  Their current policy does not allow

25    for that.  I would say that Doe versus Baum (ph) did allow for

*18-11776; John Doe v. University of Michigan, et al.*

*Motion Hearing*
*Wednesday, May 1, 2019*

Page 7

1  that.  But to the extent the university is not allowing for

2  that, I am willing to live with that.  I mean, I don't care.

3  It's fine with me.  So I am taking into account what you said

4  but I am also very cognizant, perhaps moreso, of what Doe

5  versus Baum (ph) says and what the university's new policy

6  says.  So everything I'm going to send to defense counsel is

7  going to be based on what they currently have and where I think

8  there are due process problems with what they currently have.

9         **THE COURT:**  Okay.  What about the defense?  Who is

10  this.

11         **MR. RICHARDS:**  Josh Richards.  On that particular

12  point, your Honor, I agree with Ms. Gordon that Doe versus Baum

13  leaves it to institutions' discretion as to whether the

14  cross-examination will be performed by the party because, of

15  course, Cross-Examination is permitted for both parties, or by

16  a representative of that party.

17         **THE COURT:**  Okay.  Well, then let's continue with the

18  schedule we have.  Now, the only thing left to discuss today is

19  when are we going to meet?

20         **MR. RICHARDS:**  Your Honor, Josh Richards.  Before we

21  move on to procedural matters, I would like to address with the

22  Court the purpose of the Court's request that the President

23  attend.  And I would like to note that the President is not the

24  university official who has primary responsibility for the

25  policy.

*Motion Hearing*
*Wednesday, May 1, 2019*

Page 8

1    **THE COURT:**  And that would be the chief counsel?  Who

2    is that person who would have that responsibility?

3    **MR. RICHARDS:**  I would have to check with my client

4    as to who the right person would be, your Honor, but it is

5    certainly not the President.

6    **THE COURT:**  Well, you can check with the President

7    and whoever else you have to check with and when you find the

8    right person, you can bring her or him along with the President

9    and then everyone will be complete in terms of people with

10   authority.  And obviously the ultimate authority is the

11   President.

12       **MR. RICHARDS:**  Your Honor, that may be true --

13       **THE COURT:**  He might not be the person with the most

14   hands-on experience and authority, but he is the one who is

15   going to have to approve whatever the four of you decide on and

16   whatever I might add to that decision.

17       **MR. RICHARDS:**  So a few things on that point, your

18   Honor.  First, the President can delegate the ultimate

19   authority that the Court is referring to to someone else who

20   can attend the conference and is willing to do so.  What I am

21   trying to figure out is what is the Court's purpose in

22   requiring the President to attend?

23       **THE COURT:**  I don't want anything that we decide to

24   have to be reviewed by the President which as I understand

25   university structure, this is the kind of decision that

*Motion Hearing*
*Wednesday, May 1, 2019*

Page 9

1   ultimately would have to be at least okayed by the President.

2          **MS. GORDON:**  Excuse me, Judge.  If I could just chime

3   in on one point here.  The reason this is set up the way it is

4   is that you ask Mr. Richards at the Status Conference these

5   very questions.  You wanted to know who was responsible for the

6   policy.  And he ended up saying after a discussion a little bit

7   of, some stuff we are hearing now, he did say ultimately it's

8   the President.

9          **MR. RICHARDS:**  That's not what I said.

10          **MS. GORDON:**  That was my recollection.

11          **THE COURT:**  Ms. Gordon, Ms. Gordon --

12          **MS. GORDON:**  Yes.

13          **THE COURT:**  And both of you, it doesn't matter what

14   was said at that conference.  I don't think there is any

15   dispute to the statement that I just made that the ultimate

16   authority in an university on a question of this kind of policy

17   has to be the President of the university.  Yes, he can

18   delegate.  Obviously, with such a large institution there are

19   all sorts of delegations made.  But I don't think he would

20   characterize himself as a figure head.  And I think he would,

21   and I would agree, that the person down the line in charge of

22   discipline or however it's structured knows more about the

23   day-to-day operation and so on.  But that person reports to the

24   President and the President will be here.

25          **MR. RICHARDS:**  Respectfully, your Honor, if the

*Motion Hearing*
*Wednesday, May 1, 2019*

Page 10

1   Court's concern is that the person at the conference will not

2   have authority to make an agreement without consulting with the

3   President, I can assure the Court that the person at the

4   conference will have that authority.

5            **THE COURT:**  I believe you 100 percent.

6            **MR. RICHARDS:**  That being the case --

7            **THE COURT:**  No, no.  I have not changed my mind

8   because while that person will have the authority, and it's

9   mildly surprising or more than mildly surprising you don't even

10  know who that person is or their job title, I want the

11  President here.  He will be here.

12           **MR. RICHARDS:**  Again, your Honor, I am asking the

13  Court to articulate the reason for the President being there in

14  light of the university's offer to produce somebody who will

15  have authority.

16           **THE COURT:**  I don't have to explain myself, but I

17  will.  And it's I think the President, part of his

18  qualifications for the job when he was hired and when he

19  continued in the job, is the public strict any that the

20  university is regularly under and he should be a part of this

21  parentheses so that he can defend whatever is dread to and

22  explain to the media, to the public, and perhaps most

23  importantly to the faculty and the students.  So he shall be

24  here.

25       I was tempted to quote an appellate judge I saw on C-Span

*Motion Hearing*
*Wednesday, May 1, 2019*

Page 11

1   once -- no, it wasn't that.  It was a Judge, an appellate Judge

2   when I was still practicing and he, the Judge, asked the

3   question, that I thought was very simple and I said this is the

4   answer.  Why wouldn't the person want the information that I

5   was asking for?  And the Judge pushed back in his seat so he

6   would be off microphone and said, I gave up the big bucks to

7   ask the questions, and you don't get to ask the questions.  I

8   waived that rule.  I answered your question.  And if you start

9   another sentence with again, I will again repeat myself.

10          **MR. RICHARDS:**  Josh Richards.  I understand the

11  Court.  I want to clarify that the Court is ordering that the

12  President appear.

13          **THE COURT:**  If you need to say that, that's fine.  If

14  you want me to put it in writing so the media has it, it will

15  be something like, the President has been requested to

16  participate in a discussion of a proposed rule and has chosen

17  not to appear.  Therefore, I order that he appear.  Is that

18  what you want?

19          **MR. RICHARDS:**  I am not asking the Court to put it in

20  writing.  I am simply asking the Court to make it clear so when

21  I explain it to my client I can explain to my client precisely

22  what the situation is.

23          **THE COURT:**  You can.  And I made it clear.  And you

24  can order a transcript.  I am asking that he participate so

25  that the result is not another two years of arguing about

*Motion Hearing*
*Wednesday, May 1, 2019*

Page 12

1    discovery in this case and every subsequent case and arguing

2    about timeliness of motions to dismiss or summary judgment or

3    anything else legalistic when my sense is that both sides have

4    a common goal and, that is, to provide fairness to the accuser

5    and fairness to the accused.

6            **MR. RICHARDS:**  Josh Richards.  I certainly degree

7    with the Court's final statement with respect to fairness.  And

8    in the light of the Court's order I have two additional, I

9    guess, procedural questions.  The first is if the purpose of

10   the conference in light of the fact that there is no pending

11   motion is to discuss resolution of the claims, then one of the

12   requests that I made in my first e-mail to your law clerk was

13   that the Court consider referring this matter to a colleague.

14   The claims in this case are sufficiently complex and frankly

15   uncertain at this point that I don't think it's outside the

16   realm of possibility that some questions in this case will be

17   for the Court.  And if that is the case, I think it would be

18   proper for another colleague of your Honor to facilitate the

19   discussion that your Honor is proposing that the parties have.

20           **THE COURT:**  Your request is noted.  What is your

21   second request?

22           **MR. RICHARDS:**  My second request is much more nuts

23   and bolts and it has to do with timing.  The 16th which the

24   Court has initially proposed as a date for the conference is as

25   we noted in my response the date of the meeting --

*18-11776; John Doe v. University of Michigan, et al.*

*Motion Hearing*
*Wednesday, May 1, 2019*

Page 13

1          **THE COURT:**  You can stop.  Here are the choices.

2    Tuesday May 21st at 11:30.  Is that available to you and your

3    client or do you have to check?

4          **MR. RICHARDS:**  I have to check, your Honor. I

5    apologize.

6          **THE COURT:**  Don't apologize.  You are not

7    clairvoyant.  If that is -- the other choice is Thursday,

8    May 23rd at 11:00 a.m.  So the first choice is at 11:30 on the

9    21st, and the second choice is the 23rd at 11:00.  And I trust

10   that one of those dates will be suitable for all of you.

11         **MR. RICHARDS:**  My first question -- Josh Richards for

12   the record.

13         **THE COURT:**  Pardon?

14         **MR. RICHARDS:**  My first request with respect to the

15   referral, your Honor --

16         **THE COURT:**  It's noted.  I am not going to refer it.

17   And please don't ask me why.  You don't want to hear why.  And

18   the reason is you would have to start -- you do want to hear

19   why.  The reason is whoever I referred it to would have to

20   start over in terms of understanding the scope of the

21   conference, the scope of at least the Doe case -- and this is a

22   jury trial, am I right?

23         **MS. GORDON:**  That's correct, Judge.

24         **THE COURT:**  There is nothing other than make work in

25   your suggestion.  And so it is denied but is noted on the

*Motion Hearing*
*Wednesday, May 1, 2019*

Page 14

1  record.

2          **MR. RICHARDS:**  With respect to those due dates, your

3  Honor, the May 21st date and the May 23rd date, in the event

4  there is a conflict on the university's end with respect to

5  some portion of that time, would attending by telephone be an

6  option?

7          **THE COURT:**  No.  That is an easy question.  It's not

8  like you are a plane trip away.  I won't tell you how fast I

9  used to be able to get to U of M.

10          **MR. RICHARDS:**  Again, your Honor --

11          **THE COURT:**  It's less than an hour.

12          **MR. RICHARDS:**  I wasn't referring to counsel.  I was

13  referring to the President.

14          **THE COURT:**  I know.  I am referring to Ann Arbor's

15  relationship to Detroit. Counsel, he chose to have an Ann

16  Arbor/Detroit case.  I am talking about your client,

17  specifically, the President.

18          **MR. RICHARDS:**  I understand, your Honor.

19          **THE COURT:**  Let me say this.  This should be more

20  important to him than almost anything going on at the

21  university.  I understand the importance of the Board Meeting,

22  Regents meeting, and that is why I have no problem giving

23  alternative dates.  But I am not sure I would understand

24  anything else being more important than resolving what is a hot

25  button issue at every university in this country.  So,

*Motion Hearing*
*Wednesday, May 1, 2019*

Page 15

1   therefore, I would be looking for a very strong excuse for him

2   not to be able to come on one of those two dates.  And the

3   question might be, which of the dates is more convenient for

4   the plaintiff lawyer because your client could come on either

5   date.  Anything else?

6        **MS. GORDON:**  No, Judge.  Plaintiff will make –– we

7   will make ourselves available whenever the date –– either date

8   we are available we will clear our schedules if need be.

9   Whatever will work for everybody else is fine.

10        **THE COURT:**  All right.  Anything from the defense?

11        **MR. RICHARDS:**  No, your Honor.

12        **THE COURT:**  Thank you.

13        **MS. GORDON:**  Thank you for your time, Judge.

14                    –   –   –

15

16

17

18

19

20

21

22

23

24

25

*18-11776; John Doe v. University of Michigan, et al.*

1          **C E R T I F I C A T I O N**

2              I, Lawrence R. Przybysz, official court reporter

3      for the United States District Court, Eastern District of

4      Michigan, Southern Division, appointed pursuant to the

5      provisions of Title 28, United States Code, Section 753,

6      do hereby certify that the foregoing is a correct

7      transcript of the proceedings in the above-entitled cause

8      on the date hereinbefore set forth.

9              I do further certify that the foregoing

10     transcript has been prepared by me or under my direction.

11

12     s/Lawrence R. Przybysz

13     Official Court Reporter

14     Date: May 3, 2019

15                                    -    -    -

16

17

18

19

20

21

22

23

24

25

*18-11776; John Doe v. University of Michigan, et al.*

# Exhibit B

Case 2:18-cv-11776-AJT-EAS ECF No. 44-1 filed 05/06/19 PageID.1314 Page 21 of 26
Sequal Technologies, Inc. v. Stern, Not Reported in F.Supp.2d (2012)
2012 WL 474464

2012 WL 474464
Only the Westlaw citation is currently available.
United States District Court,
S.D. California.

SEQUAL TECHNOLOGIES, INC., Plaintiff,

v.

Michael STERN, Digiflo, Inc., Defendants.

Civil No. 10cv2655 DMS (NLS).
|
Docket No. 55.
|
Feb. 14, 2012.

ORDER DENYING EX PARTE MOTION
FOR EQUAL PARTICIPATION OR
CANCELLATION OF FEBRUARY 22,
2012, NOVEMBER 28, 2012 CASD COURT
MANDATORY SETTLEMENT CONFERENCE

NITA L. STORMES, United States Magistrate Judge.

I. INTRODUCTION

**\*1** On June 20, 2011, the Court conducted an
Early Neutral Evaluation ("ENE") but the case did
not settle. [Docket No. 21.] On June 23, 2011, the
Court issued a Scheduling Order that set Mandatory
Settlement Conference Dates for February 22, 2012 and
November 28, 2012. [Docket No. 22.] On February 13,
2012, Defendant Michael Stern ("Stern"), delivered to
chambers an Ex Parte Motion for Equal Participation or
Cancellation of February 22, 2012, November 28,
2012 CASD Court Mandatory Settlement Conference. [1]
[Docket No. 55, ("Ex Parte Motion").]

---

[1]     Chambers staff forwarded the Ex Parte Motion to the
clerk's office with directions that it be filed. Defendant
Stern is specifically informed that chambers staff will
not redirect chambers copies for filing in the future.
Defendant Stern must file properly with the court any
future court documents.

Stern notes that he attended the ENE in this case on behalf
of himself and as President of Defendant Digiflo, Inc.
("Digiflo" collectively "Defendants"). Stern then claims
that the ENE failed because Sequal "representatives had
no economic authority, related to the economic affairs

of their company." [Ex Parte Motion at 2.] Similarly,
Stern argues that Sequal "uses the CASD court as a
financial pressure tool on Digiflo & myself, to have
our legal expenses to be [sic] as high as possible."
Finally, Stern claims that "Plaintiff plan [sic] is to only
show fake and inexpensive representation at mandatory,
tax payer financed, settlement conferences." [*Id.*] Based
on these assertions, Stern asks the court to: 1)
Order Sequal to bring its President or CEO to the
Mandatory Settlement Conference; 2) Consider cancelling
the Mandatory Settlement Conferences; 3) Order Sequal
to pay for Defendants expenses in attending the
Mandatory Settlement Conferences; and 4) to allow the
DigiFLO attorney to attend the Mandatory Settlement
Conferences by telephone.

On February 13, 2012, Plaintiff Sequal Technologies, Inc.
("Sequal") filed an Opposition to the Ex Parte Motion.
[Docket No. 56.] For the foregoing reasons, the Ex Parte
Motion is Denied.

II. DISCUSSION

A. Stern Failed to Meet and Confer

The Chambers Rules state: "Appropriate ex parte
applications must ... include a description of the dispute,
the relief sought, reasonable and appropriate notice to the
opposition and an attempt to resolve the dispute
without the court's intervention." [Chambers Rules at
1.] Stern provides no statement that he attempted to
resolve the dispute without court intervention. Sequal
states that it was provided no notice that Stern would be
seeking to: 1) vacate the November Mandatory Settlement
Conference; 2) require particular Sequal representatives
at the Mandatory Settlement Conference; 3) force Sequal
to pay his costs to attend the Mandatory Settlement
Conference; or 4) excuse personal attendance of defense
counsel. [Opp at 3.] Accordingly, Stern failed to follow
chambers rules and did not adequately meet and confer
prior to submitting the Ex Parte Motion. The Ex Parte
Motion could be denied on this ground alone. The Court
will, nonetheless, address the substance of the Ex Parte
Motion.

B. Stern Failed to Provide Good Cause for the Relief
Requested

### 1. *No Good Cause Exists to Allow Stern to Choose Sequal's Representative*

**\*2** Stern first argues that Sequal should be forced to bring its President or CEO to the Mandatory Settlement Conference, based on an assertion that Sequal did not bring an appropriate representative to the ENE. The Order setting the ENE required: "In addition to counsel who will try the case, a party or party representative with full settlement authority must be present for the conference. In the case of a corporate entity, an authorized representative of the corporation who is not retained outside counsel must be present and must have discretionary authority to commit the company to pay an amount up to the amount of the plaintiff's prayer (excluding punitive damage prayers)." [Docket No. 20.] The ENE was attended by Matthew Klaben, Vice President, General Counsel and Secretary of Sequal, who possessed full settlement authority. [Opp. at 2.] There is nothing in the court record to indicate that Sequal failed in any way to comply with the Court Order. Accordingly, there is no good cause to require Sequal to bring any particular representative to the Mandatory Settlement Conference, so long as the representative it chooses has the requisite authority.

### 2. *No Good Cause Exists to Vacate the Mandatory Settlement Conferences*

Stern next argues that the February and November Mandatory Settlement Conferences should be vacated. As Sequal argues in Opposition, Stern presents no good cause for cancelling either the February or November Mandatory Settlement Conferences. Stern has simply asserted that Sequal intends to "only show fake and inexpensive representation" at the Mandatory Settlement Conference. Stern offers nothing to support this assertion. [2] Moreover, the Court, not Sequal, has ordered that the Mandatory Settlement Conferences take place and has determined that settlement conferences at these times would be valuable. Accordingly, Stern's allegations regarding Sequal's motivations in relation to

the costs of this lawsuit are not relevant and good cause is lacking to cancel the Mandatory Settlement Conferences.

[2]      Stern attached a document from Sequal, claiming it shows "plaintiff uses the CASD court as a financial pressure tool" [Ex Parte Motion, Ex. A.] Sequal asserts that Stern has improperly attached a settlement communication. The Court is without sufficient information as to whether the communication was improperly attached and expresses no opinion on that question. The Court does, however, note that it draws no inference from this communication that Sequal acted in any improper manner.

### 3. *No Good Cause Exists to Force Sequal to Cover Stern's Costs*

Stern also asks the Court to order Sequal to finance Defendants' costs of appearing at the Mandatory Settlement Conference. As Sequal argues, Defendants present no justification for the request to be relieved of the normal costs of defending a lawsuit.

### 4. *No Good Cause Exists to Allow Digiflo's Counsel to Appear Telephonically*

Finally, Defendants seek to allow Digiflo's counsel to appear by telephone at the Mandatory Settlement Conference. The only reason given is to "reduce our costs." As noted above, Defendants have provided no good cause why they should be relieved of the ordinary costs of defending this lawsuit.

### III. CONCLUSION

For the reasons stated above, and Good Cause Not Appearing, It Is Hereby Ordered that the Ex Parte Motion is DENIED in its entirely.

IT IS SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 474464

---

**WESTLAW**    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Turner v. City of Detroit, Not Reported in F.Supp.2d (2012)

2012 WL 4839139, 116 Fair Empl.Prac.Cas. (BNA) 428

2012 WL 4839139
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Pamela Willis TURNER, Plaintiff,
v.
CITY OF DETROIT, Defendant.

Civil Action No. 11–12961.
|
Oct. 11, 2012.

**Attorneys and Law Firms**

Alice B. Jennings, Edwards & Jennings, Detroit, Felicia Duncan Brock, I.A.B. Attorneys At Law, Dearborn, MI, for Plaintiff.

June C. Adams, Detroit, MI, for Defendant.

*OPINION AND ORDER DENYING BING'S MOTION FOR RECONSIDERATION AND EMERGENCY MOTION TO STAY DEPOSITION (DKT.NOS.39, 40)*

MARK A. RANDON, United States Magistrate Judge.

 **\*1** Two motions are before the Court: (1) Dave Bing's motion for reconsideration of this Court's September 13, 2012 Order granting Plaintiff's motion to compel his deposition (Dkt. No. 39) and Bing's emergency motion to stay his deposition (Dkt. No. 40). The Court has reviewed the parties submissions (Dkt. Nos. 39, 40, 42, 43, 46, 49 and 51); a phone conference with counsel was held on October 9, 2012. Being otherwise fully advised, for the reasons indicated below, the Court: (1) denies the motions for reconsideration and stay of deposition; and (2) modifies its April 6, 2012 order to further limit the parameters of Bing's deposition.

# I. BACKGROUND

On July 8, 2011, Plaintiff Pamela Turner filed this action for sex discrimination in violation of the Equal Pay Act and Michigan's Elliott Larsen Civil Rights Act. In an Amended Complaint (Dkt. No. 18), Plaintiff added claims of race discrimination. Plaintiff, an AfricanAmerican woman, was an executive level mayoral appointee holding the positions of Interim Director, and then Director, of Detroit's Water and Sewerage Department. Plaintiff alleges that she was paid significantly less than the two males who preceded her in the position and the white female who was hired after her departure. Plaintiff says that, on more than one occasion, she personally discussed her salary with Bing, Detroit's Mayor, and that Bing "directly made the decisions regarding [her] appointment and salary" (Dkt. No. 33, p. 2, ¶ 5).

After Defendant refused to produce Bing for a deposition, Plaintiff moved to compel. Following a hearing on April 6, 2012, this Magistrate Judge ordered Plaintiff to first submit interrogatories directed to Bing and to proceed with a deposition—limited to two hours— only if necessary after reviewing Bing's responses (Dkt. No. 25). Defendant produced Bing's responses to the interrogatories. Unsatisfied with Bing's answers, Plaintiff again demanded Bing's deposition; Defendant refused and Plaintiff filed a second motion to compel. Defendant failed to respond to this second motion and did not appear on the hearing date. On September 13, 2012, having reviewed Plaintiff's unopposed second motion, this Magistrate Judge ordered Bing to appear for deposition within fourteen days and sanctioned Defendant $1200.00. Bing's motions followed. [1]

---

[1]     Bing is represented by Miller, Canfield, Paddock and Stone. Citing its governing charter, the City of Detroit objects to Miller Canfield's "special appearance" on Bing's behalf (Dkt. No. 46).

# II. ANALYSIS

Fed.R.Civ.P. 26(b) controls the scope of discovery, unless otherwise limited by order of the court. The Rule provides in pertinent part that:

> Parties may obtain discovery regarding **any** nonprivileged matter that is relevant to any party's claim or defense ... For good cause, the court may order discovery of any matter relevant to the subject matter

2012 WL 4839139, 116 Fair Empl.Prac.Cas. (BNA) 428

involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1), emphasis added.

Similarly, Fed.R.Civ.P. 30 provides for broad access to persons during the discovery process. It says, in pertinent part:

**\*2 (a) When a Deposition May Be Taken**

(1) A party may by oral questions depose any person, including a party, without leave of court except as provided in Rule 30(a)(2). The deponent's attendance may be compelled by subpoena under Rule 45.

Fed.R.Civ.P. 30(a)(1).

Notwithstanding Rules 26(b) and 30, Bing says that he is not subject to deposition because, as Detroit's Mayor, he is a high-ranking official subject to the "apex doctrine." Bing cites *Devlin v. Chemed Corp.,* No. 04–74192, 2005 WL 2313859 (E.D.Mich. Sept.21, 2005); *Thomas v. International Business Machines,* 48 F.3d 478, 483–84 (10th Cir.1995)) and *Lewelling v. Farmers Ins. of Columbus, Inc.,* 879 F.2d 212, 218 (6th Cir.1989) as support for this proposition. "[T]he apex doctrine is the application of the rebuttable presumption that the deposition of a high-ranking corporate executive either violates Rule 26(b)(2)(C)'s proportionality standard or, on a party's motion for a protective order, constitutes "good cause" for such an order as an "annoyance" or "undue burden" within the meaning of Rule 26(c)(1). Should the deposing party fail to overcome this presumption, the court must then limit or even prohibit the deposition." *Performance Sales & Marketing LLC v. Lowes Companies, Inc.,* No. 5:07–CV–00140, 2012 WL 4061680 \* 4 (W.D.N.C. Sept. 14, 2012)

In *United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941), the Supreme Court indicated that the practice of calling high ranking government officials as witnesses should be discouraged. Relying on *Morgan,* other courts have concluded that "top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons

for taking official action." *Simplex Time Recorder Co. v. Sec 'y of Labor,* 766 F.2d 575, 586 (D.C.Cir.1985); *see also In re United States (Holder ),* 197 F.3d 310, 313 (8th Cir.1999); *In re FDIC,* 58 F.3d 1055, 1060 (5th Cir.1995); *In re United States (Kessler),* 985 F.2d 510, 512 (11th Cir.1993).* This rule is based on the notion that "high ranking government officials have greater duties and time constraints than other witnesses" and that, without appropriate limitations, such officials will spend an inordinate amount of time addressing pending litigation. *Kessler,* 985 F.2d at 512. But, this rule is has limits. The Court may permit depositions of high ranking officials where the official has first-hand knowledge related to the claim being litigated. *See Lewelling,* 879 F.2d at 21 (upholding the issuance of a protective order and sanctions against the plaintiff who sought to depose a corporate CEO who had no knowledge of facts pertinent to the plaintiff's claims, unless the CEO agreed to meeet to discuss settlement); *see also Baine v. Gen. Motors Corp.,* 141 F.R.D. 332, 335 (M.D.Ala.1991); *Church of Scientology of Boston v. IRS,* 138 F.R.D. 9, 12 (D.Mass.1990); *Cmty. Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.,* 96 F.R.D. 619, 621 (D.D.C.1983). However, even in such cases, discovery is permitted only where it is shown that other persons cannot provide the necessary information. *Holder,* 197 F.3d at 314.

**\*3** This Magistrate Judge finds no palpable defect in its Orders of April 6, 2012 and September 13, 2012 that would require a different result. [2] Plaintiff was Bing's choice to head the Detroit Water and Sewerage Department; she has also demonstrated that Bing has knowledge of the pertinent facts related to her claims and may have unique information regarding her salary. However, given Bing's lengthy responses to Plaintiff's interrogatories, and his time constraints as Mayor of Detroit, Bing's deposition shall be further limited to one (1) hour in duration. Bing's deposition must also be taken before or after regular business hours and take place at the Mayor's Offices. [3] With these limitations, Bing must be produced for deposition **on or before October 26, 2012.** In all other respects, the September 13, 2012 Order of this Magistrate Judge stands [4], subject to objection before the District Judge.

[2]     Motions for reconsideration may be granted pursuant to E.D. Mich. LR 7.1(g)(1) when the moving party shows (1) a "palpable defect," (2) that misled the court

2012 WL 4839139, 116 Fair Empl.Prac.Cas. (BNA) 428

and the parties, and (3) that correcting the defect will result in a different disposition of the case. E.D. Mich. LR 7.1(g)(3). A "palpable defect" is a defect which is obvious, clear, unmistakable, manifest, or plain. *Mich. Dep't of Treasury v. Michalec, 181 F.Supp.2d 731, 734 (E.D.Mich.2002)* (citations omitted). However, motions for reconsideration should not be granted when they "merely present the same issues ruled upon by the court, either expressly or by reasonable implication." E.D. Mich. LR 7.1(g)(3).

3        Bing may be represented by Miller Canfield at this deposition. The Court makes no finding as to

the propriety of Mayoral representation by outside counsel (without law department approval) going forward.

4        Defendant must pay the $1200 sanctions **on or before October 31, 2012.**

It is so ordered.

## All Citations

Not Reported in F.Supp.2d, 2012 WL 4839139, 116 Fair Empl.Prac.Cas. (BNA) 428

---

**End of Document**                              © 2019 Thomson Reuters. No claim to original U.S. Government Works.

   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:13-cv-11176-AJT-EAS ECF No. 44-1 filed 05/06/19 PageID.1319 Page 26 of 26
United States v. Harper, Not Reported in F.Supp.3d (2016)
2016 WL 465495

2016 WL 465495
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan, Southern Division.

United States of America, Plaintiff/Respondent,
v.
James O. Harper, Defendant/Petitioner.

Criminal Case No. 13-20246
|
Civil Case No. 14-14385
|
Signed 02/08/2016

**Attorneys and Law Firms**

Kenneth R. Chadwell, U.S. Attorney's Office, Detroit, MI, for Plaintiff/Respondent.

David I. Lee, Detroit, MI, for Defendant/Petitioner.

## ORDER DENYING MOTION FOR RECONSIDERATION

Sean F. Cox, United States District Judge

**\*1** On January 15, 2016, this Court issued an Opinion & Order denying Petitioner a § 2255 motion filed by Defendant/Petitioner James O. Harper. On January 29, 2015, Petitioner filed a Motion for Reconsideration. (Docket Entry No. 62).

Motions for reconsideration in civil cases are governed by Local Rule 7.1 of the Local Rules of the Eastern District of Michigan, which provides:

> (3) Grounds. Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled

upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

*See* Eastern District of Michigan Local Rule 7.1(h)(3). A motion for reconsideration does not afford a movant an opportunity to present the same issues that have been already ruled on by the court, either expressly or by reasonable implication. Nor does a motion for reconsideration afford the movant an opportunity to make new arguments that could have been, but were not, raised before the Court issued its ruling.

Unless the Court orders otherwise, no response to a motion for reconsideration is permitted and no hearing is held. Eastern District of Michigan Local Rule 7.1(h) (3). This Court concludes that, with respect to Harper's Motion for Reconsideration, neither a response brief nor a hearing is necessary.

Again, in order to grant a motion for reconsideration, the movant must demonstrate a palpable defect by which the court has been misled and must also show that correcting the defect will result in a different disposition of the case. After reviewing Harper's Motion for Reconsideration, this Court concludes that Harper has not met that standard.

Accordingly, the Court ORDERS that Harper's Motion for Reconsideration is DENIED.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 465495

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.