UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JOHN DOE**, *an individual*,

Plaintiff,

vs.

**UNIVERSITY OF MICHIGAN** (as to Title IX violations), **BOARD OF REGENTS OF THE UNIVERSITY OF MICHIGAN**, *a constitutional corporate body* (as to Title IX & ELCRA violations), **PAMELA HEATLIE**, **ROBERT SELLERS**, **MARTIN PHILBERT**, **ERIK WESSEL**, **LAURA BLAKE JONES**, **E. ROYSTER HARPER**, **SUZANNE MCFADDEN**, and **PAUL ROBINSON**, *employees of the University of Michigan*, *sued in his or her personal and official capacities*, *jointly and severally*,

Defendants.

Case No.: 18-cv-11776
Hon. Arthur J. Tarnow
Mag. Elizabeth A. Stafford

> **PLAINTIFF'S MOTION FOR AWARD OF INTERIM ATTORNEY FEES AND COSTS AS TO HIS DUE PROCESS CLAIM**

---

**DEBORAH GORDON LAW**
**Deborah L. Gordon (P27058)**
**Elizabeth A. Marzotto Taylor (P82061)**
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

**SAUL EWING ARNSTEIN & LEHR LLP**
Joshua W. B. Richards
Amy L. Piccola
*Attorneys for Defendants*
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102
(215) 972-7737
Joshua.richards@saul.com
Amy.piccola@saul.com

**MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.**
Brian M. Schwartz (P69018)
*Attorney for Defendants*
150 W. Jefferson, Suite 2500
Detroit, Michigan 48226
(313) 963-6420
schwartzb@millercanfield.com

NOW COMES Plaintiff, by and through his attorneys Deborah Gordon Law, and files his Motion for Imposition of Interim Attorney Fees and Costs as to his Due Process Claim only for the following reasons:

1.      On September 25, 2017, the United States Court of Appeals for the Sixth Circuit issued its Opinion in *Doe v. Univ. of Cincinnati* ("*Cincinnati*"), 872 F.3d 393 (6th Cir. 2017), holding that where credibility is at stake, a live hearing and cross-examination of some type is required.

2.      On February 7, 2018, the University issued a new Sexual Misconduct Policy. The Policy did not comply with *Cincinnati* in that it did not provide for a live hearing or any form of cross-examination.

3.      On March 12, 2018, a female student filed an OIE complaint against Plaintiff, alleging that Plaintiff had a sexual encounter with her that was not consensual. Plaintiff states that it was consensual. There were no witnesses to the encounter.

4.      The University began an adjudication of the OIE complaint using the unconstitutional February 7, 2018 Policy.

5.      By April 2018, Plaintiff had earned all of the credits to graduate *cum laude* with a degree in engineering. The investigation was ongoing. But based only on a mere allegation and no findings, the University placed a hold of indefinite duration on his degree and transcript.

1

6.  On June 4, 2018, Plaintiff filed this lawsuit against Defendants based on the violation of his due process rights.

7.  On June 5, 2018, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction [Dkt. # 4], requesting that this Court immediately enjoin Defendants from: 1) withholding Plaintiff's official transcript and degree; 2) continuing their unconstitutional investigation into whether Plaintiff violated the Policy, as well as the sanctions and appeals process under the Policy; and 3) continuing to use their unconstitutional Policy.

8.  In addition, Doe sought leave to use a pseudonym in this case (Motion to Proceed Under Pseudonym, RE 2, Page ID # 95-108). Defendants punitively fought the use of a pseudonym in an effort to deny Plaintiff privacy, causing him further harm, and to discourage him and others from pursuing litigation. (Response to Motion to Proceed Under Pseudonym, RE 7, Page ID # 229-238).

9.  On June 14, 2018, this Court granted Plaintiff's Motion as to his demand that the University release and provide him with his transcript. This Court further held the remaining issues to be decided after a hearing. (Dkt. # 19, Page ID # 269-270).

10. On July 6, 2018, this Court, after hearing the remaining issues in Plaintiff's TRO, granted in part and denied in part Plaintiff's Motion (Dkt. # 30, Page ID # 726-744). The Court ordered that the University provide Plaintiff "with

the procedures set forth in its Statement of Student Rights and Responsibilities, excluding the provision in Stage 2, ¶ C, which authorizes the respondent to question the complainant directly" (*Id*., Page ID # 744). This Court explained that "Plaintiff may question Claimant through the RO, RC, or Student Resolution Panel" only (*Id*).

11.     On July 25, 2018, Defendants appealed this Court's July 6, 2018 Order granting Plaintiff's preliminary injunction [Dkt. # 32, Page ID # 818-820] to the United States Court of Appeals for the Sixth Circuit [Case No. 18-1870].

12.     On August 7, 2018, Plaintiff cross-appealed the same Order, which denied him the opportunity to cross-examine witnesses during a live hearing [Dkt. # 36, Page ID # 1067-1069], to the Sixth Circuit [Case No. 18-1903].

13.     On August 22, 2018, this Court granted Defendants' Motion to Stay Pending Appeal [Dkt. # 41, Page ID 1260-1262].

14.     On September 7, 2018, in *Doe v. Baum, et al*, 903 F.3d 575 (6th Cir. 2018),  the Sixth Circuit issued its Opinion, holding in pertinent part, that Defendants' Policy, similar to that used to adjudicate the complaint brought against Plaintiff beginning on March 20, 2018, violated well-established due process standards, and finding:

> "if a public university has to choose between competing narratives to resolve a case, **the university must give the accused student or his agent an opportunity to cross-examine the accuser and adverse witnesses in the presence of a neutral fact-finder**. **Because the**

**University of Michigan failed to comply with this rule, we reverse**." *Doe v. Baum*, 903 F.3d 575, 578 (6th Cir. 2018) (emphasis added).

15.    On September 24, 2018, Defendants filed a Petition for Rehearing and Rehearing *En Banc* in *Baum*, [Case No. 17-2213, RE 49-1, p. 5-6], and argued that 1) the Court's holding conflicted with the Court's prior decisions; and 2) the Court's determination that Plaintiff satisfied the pleading requirements for stating an "erroneous outcome" claim under Title IX, 20 U.S. C. §1681(a) conflicted with the Court's prior decisions, drastically lowered Title IX pleading requirements and contradicted the record evidence.  The Court denied the University's Petition on October 11, 2018. (Case No. 17-2213, RE 56-1).

16.    On October 11, 2018, the Court denied the University's Petition. (Case No. 17-2213, RE 56-1).

17.    In the instant matter and in an additional attempt to stop case from moving forward, Defendants argued to the Sixth Circuit that Plaintiff lacked standing and that his claims were not "ripe." (RE 23).

18.    On January 9, 2019, under pressure from this Court's July 6, 2018 Order and after the *Baum* decision, the University replaced its unconstitutional 2018 Policy adjudicating sexual misconduct allegations with a 2019 "Interim Policy," because, as publicly conceded by University President Mark Schlissel on January 29, 2019, "the current law," required such a policy change.

19.     On April 10, 2019, the Sixth Circuit issued its Order [RE 35-1] vacating this Court's preliminary injunction, which restricted Plaintiff's ability to cross-examine all witnesses during the University's hearing process, and remanding the case for reconsideration in light of *Baum* and the University's 2019 Interim Policy, and never addressed the University's standing and ripeness argument.

20.     In any action to enforce a provision of 42 USC § 1983, § 1988 of that title permits the court to allow the prevailing party reasonable attorney fees if he succeeds on any significant issue in litigation which achieves some of the benefit he sought in bringing the lawsuit. *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)).

21.     The Supreme Court has held that a prevailing party should be awarded reasonable attorney fees "unless special circumstances would render such an award unjust." *Id.* at 429 (internal citations omitted).

22.     Accordingly, 42 USC § 1988(b) permits a court to award interim attorney fees to a prevailing party, even where a final decision in the case has yet to be rendered.

23.     An award of interim attorneys' fees is appropriate even during the pendency of litigation where: "the court has entered a concrete order that 'determines substantial rights of the parties,' meaning 'when a party has prevailed

on the merits of at least some of his claims.'" *Webster v. Sowders*, 846 F.2d 1032, 1036 (6th Cir. 1988) (citing *Hanrahan v. Hampton*, 446 U.S. 754, 757-58 (1980) (per curiam) (quoting *Bradley v. Richmond Sch. Bd.*, 416 U.S. 696, 723 n.28, (1974))).

24.    Based on Orders that have been made by this Court and Plaintiff's success on the merits, which are now permanent, Plaintiff is entitled to an award of interim attorney fees and costs.

25.    Plaintiff sought Defendants' concurrence for this Motion on May 21, 2019.

WHEREFORE, Plaintiff requests that this Honorable Court enter an Order holding that Plaintiff is a prevailing party for the purposes of obtaining an interim fee award, and accordingly that Plaintiff is entitled to an award of interim attorney fees and costs including:

A. Attorney fees (Deborah Gordon Law) in the amount of $109,246.5.
   **Exhibit A**.

B. Costs (Deborah Gordon Law) in the amount of $3,737.62. **Exhibit B.**

Plaintiff further requests oral argument regarding the relief requested in the instant Motion and Brief.

Dated:  May 23, 2019                    Respectfully submitted,

                                        **DEBORAH GORDON LAW**
                                        /s/Deborah L. Gordon (P27058)
                                        Elizabeth A. Marzotto Taylor (P82061)

Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JOHN DOE**, *an individual*,

Plaintiff,

vs.

**UNIVERSITY OF MICHIGAN** (as to Title IX violations), **BOARD OF REGENTS OF THE UNIVERSITY OF MICHIGAN**, *a constitutional corporate body* (as to Title IX & ELCRA violations), **PAMELA HEATLIE**, **ROBERT SELLERS**, **MARTIN PHILBERT**, **ERIK WESSEL**, **LAURA BLAKE JONES**, **E. ROYSTER HARPER**, **SUZANNE MCFADDEN**, and **PAUL ROBINSON**, *employees of the University of Michigan*, *sued in his or her personal and official capacities*, *jointly and severally*,

Defendants.

Case No.: 18-cv-11776
Hon. Arthur J. Tarnow
Mag. Elizabeth A. Stafford

> **PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION FOR AWARD OF INTERIM ATTORNEY FEES AND COSTS AS TO HIS DUE PROCESS CLAIM**

| | |
|---|---|
| **DEBORAH GORDON LAW**<br>**Deborah L. Gordon (P27058)**<br>**Elizabeth A. Marzotto Taylor (P82061)**<br>Attorneys for Plaintiff<br>33 Bloomfield Hills Parkway, Suite 220<br>Bloomfield Hills, Michigan 48304<br>(248) 258-2500<br>dgordon@deborahgordonlaw.com<br>emarzottotaylor@deborahgordonlaw.com | **SAUL EWING ARNSTEIN &<br>LEHR LLP**<br>Joshua W. B. Richards<br>Amy L. Piccola<br>*Attorneys for Defendants*<br>1500 Market Street, 38th Floor<br>Philadelphia, Pennsylvania  19102<br>(215) 972-7737<br>Joshua.richards@saul.com<br>Amy.piccola@saul.com<br><br>**MILLER, CANFIELD, PADDOCK<br>AND STONE, P.L.C.**<br>Brian M. Schwartz (P69018)<br>*Attorney for Defendants*<br>150 W. Jefferson, Suite 2500<br>Detroit, Michigan  48226<br>(313) 963-6420<br>schwartzb@millercanfield.com |

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ......................................................................................................

I.      Introduction ..............................................................................................1

II.     Statement of Facts.....................................................................................1

III.    Legal Standard to Obtain Interim Fees ....................................................6

IV.     Argument ..................................................................................................8

        A.      Plaintiff Prevailed on his Due Process Claim.................................9

                1.      There Have Been Concrete Orders That "Determine Substantial
                        Rights of the Parties.............................................................9

                2.      This Court's Rulings Have Resulted in a Judicially Sanctioned
                        Change in the Parties' Relationship ......................................10

V.      Plaintiff's Reasonable Attorney Fees and Costs...........................................11

        A.      Plaintiff's Lodestar Amount ........................................................12

                1.      The Customary Fee .............................................................13

                2.      Time and Labor Involved......................................................15

                3.      The Amount Involved and the Results Achieved ...................17

                4.      The Difficulty of the Case and the Skill Requisite to Perform
                        the Legal Service Properly ...................................................17

                5.      The Undesirability of the Case.............................................18

                6.      The Nature and Length of the Professional Relationship With
                        the Client ............................................................................19

        B.      Adjustments to Plaintiff's Lodestar Amount..................................19

VI.     Conclusion ................................................................................................20

Certificate of Service.................................................................................................21

# INDEX OF AUTHORITIES

**Cases**                                                                                                   **Page**

*Adcock-Ladd v. Sec'y of Treasury*,
   227 F.3d 343 (6th Cir. 2000) ........................................................................19

*Blair v. Harris*,
   993 F.Supp.2d 721 (E.D. Mich. 2014) ...................................................... 12, 19

*Blanchard v. Bergeron*,
   489 U.S. 87, 92 (1989)............................................................................ 12, 19

*Blum v. Stenson*,
   465 U.S. 886 (1984)................................................................................. 12, 13

*Bradley v. Richmond Sch. Bd.*,
   416 U.S. 696 (1974).....................................................................................6, 7

*Buckhannon Bd. of Care Home, Inc.*
   532 U.S. 598 (2001)........................................................................................7

*Doe v. Baum, et al*,
   903 F.3d 575 (6th Cir. 2018) ..........................................................................4

*Doe v. Univ. of Cincinnati*,
   872 F.3d 393 (6th Cir. 2017) ........................................................ 1, 2, 4, 9, 16

*Flagg v. City of Detroit*,
   2011 WL 6131073 (E.D. Mich. 2011)............................................................15

*Geier v. Sundquist*,
   372 F.3d 784, 791 (6th Cir. 2004) ........................................................... 12, 13

*Hamlin v. Charter Township of Flint*,
   165 F.3d 426 (6th Cir. 1999) .........................................................................13

*Hanrahan v. Hampton*,
   446 U.S. 754 (1980).........................................................................................6

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983)......................................................................... *passim*

*Johnson v. Georgia Highway Exp., Inc.,*
   488 F.2d 714 (5th Cir. 1974) .............................................................18

*Lee v. Eller,*
   No. 2:13-cv-87, 2015 WL 1286038, at *1 (S.D. Ohio Mar. 20, 2015) ................8

*Lefemine v. Wideman,*
   568 U.S. 1, 4 (2012).......................................................................7

*McQueary v. Conway,*
   614 F.3d 591 (6th Cir. 2010) .........................................................6, 8

*Nadeau v. Helgemoe,*
   581 F.2d 275 (1ˢᵗ Cir. 1978)..............................................................7

*Ne. Ohio Coal. For the Homeless v. Hustead,*
   831 F.3d 686 (6ᵗʰ Cir. 2016) ............................................................12

*Perdue v. Kenny A. ex rel. Winn,*
   559 U.S. 542 (2010)......................................................................11

*Sitz v. Michigan State Police,*
   443 Mich. 744 (1993) ....................................................................14

*Tex. State Teachers Ass'n v. Garland Independent School Dist.,*
   489 U.S. 782 (1989).......................................................................6

*Webster v. Sowders,*
   846 F.2d 1032 (6th Cir. 1988) .................................................. 6, 7, 8, 9

*Woods v. Willis,*
   631 F. App'x 359 (6th Cir. 2015)............................................. 7, 10, 11

**Other Authorities**
42 USC § 1983, § 1988........................................................................6
42 USC § 1988(b) .............................................................................7

## I.    Introduction

Defendants wrongfully and unconstitutionally withheld Plaintiff's engineering degree based on a mere allegation against him filed by another student. Defendants then attempted to adjudicate the complaint against Plaintiff under a procedure that did not provide constitutional due process and that could result in the deprivation of his property and liberty interest.

In response, Plaintiff was forced to file a lawsuit against the University for violating his due process rights and to prevent the University from continuing to use their unconstitutional process and procedure. As set forth below, Plaintiff has achieved significant success on the merits and has changed the legal standing between the parties. Now, having returned to this Court from the Sixth Circuit, Plaintiff seeks an award of interim attorney fees and costs.

## II.    Statement of Facts

On September 25, 2017, the United States Court of Appeals for the Sixth Circuit issued its Opinion in *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017). The ruling required that where credibility is at stake, a live hearing and cross-examination of some type is required.

The University of Michigan's Statement of Student Rights and Responsibilities ("Statement") had long provided students accused of misconduct a full hearing and the opportunity to cross-examine the opposite party and all

1

witnesses in front of the ultimate fact finder.  The University excluded students accused of "sexual misconduct" from due process provided in the Statement.  The University created a separate policy ("Policy") for "sexual" misconduct and precluded a live hearing or any form of cross-examination and provided for private, unrecorded interviews by the investigator. (Policy, RE 4-2, Page ID 206-216).

On March 12, 2018, a female student filed an OIE complaint against Plaintiff, alleging that Plaintiff had a nonconsensual sexual encounter with her. Plaintiff states that it was consensual.  There were no witnesses to the encounter. Defendants used their unconstitutional, February 7, 2018 Policy, which did not comport with *Cincinnati*, to adjudicate the complaint brought against Plaintiff, beginning on March 20, 2018.

By April 2018, Plaintiff had earned all of the credits to graduate *cum laude* with a degree in engineering. But based only on a mere allegation and with no finding, the University placed an indefinite hold on Plaintiff's degree and transcript.  Plaintiff was then forced to hire an attorney and file a federal Complaint against Defendants for violating his due process rights, and did so on June 4, 2018. At the time Plaintiff filed his Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI") on June 5, 2018 [TRO & PI, Dkt. #4, Page ID 133-162], the University's investigation into whether Plaintiff had violated the

Policy was close to completion. The next step would be for the University to make findings of fact under the Policy, which could have led to Plaintiff's expulsion. Accordingly, Plaintiff moved this Court to halt this process that was clearly in violation of the line of Sixth Circuit precedent which had culminated in *Cincinnati*. In response, Defendants mounted a legally unsupportable argument that their private interview procedure actually complied with due process. Plaintiff also requested the release of his degree. (Dkt. #4, Page ID # 162).

In addition, Doe sought leave to use a pseudonym in this case [Motion to Proceed Under Pseudonym, Dkt. # 2, Page ID # 95-108]. Defendants punitively fought the use of a pseudonym in an effort to deny Plaintiff privacy, causing him further harm, and to discourage him and others from pursuing litigation. (Response to Motion to Proceed Under Pseudonym, Dkt. # 7, Page ID # 229-238).

On June 11, 2018, this Court held an on-the-record telephone conference, during which the parties discussed resolution of the first issue in Plaintiff's Motion for TRO & PI, Defendants' issuance of a clean, unmarked transcript to Plaintiff for his use in graduate school applications. The parties agreed to notify this Court by June 12 at 12:00pm as to whether Defendants would release Plaintiff's transcript. Shortly after, on June 14, 2018, this Court granted Plaintiff's Motion as to his demand that the University release and provide him with his transcript.  This Court

further held the remaining issues would be decided after a hearing. (June 14, 2018 Order, Dkt. # 19, Page ID # 269-270).

On July 6, 2018, this Court, after hearing the remaining issues in Plaintiff's Motion for TRO & PI, granted in part and denied in part Plaintiff's Motion (July 6, 2018 Order, Dkt. # 30, Page ID # 726-744).  This Court instructed Defendants to apply the procedure set forth in their Statement with one exception (likely based on the *Cincinnati* decision): at the live hearing, the parties would write questions which would be posed by the hearing officer.

On July 25, 2018, the University appealed this Court's July 6, 2018 Order granting Plaintiff's preliminary injunction [Defendants' Notice of Appeal, Dkt. # 32, Page ID # 818-820; Case No. 18-1870], and on August 7, 2018, Plaintiff cross-appealed this Court's Order denying him the opportunity to cross-examine witnesses during a live hearing [Plaintiffs' Notice of Cross-Appeal, Dkt. # 36, Page ID # 1067-1069; Case No. 18-1903]. On August 22, 2018, this Court granted Defendants' Motion to Stay Pending Appeal [Order, Dkt. # 41, Page ID 1260-1262].

On September 7, 2018 and in *Doe v. Baum, et al*, 903 F.3d 575 (6th Cir. 2018), the Sixth Circuit issued its Opinion, holding in pertinent part, that Defendants' Policy was unconstitutional.

On September 24, 2018, Defendants filed a Petition for Rehearing and Rehearing *En Banc* in *Baum*, [Case No. 17-2213, RE 49-1, p. 5-6], and argued that 1) the Court's holding conflicted with its prior decisions; and 2) the Court's determination that Plaintiff satisfied the pleading requirements for stating an "erroneous outcome" claim under Title IX, 20 U. S. C. §1681(a) conflicted with the its prior decisions, drastically lowered Title IX pleading requirements and contradicted the record evidence.  The Court denied the University's Petition on October 11, 2018. (Case No. 17-2213, RE 56-1).

In the instant matter and in an additional attempt to stop case from moving forward, Defendants argued to the Sixth Circuit that Plaintiff lacked standing and that his claims were not "ripe." (Defendants' Motion to Quash/Dismiss Appeal, RE 23).

On January 9, 2019, under pressure from this Court's July 6, 2018 Order and the *Baum* decision, the University replaced its unconstitutional 2018 Policy adjudicating sexual misconduct allegations with a 2019 "Interim Policy," because, as publicly conceded by University President Mark Schlissel on January 29, 2019, "the current law" required such a policy change.

On April 10, 2019, the Sixth Circuit issued its Order [April 10, 2019 Order, RE 35-1] vacating this Court's preliminary injunction, which restricted Plaintiff's ability to cross-examine all witnesses during the University's hearing process, and

remanding the case for reconsideration in light of *Baum* and the University's 2019 Interim Policy, and never addressed the University's standing and ripeness argument, which is now moot.

## III.   Legal Standard to Obtain Interim Fees

An award of interim attorney fees is appropriate during the pendency of litigation where: "the court has entered a concrete order that 'determines substantial rights of the parties,' meaning 'when a party has prevailed on the merits of at least some of his claims.'" *Webster v. Sowders*, 846 F.2d 1032, 1036 (6th Cir. 1988) (citing *Hanrahan v. Hampton*, 446 U.S. 754, 757-58 (1980) (per curiam) (quoting *Bradley v. Richmond Sch. Bd.,* 416 U.S. 696, 723 n.28, (1974))).[1]   "A plaintiff crosses the threshold to 'prevailing party' status by succeeding on a single claim, even if he loses on several others and even if that limited success does not grant him the 'primary relief' he sought." *McQueary v. Conway*, 614 F.3d 591, 603 (6th Cir. 2010) (quoting *Tex. State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 790-791 (1989)).

A plaintiff is entitled to such fees even when seeking to enforce a provision of 42 USC § 1983, as § 1988 of that title permits the court to allow the prevailing party reasonable attorney fees if he succeeds on any significant issue in litigation

---

[1] The Court has noted that "[i]nterim fees are 'especially appropriate' when a party has prevailed on 'an important matter' in a case, even if the party ultimately does not prevail on all issues." *Webster*, 846 F.2d at 1036 (6th Cir. 1988).

which achieves some of the benefit he sought in bringing the lawsuit. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)). "The purpose of this provision is 'to ensure that federal rights are adequately enforced.'" *Woods v. Willis*, 631 F. App'x 359, 363 (6th Cir. 2015).

Under this standard, a "prevailing" plaintiff must obtain a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. of Care Home, Inc.* 532 U.S. 598, 603 (2001). "A plaintiff prevails within the meaning of § 1988 'when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Woods*, 631 F. App'x at 364 (quoting *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012)).

Indeed, the Supreme Court has held that a prevailing party should be awarded reasonable attorney fees "unless special circumstances would render such an award unjust." *Hensley,* 461 U.S. at 429 (internal citations omitted). The Court has also declared that "delaying a fee award until the conclusion of litigation 'would work substantial hardship on plaintiffs and their counsel' and discourage the institution of actions that Congress intended to encourage by passage of attorney fee statutes." *Webster*, 846 F.2d at 1036 (citing *Bradley*, 416 U.S. at 723). In keeping with this sentiment, 42 USC § 1988(b) permits a court to award interim

7

attorney fees to a prevailing party, even where a final decision in the case has yet to be rendered.

Interim fees have been awarded in cases with disparate procedural postures, including after the award of preliminary injunctions[2], partial summary judgment[3] and temporary restraining orders[4]. Regardless of the procedural posture of the case or the type of order entered, the touchstone for the award of interim fees is whether the outcome materially changed the parties' legal relationship in the plaintiff's favor.

Regardless of what form a plaintiff's merit-based victory takes, courts must conduct a contextual, case-specific inquiry to determine whether the victory represents an unambiguous indication of success on the merits. *McQueary*, 614 F.3d at 601; *Webster*, 846 F.2d at 1036.

## IV.   Argument

For the reasons set forth below, Plaintiff meets all the requirements entitling him to an award of interim attorney fees and costs. He seeks fees for a specific period of time, May 23, 2018 to April 10, 2019, the date the Sixth Circuit entered

---

[2] *See McQueary*, 614 F.3d at 599; *Kelly v. Corrigan*, 890 F. Supp. 2d 778, 782-84 (E.D. Mich. Aug. 20, 2012).

[3] *See Woods*, 631 F. App'x 359.

[4] *See Lee v. Eller*, No. 2:13-cv-87, 2015 WL 1286038, at *1 (S.D. Ohio Mar. 20, 2015); *Turner v. Wilkinson*, 92 F.Supp.2d 697, 704 (S.D. Ohio Dec. 30, 1999).

its Order remanding the case to this Court, as well as the time counsel took to prepare this Motion and Brief.

### A.      Plaintiff Prevailed on his Due Process Claim

#### 1.      There Have Been Concrete Orders That "Determine Substantial Rights of the Parties"

During the course of litigation, Plaintiff has been victorious in four respects. First, this Court's June 14, 2019 Order granting in part Plaintiff's Motion for TRO and PI, allowed Plaintiff to obtain his official transcript and degree.  Second, on July 6, 2018, this Court entered an Order which stopped the unconstitutional process contained in the February 7, 2018 Policy from being used and required Defendants to comply with *Doe v. Cincinnati* and provide Plaintiff with a live hearing and some cross-examination. Third, Plaintiff prevailed on Defendants' appeal to the Sixth Circuit seeking to reverse this Court's Order.  By virtue of the Court not ruling on Defendants' standing and ripeness issues, it permitted this case to move forward – another victory for Plaintiff. Finally, Defendants' February 7, 2018 Policy is no longer in use.  Even if Plaintiff does not prevail at the OIE level, his success on the merits in avoiding an unconstitutional process is inviolate.

In the distinguishable case of *Webster v. Sowders*, 846 F.2d 1032 (6th Cir. 1988), the Sixth Circuit found that the lower court improperly awarded interim attorney fees after it imposed a preliminary injunction against inmates being forced

to conduct asbestos abatement. The Court reasoned that because the lower court doubted whether the plaintiffs would eventually be able to prevail on their Eighth Amendment claim (and indeed, it appeared substantially likely that plaintiffs' claim would ultimately fail), the award of the injunction was a "procedural victory," rather than a determination of the substantial rights underlying plaintiffs' claim which would have entitled them to interim relief. *Id.* at 1036-1037. Webster's bid for interim fees failed because neither the lower court nor the Sixth Circuit made a final determination as to legal right, which supported liability.

Here, both this Court and the Sixth Circuit made concrete, permanent rulings requiring a change in Defendants' Policy prior to proceeding against Plaintiff. These holdings are by no means merely procedural, and an assessment of them as well as the practical significant relief obtained shows that the substantial rights of the parties have been determined and that Plaintiff has undisputedly prevailed on the merits of his due process claim. An award of interim fees is, therefore, appropriate under the circumstances.

### 2. This Courts' Rulings Have Resulted in a Judicially Sanctioned Change in the Parties' Relationship.

Through litigation, Plaintiff has achieved a "judicially sanctioned change in the legal relationship of the parties." *Woods*, 631 F. App'x at 363–65 (internal

citations omitted).  This Court and the Sixth Circuits' decisions directly benefitted Plaintiff by modifying the University's behavior towards him.

In *Woods*, 631 F. App'x at 363–65 (6th Cir. 2015), the Sixth Circuit held that a plaintiff who prevailed in obtaining an injunction preventing defendant from violating her due process rights properly obtained interim relief.  Like in the instant case, the relief obtained in *Woods* extended to the manner in which those violations had been committed.  Here, this Courts' rulings speak directly to the policy and procedures under which the University began adjudicating the complaint against Plaintiff as well as any findings of fact and future hearings that the University may conduct against him. This is relief and the University's behavior has been modified in a way that directly benefits Plaintiff.

## V.   Plaintiff's Reasonable Attorney Fees and Costs

A "reasonable" fee is one that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). In making this determination, the Court should apply the lodestar method. *Id*. at 552. Given the fact that Plaintiff is a student, Ms. Gordon has charged Plaintiff a reduced hourly fee of $350, and did charge for all time expended (her current rate is $550 per hour). Indeed, "[w]hether or not [a litigant] agreed to pay a fee and in what amount is not decisive…Such arrangements should not determine the court's decision. *The criterion for the court*

11

*is not what the parties agree but what is reasonable*." *Blair v. Harris*, 993 F.Supp.2d 721, 734 (E.D. Mich. 2014) (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 92 (1989)).

### A.   Plaintiff's Lodestar Amount

First, the Court should multiply the number of hours reasonably expended on the case by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. Typically, the Court applies the current or prevailing market rate.  *Blum v. Stenson*, 465 U.S. 886, 886 (1984). The prevailing market rate is the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record.  *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 715 (6th Cir. 2016) (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). Accordingly, a court may look to a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests. *Husted*, 831 F.3d at 715. It is the burden of the party seeking attorney fees to adequately document and submit evidence supporting the hours worked. *Hensley,* 461 U.S. at 433.

In determining the reasonableness of the fee charged and the hours incurred, the Court is to consider the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due

to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hamlin v. Charter Township of Flint*, 165 F.3d 426 (6th Cir. 1999) (citing *Hensley,* 461 at 430 n.3); *Geier*, 372 F.3d at 792 (quoting *Hensley,* 461 U.S. at 434 n. 9 and noting factors are subsumed in lodestar).

Plaintiff's attorneys' verified time records and affidavits are attached as **Exhibits A, J** and **K.** The following factors demonstrate the reasonableness of these fees.

### 1.    The Customary Fee [5]

In order to determine whether the hourly rates claimed are reasonable, the court looks to "rates prevailing in the community for similar services by lawyers of reasonably comparable **skill, experience and reputation**." *Blum*, 465 at 896, n. 11 (emphasis added).

Ms. Gordon has been a practicing trial attorney for 42 years, specializing throughout that time in employment discrimination and civil rights violations.

---

[5] These facts also support and weigh in favor of the 'experience, reputation and ability of the attorneys' and 'skill requisite to perform the legal service properly' factors.

**Exhibit C**, Gordon CV.  She previously worked as an Assistant Attorney General, Civil Rights and Civil Liberties Division, for the State of Michigan, and as a trial attorney for the Equal Employment Opportunity Commission. She has been in private practice since 1980. She has been a member and officer of numerous professional organizations. She also has frequently lectured on employment and trial topics, and has contributed to a number of books in these areas.

Ms. Gordon has been listed in *The Best Lawyers in America*, Woodward and White, 1987-2019, as one of the top lawyers in Michigan; and was listed in *Michigan Super Lawyers* as one of the top 10 attorneys in Michigan. The firm of Deborah Gordon Law was listed among the "Best Law Firms" of 2016 by U.S. News and World Reports. She has tried over 30 employment or civil rights cases to verdict, and has obtained several multi-million dollar verdicts. Gordon has been a cooperating, *pro bono* attorney for the ACLU of Michigan in several important civil rights cases, including *Sitz v. Michigan State Police,* 443 Mich. 744 (1993), which resulted in the prohibition of drunk driving road blocks in the State of Michigan. Many of Gordon's cases have received media attention, some national, because of their importance to the public interest.

Over a decade ago, Judge Paul Borman recognized in *Shuster v. Daimler Chrysler Corp.*, 01-70443 that Deborah Gordon was both "**experienced and regarded** counsel in this field." **Exhibit D**. The next year, Judge Steeh also

recognized Ms. Gordon as "an **experienced and highly regarded** counsel in the field," and he approved a rate then above the 95th percentile of other local practitioners. **Exhibit E.** In 2009, Judge Battani awarded Gordon $400/hour. **Exhibit F**. In 2012, Judge Barry Howard awarded Gordon $450 per hour. **Exhibit G**. In 2017, Judge Hood awarded Gordon $500 per hour. **Exhibit H**.

In 2011, Judges of this District recognized that $550 an hour is "comparable to the rates charged by the most experienced and accomplished attorneys in the Detroit metropolitan area." *Flagg v. City of Detroit*, 2011 WL 6131073 (E.D. Mich. 2011). As Ms. Gordon is recognized in that top-most echelon of practitioners in this area, she requests a fee of $550 per hour.

The rates claimed by Plaintiff are consistent with the State Bar of Michigan Survey on the Economics of Law Practice, **Exhibit I**. 2017 State Bar Econ. of Law Practice at 4, 6, which analyzes billing rates as follows:

| By Field of Practice | Mean | 95th Percentile |
|---|---|---|
| Labor & Employment Law | $301 | $550 |

| By Years in Practice | Mean | 95th Percentile |
|---|---|---|
| Greater than 35 years of practice | $284 | $510 |

### 2. Time and Labor Involved

The time and labor involved in obtaining the above referenced Orders from this Court and the Sixth Circuit were significant. Plaintiff was forced file a lawsuit against a University that refused to comply with the Sixth Circuit's ruling in

*Cincinnati*; file a Motion for Pseudonym and a complicated and detailed Motion for a TRO and PI; respond to Defendants' Appeal to this Court's July 6, 2018 Order granting in part and denying in part Plaintiff's Motion for TRO and Preliminary Injunction; file a complex and intricate cross-appeal to Defendants' Appeal and this Court's July 6, 2018 Order; oppose a Motion to Quash/Dismiss Cross-Appeal and file a Motion for Leave to File Sur-Reply to Defendants' motion based on critical, newly acquired facts. These pleadings applied multifaceted and nuanced legal frameworks to a complex fact pattern.

While Defendants were represented by two large corporate law firms, with unlimited resources, by contrast, Deborah Gordon has handled Plaintiff's case almost entirely by herself. Verified time records for Deborah Gordon Law are attached, **Exhibit A.**   All time expended was reasonable and necessary to the processing of this case. *Id.* In fact, the hours expended by Deborah Gordon Law in this matter are understated. As set forth in that verification, the actual hours expended by the firm are significantly higher than those documented in the attached time sheets, as Plaintiff's counsel spent countless additional hours, not tracked by the firm, in phone calls with the client, discussions between counsel about the case, etc.

16

### 3.   The Amount Involved and the Results Achieved [6]

When the Court is assessing attorney fees, "the most crucial factor is the degree of success attained." *Hensley*, 461 U.S. at 436. Although district courts have discretion in determining the proper award, they must "consider the relationship between the extent of success and the amount of the fee award." *Id.* at 438. The "significance of the overall relief obtained by the plaintiff" influences the reasonableness of the time expended on the litigation. *Id.* at 435.  As set forth above, Plaintiff has obtained excellent results: two TRO & PI Orders, one granting Plaintiff his official transcript and the other requiring the University to provide Plaintiff with a live hearing and cross-examination, during which Plaintiff could question the complainant directly through written questions; and an Order from the Sixth Circuit permitting this case to move forward and remanding it to this Court for reconsideration in light of *Baum* and the University's Interim Policy.

As Plaintiff's Verified Costs Itemization, **Exhibit B**, reveals, Plaintiff invested over $3,737.62 in costs in this matter to lodge and defend his due process claim.  Based on the significant achievements obtained, Plaintiff seeks recompense for all attorney fees and costs associated with this substantial investment.

### 4.   The Difficulty of the Case and the Skill Requisite to Perform the Legal Service Properly

---

[6] Plaintiff has not yet claimed damages, as there have been no findings of fact found against him.

This case has been very difficult in several respects. First, it is a difficult, complex area of the law. Second, it has a complicated procedural history, being back and forth from the Sixth Circuit. Third, the case involves a convoluted adjudicatory process and a Sexual Misconduct Policy that is literally in flux, as well as Defendants who continue to blatantly disregard the law. Fourth, the dispositive issues in this case are complex and have hinged on nuanced aspects of constitutional and statutory law. They also involve a rather passionate political climate. As set forth above, Ms. Gordon has been very successful in her representation of Plaintiff despite these obstacles, and she has done so almost entirely alone. Thus, the difficulty of this case also weighs in favor of a full compensatory award.

### 5.     The Undesirability of the Case

Plaintiff's counsel's office took this case despite the factors weighing against doing so. It was against Defendants who forced Plaintiff to undergo a lengthy, unconstitutional investigation based on a mere allegation, and who continue to flout the law and refuse to create a policy that comports with due process.[7]

---

[7] As acknowledged in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir. 1974), the case from which the lodestar factors originate, "[c]ivil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant… Oftentimes his decision to help eradicate discrimination is not pleasantly received by the community or his contemporaries." This holds

### 6.   The Nature and Length of the Professional Relationship With the Client

Ms. Gordon has been representing Plaintiff for one year and throughout this period of time, Ms. Gordon has logged many hours.   As mentioned above, although Ms. Gordon's current rate is $550 an hour, she has charged Plaintiff a reduced rate of $350 an hour because he is a student and because it would be almost impossible for a person to mount a case such as this while paying the full hourly rate for each hour expended. "The criterion for the court is not what the parties agree but what is reasonable." *Blair*, 993 F.Supp.2d at 734 (citing *Blanchard*, 489 U.S. at 92).   Plaintiff also relies on the Court's own evaluation as to Plaintiff's counsel's skill, the time and labor involved in this case, and the results obtained.

### B.   Adjustments to Plaintiff's Lodestar Amount

Second, the lodestar amount may be adjusted up or down to "reflect relevant considerations peculiar to the subject litigation. *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). However, there is a "strong presumption" favoring the prevailing attorney's entitlement to her lodestar fee. *Adcock-Ladd*, 227 F.3d at 349. Accordingly, modifications to the lodestar are only proper in

---

especially true for this case, as Ms. Gordon is defending the constitutional rights of an individual who has been accused of sexual misconduct.

"rare" and "exceptional" circumstances supported by both "specific evidence on the record and detailed findings." *Id.* (internal citations omitted).

Because at this time Plaintiff seeks interim fees relative to his meritorious due process claim alone, it is not appropriate to adjust the fee award downward for claims whose merits have yet to be decided. The Court should award the fees that are reasonable in relation to the results obtained. *Hensley*, 461 U.S. at 434. In this case, although claims remain outstanding against Defendants, Plaintiff has achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. *Id.* at 440.

## VI.   Conclusion

WHEREFORE, Plaintiff requests that this Honorable Court enter an Order holding that Plaintiff is a prevailing party for the purposes of obtaining an interim fee award, and accordingly that Plaintiff is entitled to an award of interim attorney fees and costs including:

A. Attorney fees (Deborah Gordon Law) in the amount of $109,246.5. **Exhibit A**.

B. Costs (Deborah Gordon Law) in the amount of $3,737.62. **Exhibit B.**

Plaintiff further requests oral argument regarding the relief requested in the instant Motion and Brief.

Dated:  May 23, 2019                    Respectfully submitted,

                                        **DEBORAH GORDON LAW**
                                        /s/Deborah L. Gordon (P27058)
                                        Elizabeth A. Marzotto Taylor (P82061)
                                        Attorneys for Plaintiff
                                        33 Bloomfield Hills Parkway, Suite 220
                                        Bloomfield Hills, Michigan 48304
                                        (248) 258-2500
                                        dgordon@deborahgordonlaw.com
                                        emarzottotaylor@deborahgordonlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 23, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing and service of said documents to all parties through their counsel of record.

                                        **DEBORAH GORDON LAW**
                                        /s/Deborah L. Gordon (P27058)
                                        Elizabeth A. Marzotto Taylor (P82061)
                                        Attorneys for Plaintiff
                                        33 Bloomfield Hills Parkway, Suite 220
                                        Bloomfield Hills, Michigan 48304
                                        (248) 258-2500