UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOHN DOE**, | : | Case No. 18-cv-11776 |
| | : | |
| Plaintiff, | : | Hon. Arthur J. Tarnow |
| | : | Mag. Elizabeth A. Stafford |
| v. | : | |
| | : | **DEFENDANTS' MOTION** |
| **UNIVERSITY OF MICHIGAN**, *et al.*, | : | **TO DISMISS PLAINTIFF'S** |
| | : | **SECOND AMENDED** |
| Defendants. | : | **COMPLAINT** |
| | : | |
| | : | **ORAL ARGUMENT** |
| | : | **REQUESTED** |

---

DEBORAH GORDON LAW
Deborah L. Gordon
Elizabeth A. Marzotto Taylor
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan  48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

*Attorneys for Plaintiff*

SAUL EWING ARNSTEIN &
LEHR LLP
Joshua W. B. Richards
Amy L. Piccola
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102
(215) 972-7737
joshua.richards@saul.com
amy.piccola@saul.com

MILLER, CANFIELD, PADDOCK
AND STONE, P.L.C.
Brian M. Schwartz
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
schwartzb@millercanfield.com

*Attorneys for Defendants*

Defendants move pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing with prejudice all of plaintiff's claims against defendants in the second amended complaint (ECF No. 47).  In support of this motion, defendants rely upon the attached brief in support.

Counsel for defendants conferred with counsel for plaintiff on May 31, 2019 and explained the nature of this motion and its legal basis.  Counsel for defendants requested, but did not obtain, concurrence in the relief sought in this motion.

WHEREFORE, defendants respectfully request that the Court grant defendants' motion and dismiss with prejudice all of plaintiff's claims against defendants in the second amended complaint.

Respectfully submitted,

June 5, 2019

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
Brian M. Schwartz
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
schwartzb@millercanfield.com

/s/*Joshua W. B. Richards*
SAUL EWING ARNSTEIN & LEHR LLP
Joshua W. B. Richards
Amy L. Piccola
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102
(215) 972-7737
joshua.richards@saul.com
amy.piccola@saul.com

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOHN DOE**, | : | Case No. 18-cv-11776 |
| | : | |
| Plaintiff, | : | Hon. Arthur J. Tarnow |
| | : | Mag. Elizabeth A. Stafford |
| v. | : | |
| | : | **DEFENDANTS' BRIEF IN** |
| **UNIVERSITY OF MICHIGAN**, *et al.*, | : | **SUPPORT OF** |
| | : | **DEFENDANTS' MOTION** |
| Defendants. | : | **TO DISMISS PLAINTIFF'S** |
| | : | **SECOND AMENDED** |
| | : | **COMPLAINT** |

---

DEBORAH GORDON LAW
Deborah L. Gordon
Elizabeth A. Marzotto Taylor
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan  48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

*Attorneys for Plaintiff*

SAUL EWING ARNSTEIN &
LEHR LLP
Joshua W. B. Richards
Amy L. Piccola
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102
(215) 972-7737
joshua.richards@saul.com
amy.piccola@saul.com

MILLER, CANFIELD, PADDOCK
AND STONE, P.L.C.
Brian M. Schwartz
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
schwartzb@millercanfield.com

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

STATEMENT OF THE ISSUES PRESENTED ........................................................ vi

CONTROLLING AUTHORITY .......................................................................viii

INTRODUCTION ...........................................................................................1

SUMMARY OF RELEVANT FACTS ...................................................................4

I.    THE UNIVERSITY COMMENCES AN INVESTIGATION INTO THE
    ALLEGATIONS AGAINST DOE, AND THIS COURT ENTERS AN INJUNCTION. ..........4

II.   THE SIXTH CIRCUIT REMANDS THE UNIVERSITY'S APPEAL AND DOE'S
    CROSS-APPEAL FOLLOWING THE SIXTH CIRCUIT'S DECISION IN *BAUM*
    AND THE UNIVERSITY'S AMENDMENT OF ITS SEXUAL MISCONDUCT
    POLICY IN LIGHT OF *BAUM*. ...................................................................5

III.  DOE'S CAUSES OF ACTION. ...................................................................6

LEGAL STANDARD ......................................................................................7

ARGUMENT ................................................................................................7

I.    DOE LACKS ARTICLE III STANDING AND HIS CLAIMS ARE NOT RIPE. .............7
    A.    Doe Lacks Article III Standing. ...........................................8
    B.    Doe's Claims Are Not Ripe for Adjudication. ....................................11

II.   DOE FAILS TO STATE A PROCEDURAL DUE PROCESS CLAIM UNDER THE
    FOURTEENTH AMENDMENT (COUNT I) BECAUSE HE HAS NOT BEEN
    DEPRIVED OF A PROTECTED DUE PROCESS INTEREST AND THE 2019
    POLICY COMPLIES WITH *BAUM*. ........................................................15

III.  IN THE ALTERNATIVE, DOE'S FOURTEENTH AMENDMENT PROCEDURAL
    DUE PROCESS CLAIM (COUNT I) IS BARRED BY QUALIFIED IMMUNITY TO
    THE EXTENT IT PURPORTS TO ESTABLISH LIABILITY AGAINST THE
    INDIVIDUAL DEFENDANTS IN THEIR PERSONAL CAPACITIES. ...........................17

IV.  DOE FAILS TO STATE A CLAIM UNDER TITLE IX (COUNT II). ...........................20

V.   DOE'S ELCRA CLAIMS CANNOT BE BROUGHT AGAINST THE INDIVIDUAL
    DEFENDANTS IN THEIR PERSONAL CAPACITIES (COUNTS III AND IV). .............24

CONCLUSION ...........................................................................................25

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Airline Prof'ls Ass'n of the Int'l Bhd. of Teamsters v. Airborne, Inc.*,
  332 F.3d 983 (6th Cir. 2003) ........................................................ viii, 8, 9, 10, 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................... viii, 21

*B.P.C. v. Temple Univ.*,
  No. 13-7595, 2014 WL 4632462 (E.D. Pa. Sept. 16, 2014) ............................... 15

*Brosseau v. Haugen*,
  543 U.S. 194 (2004) ...................................................................................... viii, 19

*Cleveland Bd. of Educ. v. Loudermill*,
  470 U.S. 532 (1985) ...................................................................................... viii, 12

*Doe v. Baum*,
  903 F.3d 575 (6th Cir. 2018) ..................................................................... passim

*Doe v. Cummins*,
  662 F. App'x 437 (6th Cir. 2016) .............................................................. 20, 21

*Doe v. Miami Univ.*,
  882 F.3d 579 (6th Cir. 2018) ........................................................ viii, 20, 21, 22

*Doe v. N. Mich. Univ.*,
  No. 2:18-CV-196, 2019 WL 2269721 (W.D. Mich. May 28, 2019) ................ 19

*Doe v. Salisbury Univ.*,
  123 F. Supp. 3d 748 (D. Md. 2015) .................................................................... 24

*Doe v. The Ohio State University*,
  136 F. Supp. 3d 854 (S.D. Ohio 2016) .............................................................. 14

*Doe v. Univ. of Cincinnati*,
  872 F.3d 393 (6th Cir. 2017) ................................................................... viii, 20

*Doe v. Univ. of Cincinnati*,
  No. 16-987, 2018 WL 1521631 (S.D. Ohio Mar. 28, 2018) .............................. 22

*Doe v. Univ. of Dayton*,
 No. 18-3339, 2019 WL 1224606 (6th Cir. Mar. 15, 2019) ................................22

*Doe v. Univ. of Ky.*,
 860 F.3d 365 (6th Cir. 2017) ...................................................................... viii, 17

*Douglas v. E.G. Baldwin & Assocs.*,
 150 F.3d 604 (6th Cir. 1998), *abrogation on other grounds
 recognized by Heartwood, Inc. v. Agpaoa*,
 628 F.3d 261 (6th Cir. 2010) ................................................................. viii, 3, 7

*Flaim v. Med. Coll. of Ohio*,
 418 F.3d 629 (6th Cir. 2005) ................................................................... viii, 20

*Gragg v. Ky. Cabinet for Workforce Dev.*,
 289 F.3d 958 (6th Cir. 2002) ................................................................... viii, 19

*Griffith v. Fed. Labor Relations Auth.*,
 842 F.2d 487 (D.C. Cir. 1988) ..........................................................................12

*Hahn v. Star Bank*,
 190 F.3d 708 (6th Cir. 1999) ................................................................... viii, 15

*Hill v. Blue Cross & Blue Shield of Mich.*,
 299 F. Supp. 2d 742 (E.D. Mich. 2003), *aff'd in part, rev'd in part
 on other grounds*, 409 F.3d 710 (6th Cir. 2005)...................................................7

*Lambert v. Hartman*,
 517 F.3d 433 (6th Cir. 2008) ..............................................................................7

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992)........................................................................................ viii, 8

*Massachusetts v. Mellon*,
 262 U.S. 447 (1923)........................................................................................ viii, 8

*Mich. Gas Co. v. FERC*,
 115 F.3d 1266 (6th Cir. 1997) ................................................................. viii, 9

*Mich. S. R.R. Co. v. Branch & St. Joseph Ctys. Rail Users Ass'n*,
 287 F.3d 568 (6th Cir. 2002) ..............................................................................7

*Morreim v. Univ. of Tenn.*,
 No. 12–2891, 2013 WL 5673619 (W.D. Tenn. Oct. 17, 2013)........................14

*Morrison v. Bd. of Educ. of Boyd Cty.*,
 521 F.3d 602 (6th Cir. 2008) .................................................................9

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
 538 U.S. 803 (2003)................................................................... viii, 11

*Norton v. Ashcroft*,
 298 F.3d 547 (6th Cir. 2002) ............................................... viii, 11, 12

*Olim v. Wakinekona*,
 461 U.S. 238 (1983)..................................................................... viii, 12

*O'Shea v. Littleton*,
 414 U.S. 488 (1974).................................................................... viii, 9

*Peloe v. Univ. of Cincinnati*,
 No. 1:14-CV-404, 2015 WL 728309 (S.D. Ohio Feb. 19, 2015)...........14, 23, 24

*Plunderbund Media, L.L.C v. DeWine*,
 753 F. App'x 362 (6th Cir. 2018) .......................................................7

*Richardson v. Twp. of Brady*,
 218 F.3d 508 (6th Cir. 2000) ................................................... viii, 12

*Saravanan v. Drexel Univ.*,
 No. CV 17-3409, 2017 WL 5659821 (E.D. Pa. Nov. 24, 2017) .......................24

*Saucier v. Katz*,
 533 U.S. 194 (2001).........................................................................ix, 18

*Shvartsman v. Apfel*,
 138 F.3d 1196 (7th Cir. 1998) .........................................................12

*Simmonds v. Genesee Cty.*,
 682 F.3d 438 (6th Cir. 2012) ........................................................ix, 17

*Steel Co. v. Citizens for a Better Env't*,
 523 U.S. 83 (1998)...........................................................................ix, 8

iv

*Texas v. United States*,
　　523 U.S. 296 (1998).................................................................................ix, 12

*Warshak v. United States*,
　　532 F.3d 521 (6th Cir. 2008) ...................................................................passim

*Wiley v. Texas State Univ.*,
　　No. 1:18-CV-930-RP, 2019 WL 317247 (W.D. Tex. Jan. 24, 2019) .........12, 24

*Williams v. Governor of Pa.*,
　　552 F. App'x 158 (3d Cir. 2014) .......................................................................9

*Yusuf v. Vassar Coll.*,
　　35 F.3d 709 (2d Cir. 1994) ..............................................................................22

**FEDERAL CONSTITUTION, STATUTES, AND RULES**

U.S. Const. Article III, § 2 ...................................................................................8

20 U.S.C. § 1681(a) ...........................................................................................20

42 U.S.C. § 1983.........................................................................................17, 18

Fed. R. Civ. P. 12(b)(1)....................................................................................4, 7

Fed. R. Civ. P. 12(b)(6)....................................................................................4, 7

**STATE STATUTES**

MCL 37.2401 ................................................................................................ix, 24

## STATEMENT OF THE ISSUES PRESENTED

1.      Should the Court dismiss all counts of plaintiff's second amended complaint because plaintiff lacks Article III standing and his claims are not ripe for decision?

**Defendants assert that the answer is "Yes."**

2.      Should the Court dismiss plaintiff's Fourteenth Amendment procedural due process claim (Count I) because he has not been deprived of a protected due process interest, but even if he had, the University's sexual misconduct policy is fully consistent with the Sixth Circuit's requirements for due process?

**Defendants assert that the answer is "Yes."**

3.      In the alternative, should the Court dismiss plaintiff's Fourteenth Amendment procedural due process claim (Count I) because it is barred by qualified immunity to the extent it purports to establish liability against the individual defendants in their personal capacities?

**Defendants assert that the answer is "Yes."**

4.      Should the Court dismiss plaintiff's Title IX claim (Count II) because it is based on mere speculation about the outcome of a process that has not been concluded and fails to state a claim?

**Defendants assert that the answer is "Yes."**

5.      Should the Court dismiss plaintiff's claims under the Elliott-Larsen Civil Rights Act (Counts III and IV) because they may not be brought against the individual defendants in their personal capacities because the statute permits claims against individuals only in their official capacities as "agent[s] of an educational institution"?

**Defendants assert that the answer is "Yes."**

## <u>CONTROLLING AUTHORITY</u>

### <u>Cases</u>

*Airline Prof'ls Ass'n of the Int'l Bhd. of Teamsters v. Airborne, Inc.*, 332 F.3d 983 (6th Cir. 2003)

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

*Brosseau v. Haugen*, 543 U.S. 194 (2004)

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 5321 (1985)

*Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018)

*Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018)

*Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017)

*Doe v. Univ. of Ky.*, 860 F.3d 365 (6th Cir. 2017)

*Douglas v. E.G. Baldwin & Assocs.*, 150 F.3d 604 (6th Cir. 1998)

*Flaim v. Med. Coll. of Ohio*, 418 F.3d 629 (6th Cir. 2005)

*Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958 (6th Cir. 2002)

*Hahn v. Star Bank*, 190 F.3d 708 (6th Cir. 1999)

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)

*Massachusetts v. Mellon*, 262 U.S. 447 (1923)

*Mich. Gas Co. v. FERC*, 115 F.3d 1266 (6th Cir. 1997)

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003)

*Norton v. Ashcroft*, 298 F.3d 547 (6th Cir. 2002)

*Olim v. Wakinekona*, 461 U.S. 238 (1983)

*O'Shea v. Littleton*, 414 U.S. 488 (1974)

*Richardson v. Twp. of Brady*, 218 F.3d 508 (6th Cir. 2000)

*Saucier v. Katz*, 533 U.S. 194 (2001)

*Simmonds v. Genesee Cty.*, 682 F.3d 438 (6th Cir. 2012)

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)

*Texas v. United States*, 523 U.S. 296 (1998)

*Warshak v. United States*, 532 F.3d 521 (6th Cir. 2008)

## **Statute**

MCL 37.2401

## INTRODUCTION

This case arises from allegations of sexual assault against plaintiff ("Doe") by a fellow University student (the "Claimant").  The University commenced an investigation into those allegations in spring 2018, but the investigation was not completed.  (*See* ECF No. 47 ¶¶ 58, 73, 75.)  Nevertheless, without even a preliminary finding – let alone a sanction or a final decision following an available appeal[1] – Doe filed this suit.

Like Doe's original and first amended complaints, his second amended complaint is premature and must be dismissed because Doe cannot satisfy the jurisdictional requirements of Article III.  Absent a conclusion that Doe violated University policy by engaging in non-consensual sex, Doe cannot demonstrate a concrete injury – one that is not based on speculation or conjecture as to the outcome of the student conduct proceeding, and is fairly traceable to defendants'

---

[1] The University's former Policy and Procedures on Student Sexual and Gender-Based Misconduct and Other Forms of Interpersonal Violence (the "2018 Policy") is described in detail in defendants' response to Doe's motion for temporary restraining order and preliminary injunction.  (*See* ECF No. 21 at 4-8.)  The University's current sexual misconduct policy, which became effective January 9, 2019, is entitled The University of Michigan Interim Policy and Procedures on Student Sexual and Gender-Based Misconduct and Other Forms of Interpersonal Violence (the "2019 Policy").  The 2019 Policy is attached as Exhibit C to the second amended complaint (*see* ECF No. 47-3) and as Exhibit A to the Declaration of Joshua W. B. Richards, Esq. ("Richards Declaration"), filed with this brief.

actions.  As a result, Doe cannot establish standing, an essential jurisdictional requirement for this Court to exercise judicial power.

For similar reasons, Doe also cannot satisfy the fitness and hardship requirements necessary to establish that his claims are ripe.  Failure to dismiss Doe's claims would create an untenable precedent permitting any student to bring a claim as soon as she or he is *accused* of any kind of misconduct – whether cheating, vandalism, underage drinking, or sexual misconduct.  Federal courts are not super-administrators for colleges, and they certainly are not courts of *first resort* to mediate as-yet undecided questions of university discipline.  Yet that sort of intervention is precisely what Doe seeks here.

The University has raised the standing and ripeness defects on numerous occasions; first in its briefing and argument on Doe's motion for a preliminary injunction and then on appeal to the Sixth Circuit.  (*See* ECF No. 21 at 14 ("Plaintiff's claims fail at the outset because they do not present a live case or controversy."); ECF No. 29 at 38:20-39:21 ("[E]veryone agrees there has been no finding.  No finding means no deprivation.  No deprivation means no procedural due process violation.  No procedural process violation means no injury in fact.  And no injury in fact means no Article III standing. . . The Court does not have subject matter jurisdiction."); First Brief, 6th Cir. Case No. 18-1870, Doc. No. 23.)  This Court did not address standing in its Order on the preliminary injunction, and

the Sixth Circuit remanded the case during merits briefing, before it addressed these jurisdictional issues.  (*See* ECF No. 30; ECF No. 42.)  Standing and ripeness are now squarely before the Court and controlling authority requires that they be addressed before this case proceeds any further.  *See Douglas v. E.G. Baldwin & Assocs.*, 150 F.3d 604, 606-07 (6th Cir. 1998), *abrogation on other grounds recognized by Heartwood, Inc. v. Agpaoa*, 628 F.3d 261, 266 (6th Cir. 2010).

Doe's claims also fail as a matter of law.  Doe cannot state a due process claim because he has not been deprived of a protected due process interest.  But even if he had, the 2019 Policy complies with *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018), as it was expressly designed to do, by affording students accused of sexual misconduct all procedural rights required in this Circuit, including a live hearing with direct cross-examination when credibility is at issue.  Doe also fails to state a claim with respect to his other due process challenges, all of which either contradict, or are without any basis in, controlling law.

And even if there were still a live dispute as to the procedural due process issue, qualified immunity would bar Doe's due process claim against the individual defendants in their personal capacities because: (1) Doe has not actually suffered any deprivation; and (2) even if he had, the constitutional rights Doe speculates "would have" been violated were not clearly established during the time of the events described in the complaint.  As other courts have already held, the right of a

student accused of sexual misconduct to a live hearing with direct cross-examination (*i.e.*, not through a hearing panel or investigator) in cases where credibility is at issue was not clearly established in this Circuit before September 7, 2018, when the Court of Appeals published its decision in *Baum*.

Doe likewise fails to state an erroneous outcome claim under Title IX given the obvious lack of any ***outcome*** in the student conduct proceeding.  Finally, Doe's remaining claims against the individual defendants in their personal capacities under the Elliott-Larsen Civil Rights Act ("ELCRA") are improper because the statute permits claims against individuals only in their official capacities as "agent[s] of an educational institution."

For these reasons, and as explained more fully below, defendants move for an order pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) dismissing with prejudice all counts of Doe's second amended complaint.

## SUMMARY OF RELEVANT FACTS

I.    **The University commences an investigation into the allegations against Doe, and this Court enters an injunction.**

On March 20, 2018, a University student filed a complaint against Doe alleging that Doe sexually assaulted her.  (*See* ECF No. 21 at 1.)  The University began an investigation, but before the investigation was complete, Doe filed suit.  (*See* ECF No. 1.)   Doe sought preliminary relief enjoining the University's investigation on the basis that he was entitled to a live hearing with cross-

examination of the other party and witnesses.  (*See* ECF No. 4.)  The Court granted the motion in part, ordering the University to provide a live hearing with mediated cross-examination conducted by a resolution officer. (ECF No. 30 at 18-19.)  The University appealed the Court's injunction order, Doe filed a cross-appeal, (*see* ECF No. 32, ECF No. 36), and the Court granted the University's motion to stay the injunction pending appeal.  (*See* ECF No. 33; ECF No. 41.)

## II.   The Sixth Circuit remands the University's appeal and Doe's cross-appeal following the Sixth Circuit's decision in *Baum* and the University's amendment of its sexual misconduct policy in light of *Baum.*

While the appeals were pending, a Sixth Circuit panel decided *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018), which held, in summary and relevant part, that when a student is accused of sexual misconduct and credibility is at issue, a public university violates due process if it disciplines the student without providing a live hearing with direct cross examination.   The University amended its sexual misconduct policy to comply with *Baum* and, on January 18, 2019, the University filed a motion to dismiss Doe's cross-appeal as moot.  (*See* Defendants/Cross-Appellees' Motion to Quash/Dismiss Appeal, Case No. 18-1903, Doc. No. 23.)

On April 10, 2019, in light of the change in both the law and the facts, the Sixth Circuit vacated this Court's preliminary injunction order, remanded both the University's appeal and Doe's cross-appeal, and directed this Court to reconsider Doe's claims in light of *Baum* and the University's 2019 Policy.  (ECF No. 42.)

Doe filed his second amended complaint on May 22, 2019, attaching the 2019 Policy. (*See* ECF No. 47; ECF No. 47-3.) Like Doe's first amended complaint, his second amended complaint pleads that: (1) the investigation was not complete (ECF No. 47 ¶ 73); (2) no finding as to whether he violated University policy has been made (*id.* ¶¶ 58, 73); (3) no sanction has been imposed (*id.* ¶ 58); and (4) no appeal of a finding or sanction has been taken (*id.* ¶ 75).

## III.   Doe's causes of action.

Doe's second amended complaint (ECF No. 47) asserts four claims:

Count I: Fourteenth Amendment procedural due process claim against the individual defendants in their personal and official capacities;

Count II: Title IX disparate treatment claim against the University and Board of Regents;

Count III: ELCRA disparate treatment claim against the Board of Regents and the individual defendants in their personal and official capacities; and

Count IV: ELCRA disparate impact claim against the Board of Regents and the individual defendants in their personal and official capacities.[2] (*See* ECF No. 47 ¶¶ 98-163.)

---

[2] On May 31, 2019, counsel for Doe agreed to dismiss, without prejudice, Counts III and IV (ELCRA) as to the Board of Regents and the individual defendants in their official capacities only. *See* e-mail from Doe's counsel to defendants' counsel, attached as Exhibit B to the Richards Declaration.

## LEGAL STANDARD

A court should dismiss a complaint "under Federal Rule of Civil Procedure 12(b)(1) for lack of standing" when a plaintiff does "not establish an injury-in-fact and thus d[oes] not have standing." *Plunderbund Media, L.L.C v. DeWine*, 753 F. App'x 362, 365, 372 (6th Cir. 2018). "Where subject matter jurisdiction is challenged pursuant to 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Mich. S. R.R. Co. v. Branch & St. Joseph Ctys. Rail Users Ass'n*, 287 F.3d 568, 573 (6th Cir. 2002). "Rule 12(b)(6) affords a defendant an opportunity to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Hill v. Blue Cross & Blue Shield of Mich.*, 299 F. Supp. 2d 742, 747 (E.D. Mich. 2003), *aff'd in part, rev'd in part on other grounds*, 409 F.3d 710 (6th Cir. 2005). In applying Rule 12(b)(6), the Court presumes all well-pleaded factual allegations to be true and draws all reasonable inferences from those allegations in favor of the non-moving party. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).

## ARGUMENT

### I.    Doe Lacks Article III Standing and His Claims Are Not Ripe.

Without a determination on the complaint of sexual assault asserted against him, Doe's claims fail as a matter of law on standing and ripeness grounds. "The first and fundamental question presented by every case brought to the federal courts is whether it has jurisdiction to hear a case." *Douglas*, 150 F.3d at 606-07.

"The Constitution does not extend the 'judicial Power' to any legal question, wherever and however presented, but only to those legal questions presented in 'Cases' and 'Controversies.'  U.S. Const. art. III, § 2."  *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008).  As a result, a "claim is not 'amenable to . . . the judicial process'. . . when it is filed too early (making it unripe) . . . or when the claimant lacks a sufficiently concrete and redressable interest in the dispute (depriving the plaintiff of standing)."  *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998)) (citation omitted).

### A.   Doe Lacks Article III Standing.

The standing and ripeness doctrines prevent courts from having to resolve hypothetical claims based on events, circumstances, and injuries that may never occur.  *See Warshak*, 532 F.3d at 533 (even if early judicial intervention would be preferable "[a]s a matter of efficiency . . . efficiency is not the only end of the Constitution").  To satisfy the "case-or-controversy" requirement, Doe must establish, among other things, "an injury in fact that is concrete and particularized" and that such injury is "fairly traceable to the defendant's action."  *Airline Prof'ls Ass'n of the Int'l Bhd. of Teamsters v. Airborne, Inc.*, 332 F.3d 983, 987 (6th Cir. 2003) (marks and citation omitted); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (describing these requirements as the "irreducible constitutional minimum of standing"); *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) (to

establish injury in fact, a plaintiff must demonstrate that he or she has "sustained or is immediately in danger of sustaining some direct injury"); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'") (citation omitted).

"[W]ithout evidence that the [plaintiff's] predicted result is 'actual or imminent,' such an injury can only be 'conjectural or hypothetical.'" *Airline Prof'ls Ass'n*, 332 F.3d at 987 (quoting *Mich. Gas Co. v. FERC*, 115 F.3d 1266, 1270-71 (6th Cir. 1997)); *see also Morrison v. Bd. of Educ. of Boyd Cty.*, 521 F.3d 602, 610 (6th Cir. 2008). As the Third Circuit has aptly explained: "an injury does not meet the imminence requirement if one cannot describe how the [plaintiffs] will be injured without beginning the explanation with the word 'if.'" *Williams v. Governor of Pa.*, 552 F. App'x 158, 162 (3d Cir. 2014) (marks omitted).

Doe cannot demonstrate standing because he cannot show "an injury in fact that is concrete and particularized" in the absence of a finding or sanction against him. Doe's general criticisms of the 2019 Policy – a policy written to address and adapt to the full spectrum of potential scenarios to which it may apply – are a far cry from the "actual or imminent," "concrete and particularized" injury Doe must demonstrate to establish Article III standing. (*See* ECF No. 47 ¶ 86.) For example, Doe cannot allege an injury from an appeal when there has been no finding or sanction against him to appeal in the first place. (*See id.* ¶¶ 86, 115.) Nor can he

allege an injury concerning the adequacy of the live hearing before the hearing has occurred (or before any adverse finding or sanction, if any, is imposed).

Doe also cannot demonstrate standing because he cannot show that any harm he purports to have suffered is fairly traceable to the University's actions. *See Airline Prof'ls Ass'n*, 332 F.3d at 987 (Article III standing requires litigants to demonstrate that the complained-of harm is "fairly traceable to the defendant's action") (marks and citation omitted). Doe alleges, without any supporting facts, that he "has ***and will*** suffer . . . loss of personal and professional reputation," (ECF No. 47 ¶¶ 116, 142, 152, 163) (emphasis added), and this Court concluded in error in its July 6th Order that because "sexual assault allegations" may injure Doe's reputation, he had carried his burden (ECF No. 30 at 9, 16). However, no such injury could be fairly traced to *the University's* actions, given that the allegations of sexual misconduct were made by a fellow student, and not by the University, which is obligated to act as an impartial arbiter pursuant to federal law. (*See* ECF No. 47 ¶¶ 20, 39.) Consequently, the second amended complaint's conclusory allegations pertaining to Doe's reputation are not "fairly traceable" to the defendants' actions, and cannot stand in for the actual injury necessary to demonstrate standing. As a result, the Court lacks jurisdiction over Doe's claims and must dismiss the second amended complaint for lack of standing.

**B.     Doe's Claims Are Not Ripe for Adjudication.**

Additionally, all of Doe's claims must be dismissed because none of them

are ripe.  "A court lacks jurisdiction over the subject matter if the claim is not yet

ripe for judicial review."  *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002).

"Like standing, ripeness 'is drawn both from Article III limitations on judicial

power and from prudential reasons for refusing to exercise jurisdiction.'"

*Warshak*, 532 F.3d at 525 (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538

U.S. 803, 808 (2003)).  As the Sixth Circuit has explained:

> The ripeness doctrine serves to "avoid[ ] ... premature
> adjudication" of legal questions and to prevent courts
> from "entangling themselves in abstract" debates that
> may turn out differently in different settings.    In
> ascertaining whether a claim is ripe for judicial
> resolution, we ask two basic questions: (1) is the claim
> "fit[ ] ... for judicial decision" in the sense that it arises in
> a concrete factual context and concerns a ***dispute that is***
> ***likely to come to pass***? and (2) what is "the hardship to
> the parties of withholding court consideration"?

*Id.* (marks and citations omitted) (emphasis added).  "To be ripe for review, claims

must satisfy both the fitness and the hardship components of the inquiry."  *Airline*

*Prof'ls Ass'n*, 332 F.3d at 988.

The allegations in the second amended complaint cannot satisfy either

component of the ripeness inquiry.  The facts Doe pleads do not establish that the

harm he alleges is "likely to come to pass" because the harm Doe anticipates at the

conclusion of the student conduct proceeding may never occur.  *Warshak*, 532 F.3d

at 525.  Where the parties and the Court "have no idea whether or when . . . a sanction will be ordered, the issue is not fit for adjudication." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotations omitted).  Doe's claims cannot be "ripe until the process complained of has reached its completion." *Wiley v. Texas State Univ.*, No. 1:18-CV-930-RP, 2019 WL 317247, at *4 (W.D. Tex. Jan. 24, 2019).[3]  This is because procedural claims are not fit for decision, and therefore are not ripe, until injury in the form of a sanction or deprivation of some other liberty or property interest has occurred.[4]

As the Sixth Circuit observed *en banc*, "Answering difficult legal questions before they arise and before the courts know how they will arise is not the way we typically handle constitutional litigation." *Warshak*, 532 F.3d at 526.  "Ripeness doctrine exists 'to ensure that courts decide only existing, substantial controversies, not hypothetical questions or possibilities.'" *Norton*, 298 F.3d at 554 (citations omitted).  Absent an adverse finding and the imposition of sanctions on the claims

---

[3] Unpublished cases are attached as Exhibit C to the Richards Declaration.

[4] Doe does not have a protected property interest in the University's procedures. To hold that such procedures create property rights "would make the scope of the Due Process Clause virtually boundless," and would mean that a person may not be deprived of a hearing without having a hearing.  *See Shvartsman v. Apfel*, 138 F.3d 1196, 1199-1200 (7th Cir. 1998); *see also, e.g.*, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Richardson v. Twp. of Brady*, 218 F.3d 508, 518 (6th Cir. 2000); *Griffith v. Fed. Labor Relations Auth.*, 842 F.2d 487, 495 (D.C. Cir. 1988).

asserted against Doe, the question whether defendants are liable under any of the counts set forth in the second amended complaint is purely advisory.

Even if Doe were able to plead a dispute "that is likely to come to pass," which he cannot, Doe will suffer no hardship from withholding judicial consideration until there has been an outcome.  *See Warshak*, 532 F.3d at 525. "The prototypical case of hardship comes from the claimant who faces a choice between immediately complying with a burdensome law or risk[ing] serious criminal and civil penalties."  *Id.* at 531 (marks omitted).  Doe has not been "require[d] . . . to engage in, or to refrain from, any conduct" to avoid "criminal and civil penalties for non-compliance."  *Id.* (citations and quotations omitted). Doe's conduct is not being "regulate[d]  . . . at all," and thus Doe is "not [being] put . . . in an untenable bind between undertaking an irreversible burden or risking criminal indictment."  *Id.*

Doe sued asking for an immediate halt to the University's process.  This Court agreed, stating in its vacated preliminary injunction order that it would not "simply standby as the fruit continues to rot on the tree."  (ECF No. 30 at 9.)  But this metaphor ignores and subverts the law; at this stage of the proceedings, the legal claim at the heart of that turn of phrase is not yet ripe because there has been no deprivation of a Constitutionally-protected liberty or property interest.  And as the Sixth Circuit has instructed, "an otherwise-unripe claim" may not "be

entertained on the ground that it will facilitate a judicial ruling on the merits." *Warshak*, 532 F.3d at 532. "The ripeness doctrine, like all limitations on the 'judicial Power,' prevents us from 'do[ing] today what can be done tomorrow' and, in the process, prevents us from announcing interpretations of the Constitution that some citizens and commentators may wish to hear today." *Id.* at 533.

In *Doe v. The Ohio State University*, 136 F. Supp. 3d 854 (S.D. Ohio 2016), much as here, the plaintiff was a student accused of misconduct. He sought an injunction against the university continuing with its investigation of his conduct based on his claim that the proceedings would violate his due process rights. *Id.* at 862-63. The court denied injunctive relief, noting that where the investigation was at an early stage, with no adverse finding against the plaintiff, the claim was not ripe for disposition. *Id.* at 864-65. The only other cases that address this question reached the same result, with this Court's vacated preliminary injunction opinion as the outlier. *See Peloe v. Univ. of Cincinnati*, No. 1:14-CV-404, 2015 WL 728309, at *8 (S.D. Ohio Feb. 19, 2015) (ruling plaintiff's "procedural due process claim is not ripe" when plaintiff had "not yet suffered a constitutional injury" because the "disciplinary proceedings [we]re not complete and no disciplinary penalty ha[d] been imposed upon [plaintiff]"); *Morreim v. Univ. of Tenn.*, No. 12–2891, 2013 WL 5673619, at *12 (W.D. Tenn. Oct. 17, 2013) (dismissing for lack of ripeness plaintiff's claim that university seeking to strip her of tenure violated

-14-

due process when no decision had been made); *cf. B.P.C. v. Temple Univ.*, No. 13-7595, 2014 WL 4632462, at *5 (E.D. Pa. Sept. 16, 2014) (denying preliminary injunction where alleged harm was "speculative, as the result of the hearing is not clear at this point").  Doe cannot satisfy either the fitness or hardship components of the ripeness inquiry, so this Court has no jurisdiction over Doe's claims.

## II.    Doe fails to state a procedural due process claim under the Fourteenth Amendment (Count I) because he has not been deprived of a protected due process interest and the 2019 Policy complies with *Baum*.

Even if Doe had alleged an injury sufficient to confer jurisdiction, Doe would not be able to state a due process claim because he has not been deprived of a protected due process interest.  *See Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999) ("To establish a procedural due process claim pursuant to § 1983, plaintiffs must establish . . . that they *were deprived* of [a] protected interest . . . .") (emphasis added).  But even if he had been deprived of a due process interest, Doe still could not state a claim because the 2019 Policy provides all process due in this Circuit.  The Sixth Circuit held in *Baum* that when a student is accused of sexual misconduct and credibility is at issue, due process requires that the student be provided a live hearing with direct cross examination.  *See Baum*, 903 F.3d at 581-85.  The 2019 Policy complies with *Baum* and provides all of the procedural protections *Baum* requires.  Critically, the 2019 Policy provides that "[a] typical hearing" includes "questions by one party to the other (typically with the

-15-

Respondent questioning the Claimant first)" and "follow-up questions by either party to any witness." (*See* ECF No. 47-3 at 33.)

Credibility is at issue in Doe's case, (*see* ECF No. 47 ¶ 48), so pursuant to the 2019 Policy the University will provide a live hearing with cross-examination. Doe's objections to the contrary are nothing more than speculation that the University will not provide what its 2019 Policy allows and *Baum* requires. The 2019 Policy provides a flexible framework for the full range of cases the University must adjudicate rather than a rigid, detailed code that may be well-suited to some circumstances and ill-suited to others. Doe's critiques of the 2019 Policy's procedures for hearings – e.g., that it does not explicitly state that all students are entitled to a live hearing with cross-examination and that hearing officers have discretion to control the format of hearings – do not establish that the 2019 Policy, as applied to him in the circumstances of this case, will fall short of providing him the process he is due under *Baum*. The fundamentally speculative nature of Doe's core procedural due process claim highlights the impossibility of litigating this claim before a hearing has occurred.

Doe also fails to state a claim with respect to his other due process challenges. Doe's challenge to the 2019 Policy's use of the "preponderance of the evidence" standard of proof necessarily fails because the Sixth Circuit has approved of the preponderance standard in student disciplinary proceedings

alleging sexual assault.[5] *See Doe v. Univ. of Ky.*, 860 F.3d 365, 368 n.2 (6th Cir. 2017). Doe's categorical challenges with respect to the use of interim measures (e.g., withholding of transcripts) and the procedures for appeals (e.g., the role and authority of the external reviewer) fail to state a claim because they lack basis and support in the governing case law, and, critically for the University, are constitutionally-permissible measures for the University to take with respect to a portion of the cases it investigates. No aspect of the 2019 Policy violates any governing precedent as applied to Doe, which is what matters in this case.

## III. In the alternative, Doe's Fourteenth Amendment procedural due process claim (Count I) is barred by qualified immunity to the extent it purports to establish liability against the individual defendants in their personal capacities.

Even if Doe could state a procedural due process claim, qualified immunity would bar that claim against the individual defendants in their personal capacities. Government employees like the individual defendants are immune from civil liability under 42 U.S.C. § 1983 when performing discretionary duties, provided "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Simmonds v. Genesee Cty.*, 682 F.3d 438, 443 (6th Cir. 2012) (quotations omitted).

---

[5] Doe's challenge also fails because the University announced in April of 2019 that effective July 1, 2019 it will replace the "clear and convincing" standard of proof with the "preponderance of the evidence" standard in its Statement of Student Rights and Responsibilities, which governs non-sexual forms of misconduct, such that the same standard will be used in all student conduct proceedings.

Qualified immunity prevents employees from being held liable for reasonable mistakes of law, fact, or mixed questions of law and fact made while acting within their scope of authority. *Id*. To determine whether qualified immunity shields an employee from § 1983 liability, the Sixth Circuit asks: (1) whether the employee violated a constitutional right; and (2) if so, whether that constitutional right was clearly established such that a "reasonable official would understand that what he is doing violates that right." *Id*. at 443-44 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)).

Even if Doe's due process claim were not insufficiently pled, qualified immunity would bar it to the extent it purports to establish liability against the individual defendants in their personal capacities. Because Doe's due process claim arises from potential actions that he alleges *might* violate his due process rights in the future, not from actions that have already taken place, Doe cannot even establish the first prong necessary to avoid qualified immunity, *i.e.* the violation of a constitutional right.

And even if the individual defendants' *had* taken actions that violated Doe's due process rights (they did not), they would still be entitled to qualified immunity because those rights were not clearly established. "For the right to be clearly established the case law must dictate, that is, truly compel (not just suggest or

allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002) (emphasis and quotation omitted).  "Because the focus is on whether the [employee] had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at that time did not clearly establish that the [employee's] conduct would violate the Constitution, the [employee] should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

The rights Doe contends were likely to be violated if the investigation against him went forward were not clearly established.  In *Doe v. Northern Michigan University*, No. 2:18-CV-196, 2019 WL 2269721 (W.D. Mich. May 28, 2019), the court ruled under similar circumstances that the defendants "did not violate Plaintiff's *clearly established* rights, and are therefore entitled to qualified immunity," because in spring 2018, "it was not entirely clear that a student was entitled to a live hearing" with cross-examination.  *Id.* at *7.  "[I]t was only after the disciplinary proceedings of this case that the Sixth Circuit stated in *Baum* that cross-examination is required if the fact-finder must choose between competing narratives." *Id.* at *8 (citations and quotations omitted).  So too here.

This Court's ruling on Doe's motion for a preliminary injunction reached the same conclusion in acknowledging that "the Sixth Circuit . . . ha[d] not ruled on whether a circumscribed form of cross-examination is constitutional in the absence of a live hearing."  (ECF No. 30 at 13; *see also* ECF No. 29 at 56 ("[W]e don't know what the Sixth Circuit is going to say no matter what I rule.").)  This uncertainty necessarily precludes a finding that the law was clearly established when defendants investigated the claims against Doe under the 2018 Policy.[6]  The individual defendants are entitled to qualified immunity, and Doe's claims against them in their personal capacities must be dismissed.

## IV.   Doe fails to state a claim under Title IX (Count II).

Title IX provides, in pertinent part, that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity" that receives federal funding.  20 U.S.C. § 1681(a).  A cognizable Title IX claim arising from a school disciplinary proceeding will generally fall within one of four categories: (1) erroneous outcome; (2) selective enforcement; (3) deliberate indifference; or

---

[6] Defendants' investigation of the claims against Doe under the 2018 Policy was fully consistent with established law in this Circuit at that time.  *See Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635, 640-41 (6th Cir. 2005); *see also Doe v. Miami Univ.*, 882 F.3d 579, 600 (6th Cir. 2018); *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 406 (6th Cir. 2017); *Doe v. Cummins*, 662 F. App'x 437, 439, 448 (6th Cir. 2016).

(4) archaic assumptions. *Miami Univ.*, 882 F.3d at 589 (citing *Cummins*, 662 F. App'x at 451-52 & n.9).

Here, Doe argues that an "erroneous outcome" has resulted in the withholding of his degree and that an "erroneous outcome" will occur *if* he is ultimately found to have violated University policy. (*See* ECF No. 47 ¶ 141; *see also id.* ¶ 131 (discussing *"likelihood"* of future erroneous outcome).) To state a claim[7] under an erroneous outcome theory, a plaintiff must plead "(1) facts sufficient to cast some articulable doubt on the accuracy of ***the outcome*** of the disciplinary proceeding and (2) a particularized . . . causal connection between the flawed ***outcome*** and gender bias." *Miami Univ.*, 882 F.3d at 592 (quoting *Cummins*, 662 F. App'x at 452) (emphases added).

Doe cannot carry his burden on either element because he has not and cannot assert any facts: (a) to cast doubt on the accuracy of an outcome that has not happened; or (b) to connect an outcome that has not happened to gender bias. The second amended complaint demonstrates that the investigation into Doe's conduct is not complete, no finding has been made, no sanction has been imposed, and, of course, no appeal of a finding has been taken. (ECF No. 47 ¶¶ 58, 73, 75.)

---

[7] "[A] complaint alleging Title IX violations must plead sufficient factual allegations to satisfy *Twombly* and *Iqbal*." *Miami Univ.*, 882 F.3d at 588; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level [to survive the pleading stage].").  A Title IX claim must be dismissed at the pleading stage where, as here, a plaintiff fails to plausibly allege discrimination on the basis of gender. *See id.*

The second amended complaint also lacks the types of particular facts indicating that gender motivated any "outcome." *See Miami Univ.*, 882 F.3d at 593 (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)) (outlining types of facts needed to satisfy second element of erroneous outcome claim). Doe's allegations are general and conclusory, neither speaking to the actions of the University in this case, nor reflecting bias in favor of females over males. *See Doe v. Univ. of Dayton*, No. 18-3339, 2019 WL 1224606, at *3 (6th Cir. Mar. 15, 2019) (explaining that "alleging that a university adopted certain procedures due to pressure from the federal government is not enough on its own;" instead, an erroneous outcome claim must be tied to respondent's own disciplinary proceeding); *Baum*, 903 F.3d at 586 (noting that "all of [the alleged] external pressure alone is not enough to state a claim that the university acted with bias in this particular case" and relying on allegations that hearing board rejected all male testimony and accepted all female testimony as demonstrating plausible inference of adjudicator bias); *Doe v. Univ. of Cincinnati*, No. 16-987, 2018 WL 1521631, at *5-6 (S.D. Ohio Mar. 28, 2018) (public pressure unrelated to respondent's own case insufficient to show causal connection to gender discrimination even on motion to dismiss). In sum, Doe's allegations come nowhere close to the requisite levels of specificity or severity required to state an erroneous outcome claim.

*Peloe v. University of Cincinnati* is instructive.  Peloe, a University of Cincinnati student, was accused of raping two women and subsequently charged with violating the university's student code of conduct.  *See* 2015 WL 728309, at *2.  Pursuant to the university's code of conduct, the charge against Peloe was to proceed through four levels of procedure before any discipline would be imposed: (1) a hearing resulting in a recommendation; (2) a review of the recommendation; (3) an appeal decision; and (4) a final decision.  *Id.* at *1-2.  The complaint against Peloe made it through only the first step – the hearing – before Peloe sued the university on due process grounds.  *See id.* at *3.  After the university moved to dismiss, Peloe sought leave to amend to add a Title IX claim alleging that gender bias caused an erroneous outcome in the "first step of a multi-step disciplinary process."  *Id.* at *4 & *14.  The university opposed the filing of a second amended complaint on futility grounds, arguing that the proposed erroneous outcome claim was not ripe.  *Id.*  The Court agreed.  In denying leave to amend, the Court noted:

> Peloe filed this suit after the ARC panel issued its nonbinding recommendation.  Peloe did not continue with steps two, three, or four of the disciplinary process. ***The Court cannot fairly determine at this stage whether gender bias caused an erroneous outcome because Peloe cut off the process before [the university] made an enforceable decision***. . . . In sum, the Title IX claim is not ripe because it involves contingent events that might not occur as Peloe anticipates.

*Id.* at *14 (emphasis added).

As in *Peloe*, the University's process was "cut off" before the University "made an enforceable final decision as to the sexual misconduct charges against [him]." *Id.* Doe's Title IX claim, which is based on mere speculation about a potential future outcome of the University's disciplinary process, cannot satisfy the elements of an erroneous outcome claim and must be dismissed. *See Wiley*, 2019 WL 317247, at *5 (dismissing claim where filed before university completed its process and claim was premised on "contingent future events that may not occur as anticipated, or indeed may not occur at all") (internal citation omitted); *Saravanan v. Drexel Univ.*, No. CV 17-3409, 2017 WL 5659821, at *4 (E.D. Pa. Nov. 24, 2017) (explaining plaintiff "must allege he is innocent ***and*** wrongly found to have committed an offense to plead a Title IX erroneous outcome theory claim") (emphasis added) (quotation omitted); *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 766 (D. Md. 2015) (plaintiffs satisfied two of three elements of erroneous outcome claim only by alleging existence of "numerous procedural defects" ***and*** "that th[o]se procedural flaws led to an adverse and erroneous outcome").

## V. Doe's ELCRA claims cannot be brought against the individual defendants in their personal capacities (Counts III and IV).

ELCRA claims may not be brought against the individual defendants in their personal capacities because ELCRA applies to "educational institutions," which include "agent[s] of an educational institution." MCL 37.2401. In other words, only an educational institution or someone acting as an agent or on an educational

institution's behalf is subject to liability under the statute. A personal capacity claim, by definition, is *not* a claim against an individual acting as an agent or on behalf of another person or entity. Nor can a person acting in his or her personal capacity fairly be said to be an "educational institution," the sole proper defendant under ELCRA for purposes of this lawsuit. Therefore, Doe's claims in Counts III and IV against the individual defendants in their personal capacities[8] must be dismissed with prejudice.

## CONCLUSION

Defendants respectfully request that the Court grant their motion and dismiss with prejudice all of Doe's claims in the second amended complaint.

June 5, 2019

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
Brian M. Schwartz
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
(313) 963-6420
schwartzb@millercanfield.com

/s/*Joshua W. B. Richards*
SAUL EWING ARNSTEIN & LEHR LLP
Joshua W. B. Richards
Amy L. Piccola
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102
(215) 972-7737
joshua.richards@saul.com
amy.piccola@saul.com

*Attorneys for Defendants*

---

[8] Doe's ELCRA claims against the Board of Regents and the individual defendants in their official capacities have been voluntarily withdrawn. *See* e-mail from Doe's counsel to defendants' counsel, attached as Exhibit B to the Richards Declaration.

-25-

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2019, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to:

Deborah L. Gordon
dgordon@deborahgordonlaw.com

/s/*Joshua W. B. Richards*
SAUL EWING ARNSTEIN & LEHR LLP
Joshua W. B. Richards
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102
(215) 972-7737
joshua.richards@saul.com

*Attorneys for Defendants*