UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JOHN DOE, | Case No. 18-11776 |
| Plaintiff, | SENIOR U.S. DISTRICT JUDGE ARTHUR J. TARNOW |
| v. | U.S. MAGISTRATE JUDGE |
| UNIVERSITY OF MICHIGAN, ET AL., | ELIZABETH A. STAFFORD |
| Defendants. | |

**RESPONSE TO DEFENDANTS' PETITION FOR WRIT OF MANDAMUS**

The Court welcomes the request for a response.

Case management is the responsibility of the Court. Because there appears to be some confusion concerning the Court's reasons for scheduling a settlement conference and ordering the President to appear, the undersigned will repeat, for the benefit of the panel and the public, much of what it has already said to the parties in chambers.

The chronology of this case gives the Court reason to believe that the parties are not working together to reach what it hopes is their common goal: instituting a University-wide sexual misconduct policy that protects the rights, needs, and well-being of all students, including victims of sexual assault and those accused of sexual assault.

Bolstering this belief is the University's decision to issue a new policy without consulting Plaintiff's counsel. The ruling in *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) should have been helpful in formulating a hearing procedure acceptable to both parties. On January 9, 2019, however, four months after *Baum* was decided, the University announced a new policy which includes procedures to which Plaintiff would now be subject. The University's lawyers proceeded by using the new policy as a basis for declaring compliance with due process and for filing a motion to dismiss the entire action. The University's unilateral actions virtually guarantee the possibility of an appeal of any ruling by the Court. The result? Delay, uncertainty, and additional billable hours for an ever-expanding defense team,[1] with no added value to its client.

Had the University been sincerely committed to its purported goals of serving the interests of *all* of its students and expedient resolution of this case,[2] it would have—at a minimum—sought input from Plaintiff's counsel before instituting a policy which directly affects her client and the outcome of this case.

---

[1] The University has now retained a total of three legal teams from different law firms—Saul, Ewing Arnstein & Lehr, Miller Canfield, and Jones Day—to assist its Office of General Counsel. It should also be noted that General Counsel is probably on a salary, but he had not filed an appearance in this case until June 6, 2019.

[2] My experience leads me to believe all counsel are in pursuit of a fair result to be achieved expeditiously.

Further supporting the Court's decision to hold a settlement conference are the University's representations at the status conferences held on April 25, 2019 and May 1, 2019. The April 25th conference was intended to be an opportunity for the parties to resume discussions in light of the Sixth Circuit's remand. *See John Doe v. Board of Regents of the University of Michigan, et al.*, 18-1870, 18-1903 (6th Cir. Apr. 10, 2019). Instead, the conference became a performance for the University's attorney, Mr. Richards, who, despite his litigation experience, repeatedly claimed that he did not understand the meaning of the term "cross-examination."[3] If, as the University says in its petition, the Court used an expletive at the conference, it did so in response to Mr. Richards' insincere behavior concerning the plain meaning of "cross-examination." The tenor of the April 25th conference, which was held off-the-record, prompted the need for a court reporter at the May 1st conference.

At this juncture, a settlement conference is the most efficient (and perhaps the only) way to get the parties to engage in open dialogue to reach a resolution that best serves the interests of the individual students involved in this case and the student body at large.

The President's participation is necessary to achieve this goal. He is the representative with the ultimate authority to settle this case, *see* L.R. 16.6, and the

---

[3] To satisfy my curiosity, I ask nearly every attorney who appears in this Court to tell me where he or she attended law school.

authority adequate for the University's responsible and effective participation, *see* L.R. 16.1.[4] The University has asked for permission to send another official with full settlement authority and expertise to attend in the President's place, but it cannot even identify who this person is.[5] Nowhere in its Petition does the University provide the name or title of an individual who has "full settlement authority" and "more particularized knowledge" concerning the policy. Moreover, while the Court welcomes the attendance of the General Counsel, he is not the client in this case; and as the Court understands it, his authority is limited to making a strong recommendation to his client. Finally, as far as the Court aware, no representative with full settlement authority has ever even discussed this case with Plaintiff's counsel since its commencement.

Obviously, the President is not the person with the most particularized knowledge on how to tackle the unique obstacles presented by conducting sexual misconduct proceedings on campus. But that is why the University has hired experts and attorneys. Any agreement reached by the experts in the room is ultimately

---

[4] The Court also considers the President to be the client here. Despite the Court's Practice Guidelines, which require the client's attendance at the initial status conference, the President failed to appear. *See* Practice Guidelines, *Conferences*, https://www.mied.uscourts.gov/index.cfm?pageFunction=chambers&judgeid=17 (last visited June 17, 2019).

[5] When the Court asked who this person might be, Mr. Richards responded: "I would have to check with my client as to who the right person would be, your Honor, but it is certainly not the President." Tr. 8:1-5, May 1, 2019.

subject to the President's approval. His attendance at the conference avoids the need to resort to the bureaucratic and lengthy settlement process inherent in university litigation. It is also important for the President to be aware of the demeanor of his legal representative.

Contrary to the University's accusation that the Court wishes to "cross-examine [the President] on matters of public policy," Defs.' Pet. at 5, the Court has no expectation that the President issue any sort of statement, let alone testify, at the conference. As with any settlement conference, the talking will be left to the attorneys.

Furthermore, holding a settlement conference is the Court's attempt to protect all parties, including the University and its President, Plaintiff, and the complainant from unnecessary publicity and delay. Instead of cooperating to meet these goals, however, the University's attorneys have refused to participate in good faith. When faced with the Court's request for the President's appearance, Mr. Richards, the apparent leader of this ever-changing legal team, insisted that the Court order the President to appear so that he could "explain to [his] client what the situation is." Tr. 11:20-22, May 1, 2019. Before issuing the order, the Court cautioned Mr. Richards: "If you want me to put it in writing so the media has it, it will be something like, the President has been requested to participate in a discussion of a proposed rule and has chosen not to appear. Therefore, I order that he appear." Tr. 11:13-18, May 1, 2019.

While the press covered the story more fully, and, for the most part, accurately, the resulting publicity has neither helped the University's image nor contributed to the resolution of this case.[6]

The University's attorneys appear to be more concerned with keeping the President out of the public eye than with prompt resolution of this case and providing a fair process for adjudicating sexual misconduct claims.

The Court has bent over backwards to accommodate the President's schedule, proposing several dates and times, and deferring to his availability. As the docket shows, the Court adjourned the conference from June 11th to June 13th to conform to the President's schedule. After the Court adjourned the conference to June 13th at 11:00 AM at the University's request, the University's attorneys informed the Court that the President would only be available until Noon on June 13th. This led the Court to change the start time to 10:00 AM.

The Court pauses to acknowledge its last-minute decision to hold the conference on the record and open to the public. The University correctly notes that the Court had previously indicated that the conference would be held in chambers,

---

[6] Although I suggested that a formal order requiring the President to appear would pique the media's interest, I did not anticipate the ambiguous headline in the Detroit Legal News, "Judge orders U-M president to court in sexual misconduct case." Ed White, *Judge Orders U-M President to Court in Sexual Misconduct Case*, DETROIT LEGAL NEWS, May 10, 2019, at 1. While the article was a standard Associated Press story, the headline was unique to the Legal News.

off the record, and that a court reporter would be available if necessary. As previously stated, perhaps too abruptly in its Order [54], the Court prefers to err on the side of transparency in this matter of public importance. To quote the venerable Judge Damon J. Keith: "Democracies die behind closed doors."

The Court's change of heart was also prompted, at least in part, by the University's public filing of a Motion to Dismiss the Second Amended Complaint [49] on June 5, 2019. The filing incited confusion amongst the media on whether it was an attempt by the University to avoid the conference, ultimately causing the University to issue a statement clarifying its position on the matter. *See* Gus Burns, *UM Seeks Lawsuit Dismissal as Mark Schlissel Court Appearance Approaches*, MLIVE, June 6, 2019, https://www.mlive.com/news/2019/06/university-of-michigan-makes-last-ditch-effort-to-avoid-forced-court-appearance-by-president.html.

One of the main reasons behind the Court's insistence on resolution via settlement is to avoid media attention and preserve the University's public image. But, despite the Court's warnings, the University has pursued every possible avenue for garnering publicity in this case. This includes its filing of a Petition for Writ of Mandamus, which the Court views as an improper method for procuring appellate intervention at this stage. The proper recourse would have been to file an interlocutory appeal of the Court's Order Denying Defendants' Motion for

Reconsideration [44] issued on May 8, 2019, which would have given the Court of Appeals more than one month to consider the Court's ruling, as opposed to one day. Instead, in a last-ditch effort to circumvent the time limits for filing an interlocutory appeal,[7] the University asks for the extraordinary remedy of a writ of mandamus.

The University's Petition is without merit. Case management is the prerogative of the trial judge. Fed. R. Civ. P. 16. Based on its experience and course of dealing with the attorneys over the past year, the Court believes it reasonable and necessary to require the President to appear to achieve the University's effective participation. The Court hopes to hold this informal conference in open court to quell the public's confusion concerning the status of the case which has been generated by the University's recent filings.

s/Arthur J. Tarnow<br>
Arthur J. Tarnow<br>
Senior United States District Judge

Dated: June 17, 2019

---

[7] 28 U.S.C. § 1292 provides ten days within which a party must file its application for an interlocutory appeal.