UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE, *an individual,*

      Plaintiff,

vs.

UNIVERSITY OF MICHIGAN, et al.,

      Defendants.

Case No.: 18-cv-11776
Hon.  Arthur J. Tarnow
Mag.  Elizabeth A. Stafford

---

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Elizabeth A. Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

---

**UNIVERSITY OF MICHIGAN**
Timothy G. Lynch
Patricia M. Petrowski
Attorneys for Defendants
5010 Fleming Administration Bldg.
503 Thompson St.
Ann Arbor, MI  48109
(734) 764-0305
timlynch@umich.edu
ppetrows@umich.edu

**MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.**
Brian M. Schwartz (P69018)
Attorney for Defendants
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
(313) 963-6420
schwartzb@millercanfield.com

**SAUL EWING ARNSTEIN & LEHR LLP**
Joshua W.B. Richards
Amy L. Piccola
Attorneys for Defendants
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102
(215) 972-7737
joshua.richards@saul.com
amy.piccola@saul.com

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS HIS 2ND AMENDED COMPLAINT**

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................................... iii

I.   FACTUAL BACKGROUND ............................................................................................... 1

     Defendants Adjudicate a Sexual Misconduct Complaint against Plaintiff under an
     Unconstitutional Policy ................................................................................................... 1

     *Doe v Baum* is Decided: This case is Remanded for Reconsideration ........................... 3

II.  ANALYSIS ......................................................................................................................... 6

     A.   Defendants' Argument that the Court has no Further Role to Play in this
          Matter is Frivolous ................................................................................................. 6

     B.   Defendants' Standing and Ripeness Argument are Frivolous ................................. 9

     C.   Plaintiff States a Due Process Claim ..................................................................... 10

     D.   Defendants are not Entitled to Qualified Immunity ............................................... 13

     E.   Plaintiff States a Claim under Title IX .................................................................... 17

          1.   The "Hold on Plaintiff's Degree and Transcript Constitute an
               Erroneous Outcome ..................................................................................... 18

          2.   Plaintiff Demonstrated a Casual Connection between the Interim Policy's
               Procedural Deficiencies and Gender Discrimination ................................... 19

               a.   "Start by Believing" Campaign .......................................................... 19

               b.   Defendants Referred Plaintiff to the Sexual Assault Awareness
                    and Prevention Center ...................................................................... 20

               c.   The Hold on Plaintiff's Degree and No Contact Order Evince
                    Gender Discrimination ...................................................................... 21

     F.   Plaintiff States a Viable ELCRA Claim ................................................................... 23

i

III.    CONCLUSION..............................................................................................................23

CERTIFICATE OF SERVICE ...........................................................................................24

## INDEX OF AUTHORITIES

Cases                                                                                          Page

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, S.Ct. 2505, 91 L.Ed.2d 202 (1986) ........................................................... 17

*Apseloff v. Family Dollar Stores, Inc.,*
236 Fed. App'x 185 (6th Cir. 2007) ................................................................................. 11

*Arbaugh v. Y&H Corp.,*
546 U.S. 500 (2006) .......................................................................................................... 9

*Arizona v. California,*
460 U.S. 605 (1983) ........................................................................................................ 10

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................................................ 10

*Ashiegbu v. Williams,*
129 F.2d 1263 (6th Cir. 1997) ........................................................................................ 16

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................................................ 10

*Binelli v. Charter Twp. of Flint,*
488 F. App'x 95 (6th Cir. 2012) ..................................................................................... 13

*Cincinnati* and *Doe v. Miami Univ.,*
882 F.3d 579 (6th Cir. 2018) ......................................................................................... 15

*Collyer v. Darling,*
98 F.3d 211 (6th Cir. 1996) ........................................................................................... 13

*Columbia Natural Res., Inc. v. Tatum,*
58 F.3d 1101 (6th Cir. 1995) ......................................................................................... 11

*D'Andre M. Alexander, Plaintiff v. Edward Nietzel, Defendant,*
No. 2:16-CV-12071, 2018 WL 3685455, at *3 (E.D. Mich. July 10, 2018) .................. 9, 10

*Doe v. Baum,*
903 F.3d 575 (6th Cir. 2018) ................................................................................. *Passim*

*Doe v. Miami University,*
    882 F.3d 579 (6th Cir. 2018) ......................................................................... 16, 17

*Doe v. Univ. of Cincinnati,*
    872 F.3d 393 (6th Cir. 2017) ............................................................................ 1, 16

*Elezovic v. Ford Motor Co.,*
    697 N.W.2d 851 (Mich. 2005) .............................................................................. 23

*Flaim, v. Med. Coll. of Ohio,*
    418 F.3d 629 (6th Cir. 2005) ................................................................................ 16

*Goss v. Lopez,*
    419 U.S. 565 (1975) ............................................................................................. 16

*Grannis v. Ordean,*
    234 U.S. 385 (1914) ............................................................................................. 16

*Hall v. State Farm Ins. Co.,*
    18 F. Supp. 2d 751 (E.D. Mich. 1998) ................................................................. 23

*Hishon v. King & Spalding,*
    467 U.S. 69 (1984) ............................................................................................... 12

*Lee v. Sheet Metal Workers' Nat. Pension Fund,*
    697 F. Supp. 2d 781 (E.D. Mich. 2010) .............................................................. 11

*Logsdon v. Hains,*
    492 F.3d 334 (6th Cir. 2007) ............................................................................... 13

*Newsome v. Batavia Local Sch. Dist.,*
    842 F.2d 920 (6th Cir. 1988) ............................................................................... 16

*Ogden v. Michigan Dep't of Corr.,*
    No. 07-CV-10111, 2008 WL 11355501, at *6 (E.D. Mich. June 2, 2008) .......... 23

*Pearson v. Callahan,*
    555 U.S. 223 (2009) ............................................................................................. 14

*Russo v. City of Cincinnati,*
    953 F.2d 1036 (6th Cir.1992) .............................................................................. 13

*Saucier v. Katz,*
    533 U.S. 194 (2001) .......................................................................................... 14

*Simmonds v. Genesee Cty.,*
    682 F.3d 438 (6th Cir. 2012) ........................................................................... 17

*Yusuf v. Vassar Coll.,*
    35 F.3d 709 (2d Cir. 1994) ............................................................................... 17

**Other Authorities**

Fed. R. Civ. P. 12(h)(3) ............................................................................................. 9
Federal Rule of Procedure 12(b)(6) .............................................................. 11, 13
Oral Argument Before Sixth Circuit Court of Appeals in Case No. 17-2213, *John Doe v.*
    *David Baum et al.,* http://www.opn.ca6.uscourts.gov/internet/court_audio/aud1.php, at
    29:06—29:26 (August 2, 2018) ....................................................................... 15

## I.   FACTUAL BACKGROUND

### Defendants Adjudicate a Sexual Misconduct Complaint against Plaintiff under an Unconstitutional Policy

On September 25, 2017, this Court issued its Opinion in *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017), holding that where credibility is at stake, a live hearing and some form of live cross-examination is required. At that time the University had a Sexual Misconduct Policy, effective July 1, 2016, that allowed no live hearing and no cross-examination of any kind; it used a single investigator model.

Four months later, on February 7, 2018, the University issued a new Sexual Misconduct Policy. ECF 47, Pg. ID 1334. The 2018 Policy intentionally did not comply with *Cincinnati*. It again denied students live hearings and cross-examination; it continued with the single investigator model.  ECF 47-1, Pg. ID  206-216. At the same time, the University had a starkly different process for students accused of all other forms of misconduct – they were entitled to a live hearing and an opportunity to cross-examine witnesses. ECF 47-2, Pg. ID 169-171.

On March 12, 2018, a female student filed a sexual misconduct complaint alleging that Plaintiff had engaged in a nonconsensual sexual encounter with her.  ECF 47, Pg. ID 1329. Plaintiff stated that the encounter was consensual. *Id.* Defendants proceeded to adjudicate the complaint using their 2018 Policy, which did not comport with *Cincinnati*. By April 2018, Plaintiff had earned all of the necessary credits to graduate *cum laude* with a degree in engineering at a cost more than $260,000. Based on a mere allegation, with the

1

investigation ongoing and no finding, the University placed an indefinite hold on Plaintiff's degree and transcript. *Id.*, Pg. ID 1333.

On June 4, 2018, Plaintiff filed his Complaint. ECF 1. On June 5, 2018, Plaintiff filed his Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI"). ECF 4. In response, Defendants mounted a legally unsupportable argument that their single investigator model, which provided for no hearing and no cross-examination, complied with due process.

On June 14, 2018, with the University's investigation 90 days old but still incomplete, this Court ordered that it release and provide Plaintiff with his official transcript and diploma. ECF 19, Pg. ID 270. In response to Plaintiff's Motion for a TRO directing Defendants to provide him due process, Defendants argued that their single-investigator model was constitutional. ECF 21, Pg. ID 328-30; ECF 29, Pg. ID 706:10-707:7, 718:16-719:55. On July 6, 2018, the District Court granted in part Plaintiff's Motion for a TRO.  This Court ordered the University to provide Plaintiff a live hearing as set forth in the University Statement of Student Rights and Responsibilities with the exception that he was not authorized to directly ask questions of the claimant; cross-examination of witnesses would be done by university officials. ECF 30, Pg. ID 744.

On July 25, 2018, Defendants appealed the District Court's July 6, 2018 Order, arguing, in relevant part, that Plaintiff lacked standing and that his claims were unripe.

2

Plaintiff cross-appealed, arguing that he or his representative should be allowed to pose direct questions to the claimant and witnesses.

On August 22, 2018, at Defendants' request, this Court stayed the University's investigation into Plaintiff's alleged misconduct pending disposition of the parties' cross-appeals. ECF 41, Pg. ID 1262.

### *Doe v. Baum* is Decided: This Case is Remanded for Reconsideration

On August 1, 2018, *Doe v. Baum*, 903 F.3d 575, 578 (6th Cir. 2018) was argued before the Court of Appeals. Judge Julia Smith Gibbons noted with concern the University's continued refusal to comply with the law: "I can't get past the University's indifference, defiance, or whatever you want to call it to our Circuit precedent and the basic principles of due process." *See* Oral Argument Before Sixth Circuit Court of Appeals in Case No. 17-2213, John Doe v. David Baum, et al., http://www.opn.ca6.uscourts.gov/internet/court_audio/aud1.php, at 29:06-29:26 (August 2, 2018).

On September 7, 2018, the Sixth Circuit issued its Opinion in *Doe v. Baum, et al*, 903 F.3d 575 (6th Cir. 2018), *reh'g en banc denied* (Oct. 11, 2018), holding in pertinent part:

> "if a public university has to choose between competing narratives to resolve a case, the university must give the accused student or his agent an opportunity to cross-examine the accuser and adverse witnesses in the presence of a neutral fact-finder. Because the University of Michigan failed to comply with this rule, we reverse." *Id.* at 578.

On January 9, 2019 the University implemented an "Interim Policy" applicable to student sexual misconduct complaints. Defendants took the position in the Sixth Circuit that this policy (which, as an "interim" measure could be materially changed or replaced at any time) mooted Plaintiff's cross-appeal. *See* Defs.-Cross Appellees' Motion to Quash-Dismiss Appeal, Case 18-1903, RE 23, p. 2-3, 7-8. Plaintiff disagreed. *See* Pl.'s Resp. to Motion to Quash-Dismiss Appeal, Case 18-1903, RE 28, p. 7.

On April 10, 2019, this case was remanded by the Sixth Circuit specifically for the Court to consider the *Baum* holding and the Interim Policy. The Court explained,

> "Since these appeals were docketed, this circuit published *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018), and the University has implemented an interim policy that it says will now apply to Doe's case. The district court should reconsider the impact of *Baum* and Michigan's interim policy in the first instance. The district court's preliminary injunction is VACATED, and we REMAND for reconsideration in light of *Baum* and the University's interim policy." ECF 42.

The Sixth Circuit rejected Defendants' Motion to Dismiss Plaintiff's cross-appeal as "moot." *Id.* Notably, the Court did not take up Defendants' arguments of "standing" and "ripeness," leaving this Court's jurisdiction over this case intact, and mooting Defendants arguments here, which they now assert for the third time.

On April 25, 2019 this case moved forward with a status conference. In light of *Baum*, the Court discussed what due process would be afforded to Plaintiff at the stage where a decision would be made as to a policy violation. Defendants took the position that their Interim Policy resolved all due process issues. Plaintiff disagreed in that the Interim Policy did not guarantee that where credibility was at stake, a live hearing with cross-examination

4

would be allowed, among other concerns. The Judge directed the parties to attempt to resolve their dispute as to the Interim Policy.  Plaintiff was to submit proposed concerns and potential policy amendments to Defendants in writing by Thursday, May 2, 2019. Defendants were instructed to respond to Plaintiff's proposal by Thursday, May 9. Thereafter a conference would be held with the parties. The conference was scheduled for June 13, 2019, but based on Defendant's Petition for a Writ of Mandamus a stay was issued.

On May 22, 2019, Plaintiff filed his Second Amended Complaint (ECF 47), alleging in pertinent part, that Plaintiff's constitutional rights were violated in that he did not receive sufficient notice of the charges against him, and that the January 9, 2019 Interim Policy does not provide him with due process as required by *Baum*.

 On June 10, 2019, Plaintiff filed a Motion for Partial Summary Judgement, seeking, in pertinent part, an Order that:

 a. Defendants' February 7, 2018 Policy, under which they began adjudicating an OIE complaint against Plaintiff, was unconstitutional; and that Defendants are enjoined from using it;

 b. In that credibility is at stake, Defendants must provide Plaintiff a live hearing and the opportunity to cross-examine adverse witnesses in front of a neutral fact-finder;

 c. Defendants are enjoined from placing a "hold" on Plaintiff's student account or withholding Plaintiff's certified transcripts or degree prior to a final adjudication against him; and

 d. Defendants shall not impose a pre-hearing suspension or other serious penalty prior to a final adjudication against Plaintiff, except where the risk of health and

5

safety of other students is deemed emergent and extraordinarily high; ECF 53, Pg. ID 1786.

Defendants declined to concur in Plaintiff's relief sought, including that in paragraph "a" above.

## II.   ANALYSIS

### A.   Defendants' Argument that the Court has no Further Role to Play in this Matter is Frivolous

It is obvious that the current task of this Court, per the Sixth Circuit's remand, is to ensure that Plaintiff receives process that is constitutional and which comports with *Baum*. ECF 42. In its Order, the Sixth Circuit specifically referenced the fact that the January 9, 2019 Interim Policy had been issued, but did not order the district court to unquestioningly adopt the Interim Policy and divest itself of the case. *Id.* at Pg. ID 1265-6. To the contrary, the remand requires an analysis of the constitutionality of the Interim Policy. *Id.* Defendants ignore this reality.

Presently, the Court has instructed the parties to attempt to resolve the question of what process Plaintiff will receive, and whether the Interim Policy is sufficient in that regard. Plaintiff has gotten little traction with Defendants. As can be seen from Defendants' Motion for Stay and Petition for Writ of Mandamus, they do not believe Plaintiff or the Court have any further role to play in this matter. They posit that Plaintiff and the Court should let the University unilaterally decide how to adjudicate the complaint against Plaintiff. Unsurprisingly, Defendants refused to respond to Plaintiff's basic questions about the process he will be afforded, including:

6

**3.   A hearing with cross-examination shall be provided.** The Interim Policy does not expressly state that Respondents are entitled to a live hearing with the opportunity for in-person cross-examination of parties and material witnesses. In fact, the Interim Policy does not state anywhere that there is any guarantee to a hearing with cross-examination. (See Interim Policy at 25, "a hearing where warranted;" at 31, "if a hearing is required.")   Nor is there any reference to the legal requirement that where credibility is at stake, such as in a he said/she said case, cross-examination must be provided. Your letter agrees to a hearing with cross-examination "in Mr. Doe's case." I assume that means you do not intend to make this a part of your Interim Policy but agree to it for this particular case.

- Do Defendants agree to explicitly state in the Interim Policy that where credibility is at issue Respondents are entitled to a live hearing with direct, in-person cross-examination before being deprived of their protected liberty or property interests?  If not, why not? The Interim Policy states that the hearing officer has "absolute discretion to decide on a format for the hearing…," and will directly examine parties and witnesses. Per the Policy, only "follow-up questions" by the parties will be allowed. (See Interim Policy at 33) The definition of the term "follow-up" is unclear.
- Do Defendants agree that questions may be asked by the parties that go beyond the scope of the questions asked by the hearing officer? Will Defendants change the Policy to make this clear?  If not, do Defendants agree to that language for this case?
- Do Defendants agree that the "absolute discretion" with regard to the format will not negate the requirement of live, verbal questions by the parties? **Ex. A**, Questions as to Defs.' Resp. of May 9, 2019 at 10-13.

Contrary to Defendants' assertions, this Court cannot adopt, as a matter of law, their current position that the Interim Policy provides all necessary due process merely on the basis of their conclusory statements. But in addition, Defendants have a documented history of arguing that their policies are constitutional when the Sixth Circuit has held otherwise. Throughout Doe v. Baum, Defendants argued that the single-investigator model was constitutional. After the Cincinnati Court held that a live hearing and some form of live cross-examination was required, Defendants issued their 2018 Policy that provided no such

7

protections. Defendants then vociferously argued to this Court that the single investigator model provided all due process required in cases involving serious discipline where credibility was at stake. This position echoes the doomed argument Defendants earlier asserted in this case in response to Plaintiff's Motion for a TRO, that private interviews with investigators and written feedback constituted cross-examination, and that in the University's "expert" opinion, there was simply no need for a live hearing in Plaintiff's case. ECF 21, Pg. ID 328-30; ECF 29, Pg. ID 706:10-707:7, 718:16-719:55. Furthermore, in their appeal of the TRO, Defendants represented to the Sixth Circuit that under the Interim Policy Plaintiff would only receive a hearing "if warranted by the facts adduced in the investigation." Case: 18-1870, Doc. 23, Pg. 41. Mere weeks ago, Defendants refused to stipulate to an Order stating that they will not reinstitute their unconstitutional 2018 Policy, and that they would provide Plaintiff due process. Ex. B, Refusal to Concur. Instead, they filed this Motion—seeking to subvert the Sixth Circuit's mandate that this Court reconsider its decision to grant a TRO in light of Baum and the Interim Policy. Desperate to avoid subjecting their new procedure to judicial scrutiny, Defendants prematurely seek the dismissal of Plaintiff's case.

This Court must eventually rule on what procedure will be used to adjudicate the complaint against Plaintiff. ECF 42. Defendants' Motion attempts an end-run around the Sixth Circuit's mandate. Defendants assert that this Court should immediately and permanently divest itself of this case without rendering an opinion on whether their Interim

Policy is constitutional—the Court should simply take their word for it. However, the Court is not in the correct procedural posture to grant Defendants' requested relief. Under the Sixth Circuit's Order, only when the Court adjudicates what process will properly be applied to Plaintiff (the Interim Policy, Statement of Student Rights and Responsibilities, or a different process ordered by the Court) can dismissal of Plaintiff's case be considered.

### B.      Defendants' Standing and Ripeness Arguments are Frivolous

Defendants' standing and ripeness arguments amount to an assertion that this Court does not have subject matter jurisdiction over Plaintiff's claims. Under the procedural rules, a federal court must dismiss a case the instant it realizes that it lacks jurisdiction over it. Fed. R. Civ. P. 12(h)(3); see also *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). This Court properly held that Plaintiff's claims were ripe. ECF 30, Pg. ID 733-4. It properly declined to address Defendants' oral argument that Plaintiff lacked standing. *Id.; see also* ECF 29, Pg. ID 702:16-24; 703:16-22; 705:8-13. The Sixth Circuit's remand of this Court's injunction did not disturb this Court's finding that it had jurisdiction over Plaintiff's claims. ECF 42. Neither did the Sixth Circuit grant Defendants' request that it find a lack of subject matter jurisdiction, conspicuously declining to address Defendants' arguments regarding standing and ripeness. Instead, it remanded the case for further consideration by the district court. *Id.* Neither the Sixth Circuit's holding, nor the action its holding requires of this Court could be accomplished unless Plaintiff's claims were ripe and he had standing. Defendants' arguments are frivolous.

Accordingly, the law of the case created by both this Court and the Sixth Circuit holds that Plaintiff's claims are ripe, and he has standing. The doctrine of the law of the case dictates that, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *See D'Andre M. Alexander, Plaintiff v. Edward Nietzel, Defendant,* No. 2:16-CV-12071, 2018 WL 3685455, at *3 (E.D. Mich. July 10, 2018), *report and recommendation adopted sub nom. D'Andre M. Alexander, Plaintiff v. Edward Nietzel, Defendant,* No. 16-12071, 2018 WL 3659525 (E.D. Mich. Aug. 2, 2018) quoting *Arizona v. California,* 460 U.S. 605, 618 (1983). While this rule remains subject to a court's discretion, Defendants have presented none of the factors justifying reconsideration of an earlier-decided issue, nor could they. *See D'Andre M. Alexander, Plaintiff v. Edward Nietzel, Defendant,* 2018 WL 3685455, at *3. Until this Court rules as to what process is due Plaintiff, his position remains factually and legally unchanged. Plaintiff's claims have always been, and remain ripe for judicial review. Likewise, he has always had, and still maintains standing to bring his claims against Defendants. Defendants' arguments are frivolous, and should be rejected. Should the Court require further exposition on these issues, Plaintiff relies on his briefing of them before the Sixth Circuit, as his position remains unchanged. *See* Case: 18-1903, Doc. 22, Pg. 35-56.

C.    **Plaintiff States a Due Process Claim**

As set forth above, the Court is not in the correct procedural posture to grant Defendants' request to dismiss Plaintiff's due process claim. Defendants may not use their

instant Motion to do an end-run around the Sixth Circuit's Order that this Court consider what process is due to Plaintiff in light of *Baum*. ECF 42. Notwithstanding this procedural barrier to Defendants' requested relief, Plaintiff has resolutely met the pleading standards under Fed. R. Civ. P. 12(b)(6) with regard to his due process claim.

Under Federal Rule of Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Lee v. Sheet Metal Workers' Nat. Pension Fund*, 697 F. Supp. 2d 781, 784 (E.D. Mich. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A suggestion is plausible when it contains enough factual content that the court can reasonably infer that the defendant is liable. *Baum*, 903 F.3d at 580 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Although as a matter of law "a judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations," this is precisely what Defendants ask this Court to do. *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). Defendants seek dismissal of Plaintiff's due process claim on the basis of their belief that the Interim Policy is constitutional. However, the law requires that the Court may only dismiss a complaint "'if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Apseloff v. Family Dollar Stores, Inc.*, 236

11

Fed. App'x 185, 187 (6th Cir. 2007) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

According to the Sixth Circuit, if it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds. *Baum,* 903 F.3d at 581. Plaintiff pled specific facts plausibly demonstrating that the Interim Policy does not provide the due process required by *Baum,* including that the Interim Policy does not guarantee a hearing or cross-examination even where credibility and serious discipline is at stake; and permits ultimate decision-makers regarding sanctions in these cases to deprive students of their constitutionally protected interests without first assessing credibility. ECF 47, Pg. ID 1340-4, ¶¶ 82-6. He pled specific facts plausibly demonstrating that he has suffered concrete harm and damages as a result of Defendants' actions, and that he remains in immediate peril of future harms. ECF 47, Pg. ID 1330-2, 1337-8, 1348-51, ¶¶ 30-8, 58-65, 98-116; Pg. ID 1329-32; 1348-51, ¶¶ 20-1, 29-38, 98-116; Pg. ID 1333, ¶¶ 44-6.

If Defendants intended to provide a hearing and cross-examination where required to do so by law, they would have done so unambiguously. As set forth above, their actions belie their so-called intent to provide Plaintiff due process. Defendants want Plaintiff and this Court to be satisfied with their current representation that Plaintiff will be provided due process—despite the fact that their representations are ever-changing, depending on which legal argument is most expedient for them to make in any given moment. Moreover, the

current policy governing the adjudication of sexual misconduct claims is only "Interim" (meaning, "provisional, temporary, stop-gap, or make-shift;" https://www.dictionary.com/browse/interim (June 26, 2019)), and accordingly may be changed or replaced at any time. Neither Defendants' lip-service, nor their carefully cropped selections from the Interim Policy can, as a matter of law, comprise the basis for dismissal of Plaintiff's due process claim under Fed. R. Civ. P. 12(b)(6). Accepting all of Plaintiff's factual allegations as true, and drawing all reasonable inferences in his favor, this Court must find that these facts and inferences plausibly give rise to an entitlement to relief, and deny Defendants' motion. *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007); *Iqbal*, 556 U.S. at 679. Defendants' motion must be denied.

### D.    Defendants are not Entitled to Qualified Immunity

First, Defendants' claimed defense of qualified immunity may only be considered with regard to Plaintiff's claims for legal, not equitable relief. *Collyer v. Darling*, 98 F.3d 211, 222 (6th Cir. 1996) ("[I]mmunity only precludes claims for monetary damages against officials in their individual capacities, and not claims for injunctive or declaratory relief."). Second, in his Second Amended Complaint, Plaintiff asserts claims for legal and equitable relief as to the actions taken against him by Defendants up until the University's process against him was stayed by this Court's Order entered August 22, 2018. ECF 41.

Plaintiff alleged facts sufficient to indicate that Defendants violated clearly established law.  *Russo v. City of Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992). The

standard for determining whether qualified immunity applies is to ask (1) whether the officials violated the plaintiff's constitutional rights; and (2) whether the rights were clearly established. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001). However, the Supreme Court has authorized lower courts to answer the second question first. *See Pearson v. Callahan,* 555 U.S. 223, 242 (2009); *see also Binelli v. Charter Twp. of Flint,* 488 F. App'x 95, 97 (6th Cir. 2012). Compliance with this standard only requires Plaintiff to show that the action's unlawfulness was apparent ahead of time, and that its illegality would be obvious to an objective, reasonable person. *See Binelli,* 488 F. App'x 95 at 97.

Plaintiff met this standard by alleging the following evidence of fact and law:

- On September 25, 2017, the Sixth Circuit held that in cases of student misconduct where serious discipline is at stake, and which turn on questions of credibility, a live hearing and some form of cross-examination are required by the Fourteenth Amendment. *Doe v. University of Cincinnati,* 872 F.3d 393, 396 (6th Cir. 2017). ECF 47, Pg. ID 1334, ¶ 49.

- Defendants are responsible for ensuring the University's compliance with the Fourteenth Amendment, as it applies to the provision of student discipline. *Id.* at Pg. ID 1326, ¶¶ 4-11.

- Defendants are prosecuting a claim of sexual misconduct against Plaintiff, which largely and undisputedly turns on questions of credibility, under their Policy. If found guilty, Plaintiff faces expulsion, and/or the revocation of his degree. *Id.* at Pg. ID 1328-44, ¶¶ 16-86.

- The 2018 Policy does not afford students any hearing, live or otherwise, or any cross-examination. Nor was Plaintiff provided with these due process protections. *Id.* at Pg. ID 1333-40, ¶¶47-80.

- The 2018 Policy Defendants applied in Plaintiff's case went into effect on February 7, 2018. ECF 47-1, Pg. ID 1364.

Crucially, the 2018 Policy post-dated *Cincinnati* and *Doe v. Miami Univ.,* 882 F.3d 579, 600 (6th Cir. 2018), holding that, where, as here, credibility and grave discipline are at stake, the Constitution requires these measures. ECF 47, Pg. ID 1334, ¶ 49-50. The unlawfulness of Defendants' Policy was readily apparent before their attempts to enforce them on Plaintiff, and its illegality would have been obvious to a reasonable, objective person. In fact, Judge Gibbons remarked, "I can't get past the University's indifference, defiance or whatever you want to call it to our Circuit precedent and the basic principles of due process." *See* Oral Argument Before Sixth Circuit Court of Appeals in Case No. 17-2213, *John Doe v. David Baum et al.,* http://www.opn.ca6.uscourts.gov/internet/court_audio/aud1.php, at 29:06—29:26 (August 2, 2018).

Plaintiff pled evidence sufficient to defeat Defendants' qualified immunity argument. As set forth in Plaintiff's Complaint (ECF 47, Pg. ID 1333-40, ¶ 47-77), Defendants maintain two distinct and unequal policies with regard to student misconduct. Students accused of all types of misconduct other than "sexual misconduct" are provided with full due process rights, including a live hearing in front of a panel and cross-examination of witnesses. *Id.* These guarantees are conspicuously absent from the 2018 Policy. There is no hearing and no cross-examination guaranteed under this policy—not even where credibility is at stake. *Id.* Further, a final decision-maker on sanctions can, on appeal, suspend or expel a student without assessing credibility. Vitally, the external reviewer could sweep away not only the earlier decision on sanctions, but also all the fact-finding conducted and conclusions made

by the OIE investigator without hearing from either party or any witnesses. *Id.* This clearly violated the line of precedent ending in *Cincinnati*, as the *Baum* Court found. The 2018 Policy Defendants applied to Plaintiff clearly violates the law. *Doe v. Miami Univ.*, 882 F.3d 579, 600 (6th Cir. 2018); *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 396, 404-06 (6th Cir. 2017); *Flaim, v. Med. Coll. of Ohio*, 418 F.3d 629, 641 (6th Cir. 2005).

In addition to these deficiencies, as set forth in detail above, Defendants deprived Plaintiff of his property right to his education by placing a "hold" on his official transcript in spite of there being no official finding against him. ECF 47, Pg. ID 1333, 1348-51, ¶¶ 44-6, 98-116. "The fundamental requisite of due process of law is the opportunity to be heard . . . ." *Goss v. Lopez*, 419 U.S. 565, 578 (1975) (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)). "At the very minimum . . . students facing suspension and the consequent interference with a protected property interest must be . . . afforded some kind of hearing." *Id.* The hearing, at which the accused is given "an opportunity to present his side of the story," **must occur prior to the deprivation of the accused's protected property interest**. *Id.* at 581. *See also Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 927 (6th Cir. 1988) (an accused has the right to a pre-discipline hearing **before** an impartial trier of fact); *Ashiegbu v. Williams*, 129 F.2d 1263 (6th Cir. 1997) (same). There is no case law allowing such a deprivation without a finding of wrongdoing. Plaintiff raised disputes over facts that might affect the outcome of the suit under the governing law, such that a reasonable jury could return a verdict in his favor, that Defendants violated his clearly

established constitutional right to due process. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Simmonds v. Genesee Cty.,* 682 F.3d 438, 445 (6th Cir. 2012).

### E.    Plaintiff Stated a Claim under Title IX

When combined with particularized allegations showing a causal connection between the flawed outcome and gender bias, allegations of particular procedural flaws affecting a disciplinary tribunal are sufficient to state an erroneous outcome claim. *See Doe v. Miami University,* 882 F.3d 579, 593 (6th Cir. 2018); *see also Yusuf v. Vassar Coll.,* 35 F.3d 709, 715 (2d Cir. 1994). This pleading burden "is not heavy," and need only create the plausible inference of intentional gender discrimination. *Miami,* 882 F.3d at 593. As set forth below, this standard is satisfied by the types of allegations Plaintiff asserted in this case— including statements by pertinent university officials, and patterns of decision making that tend to show the influence of gender. *See id.*

Plaintiff's Title IX claim is predicated on the erroneous outcomes already secured by Defendants flat-out refusal to provide him with procedural due process, and their decision to punish Plaintiff prior to finding that he violated University policy. ECF 47, Pg. ID 1351-1355, ¶¶ 117-142. Plaintiff sufficiently pled facts showing the causal connection these erroneous outcomes have with Plaintiff's gender, including that Defendants committed to "a feminist approach to service" regarding claims of sexual misconduct (*Id.* at Pg. ID 1356-7, ¶¶ 147-52); pledged to "Start By Believing" female students' allegations regardless of evidentiary

support (*Id.* at 1346-7, ¶¶ 91-4); withheld Plaintiff's degree and academic credentials prior to a finding against him (*Id.* at 1333, 1348-51 ¶¶ 44-6, 98-116); and are continuing to enforce a gendered "No Contact Order" against him (*Id.* at 1330-2, ¶¶ 31-8; 1351-1355, ¶¶ 117-142).

1.    **The "Hold" on Plaintiff's Degree and Transcript Constitute an Erroneous Outcome**

Defendants began to punish Plaintiff before even bothering to complete their investigation or make an official finding that he violated any University policy. These facts constitute an erroneous outcome. Claimant filed a report with the OIE on March 12, 2018. Subsequently, the OIE commenced an investigation to determine whether Plaintiff violated the Sexual Misconduct Policy, which continues to this day. No findings have been made. Nevertheless, beginning on April 19, 2018, the OIE barred Plaintiff from receiving his official transcript or credentials that he has graduated, and therefore barred him from enrolling in graduate school or obtaining employment for more than 50 days. ECF 47, Pg. ID 1333, 1348-51, ¶¶ 44-6, 98-116. He was also subject to a No-Contact order which remains in place. Notably, under Defendants' policies, a "No Contact Directive" and a "Transcript notation, hold, and/or notification to other institutions" double as "Protective or Supportive Measures" and "Possible Sanctions" demonstrating their punitive nature. ECF 47-1, Pg. ID 189-90; 214-16; ECF 47-3, Pg. ID 1437, 1467-8.  At the motion to dismiss state, where all reasonable inferences must be drawn in favor of the plaintiff, Defendants' decision to take punitive action against Plaintiff even before officially finding against him casts serious doubt on whether the outcome of their disciplinary proceeding will be accurate, as is required

18

under Title IX. *Doe v. Miami*, 882 F.3d at 592. Plaintiff has sufficiently pled an erroneous outcome.

> ### 2.    Plaintiff Demonstrated a Causal Connection between the Interim Policy's Procedural Deficiencies and Gender Discrimination

Plaintiff has not simply pled the procedural deficiencies of Defendants' policies, but also pled facts indicating a causal connection between these procedural deficiencies and gender discrimination against male students. Plaintiff's Second Amended Complaint sets forth facts showing that the University intentionally prohibits students accused of sexual misconduct from receiving due process protections available to accused students under the Statement of Student Rights and Responsibilities, which is used to adjudicate all other types of student misconduct. ECF 47, Pg. ID 1334-7, ¶¶ 51-7. While Defendants offer no explanation for the discrepancies between the two processes, Plaintiff has pled facts indicating that they are attributable to unlawful gender bias against male students. *Id.* at Pg. ID 1348, ¶ 97.

> #### a.    "Start by Believing" Campaign

Plaintiff pled specific facts showing that because the University recently came under public scrutiny for its handling of sexual misconduct claims, Defendants lauched a University-wide "Start by Believing" campaign, to promote automatic belief in a claimant's version of events, amongst University officials, even prior to an investigation or hearing. *Id.* at Pg. ID 1334-48, ¶¶ 87-97. The gendered components of this campaign, and of the Policy which mirrors its goals and perspectives, are apparent in light of the fact that "Start By

Believing" is part of a broader "End Violence Against Women International" program. *Id.* Defendants promised to "start by believing" a female claimant's perspective, regardless of evidence to the contrary, or whether any investigation or hearing has taken place. Defendants flawed procedures are ready implements for them to exert unlawful gender bias against male students. *Id.*

Contrary to Defendants' assertions, evidence that external pressures impacted University procedures can show gender bias under an erroneous outcome theory. In *Doe v. Miami University*, 882 F.3d 579, 594 (6th Cir. 2018), plaintiff sufficiently pled circumstantial evidence of gender discrimination, in part because he detailed facts showing that external pressures brought to bear on the university impacted its prosecution of sexual misconduct cases. *Doe v. Miami*, 882 F.3d at 594. The Court concluded this information was sufficient to create the plausible inference of intentional gender discrimination under the erroneous outcome theory. *Id.*

### b. Defendants Referred Plaintiff to the Sexual Assault Awareness and Prevention Center

Defendants made it clear they are committed to taking a "feminist approach" to the issue of sexual assault. Defendant Harper instituted the Sexual Assault Awareness and Prevention Center ("SAPAC") as a student resource. SAPAC also assists the OIE in its role as an investigator of sexual misconduct complaints. The SAPAC's "Vision and Philosophy" advertises its "feminist approach to service," indicating that female students are given special status and services. ECF 47, Pg. ID 1352-3, 1356, ¶¶ 127-30, 149. Moreover, the

resources it provides are almost exclusively designed to support and empower female claimants, and to build consensus and education around issues of consent in intimate relationships.https://sapac.umich.edu/leading;https://sapac.umich.edu/healing.   Defendant McFadden, who was assigned to investigate the claims against Plaintiff, in fact referred him to the SAPAC to obtain resources during the disciplinary process. Given that the SAPAC is, in reality, a space predominately designed to empower and heal female claimants, and to educate the public about consent in intimate relationships, this referral betrays Defendants' preconceived notions about Plaintiff's guilt as a consequence of his gender, as well as the structural gender bias inherent in the Policy and OIE's administration of it. *Id; see also* ECF 47, Pg. ID 1352-3, 1356, ¶¶ 127-30, 149.

c.   The Hold on Plaintiff's Degree and No Contact Order Evince Gender Discrimination

Defendants further demonstrated unlawful gender bias by refusing to confer Plaintiff's degree, and withholding his main academic credential—his transcript—for over 50 days while he was in the process of applying to graduate school, even though the disciplinary process had not yet been completed (ECF 47, Pg. ID 1333, 1351-5, ¶¶ 44-6, 117-142.); and implementing an ongoing, gendered "No Contact Order" against Plaintiff (ECF 47, 1330-2, ¶¶ 31-8; 1351-1355, ¶¶ 117-142).

As explained above, the "hold" amounts to a decision to punish Plaintiff before actually finding against him. This preemptive punishment was clearly an instance of Defendants' putting their pledge to "Start by Believing" female claimants into action, even

21

though their investigation was still ongoing. Similarly, Defendants further demonstrated unlawful gender bias by subjecting Plaintiff to their gendered "No Contact Order." *Id.* Violations of the "No Contact Order" are prosecuted under the Policy, and may at any time be punished with expulsion, suspension, or the revocation of degree. *Id.*

On its face, the "No Contact Order" is biased against male students. It states that it is Plaintiff's sole responsibility to prevent all contact with the Claimant, and that its directives do not apply to her. *Id.* The Order's inherent gender bias against Plaintiff is further demonstrated by the fact that Defendants issued it to Plaintiff in spite of the following facts:

- Claimant reported no problems related to contact between her and Plaintiff during the four months following their sexual encounter; (*Id.* at Pg. ID 1330, ¶¶ 26-31)

- Claimant admitted to having instigated contact with Plaintiff during this time, in person, and via text and Snapchat; (*Id.* at Pg. ID 1330, 1353 ¶¶ 26-31, 135)

- Claimant made a demonstrably false complaint to the OIE that Plaintiff violated the Order, without consequence.  (*Id.* at Pg. ID 1331-2, ¶¶ 35-8.)

Plaintiff also pled that Defendants' issuance and enforcement of "No Contact Orders" are biased against male students, because Defendants did not issue a reciprocal order to the Claimant, nor do they generally issue these orders to female students. (*Id.* at Pg. ID 1353, ¶134). Defendants engaged in a pattern of gender-based decision making with regard to the issuance and enforcement of "No Contact Orders" under the Policy. Taken together, this well-pled evidence shows a pattern of gender-based decision making sufficient to raise a reasonable expectation that discovery will reveal further circumstantial evidence of gender

discrimination. *See Doe v. Miami*, 882 F.2d 579 at 593-4. Accordingly, Plaintiff properly pled an "erroneous outcome" claim under Title IX.

> F.   **Plaintiff Stated a Viable ELCRA Claim**

No legal authority exists to support Defendants' erroneous assertion that ELCRA claims may not be brought against Defendants in their personal capacities. It is well-settled that the opposite is true. According to this Court, as well as the Michigan Supreme Court, Michigan law is clear that individuals can indeed be held liable in their individual capacities for violating both the anti-discrimination and the anti-retaliation provisions of the ELCRA. *See Ogden v. Michigan Dep't of Corr.*, No. 07-CV-10111, 2008 WL 11355501, at *6 (E.D. Mich. June 2, 2008), quoting *Elezovic v. Ford Motor Co.*, 697 N.W.2d 851, 863 (Mich. 2005) ("agents can be held liable, as individuals, under the [EL]CRA"); *see also Hall v. State Farm Ins. Co.*, 18 F. Supp. 2d 751, 764 (E.D. Mich. 1998), *aff'd*, 1 F. App'x 438 (6th Cir. 2001) (holding that individual liability is available under ELCRA). Since ELCRA indeed permits agents of an employer, such as the named Defendants in this case, to be held liable in their individual capacities, Defendants' motion must be denied.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss, and, as it appears that Defendants have no interest in

negotiating a resolution of this matter, issue an Order granting Plaintiff's Motion for Partial Summary Judgment (ECF 53).

Dated: June 26, 2019                    Respectfully submitted,
                                        **DEBORAH GORDON LAW**
                                        **/s/Deborah L. Gordon (P27058)**
                                        **Elizabeth A. Marzotto Taylor (P82061)**
                                        Attorneys for Plaintiff
                                        33 Bloomfield Hills Parkway, Suite 220
                                        Bloomfield Hills, Michigan 48304
                                        (248) 258-2500
                                        dgordon@deborahgordonlaw.com
                                        emarzottotaylor@deborahgordonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing and service of said documents to all parties through their counsel of record.

_____/s/Deborah L. Gordon_____
Deborah L. Gordon

24