UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JOHN DOE**, *an individual*,

    Plaintiff,

vs.

**UNIVERSITY OF MICHIGAN** (as to Title IX violations), **BOARD OF REGENTS OF THE UNIVERSITY OF MICHIGAN**, *a constitutional corporate body* (as to Title IX & ELCRA violations), **PAMELA HEATLIE**, **ROBERT SELLERS**, **MARTIN PHILBERT**, **ERIK WESSEL, LAURA BLAKE JONES**, **E. ROYSTER HARPER**, **SUZANNE MCFADDEN**, and **PAUL ROBINSON**, *employees of the University of Michigan*, *sued in his or her personal and official capacities*, *jointly and severally*,

    Defendants.

Case No.: 18-cv-11776
Hon. Arthur J. Tarnow
Mag. Elizabeth A. Stafford

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

| | |
|---|---|
| **DEBORAH GORDON LAW**<br>**Deborah L. Gordon (P27058)**<br>**Elizabeth A. Marzotto Taylor (P82061)**<br>Attorneys for Plaintiff<br>33 Bloomfield Hills Parkway, Suite 220<br>Bloomfield Hills, Michigan 48304<br>(248) 258-2500<br>dgordon@deborahgordonlaw.com<br>emarzottotaylor@deborahgordonlaw.com | **SAUL EWING ARNSTEIN & LEHR LLP**<br>Joshua W. B. Richards<br>Amy L. Piccola<br>*Attorneys for Defendants*<br>1500 Market Street, 38th Floor<br>Philadelphia, Pennsylvania 19102<br>(215) 972-7737<br>Joshua.richards@saul.com<br>Amy.piccola@saul.com<br><br>**MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.**<br>Brian M. Schwartz (P69018)<br>*Attorney for Defendants*<br>150 W. Jefferson, Suite 2500<br>Detroit, Michigan 48226<br>(313) 963-6420<br>schwartzb@millercanfield.com |

## TABLE OF CONTENTS

Table of Authorities ................................................................................................................. ii

I.     Plaintiff is Entitled to Summary Judgment and an Order ................................................. 1

II.    The 2019 Interim Policy Ballyhooed by Defendants Will Soon Be Replaced .............. 6

III.   Defendants' Ripeness and Mootness Arguments are Frivolous ..................................... 8

IV.   Conclusion .......................................................................................................................... 8

Certificate of Service .................................................................................................................. 9

# INDEX OF AUTHORITIES

**Cases**                                                                                                           **Page**

*Coal. for Gov. Procurement v. Fed. Prison Indus. Inc.*,
   365 F.3d 435 (6th Cir. 2004) ............................................................................... 2

*Doe v. Alger*,
   No. 15-cv-00035, 2017 WL 1483577, at *1 (W.D. Va. Apr. 25, 2017) ................ 3

*Doe v. Cincinnati*,
   872 F.3d 393 (6th Cir. 2017), and *Doe v. Baum,* 903 F.3d 575
   (6th Cir. 2018) ................................................................................................. 1, 3

*McQueary v. Conway*,
   614 F.3d 591 (6th Cir. 2010) ................................................................................ 4

*Shaw v. Gwatney*,
   604 F. Supp. 880 (E.D. Ark. 1985), ..................................................................... 2

I. **Plaintiff is Entitled to Summary Judgment and an Order.**

Plaintiff's Motion for Partial Summary Judgment is straightforward. All the required elements are firmly in place. There are no questions of law that are not already decided. Pursuant to *Doe v. Cincinnati*, 872 F.3d 393 (6th Cir. 2017), and *Doe v. Baum,* 903 F.3d 575 (6th Cir. 2018), the 2018 Policy imposed upon Plaintiff was unconstitutional. Plaintiff is entitled to an order so stating. Pursuant to *Doe v. Baum*, Plaintiff must receive constitutional due process as he continues through the administrative adjudication by the University now underway. He is entitled to an order so stating, setting forth the elements of what due process will be required. There are no facts that need to be determined, and Defendants point to none that would affect this Motion[1].

Inexplicably, Defendants continue to argue that the Court should abandon this case entirely even though the Sixth Circuit remanded it "for reconsideration in light of *Baum* and the University's interim policy." ECF 42, Pg. ID 1264. To be clear, the Sixth Circuit found "the University's motion to dismiss and Doe's motion for leave to file a sur-reply are **DENIED AS MOOT**" *Id*. (emphasis in original); it did not find that Plaintiff's case was moot, or not "ripe," despite Defendants raising both of these issues on appeal. Motion to Quash/Dismiss

---

[1] Defendants have access to 100% of the witnesses and documents relevant to this case; they were free to point to any "material" that creates a question of fact per FRCP 56, but did not.

1

Appeal, Case 18-1903, RE 23. Nor did the Appellate Court find that further proceedings and findings would be "premature" or that Plaintiff "lack[ed] standing;" it did not remand for rulings on those issues. Nor did it remand with an instruction that the case be "dismissed," which is the "established practice" when a federal appellate court finds that the entire case is moot. *Coal. for Gov. Procurement v. Fed. Prison Indus. Inc.,* 365 F.3d 435, 484-85 (6th Cir. 2004). To the contrary, we are back in court for a resolution of the remaining issues. In spite of that reality, Defendants repeatedly argue that the Court should drop this case and leave the matter of required constitutional due process in their hands.

Defendants claim no further action is necessary because they have made a "commitment" and have filed a "declaration" not to use the 2018 Policy in Plaintiff's case. ECF 60, Pg. ID 1892. Their exhortations on this point are meaningless. The obvious needs to be stated: current intentions, commitments and declarations do not have the force of law. A court order **does** carry the force of law. The law, not Defendants' benevolence, entitles Plaintiff to due process protections. Equitable relief, such as the order sought by Plaintiff, "is directly intended to invalidate the illegal government action…" *Shaw v. Gwatney*, 604 F. Supp. 880, 887 (E.D. Ark. 1985), *aff'd in part, vacated in part*, 795 F.2d 1351 (8th Cir. 1986). Once the Court concludes, as it has previously, that Doe did not and would not receive adequate due process under the 2018 Policy, "that finding

2

necessitates certain declaratory and injunctive relief…" *Doe v. Alger*, No. 15-cv-00035, 2017 WL 1483577, at *1 (W.D. Va. Apr. 25, 2017).

Moreover, Defendants have a horrible track record when left to their own devices to determine due process protections afforded under their sexual misconduct policies. Since August 2013, they have issued four different policies: 2013, 2016, 2018, 2019, and are now working on a fifth. The University's 2016 policy was struck down by the *Baum* Court; the 2018 Policy intentionally violated *Doe v. University of Cincinnati*, 872 F.3d 393 (6th Cir. 2017), and this Court found that it was unconstitutional; and the 2019 Interim Policy provides no guarantee for cross-examination or a hearing where credibility is at stake.

Moreover, in June 2018, when Plaintiff sought a preliminary injunction, Defendants had their opportunity to voluntarily "agree," outside of a court order that they would not apply the 2018 Policy to him. ECF 4, Pg. ID 133-162. Instead, in spite of the holding in *Doe v. Cincinnati,* they mounted a legal battle arguing that Plaintiff was "not likely to succeed on the merits." ECF 21, Pg. ID 322-330. When this Court ordered that Defendants provide a hearing with cross-examination via a third party (ECF 30, Pg. ID 744), they dug in and appealed, losing further and more significantly after *Baum* was decided. Here, Defendants continue to battle against the inevitable.

3

Additionally, Defendants concede their agreement with most of the relief Plaintiff seeks:

> [Plaintiff seeks] an order: (1) **enjoining defendants … from using a policy the parties agree (and Doe admits) the University no longer uses;** (2) requiring the University to provide Doe a live hearing with cross-examination, **which the University has already committed to do** in accordance with its current 2019 Policy; and (3) enjoining the University from hypothetically prospectively instituting various interim measures or using certain procedures on a future appeal in Doe's case **in the absence of any facts of record suggesting the University intends to do so.** ECF 60 Pg. ID 1883 (emphasis added).

The obvious question is, as the University <u>agrees</u> to all of the above, why will it not stipulate to an order so stating, as Plaintiff has continually requested, and save the taxpayers further legal bills?[2] Three answers come to mind. First, optics. Defendants have an obsession with keeping Plaintiff and the courts out of their decision-making. The idea of an order creating a public record of their unconstitutional actions is an anathema for Defendants. Second, Defendants want to preserve their ability to make whatever policy changes they want to make, when they want to make them. A court order would interfere with this goal. Third, Defendants incorrectly believe that Plaintiff will not be able to obtain attorney fees in this case without having obtained an order[3].

---

[2] Per a recently reported FOIA request, Defendants' attorney fees as of June 30, 2019 are an astounding $640,380.46.

[3] Plaintiff obtained a preliminary injunction stopping Defendants' unconstitutional process, making a judicially-ordered "material change" in the legal relationship between the parties. Nothing more is required. *McQueary v. Conway*, 614 F.3d

4

Defendants refused to engage with Plaintiff to work out what process Plaintiff is due post-*Baum*. They made it clear that they will not voluntarily countenance Plaintiff providing any policy input, even though they are in the process replacing the current Interim Policy, as set forth below (something they have not bothered to reveal to this Court). For example, Defendants never responded to specific written questions posed by Plaintiff that go to the heart of what due process he will be afforded. **Ex. A**, Pl. Resp. to Proposed Amend. to Policy, May 16, 2019. On July 12, 2019, University spokesman Rick Fitzgerald confirmed the University's intransigence as to the courts:

> "Fitzgerald said the university's right to control its own policies is worth fighting for. 'We must retain the authority over our policies to do that in the best way we know how and we're willing to fight in court to maintain that authority.'…" **Ex. B,** Gus Burns, *UM sexual misconduct policy lawsuit has cost $648,380 in legal fees so far*, MLive (July 12, 2019), https://www.mlive.com/news/2019/07/um-sexual-misconduct-policy-lawsuit-has-cost-648380-in-legal-fees-so-far.html.

The Court has made every effort to have the parties reach an agreement as to the due process to be provided Plaintiff, but it is clear this is not going to occur. In addition to Defendants' intransigence, as set forth below, Defendants will soon replace the 2019 Interim Policy with yet another sexual misconduct policy. As such, the directive from the Sixth Circuit that this case be considered "in light

---

591, 598 (6th Cir. 2010). The vacation of the preliminary injunction by the Sixth Circuit was not because this "material change" no longer existed; it was because Plaintiff was actually entitled to *more* relief than this Court originally provided.

of…the University's interim policy" will be to no avail. This Court is left to decide what process will be applied to Plaintiff. In that regard, Plaintiff has attached a proposed order. **Ex. C,** Proposed Order.

## II. The 2019 Interim Policy Ballyhooed by Defendants Will Soon Be Replaced.

Defendants' Response places all their eggs in the basket labeled "2019 Interim Policy." Their constant remonstrations that they should be left alone to proceed against Plaintiff under that temporary policy are unavailing and disingenuous.

First, this Court has yet to pass constitutional muster on the Interim Policy, as it was instructed to do by the Sixth Circuit. Second, in all of their briefing Defendants have never addressed the specific content of the Interim Policy or answered the questions Plaintiff has raised. They have only made conclusory statements as to the Interim Policy's constitutionality. One would think that by now, given the Sixth Circuit's directive, the University would have presented a legal analysis of the Interim Policy on a silver platter for the Court's consideration. But that has not happened, undoubtedly because a close review of the Interim Policy reveals its constitutional deficiencies, and because Defendants believe its contents are none of the Court's business. Defendants concede that the Interim Policy offers no guarantee of cross-examination and has no "rigid" due process

requirements, even where credibility is at stake. ECF 60, Pg. ID 1906. Defendants have no interest in meaningfully engaging with the Court as to the Interim Policy.

Third, Elizabeth Seney's affidavit leaves out a crucial fact. ECF 60-1, Pg. ID 1966-8. On June 28, 2019, one day after she signed her affidavit, Ms. Seney testified[4] that the 2019 Interim Policy will soon be discontinued in favor of a new policy. She testified that, "there's a committee with a formal charge to create an umbrella policy, that – where the policy pertains to students, faculty and staff…instead of having the interim policy."[5] **Ex. D**, Elizabeth Seney Dep. of June 28, 2019 at 42:25; 43:1-2, 10. The committee began to meet in February 2019, a month after the Interim Policy went into effect, with the goal of creating a completed "document to vet" in the fall of 2019. *Id.* at 45:18-19; 46:4, 7-17. Ms. Seney does not know what will be included in the new policy:

> Ms. Seney: I mean, I don't want to speculate as to what it will be because that's not where we are in the process.
>
> Ms. Gordon: So, the entire policy, you don't know what the – once the interim policy has been revised, you don't know what the new policy will look like?
>
> Ms. Seney: Yeah. I think it's fair to say it's not -- that process is not done yet and so I don't want to speculate as to what it will be when it is done, because there's still a long way to go.

---

[4] Ms. Seney was deposed in case No. 18-cv-13321.
[5] Per Seney, the committee includes: 1) Patty Petrowski, Assoc. VP and Deputy Gen. Counsel; 2) Erik Wessel, Director of OSCR; 3) Pamela Heatlie, Assoc. Vice Provost for Academic and Faculty Affairs; 4) Kaaren Williamsen, Director of SAPAC; 5) Jim Burkel, Assistant Provost; and 6) herself, in her capacity as Interim Title IX Coordinator. *Id.* at 45:1-3, 6, 10, 13.

7

*Id*. at 50:10-18. Defendants' argument that this Court should allow them to implement the 2019 Interim Policy is wholly disingenuous.

### III.  Defendants' Ripeness and Mootness Arguments are Frivolous.

Defendants have unsuccessfully made these arguments three times, including before the Sixth Circuit.[6] Repeating them here does not change the law. Plaintiff relies on the arguments and case law set forth in his Response to Defendants' Motion to Dismiss his Second Amended Complaint (ECF 59, Pg. ID 1828-57) which encompasses his counterarguments made to the Sixth Circuit. Case: 18-1903, Doc. 22, Pg. 35-56.

### IV.  Conclusion

WHEREFORE, for the reasons stated herein and in Plaintiff's original Motion and Brief, Plaintiff respectfully requests that partial summary judgment should be granted as to his due process claim.

Respectfully submitted,

Dated:  July 15, 2019      **DEBORAH GORDON LAW**
/s/ Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304

---

[6] These arguments have been unsuccessfully made in: 1) Defs.' Resp. to Pl.'s Mtn for TRO & PI, ECF 21, Pg. ID 323-325; 2) Defs.'/Cross-Appellees' Mtn to Quash/Dismiss Appeal, Case 18-1903, RE 23; 3) Defs.' Mtn to Dismiss SAC, ECF 49, Pg. ID 1593-1601; and 4) the instant response.

(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing and service of said documents to all parties through their counsel of record.

**DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com