UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


**JOHN DOE,**

              Plaintiff,               **HONORABLE ARTHUR J. TARNOW**

    v.                         **No. 18-11776**

**UNIVERSITY OF MICHIGAN, ET
AL.,**

              Defendants.
_____/


**MOTION HEARING**


**Thursday, November 21, 2019**


Appearances:

FOR THE PLAINTIFF:          DEBORAH L. GORDON, ESQ.
FOR THE DEFENDANT:         JOSHUA W.B. RICHARDS, ESQ.
                         BRIAN M. SCHWARTZ, ESQ.

                     -   -   -

*To obtain a certified transcript, contact:*
*Lawrence R. Przybysz, MA, CSR, RPR, RMR, CRR*
*Official Federal Court Reporter*
*Theodore Levin United States Courthouse*
*231 West Lafayette Boulevard, Room 124*
*Detroit, Michigan  48226*
*(313)414-4460.  Lawrence_Przybysz@mied.uscourts.gov*

*Proceedings recorded by mechanical stenography.*
*Transcript produced by computer-aided transcription.*

*Motion Hearing*
*Thursday, November 21, 2019*

**I  N  D  E  X**

–    –    –

MOTION HEARING..............................P. 3

*18-11776; John Doe v. University of Michigan, et al.*

*Motion Hearing*
*Thursday, November 21, 2019*

Page 3

1              Detroit, Michigan

2              Thursday, November 21, 2019

3              11:00 a.m.

4                 –   –   –

5         **THE COURT CLERK:**  Calling case number 18-11776, John

6    Doe versus University of Michigan.  Will counsel please place

7    their appearances on the record?

8         **MS. GORDON:**  Deborah Gordon on behalf of the

9    plaintiff, Judge Tarnow.

10        **THE COURT:**  Good morning.

11        **MS. RICHARDS:**  Josh Richards on behalf of the

12   defendants.

13        **MR. SCHWARTZ:**  Brian Schwartz on behalf of the

14   defendants.

15        **THE COURT:**  Thank you.  I apologize for being late.

16   Who is going to go first?

17        **MR. RICHARDS:**  Your Honor, defendants filed a motion

18   to dismiss.  It seems like that makes sense to go first.

19        **THE COURT:**  You may.

20        **MS. RICHARDS:**  Good morning, your Honor.  Plaintiff

21   filed this case primarily seeking Cross-Examination at a live

22   hearing in connection with allegations against him of sexual

23   assault.  At the time this case was filed the university's

24   process did not provide for a live hearing and

25   Cross-Examination.  And at that time the Court entered a

*Motion Hearing*
*Thursday, November 21, 2019*

Page 4

1  Preliminary Injunction addressing the Court's -- addressing the

2  university's hearing process.

3      Since then the Sixth Circuit has ruled in Doe v. Baum that

4  the university is required to have such process.  And the

5  university does, in fact, today, have a process that includes a

6  live hearing with Cross-Examination.

7      The Sixth Circuit has written that standing is a cradle to

8  grave requirement.

9          **THE COURT:**  In this case?

10          **MS. RICHARDS:**  In all cases.

11          **THE COURT:**  In this Opinion?

12          **MS. RICHARDS:**  In the Baum case?  No, your Honor.  It

13  wasn't in the Baum case.

14          **THE COURT:**  No.  In this case, in the Doe case, did

15  they address that issue?

16          **MS. RICHARDS:**  No, your Honor.

17          **THE COURT:**  Was it raised at the Sixth Circuit?

18          **MS. RICHARDS:**  It was, your Honor.  The case was

19  remanded on procedural grounds before it was addressed on the

20  merits.

21          **THE COURT:**  Is it not true if there is no

22  jurisdiction that can be raised at any time?

23          **MS. RICHARDS:**  That is absolutely true.

24          **THE COURT:**  Why wouldn't the Sixth Circuit know that

25  rule?

*18-11776; John Doe v. University of Michigan, et al.*

*Motion Hearing*
*Thursday, November 21, 2019*

Page 5

1      **MS. RICHARDS:**  I don't know any better than you why

2   the Sixth Circuit chose to remand the case on procedural

3   grounds.  But my sense is the Courts of Appeal often prefer for

4   District Courts to rule on their own jurisdiction in the first

5   instance.  In fact, the Sixth Circuit remanded this case for

6   the Court to consider the university's new policy in light of

7   plaintiff's claims.

8          **THE COURT:**  That has nothing to do with standing.

9          **MS. RICHARDS:**  Of course it does, your Honor.

10         **THE COURT:**  Well, I spoke too soon.  It has nothing

11   to do with standing in the original case before you amended

12   your policy.

13            **MS. RICHARDS:**  Your Honor --

14         **THE COURT:**  Do you understand my question?

15         **MS. RICHARDS:**  I do, but I don't think it's material

16   and I will tell you why.  The Sixth Circuit has said it's a

17   cradle to grave requirement.  We don't have to address whether

18   the Court had jurisdictional authority to enter the PI at the

19   time it did to conclude that it doesn't now.

20         **THE COURT:**  Okay.  Let me interrupt you and ask Ms.

21   Gordon, do you agree that their policy includes the request

22   that you had in the original lawsuit, that is, a live hearing

23   and Cross-Examination?

24         **MS. GORDON:**  Yes, I do.

25         **THE COURT:**  Why does that not make this case moot?

*Motion Hearing*
*Thursday, November 21, 2019*

Page 6

1      **MS. GORDON:**  Well, this case is clearly not moot.

2      **THE COURT:**  At least as to Count One?

3      **MS. GORDON:**  With regard to their policy, are you

4  referring?

5      **THE COURT:**  Yes.  In regard to your lawsuit.

6      **MS. GORDON:**  With regard to the lawsuit, you said?

7      **THE COURT:**  Yes.

8      **MS. GORDON:**  Okay.  There is no possible way this

9  case is moot.  Let me -- because they have created a new

10  policy.  Let me begin by reading from Shawn (ph) versus Gotney,

11  (ph) 604 Fed Supp.  A Court Order does carry the force of law.

12  The law, not defendant's benevolence, entitles plaintiff to due

13  process protections, equitable relief such as an Order --

14      **THE COURT:**  Stop.  I know, I think I know where

15  you're going.

16      **MS. GORDON:**  Okay.

17      **THE COURT:**  Stop.  When I say, stop, that is an easy

18  command.

19      **MS. GORDON:**  I talked over you.  Okay.

20      **THE COURT:**  If this Court were to issue an order

21  memorializing their new policy, would that satisfy the

22  plaintiffs?

23      **MS. GORDON:**  Absolutely not.  Under no circumstances.

24  Their policy does not comport with due process.  That is done

25  intentionally and I would like to discuss with the Court the

*18-11776; John Doe v. University of Michigan, et al.*

*Motion Hearing*
*Thursday, November 21, 2019*

Page 7

1    history of why you can utterly not rely on their new policy.

2          **THE COURT:**  Okay.  Stop.  Before you get there, and I

3    guess this is for defendant, what impact does your umbrella

4    policy have on this new policy?

5          **MS. RICHARDS:**  Which umbrella policy?  Where in the

6    record is the umbrella policy the Court is referring to?

7          **MS. GORDON:**  The upcoming new policy.  You announced

8    it.

9          **MS. RICHARDS:**  Where in the Complaint that has been

10   filed in this case --

11         **MR. SCHWARTZ:**  It's a Rule 12 Motion.  The Complaint

12   is all that matters.

13         **MS. GORDON:**  I have reference in my Complaint that

14   they have yet another new policy, I think it's number five,

15   since 2011 that they have announced.  It's part of the

16   Complaint.

17         **MS. RICHARDS:**  Let me make it simple, your Honor.

18   The policy pursuant to which Mr. Doe will have the claims

19   against him adjudicated will be the policy that was attached to

20   Ms. Gordon's Amended Complaint, Second Amended Complaint and

21   attached to our response -- I'm sorry, our Motion To Dismiss.

22   The umbrella policy won't affect this particular case.

23         **THE COURT:**  Okay.  That is an easy answer.

24         **MS. RICHARDS:**  It is, but it's not in the record so I

25   don't think the Court can rely on it.

*Motion Hearing*
*Thursday, November 21, 2019*

Page 8

1          **THE COURT:**  Can I rely on what you just said?

2          **MS. RICHARDS:**  Yes.  Absolutely, your Honor.

3          **THE COURT:**  It's now in the record.

4          **MS. RICHARDS:**  With respect to the applicable

5     policy --

6          **THE COURT:**  I'm going to tell you exactly what I told

7     Ms. Gordon.  When I start to talk give me chance to make my

8     statement or question.  And the question is, it is now in the

9     record because you have represented on behalf of your client

10    that the umbrella policy will have no impact on the current

11    policy which it's your position is adequate.  If you want to

12    take a minute and discuss it with your client, you may.

13         **MS. RICHARDS:**  I don't think I need to, your Honor.

14    The policy that Ms. Gordon alleges will apply to this in her

15    Amended Complaint, that January 9th interim policy, the policy

16    that will apply when the university adjudicates the claims

17    against Mr. Doe.

18         **THE COURT:**  And implicit in what you just said is

19    that the umbrella policy will have no impact.

20         **MS. RICHARDS:**  I have no reason to think so, your

21    Honor.

22         **THE COURT:**  All right. Now that's a matter of record.

23         **MS. RICHARDS:**  Very good, your Honor.

24         **THE COURT:**  Ms. Gordon, do you want to say something?

25         **MS. GORDON:**  I have several things I would like to

*Motion Hearing*
*Thursday, November 21, 2019*

Page 9

1    say, Judge.

2         **MS. RICHARDS:**  May I continue with my presentation,

3    your Honor?

4         **THE COURT:**  Yes, when she answers my question.  After

5    she answers my question.

6         **MS. GORDON:**  I would like to go to the podium and

7    address something directly that I think is very important for

8    the Court to take into account.

9         **THE COURT:**  You can stand next to each other as long

10   as you can do it civilly.

11        **MS. GORDON:**  Okay.  The cases that are cited by

12   defendant where they would like you to accept a policy, your

13   Honor, because they say they've changed the policy, let's talk

14   about Lujan versus Ohio State, Texas versus U.S. or U.S.

15   Supreme Court in the Warshak case.  In every single one of

16   those cases the Court parsed out the fact that the plaintiff

17   was not directly affected in any way that could be clearly

18   predictable by what was going on.  Let me just grab these

19   cases.  And then I have a new case I want to discuss with the

20   Court that was just issued by the Sixth Circuit six weeks ago

21   called Speech First versus Schlissel.  And I will start with

22   that.  In Speech First versus Schlissel, 939, F3d, 756 --

23        **THE COURT:**  Is that cited somewhere in your

24   pleadings?

25        **MS. GORDON:**  No.  I thought about filing it

*Motion Hearing*
*Thursday, November 21, 2019*

Page 10

1   yesterday.  My pleadings were all filed.

2          **THE COURT:**  What was the date of the decision?

3          **MS. GORDON:**  September 20, 2019.  September 23.

4          **THE COURT:**  And the name is?

5          **MS. GORDON:**  Speech First versus Schlissel.

6          **THE COURT:**  Go on.

7          **MS. GORDON:**  This involves a University of Michigan

8   policy having to do with them trying, according to the

9   plaintiff, to limit speech with regard to bullying.  And then

10  they have a response team that they had put together, an

11  immediate response team that if anybody contacted the response

12  team about possibly some speech directed at the person the

13  response team would rush into action.  Several plaintiffs came

14  forward who were students and brought the case asking the Sixth

15  Circuit Court of Appeals to deal with this policy.  Now, the

16  University of Michigan took the position as they always do at

17  least in my experience --

18         **THE COURT:**  Just tell me what their position is.

19         **MS. GORDON:**  Okay.  No worries.  We have removed the

20  language you object to, plaintiffs and Sixth Circuit.  The

21  couple of lines in the Speech First policy have been removed.

22  And they argued that to the Sixth Circuit.  The Sixth Circuit

23  did not -- and Judge Parker said, okay, from this building --

24  but the Sixth Circuit reversed her.  And they said, absolutely

25  not, and they talked about the history of what had gone on with

*18-11776; John Doe v. University of Michigan, et al.*

*Motion Hearing*
*Thursday, November 21, 2019*

Page 11

1   the university.

2           **THE COURT:**  Who wrote it for the Sixth Circuit?  Who

3   was on the panel?

4           **MS. GORDON:**  The Sixth Circuit, McKeegue, White

5   dissented that I recall for sure.  And I will have to --

6           **THE COURT:**  Okay.

7           **MS. GORDON:**  Nothing is jumping out at me.  And what

8   the court said is, in sum, the university has not put forth

9   enough evidence to satisfy its burden that its voluntary

10  cessation makes it, they're quoting, absolutely clear that the

11  alleged wrongful behavior could not reasonably be expected to

12  recur, citing Friend of the Earth 528 U.S. at 189.

13      And the Sixth Circuit addressing the University of

14  Michigan made many comments about what they had done here.  The

15  Sixth Circuit says the timing of the university's change also

16  raises suspicions that its cessation is not genuine.  The

17  university removed the definitions after the Complaint was

18  filed.  If anything, this increases the university's burden to

19  prove that its change is genuine.

20      The Court further says, significantly, the university

21  continues to defend its use of the challenged definition.  Just

22  as here, your Honor, because Mark Schlissel continues to say

23  publicly he does not agree with Doe versus Baum.  Let me finish

24  the quote.  Although not dispositive, the Supreme Court has

25  found that whether the Government, quote, vigorously defends

*Motion Hearing*
*Thursday, November 21, 2019*

Page 12

1  the the constitutionality of its program is important to a

2  mootness inquiry.

3      In addition, one more thing, the Sixth Circuit, again, the

4  university has not -- the university cites to Vice-President

5  for student affairs Royster Harper's testimony that the new

6  definition and no other will govern the initiation and conduct

7  of disciplinary proceedings.  All this statement stands for,

8  however, is that the new definitions are what the university

9  intends to use presently.  It does not indicate --

10          **MS. RICHARDS:**  Your Honor, is Ms. Gordon going to

11  read the whole case to us?

12          **THE COURT:**  I will decide that.

13          **MS. RICHARDS:**  All right.

14          **MS. GORDON:**  All the statement stands for --

15          **THE COURT:**  Let me say this.  It would have been nice

16  if it were filed and I could have read it, but it's important

17  to the decision.  Were you the attorney for the University of

18  Michigan on this case?

19          **MS. RICHARDS:**  I was not, your Honor, but I don't

20  agree it's important for the decision in this case.

21          **THE COURT:**  I can't say if it's important or not

22  without knowing what it says.  And I would rather error on the

23  side of having too much information.

24          **MS. RICHARDS:**  All right.

25          **THE COURT:**  If that is okay with you.

*Motion Hearing*
*Thursday, November 21, 2019*

Page 13

1      **MS. GORDON:**  I had a few other things to say about
2  the policy.  In any event, of course, whatever Judge Tarnow
3  says.

4      The Court states, all the statement stands for is the new
5  definitions of what the university intends to use presently.
6  It does not indicates any future intentions.  Although the
7  university characterizes this construction of Royster Harper's
8  statement as hair splitting, it is simply not a meaningful
9  guarantee that the definitions will remain the same in the
10 future.

11      **THE COURT:**  Okay.  You can stop now.  Here is a
12 question.

13      **MS. GORDON:**  Yes.

14      **THE COURT:**  In your research on that case, was the
15 question of jurisdiction raised?  If you don't know, that's
16 fine.

17      **MS. GORDON:**  I don't recall.  I could tell you before
18 I leave here.

19      **MS. RICHARDS:**  Your Honor, it was raised at a
20 preliminary injunction stage.  That case was in a very
21 different posture than this case is now.

22      **THE COURT:**  It wasn't raised at the Sixth Circuit?

23      **MS. GORDON:**  Mootness was raised, to the extent that
24 is jurisdiction, which is their point on jurisdiction.

25      **MS. RICHARDS:**  No, it's not.

*18-11776; John Doe v. University of Michigan, et al.*

*Motion Hearing*
*Thursday, November 21, 2019*

Page 14

1          **MS. GORDON:**  Standing, ripeness, and mootness.

2          **THE COURT:**  Ms. Gordon, if you want to stand and

3    represent the University of Michigan, that's fine.

4    Mr. Richards is perfectly capable of doing that.

5          **MS. GORDON:**  Okay.  So I wanted to make a couple of

6    other points.

7          **THE COURT:**  Mr. Richards can finish his presentation

8    and then you can make your other points.

9          **MS. GORDON:**  Okay.

10          **MS. RICHARDS:**  Your Honor, I would say first in

11    response to Ms. Gordon's citation to that case.  One of the

12    cases I intended to reference today was the Bench Billboard

13    case also in the Sixth Circuit in which the Sixth Circuit said,

14    self-correction provides a sound foundation for dismissal.

15          And let me get back to my original statement.  This case

16    was filed because the plaintiff wanted certain procedural

17    protections.  At the time it was filed it wasn't clear what the

18    Sixth Circuit required.  In fact, this Court on the record said

19    we didn't know what the Sixth Circuit would rule.  However, now

20    we do.  And it's regrettable that we had to go through that

21    process but the Sixth Circuit has spoken.  The university will

22    comply with the law.  And now we are in a unique situation

23    where the law was unclear coming into the case but it's not

24    unclear now.

25          **THE COURT:**  Let me ask you this.  What is the status

*18-11776; John Doe v. University of Michigan, et al.*

*Motion Hearing*
*Thursday, November 21, 2019*

Page 15

1   of Doe?

2           **MS. RICHARDS:**  Doe is currently a student.  He's

3   completing his last semester of his graduate program.

4           **THE COURT:**  So when this lawsuit was filed --

5           **MS. RICHARDS:**  I'm sorry, your Honor. I misspoke.

6   Next semester is his last semester.

7           **THE COURT:**  When this lawsuit was filed, there was a

8   hold on his transcripts.  Is that accurate?

9           **MS. RICHARDS:**  That's accurate, your Honor.

10  Immediately after having a discussion with this Court we

11  voluntarily released the hold.

12          **THE COURT:**  Okay.  Are there any other leftover

13  consequences?

14          **MS. RICHARDS:**  There have been no consequences at

15  all, your Honor.

16          **THE COURT:**  What is the status of the hearing?

17          **MS. RICHARDS:**  The hearing is essentially in limbo.

18  We are ready to move forward as soon as the Court permits us to

19  do so. The Court's Order on Friday, I believe, and I would hope

20  for some clarification on this point, is it the case that the

21  university is not permitted to move forward with the hearing

22  until the Court rules on these motions?

23          **THE COURT:**  At least for now.

24          **MS. RICHARDS:**  Well, it's important for the

25  university to know whether it's to move forward.

*Motion Hearing*
*Thursday, November 21, 2019*

Page 16

1      **THE COURT:**  I understand that.  My recollection was

2   that, and Ms. Gordon may have a different recollection, that

3   you, Ms. Gordon, and your client, were satisfied with what is

4   now the rule and now we have clarified the umbrella rule has no

5   application here.  If the rule were somehow endorsed, adopted

6   or certified by the Court as the rule that applies in this

7   case, and now today that's not your position?

8      **MS. GORDON:**  It's never been our position, Judge.  If

9   I could have a moment to explain this to you?

10      **THE COURT:**  Sure.  Because -- and let me finish my

11   thought because last we talked about resolving this whole

12   thing, the major outstanding issue was attorney fees.

13      **MS. GORDON:**  No.  There were two things, Judge.

14      **MS. RICHARDS:**  Your Honor, before we move off this

15   topic, can I just finish?  I have just one or two points left

16   to make.

17      **THE COURT:**  You may make your two points.

18      **MS. RICHARDS:**  Thank you.  Ms. Gordon may disagree as

19   to whether or not the current policy is compliant or not and if

20   she does and if she challenges that, the Court has to decide

21   that issue.  But I submit to the Court that if Mr. Doe didn't

22   have the intervention of the Court and instead went through the

23   process that Ms. Gordon does not feel is lawful and was found

24   not responsible --

25      **THE COURT:**  Excuse me.  You're talking about the new

*Motion Hearing*
*Thursday, November 21, 2019*

Page 17

1    process?

2             **MS. RICHARDS:**  I am talking about any process, but

3    the new process as well, and was found not responsible, there

4    would be no injury, right?  Whether or not the process was

5    perfect or imperfect, if he was found not responsible and sent

6    on his way, there would be no injury.  No injury, in fact,

7    means no standing.  And so we won't know whether he is going to

8    be injured until the process completes.

9         And so I would submit that the most economical, the most

10   sensical and above all, the most lawful, way to handle this

11   case would be to dismiss it with prejudice -- without

12   prejudice -- from the bench today for lack of standing, allow

13   the university to complete its process.  Ms. Gordon, if she is

14   dissatisfied with that process, can, and I am quite certain

15   will, renew the action, mark it as related, bring it back to

16   your Honor, and we can pick up this case when we really know

17   whether there is going to be injury.  Right now we just don't

18   know.  And I would submit to the Court that we can do the

19   analysis.  I can defend the policy.  I can tell you all the

20   ways that it complies with Baum.  But we don't have to do that.

21   Instead, we can let the process play out.  We can give him

22   Cross-Examination.  We can allow a panel to hear from him live

23   and in-person.

24             **THE COURT:**  Can you stipulate that that would be the

25   process used in his case?

*18-11776; John Doe v. University of Michigan, et al.*

*Motion Hearing*
*Thursday, November 21, 2019*

1          **MS. RICHARDS:**  Yes, your Honor.

2          **THE COURT:**  Okay.

3          **MS. RICHARDS:**  Now I have other points to make on

4    other claims.

5          **THE COURT:**  Do you also agree that but for the filing

6    of this lawsuit that policy would not have changed?

7          **MS. RICHARDS:**  I do not agree with that, your Honor.

8    100 percent that is not the case.

9          **THE COURT:**  Because Baum would have required it?

10         **MS. RICHARDS:**  Baum is the only reason which changed

11   that policy, your Honor.  We were ordered by the Sixth Circuit

12   to do so in Baum and after Baum we immediately began to revise

13   the policy and in January we issued a new policy because of

14   what the Sixth Circuit required in Baum.

15         **THE COURT:**  Now, when you were developing the policy

16   post-Baum, who was the attorney in Baum? Were you the attorney

17   in Baum, Ms. Gordon?

18         **MS. GORDON:**  Yes, your Honor.

19         **THE COURT:**  Did you consult with Ms. Gordon about the

20   post-Baum modifications of the rule?

21         **MS. RICHARDS:**  Your Honor, we are not required to

22   consult with counsel.

23         **THE COURT:**  That is not what I am asking.  Yes or no.

24         **MS. RICHARDS:**  No.

25         **THE COURT:**  Thank you.  All right.  Now, Ms. Gordon

*Motion Hearing*
*Thursday, November 21, 2019*

Page 19

1  you may make your points.

2         **MS. GORDON:**  Thank you.  I'll just address the points

3  the Court just made.  If you could step aside.  Thank you,

4  Mr. Richards.

5         Judge, I think we need -- I think I need to refresh the

6  Court's recollection of what has happened here.  When I came to

7  you for the TRO a year ago, June, you ordered at that time --

8  they argued, the defendant argued very vociferously that even

9  though Doe versus Cincinnati did down in the fall of '17 and

10 they issues a new policy in February of '18, that only allowed

11 a private investigative model and no hearing, they argued

12 vociferously to your Honor in ECF -- well, I don't have the

13 number right in front of me -- that their policy was

14 constitutional.  That was flatly and intellectually dishonest

15 because Doe versus Cincinnati had been decided.  They believed

16 that their policy was correct.  Your Honor said, based largely

17 on Doe versus Cincinnati, that you were going to stop their

18 process.  It's the identical argument they are making today

19 that you already denied.  They said to you in that TRO, let us

20 go forward, let us have the hearing.  Don't worry.  If he gets

21 expelled, he can come back.  And, your Honor said absolutely

22 not.  You said, defendants essentially ask the Court to sit

23 back and wait for the investigator to issue findings against

24 plaintiff before intervening in this action.  But at this very

25 moment the university may be denying plaintiff due process

*Motion Hearing*
*Thursday, November 21, 2019*

Page 20

1  protections, the Court cannot and will not simply stand by as

2  the fruit continues to rot on the tree.  This case is ripe for

3  adjudication.

4      Okay. Now we have our TRO.  You tell them, Judge, to use

5  the already existent Statement Of Student Rights And

6  Responsibilities which, if you will recall, applies to all

7  other students --

8          **THE COURT:**  What I am referring to today is the

9  umbrella.

10          **MS. GORDON:**  That's right.  And I am back to the TRO.

11  You ordered that they follow the Statement Of Student Rights

12  And Responsibilities which apply to all students not accused of

13  sexual misconduct.  And that policy is distinct and clear.  And

14  it's totally unlike what they are offering up today.  It

15  specifically guarantees a hearing.  It specifically guarantees

16  Cross-Examination.  And, your Honor said, use that, guys.  They

17  said, no way.  We believe in our private investigator model.

18  Off they went to Sixth Circuit.

19      Now the entire thing stops.  They have been whining about,

20  we have got to this.  If they had accepted your very excellent

21  Opinion which would have given them far more slack than Doe

22  versus Baum and proceeded, this would be long done.  But they

23  believed they know better than the Court.  They went to the

24  Court arguing that their private investigator model was

25  correct.  In the meantime Doe versus Baum comes down.  But to

*Motion Hearing*
*Thursday, November 21, 2019*

Page 21

1    Mr. Richards' point, it is your Honor, Judge Tarnow, that

2    stopped the unconstitutional procedure.  So when Mr. Richards

3    says to you, isn't it this case that created this change?  Of

4    course.  Because if not for your Order, my client would have

5    been subjected to a flatly unconstitutional process that is

6    uncontested.  Even defendant now admits that policy was

7    unconstitutional.  But they never said that to you, Judge.

8         Now, we come back to you.  What do you immediately do?

9    Parties, I would like you to work out some language that you

10   can agree to.  I would like you to exchange documents so that

11   the plaintiff can have input into what he believes due process

12   rudiments will be.  I then engaged in a good faith effort --

13        **MS. RICHARDS:**  Excuse me, your Honor.  This is

14   verging very close into information that is protected by the

15   settlement privilege.  And this Court has already been

16   admonished with respect to this.  I don't think this belongs on

17   the record.

18        **MS. GORDON:**  This is attached as documents to my

19   pleadings.

20        **THE COURT:**  Wait a minute, Mr. Richards.  The Sixth

21   Circuit correctly said I should not have required your client

22   to come to a settlement conference.  That was my mistake.

23        **MS. RICHARDS:**  And on the record, the discussion of

24   settlement discussions on the record was at the core of the

25   Sixth Circuit's Opinion.

*18-11776; John Doe v. University of Michigan, et al.*

*Motion Hearing*
*Thursday, November 21, 2019*

Page 22

1          **MS. GORDON:**  I know my duty.  I'm not straying into

2     anything.  I will tell everybody here and remind Mr. Richards

3     that my e-mail exchanges with him are attached to my pleadings.

4     They are in the record.  He didn't file --

5          **MS. RICHARDS:**  Her characterization of my response to

6     those is not --

7          **MS. GORDON:**  I didn't include it.

8          **THE COURT:**  Just stop.

9          **MS. GORDON:**  May I continue, Judge?

10         **THE COURT:**  You may.  And I recognize Mr. Richard's

11    admonition and will not go there.

12         **MS. GORDON:**  I wasn't going to.

13         **THE COURT:**  All right.

14         **MS. GORDON:**  You then directed us to engage.  I

15    believe that is on the record, and rightly so, because the

16    Court thought certainly these people can work out something on

17    an acceptable process for John Doe to go forward.  We didn't

18    work out anything.  We were most recently back in your

19    courtroom for a Settlement Conference and there was no

20    resolution.  Nothing was resolved there.

21         Now, that brings us up to the current day.  In the

22    meantime, they have come up with another bogus policy and they

23    stand here today to tell you, ignore everything we have done in

24    the past.  Ignore the fact that our policies are literally ad

25    hoc.  What do I mean by that?  Unlike the case law they cite,

*Motion Hearing*
*Thursday, November 21, 2019*

Page 23

1  Lujan, Warshak, there is either statutes that the state or
2  federal legislature has changed to remove language or there is
3  a formal administrative process.
4       What we have with the University of Michigan is a couple
5  of people in the Title Nine office and/or Mark Schlissel decide
6  when they want to change a policy and they then change it.
7  There is no process that remotely is similar to what the case
8  law allows for.
9           **MS. RICHARDS:**  Your Honor, may I respond?
10          **MS. GORDON:**  May I finish my argument, please?
11          **THE COURT:**  Just stop.  Address the Court.
12          **MS. GORDON:**  Thank you, Judge.  I would like to move
13  forward.  So they now come up with a policy.  They take no
14  input from me whatsoever.  And I now want to explain to the
15  Court how it is that you cannot possibly dismiss this case and
16  leave my client to the vaguaries of this university that has
17  incredible history of ignoring the courts, so much so that at
18  the Sixth Circuit argument on Doe versus Baum, Judge Julius
19  Smith Gibson expressed on the record this:  I can't get passed
20  the university's indifference, defiance, or whatever you want
21  to call it to our circuit precedent and the basic principles of
22  due process.
23       Once this case came back, university spokesman Rick
24  Fitzgerald, when it was put in the paper that they had spent
25  over $700,000 defending this, he justified it this way -- and

*18-11776; John Doe v. University of Michigan, et al.*

*Motion Hearing*
*Thursday, November 21, 2019*

Page 24

1   this is very important for what you are going to be thinking

2   about.  I am quoting from MLive.  Fitzgerald said the

3   university's right to control its own policies is worth

4   fighting for.  Quote, we must retain authority over our

5   policies, to do that in the best way we know how and we are

6   willing to fight in court to maintain that authority.

7        This is what then been about since day one.  The Court may

8   not issue an Order.

9        Then we have Mark Schlissel stating this:  Last semester U

10  of M revised its student sexual misconduct policy and

11  procedures based on a court ruling by the U.S. Sixth Circuit

12  Court of Appeals.  U of M respectfully submits the Sixth

13  Circuit got it wrong.

14       And now I am expected to hope against hope that the

15  University of Michigan doesn't issue yet another policy, Judge.

16       Now, I want to move on to another extremely important

17  point.

18            **THE COURT:**  Before you get to that point, I'm going

19  to repeat a question I asked before.  The policy that is

20  currently in place without the umbrella supplement, is that

21  satisfactory if it were applied to Mr. Doe?

22            **MS. GORDON:**  No.  I have said from the beginning it's

23  utterly unsatisfactory.

24            **THE COURT:**  Because?

25            **MS. GORDON:**  In my Complaint, and I will point the

*Motion Hearing*
*Thursday, November 21, 2019*

Page 25

1   Court to where it can be found. It starts on paragraph 82.  And

2   I want to talk to you for a second about the Statement Of

3   Student Rights And Responsibilities.  And I will remind the

4   Court that is the policy you said in your TRO position they

5   should follow.  The Statement Of Student Rights And

6   Responsibilities.  This lays out how they should have done this

7   and it shows you what they are really doing.  They were again

8   cabining off students accused of sexual misconduct because the

9   statement is very clear.  There shall be a hearing.  There

10  shall be a right to question witnesses and the parties.  And

11  that is in writing in paragraph 55 in my Second Amended or

12  Third Amended Complaint. It says, during the hearing the

13  respondent, Complainant, student panelist have the right to

14  question the Complainant and the university.  The participants

15  may also question the respondent, any witnesses, and so on.

16  And it is very specifically laid out.

17      Now, let's go to the new policy that they want you to

18  accept.  And that begins, Judge, in my Second Amended

19  Complaint, on page 17.  And let me just add a little caveat

20  here.  I understand why the Court may not have totally digested

21  this policy.  It's now up to 44 pages.  The Statement Of

22  Student Rights And Responsibilities is a straightforward 14

23  pages.  But they have intentionally left themself an opening

24  and a very wide one that abrogates due process.  Here is what

25  it says.  There is no language in there that says where

*Motion Hearing*
*Thursday, November 21, 2019*

Page 26

1  credibility is at stake the respondent has a right to a

2  hearing.  There is no language of any kind that says you have a

3  right to a hearing.  There is no language anywhere that says

4  you have the right to cross-examine anybody.  Nothing.  The

5  Cross-Examination does not exist in this 44 page policy.  Here

6  is what it says:  The hearing officer has absolute discretion

7  to decide upon a format for the hearing and to determine which

8  witnesses are relevant to their outcome determination.  A

9  hearing officer may decline to hear from a witness where they

10  conclude the information is not necessary.

11      Now, on the statement they can only exclude witnesses who

12  are redundant.  And then they say this.  This is the totality

13  of their argument about we offer a hearing.  This is what they

14  say:  A typical hearing may include, may include brief Opening

15  Statements, may include follow-up questions by one party to the

16  other, may include questions by the hearing officer.  That is

17  what it says.  I now have given you the totality of their

18  addressing due process.

19          **MS. RICHARDS:**  May I respond now?

20          **MS. GORDON:**  I'm not finished with what I wanted to

21  say.

22          **THE COURT:**  You are almost finished.

23          **MS. GORDON:**  That's fine.  I have requested an Order

24  asking you, Judge, which I'm totally entitled to because there

25  is no question of fact, to issue an Order adjoining the

*18-11776; John Doe v. University of Michigan, et al.*

*Motion Hearing*
*Thursday, November 21, 2019*

Page 27

1   university against applying its February 7, 2018 policy that

2   they tried to use against my client.  Without your Order, there

3   is literally nothing in the law to stop them from going back to

4   that literally.  You are just going to have to believe --

5          **THE COURT:**  You made that point.  Mr. Richards?

6          **MS. GORDON:**  Number two.

7          **THE COURT:**  Stop.  Mr. Richards can reply and you

8   will get a chance.  We have got nothing to rush through.

9          **MS. GORDON:**  Okay. I want to make one more statement.

10  Don't be rude, Josh.  Step aside.

11         **MS. RICHARDS:**  The Court ordered you to step down.

12         **MS. GORDON:**  I wanted to make one final point, your

13  Honor.

14         **THE COURT:**  You may, Ms. Gordon.

15         **MS. GORDON:**  I am entitled to a court Order.  This

16  could be quickly, quickly wrapped up if you would issue an

17  Order with the basic rudiments of due process.  That is all I

18  asked you for.  Doe is entitled where credibility is at stake,

19  Doe is entitled to Cross-Examination.  Doe is entitled to a

20  hearing.  Doe may not have another hold put on his transcript

21  without an adjudication.  It's basically that.  And without

22  your Order, there is nothing that is meaningful as a matter of

23  law, period, full stop. You are going to hear from the

24  university --

25         **THE COURT:**  Stop.  Stop.  Mr. Richards, before you

*18-11776; John Doe v. University of Michigan, et al.*

*Motion Hearing*
*Thursday, November 21, 2019*

Page 28

1  start --

2          **MS. RICHARDS:**  Yes, your Honor.

3          **THE COURT:**  Why not have the 14 page rule apply to

4  everyone including Mr. Doe?

5          **MS. RICHARDS:**  Well, your Honor, there are lots of

6  reasons for that.

7          **THE COURT:**  Give me your two best.

8          **MS. RICHARDS:**  How about that unlike most of the

9  conduct that is governed by the statement, conduct that is

10  sexual assault in nature, is heavily regulated by the

11  Government and requires specific sets of requirements for

12  universities.  And so it's required to have a more specific

13  process for that.  Another reason --

14          **THE COURT:**  Doesn't that --

15          **MS. GORDON:**  That is false.

16          **THE COURT:**  Stop, Ms. Gordon.

17          **MS. GORDON:**  I would like to respond at some point.

18          **THE COURT:**  You will at some point, that's okay, but

19  not during his argument.

20          **MS. RICHARDS:**  The better reason, your Honor --

21          **THE COURT:**  I'm not done.

22          **MS. RICHARDS:**  You asked me for the reasons.

23          **THE COURT:**  But you gave me a reason.  I have a

24  question about your reason.

25          **MS. RICHARDS:**  Sure.

*18-11776; John Doe v. University of Michigan, et al.*

*Motion Hearing*
*Thursday, November 21, 2019*

Page 29

1       **THE COURT:**  You mentioned the regulations by the

2   Government, Federal Government in sexual assault kind of cases.

3   My memory is good for the 40 seconds.

4       **MS. RICHARDS:**  That is why we brief things, your

5   Honor.

6       **THE COURT:**  Doesn't the federal government require

7   some sort of Cross-Examination?

8       **MS. RICHARDS:**  It does not.

9       **THE COURT:**  So when the Secretary of Education says

10  that she's -- and this is a rough quote from newspapers -- it's

11  not in the record -- but that she's in support of the Sixth

12  Circuit rulings, that is not Government policy?

13      **MS. RICHARDS:**  It is, your Honor, and it's not really

14  germane, but to answer the Court's question --

15      **THE COURT:**  You made it germane by saying you have to

16  have a special rule because of the Federal Government.

17      **MS. RICHARDS:**  That is because it's not just because

18  of Cross-Examination.  There are a variety of issues that arise

19  in the context of sexual assault.  However, I will say that the

20  Government is contemplating publishing regulations that would

21  require Cross-Examination.  Those regulations may be issued

22  soon.  If that happens, the university will have to change its

23  policy to conform with those regulations.

24      **THE COURT:**  Why does the university have to wait?  I

25  mean --

*Motion Hearing*
*Thursday, November 21, 2019*

Page 30

1      **MS. RICHARDS:**  It hasn't waited.  It does provide

2   Cross-Examination now.  Actually, it was interesting, what Ms.

3   Gordon said was wrong actually.

4      **THE COURT:**  Tell me how she was wrong.

5      **MS. RICHARDS:**  Well, in lots of ways, first of all,

6   she quoted from the wrong part of the policy.  Actually, on

7   page 31 of the policy, we say, the hearing is an opportunity

8   for the parties to address the hearing officer in-person and to

9   question the other parties and/or witnesses.

10     **THE COURT:**  But she read -- the portion that she read

11  is consistent with what you just said.

12     **MS. RICHARDS:**  It is but what I said is much more

13  specific.  Go ahead, your Honor.  I apologize.

14     **THE COURT:**  Thank you.  The rule that she read used

15  the word, may, a number of times.  That is permissive.  That is

16  not mandatory.  So does not that portion that she read give the

17  hearing officer the discretion to allow Cross-Examination and

18  so on?

19     **MS. RICHARDS:**  I suppose in some cases it does but

20  not in cases where the Sixth Circuit has said it's required.

21  There would be no discretion at all.

22     **THE COURT:**  So why have the rule?  Why not just use

23  the universal rule which now you have acknowledged is

24  consistent with what you anticipate coming from the Department

25  of Education, the Federal Government.  Why wait?  Why not

*18-11776; John Doe v. University of Michigan, et al.*

Page 31

1    anticipate it and which would resolve this case?

2            **MS. RICHARDS:**  It wouldn't, your Honor, because in

3    this case we are going to provide Cross-Examination.  We have

4    said we are going to already.  That is all we are litigating is

5    this case.

6            **THE COURT:**  But then why not have a court Order in

7    this case saying that you are going to give Cross-Examination

8    and the other things that Ms. Gordon is concerned about.

9            **MS. RICHARDS:**  Your Honor, I am not sure what the

10   Court is asking there.  The Court doesn't have jurisdiction to

11   issue that Order.  Let me ask you a question.

12           **THE COURT:**  You may.

13           **MS. RICHARDS:**  What is the actual injury in this case

14   right now that Doe has suffered with respect to his claims

15   about the policy?  Because if the Court can't articulate it,

16   then it doesn't have subject matter jurisdiction.  I can't

17   articulate it because, in fact, he hasn't been disciplined.

18   And he hasn't been found responsible.  And he hasn't even gone

19   through the process.  And if we can't articulate what the

20   actual injury is, then the Court has no jurisdiction to issue

21   any Order.

22       Beyond that, the answer to your question is, the

23   university is not obligated to consent it an Order.  What the

24   university is obligated to do is to follow its policy.  It has

25   a policy --

Page 32

1      **THE COURT:**  Wait a minute.  Wait a minute.  Excuse

2  me.  Are you suggesting that the policy overrules the Sixth

3  Circuit?

4      **MS. RICHARDS:**  Of course not.  The policy is

5  consistent with Sixth Circuit.  What Ms. Gordon is reading to

6  you is misleading the Court.  Every way, every single holding

7  in Baum is satisfied by the policy as applied to situations

8  governed by Baum.

9      **MS. GORDON:**  That's false. You are misstating the

10  record.

11      **THE COURT:**  Just stop.

12      **MS. GORDON:**  Okay. That's a misstatement.

13      **THE COURT:**  It's not like you don't get a chance to

14  respond.

15      **MS. GORDON:**  All right. fair enough, Judge. It's

16  frustrating to hear stuff that --

17      **THE COURT:**  Look, I have been on that side of the

18  table many times.

19      **MS. GORDON:**  Okay.

20      **MS. RICHARDS:**  Your Honor, Doe versus Baum held that

21  in cases where credibility is at issue, institutions have to

22  provide Cross-Examination.  This case is about an underlying

23  allegation in which credibility is at issue.  We have that in

24  writing.  I'm not sure how many times now in this case we are

25  fighting about nothing.  Doe brought this case to get

*Motion Hearing*
*Thursday, November 21, 2019*

Page 33

1   Cross-Examination and he's going to get it.

2           **THE COURT:**  Mr. Richards, I agree with you, that you

3   are fighting about nothing.

4           **MS. RICHARDS:**  Then dismiss the case without

5   prejudice, your Honor.

6           **THE COURT:**  No, no.  How about you agreeing to

7   stipulate to an Order that in this case, Mr. Doe's case, there

8   will be full Cross-Examination and consistent with the Sixth

9   Circuit precedent.

10          **MS. RICHARDS:**  Your Honor, there is no standing in

11  this case.  That Order would have no effect.

12          **THE COURT:**  Look, this is not law school.

13          **MS. RICHARDS:**  Your Honor, I'm being practical.  We

14  have tried to resolve this case.

15          **THE COURT:**  No, you haven't.

16          **MS. RICHARDS:**  Right now there is no injury.  The

17  Court will have to articulate it its Opinion.  The Court will

18  have to identify what is the injury.

19          **THE COURT:**  The Court doesn't have to do anything if

20  you can resolve this.  And you're saying --

21          **MS. RICHARDS:**  You're Honor, we're not going to

22  resolve this case.  We have tried to do it.

23          **THE COURT:**  Will you stop and let me finish?

24          **MS. RICHARDS:**  Yes, your Honor.

25          **THE COURT:**  Thank you.  You have told me and the

*Motion Hearing*
*Thursday, November 21, 2019*

Page 34

1   Court on the record that you tried to resolve the case.  I have

2   seen no evidence of communication between your client and Doe

3   or Doe's attorney in terms of adopting this new rule to comply

4   with the Sixth Circuit.  And to have a 40 some page rule when

5   you are standing here telling me Mr. Doe is going to get all

6   the due process he needs, put that in a proposed Order.  I can

7   find as a matter of jurisdiction that you raised that at the

8   Sixth Circuit and I can also acknowledge if this were a law

9   school final exam question, you might get points for pointing

10  out the no showing of harm.  But that would ignore what I said

11  right at the beginning when you made the argument that he has

12  not suffered any damage because he could be acquitted or found

13  not responsible.  And we have to wait until he is found

14  responsible and his whole career is destroyed to show any harm.

15  That was raised at the Sixth Circuit.  Implicitly was rejected.

16  It was considered.  And I sat at the Sixth Circuit and at the

17  Ninth Circuit.  And we get memos from our law clerks before

18  argument that lists each and every argument raised.  And each

19  Judge has a memo for each case.  And I can't believe that three

20  Judges saw that memo, saw that issue was raised, and said --

21  especially with what we are taught in baby judges' school

22  throughout, if you don't have jurisdiction you can't do

23  anything.  And for the Sixth Circuit to decide, whether it's on

24  a TRO or the like or after a full trial, decide not to mention

25  the jurisdictional issue is at least implicit that they have

*Motion Hearing*
*Thursday, November 21, 2019*

Page 35

1    rejected it and it might even be explicit.

2           **MS. RICHARDS:**  Certainly not explicit.  But I would

3    say I raised subject matter jurisdiction with this Court and

4    oral argument and the Court didn't address it its Opinion which

5    it's required to do.  So I don't think it's fair to say --

6           **THE COURT:**  You deflected.  I am asking the Sixth

7    Circuit -- you raised it at the Sixth Circuit.

8           **MS. RICHARDS:**  What the Sixth Circuit would say is,

9    every district court has a continuing obligation to go --

10          **THE COURT:**  As does the Sixth Circuit.

11          **MS. RICHARDS:**  But at the time Sixth Circuit ruled

12   circumstances were different than now are, were they not?

13          **THE COURT:**  So you're suggesting that --

14          **MS. RICHARDS:**  Cradle to grave.

15          **THE COURT:**  You are suggesting mootness makes it no

16   jurisdiction.

17          **MS. RICHARDS:**  Not mootness, your Honor. Standing.

18   There is no injury --

19          **THE COURT:**  How does he get standing at the beginning

20   and not have standing --

21          **MS. RICHARDS:**  Let's focus in on that, your Honor,

22   because I think that is a great question.

23          **THE COURT:**  I'm really pleased that you like the

24   question.

25          **MS. RICHARDS:**  I don't agree that the Court had

*Motion Hearing*
*Thursday, November 21, 2019*

Page 36

1  subject matter jurisdiction at the PI phase but we don't have

2  to decide that. As I said earlier, we don't have to decide that

3  now because the only thing that matters is whether the Court

4  has subject matter jurisdiction today.  It's a cradle to grave

5  requirement.  The Court is constantly under a duty to exam

6  whether it has subject matter jurisdiction in a case.

7     And now your Honor has taken the position at the PI stage

8  that the claim was ripe and it was ripe because there was an

9  injury associated with having to go through an unconstitutional

10 procedure.  We disagree with that.  I think the case law is

11 very clear. The Court disagreed.  But, again, it's water under

12 the bridge because now we are in a very different situation.

13 Now the Court can't make a finding that the process doesn't

14 comport with Baum.  And so there is not even the hook of that

15 to establish an injury for purposes of this case.

16    I would like -- I'm sorry.  One more point?  I would like

17 to hear from Ms. Gordon, I would like her to articulate as we

18 stand here today, what is the injury that her client has

19 already suffered that gives this Court jurisdiction?  And I

20 will submit she cannot identify it.

21         **THE COURT:**  How about this?  And Ms. Gordon can

22 supplement what I am about to say.  The possible injury --

23         **MS. RICHARDS:**  Possible doesn't work.  Possible is

24 against Supreme Court case law.  Possible is against Warshock.

25         **THE COURT:**  Can I finish?

*Motion Hearing*
*Thursday, November 21, 2019*

Page 37

1        **MS. RICHARDS:**  Please.

2        **THE COURT:**  Because we are right at the beginning

3   where you said at the first git-go, the same argument you are

4   making now.  Let him have his hearing and if he gets screwed

5   then he has standing.  Don't respond until I'm done.  Now

6   you're saying we've got a new rule in place and Ms. Gordon is

7   saying the new rule gives too much discretion to a hearing

8   officer to not have the basic requirements of due process in

9   terms of Cross-Examine and so on.  What she read from your

10  policy. May, may, may.

11       **MS. RICHARDS:**  May I ask a question about that?

12       **THE COURT:**  No.  When I am finished, you may.

13       **MS. RICHARDS:**  Very good.

14       **THE COURT:**  The ruling that I made at the beginning

15  about the rotten apple or falling from the poisonous tree,

16  however I described it, is the same ruling that I am making

17  now.  And what I don't understand is why if you are telling me

18  on behalf of the University of Michigan that they are going to

19  give Cross-Examination, they are going to comply with all

20  things the Sixth Circuit said, why through communication with

21  Ms. Gordon you can't come up with a court Order applying only

22  to Mr. Doe because he is the one who is here and he is the one

23  who has standing because I am not going to allow a hearing that

24  may comply with the Sixth Circuit when my understanding of

25  jurisprudence is it must comply with the Sixth Circuit.

*18-11776; John Doe v. University of Michigan, et al.*

*Motion Hearing*
*Thursday, November 21, 2019*

Page 38

1      **MS. RICHARDS:**  Your Honor, let me ask you a question.

2  When you have a trial in this courtroom and there is a Rule 403

3  objection, you have discretion, do you not?

4      **THE COURT:**  What is your point?

5      **MS. RICHARDS:**  My point is, we can't decide whether

6  or not the discretion has been improperly applied until after

7  it happens.

8      **THE COURT:**  But the point of the Sixth Circuit is

9  there is no discretion.

10      **MS. RICHARDS:**  Of course in a binding circumstance,

11  your Honor, you would error if you refused to admit evidence.

12      **THE COURT:**  Don't tell me what I would do.  I am

13  asking you how your proposed rule complies with the Sixth

14  Circuit if it gives the discretion to the hearing officer to do

15  away with Cross-Examination?

16      **MS. RICHARDS:**  The discretion -- and let me focus on

17  that, your Honor, because that is important.  A typical hearing

18  may include, modifies a situation where some of those things

19  may happen in a different order or they might happen with

20  respect to a different group of people.  But the operative

21  language is, it is an opportunity for the parties to address

22  the hearing officer and to question the other party or

23  witnesses.  The, may, refers to the order things are going to

24  happen in.  It refers to the way the hearing might be

25  conducted.  It doesn't give the hearing officer discretion.

1   The hearing officer, let me be plain --

2          **THE COURT:**  You are making my argument for me.  If

3   that is the correct interpretation, draft an Order with Ms.

4   Gordon saying that those mays only apply to the order of proof.

5          **MS. RICHARDS:**  We have put it in writing, your Honor.

6   Let me understand this.  What is it about the resolution of

7   this case that makes the Court want to insist on an Order with

8   respect to something that is going happen in the future?

9          **THE COURT:**  What makes it worth six lawyers for the

10  University of Michigan to try and come up with a rule that the

11  Sixth Circuit has told you what the rule is?

12         **MS. RICHARDS:**  Your Honor, we are going to follow it.

13         **THE COURT:**  And so put it in an Order and this case

14  is over.

15         **MS. RICHARDS:**  I don't think that's true, first of

16  all, because we tried that.  But, second of all --

17         **THE COURT:**  You haven't tried it.  You have had no --

18         **MS. RICHARDS:**  Your Honor, we can't get into this on

19  the record now. It's not an appropriate discussion point for

20  this conversation right now.

21         **THE COURT:**  Don't tell me what is appropriate.

22         **MS. RICHARDS:**  It's not appropriate for me, your

23  Honor, to discuss this.

24         **THE COURT:**  Let me finish my question before you rule

25  it out of order.  Ms. Gordon has said on the record today that

Page 40

1    she has prepared whatever documents, and I am not going into

2    the substance of those documents, as a proposed point of

3    discussion to resolve the case.  While those -- that

4    communication was pending, and correct me if I'm wrong, Ms.

5    Gordon, the university adopted what rule we are talking about

6    now.

7              **MS. RICHARDS:**  No, your Honor.  The adoption of this

8    policy pre-dated those communications.

9              **THE COURT:**  Okay.  Have you ever communicated,

10   without going into the substance, a response to Ms. Gordon with

11   your objections to her language or counterproposal?  Yes or no?

12             **MS. RICHARDS:**  No.  Sorry. That's not true.  Yes, we

13   have communicated.  We didn't reach a resolution but we have

14   communicated, yes.  I would mention something else, your Honor.

15   I know that the Court is only hearing this one case and I

16   appreciate the Court's dedication to try and getting the case

17   resolved.  But I will mention, hundreds of these cases get

18   filed every year.  The university can't negotiate an individual

19   policy with every plaintiff's lawyer that comes along as part

20   of the process.  We have one policy.  We apply it in a lawful

21   way and we have done so.  I will say we have done so 11 times,

22   maybe more, since the policy was applied, gone through a

23   hearing with Cross-Examination with no appeal on the basis of a

24   denial of procedural rights.  This is a policy that has been in

25   effect for almost a year.  Cross-Examination has been

*Motion Hearing*
*Thursday, November 21, 2019*

Page 41

1   consistently provided.  And folks have not complained about the

2   way it's provided.  This is the only case, your Honor, that

3   this is a problem with.

4          **THE COURT:**  This is the only case that is before the

5   Court.  Ms. Gordon, you said you had a couple points.

6          **MS. GORDON:**  I do, Judge.  The university made it

7   very clear they are going to create their own policy without my

8   input.  To go to your most recent point, Exhibit B to my

9   response to plaintiff's motion to dismiss, ECF 59, I attached

10  on June 7, 2019 an email to Mr. Richards.  It said, Josh, we

11  are seeking an Order that your use of the 2018 policy was slash

12  is unconstitutional and should be enjoined.  Your withholding

13  of plaintiff's transcript slash diploma was unconstitutional

14  and you will provide plaintiff with a constitutional process.

15  And I asked for concurrence.  And he wrote back and said, the

16  university does not concur in the motion, Deb.  That is why I

17  am standing in front of you, Judge.  They have drawn a line in

18  the sand.  The time to hope that they will agree or there will

19  be a stipulated Order or they will put the correct language

20  into their policy is long gone.  I have been at this with them

21  on Doe versus Baum and now this case for years.  They will not

22  budge.

23          **THE COURT:**  What is the status of Doe versus Baum?

24          **MS. GORDON:**  It's a little bit complicated.  The

25  Judge granted all of the elements of my summary judgment but he

*Motion Hearing*
*Thursday, November 21, 2019*

Page 42

1    refused to give me relief.

2            **THE COURT:**  Judge Lawson?

3            **MS. GORDON:**  Yes. Because he said I still have to

4    show my client did not admit facts to the police.  I filed an

5    interlocutory appeal.  But as to all other elements of summary

6    judgment which I put in front of your Honor, he agreed that I

7    met them and my summary judgment was complete and I should have

8    an Order except for -- and it's a little complicated -- Judge

9    Lawson on his own decided I must disprove a fact that he has in

10   his mind.

11           **THE COURT:**  Was standing raised in that case?

12           **MS. GORDON:**  No, because my client had already gone

13   through the process.

14       But let me talk to you about standing and ripeness.  It's

15   frivolous.  This is now at least the third time it's been

16   argued here. It's gotten zero traction anywhere.  You addressed

17   it crisply and pointed out that no Court, and I must say the

18   university has not a single case that they have cited where

19   they are in the process of literally using an unconstitutional

20   policy and any court in this country has said, go ahead.  There

21   is zero case law.

22       The Court must step in.  And Goldberg versus Kelly is a

23   good example.  It had to do with Social Security benefits.  And

24   the U.S. Supreme Court said very clearly, no, we are changing

25   your policy as a matter of law before these people have to go

*18-11776; John Doe v. University of Michigan, et al.*

*Motion Hearing*
*Thursday, November 21, 2019*

Page 43

1   through the process.  This is Black letter law.  For them to

2   suggest that they can impose an unconstitutional policy and we

3   have to wait for the harm as you already said is literally

4   ludicrous.

5       Now, Mr. Richards --

6           **THE COURT:**  In the criminal area, there are examples

7   of this.

8           **MS. GORDON:**  Sorry, Judge?

9           **THE COURT:**  In the criminal area, there are examples

10  of pretrial Orders before the harm.  For example, the latest

11  one reported there is a challenge somewhere I think in the

12  south to maybe Mississippi to a Prosecutor who has excluded

13  every black juror.  And the defendant is now bringing -- he has

14  had six trials and every trial the same Prosecutor has done the

15  same thing and has been reversed.

16          **MS. GORDON:**  I think that is a different fact

17  scenario and I grasp that.

18          **THE COURT:**  Will you stop and let me finish?

19          **MS. GORDON:**  I thought you had.  I'm sorry.  You took

20  a pause.  I'm sorry.

21          **THE COURT:**  I breathe.  The defendant has now brought

22  a suit or a challenge to that Prosecutor's practice before he

23  does it a seventh time which is consistent with what you are

24  arguing.  And I would predict that somewhere along the line

25  some court is going to say to the Prosecutor, don't do it

*Motion Hearing*
*Thursday, November 21, 2019*

Page 44

1  again.  And you call it Black letter law. I would agree, that
2  you don't have to wait until the illegal action happens if you
3  know that it's possibly going to happen.

4          **MS. GORDON:**  Exactly.  May I, judge?  And that's the
5  point --

6          **THE COURT:**  Do you want me to change my mind?

7          **MS. GORDON:**  No.  I want to emphasize your point.
8  The case you are talking about, there was always a possibility
9  that maybe the Prosecutor would leave a few African-Americans
10  on.  This -- and the cases do make this distinction.  Here we
11  know what the policy is.  There is not a possibility if the
12  university gets its way, their new policy will not apply to my
13  client.  That is set in stone.  That is why this Court must
14  rule on it.

15      The other cases the courts say, you know, you people that
16  want to us stop this damn being built, we are not even sure
17  they are going to get their permits approved.  So there is a
18  possibility, people, this will never happen.  Step aside.

19      I am in the opposite situation.  They have the policy.
20  They have announced they are applying it.  This is not maybe it
21  will, maybe it won't.  That is why the Court must rule.  There
22  is not going to be a stipulated order. I just read the e-mail
23  from June.

24          **THE COURT:**  Okay.  Stop.

25          **MS. GORDON:**  Now, as to injuries, if I may address

*18-11776; John Doe v. University of Michigan, et al.*

Page 45

1   that?

2          **THE COURT:**  You may.

3          **MS. GORDON:**  The plaintiffs -- the courts are all in

4   unison that if a plaintiff is subjected to, which my client has

5   been, an unconstitutional process, which he has been, that is

6   an injury.

7          The courts are also of the mind if a plaintiff is about to

8   imminently be subjected to an unconstitutional policy, the

9   Court can act with or without an actual injury.

10         My client, in addition, has other injuries in addition to

11  the fact that he has been subjected -- this thing lasted six

12  months -- to an unconstitutional process which he was forced to

13  go through.  He has reputational injury.  There were multiple

14  witnesses contacted under this unconstitutional process, as the

15  courts clearly acknowledged reputational harm.  And he has that

16  injury.  He was subjected, if you will recall, Judge, to having

17  his degree withheld and I'm still seeking money damages for

18  that for 50 days based on a mere allegation.  He was denied

19  proper notice at the time. He was then subjected to the six

20  month improper policy.

21         **THE COURT:**  What is your best case for the

22  proposition that denial of the constitutional hearing is an

23  injury, if that's a clear question?

24         **MS. GORDON:**  The courts say that any time -- you can

25  look at Lopez, any time you are subjected to a procedural due

*Motion Hearing*
*Thursday, November 21, 2019*

1   process violation it is automatically assumed it's an injury.

2   It may only be worth one dollar, nominal damages.

3           **THE COURT:**  Give us the cites for those cases.

4           **MS. GORDON:**  They are both US Supreme Court cases.  I

5   could give them to you before I leave the courtroom.

6           **THE COURT:**  Are they in your brief?

7           **MS. GORDON:**  Yes, they are.  I'm sorry.  I don't

8   think they are in the briefs I have with me today.  They were

9   in the earlier briefs I filed with your Honor.

10          **THE COURT:**  Okay.

11          **MS. GORDON:**  It's Goss (ph) versus Lopez, L-o-p-e-z

12  and Carry (ph) versus Phipis, P-h-i-p-i-s. I will be happy to

13  submit them to the Court.  But it's absolutely clear that any

14  deprivation of due process assumes injury.  That is old, old

15  law that goes back for decades.

16      So now I want to address a few other things.  Mr. Richards

17  made a comment about the Federal Government.  They are somehow

18  following the federal government.  Okay.  Let's look at Doe

19  versus Cincinnati.  Doe versus Cincinnati had one policy for

20  all students.  This was the policy originally in front of your

21  Honor where you could only pass questions in writing.  There

22  was no Federal Rule that said that there had to be a different

23  policy for sexual misconduct.  In fact, the Title Nine guidance

24  I did not address this in my papers, is very clear that any

25  time the university uses a policy different than that used for

*Motion Hearing*
*Thursday, November 21, 2019*

Page 47

1   all other students, that is suspect.  Why are you singling out

2   a group of students?  And I will be happy to present that to

3   the Court as well.

4        So it's the reverse of what the university is telling you.

5   The Federal Government views that with a great deal of

6   skepticism because it's exactly what we have here.  They are

7   hiding the ball.  And the fact that they won't come out here

8   today and tell you, we will agree -- well, strike that.  Let me

9   go back.  Why does it not say in their policy where credibility

10  is at stake you get a hearing and an opportunity to

11  cross-examine?  Those are very simple words.  It's because they

12  want to leave their options open.

13       And I cannot emphasize enough to you, Judge, if you rule

14  that they get to use their policy and I lose, you have freed

15  them from here on out to change the policy any month, year, or

16  day they want and I will be right back in front of you with the

17  next student.  This is the problem.  You yourself said in

18  denying their stay, the Court needs to provide guidance.  This

19  case was remanded to you to provide guidance, not on the hope

20  that somehow we would work it out.  We haven't worked it out.

21  I'm telling you their policy does not comport with due process.

22           **THE COURT:**  Stop.

23           **MS. GORDON:**  Okay.

24           **THE COURT:**  Anything new you want to say?

25           **MS. RICHARDS:**  Yes, your Honor.

Page 48

1           **MS. GORDON:**  Hang on.

2           **THE COURT:**  I'm talking to Ms. Gordon, Mr. Richards.

3           **MS. GORDON:**  I recommend that the Court enter an

4    order somewhat like the one I attached to my pleadings, making

5    it clear where credibility is at stake, my client is entitled

6    to due process which would include Cross-Examine and a hearing.

7    That order will then be in effect.  They can have whatever

8    policy they want.  That's fine.  God bless. But the parameters

9    of due process will be in the form of a court Order.  That will

10   benefit not just my client, but all society because moving

11   forward, that Order will survive any subsequent policy they

12   issue.

13        If they were allowed to continue doing this, I may be back

14   in front of your Honor next week because the other thing their

15   new policy does not allow for is written notice of charges

16   against you.  Again, unlike the Statement Of Student Rights And

17   Responsibilities that applies to everybody else, they have in

18   writing that you get notice.  You have a written notice

19   statement from the complainant.  So I am telling that without

20   an order from this Court this whole situation with the

21   University of Michigan has no end.

22           **THE COURT:**  Does your Order include requirement of

23   notice?

24           **MS. GORDON:**  Yes, I believe it does. It's on my

25   table.

*Motion Hearing*
*Thursday, November 21, 2019*

Page 49

1          **THE COURT:**  Thank you. we have that in the file

2     though?

3          **MS. GORDON:**  Part of the file.

4          **MS. RICHARDS:**  Your Honor, I wanted to pick up on

5     something Ms. Gordon said about this case.  If the Court starts

6     issuing Orders, pre-hearing Orders that clarify the rules for

7     proceeding, the Court is going to have a lot of these cases

8     because every single case that goes through our process they

9     are going to file. And they are going to say we are not

10    positive they are going to do what they are going to say they

11    are going to do.  So what we would like you to do is order them

12    to follow a certain set of procedures, and we have standing

13    because your Honor has ruled --

14         **THE COURT:**  Do you understand that I get a paid by

15    piece now, that the more cases I get --

16         **MS. RICHARDS:**  Well, your Honor doesn't seem to like

17    having this case and what I am suggesting is --

18         **THE COURT:**  Who doesn't like having this case?

19         **MS. RICHARDS:**  You are trying to get us to settle

20    very aggressively, your Honor.

21         **THE COURT:**  I do that in every case.  And my job

22    includes dispute resolution.

23         **MS. RICHARDS:**  I understand, your Honor.

24         **THE COURT:**  And not every case should go to trial,

25    especially this case where both sides have expended huge

*Motion Hearing*
*Thursday, November 21, 2019*

Page 50

1    amounts of time on an issue that 90 percent you claim to agree

2    with each other, maybe 95 percent, and we're getting into

3    esoteric points that -- and don't respond.  I have a right to

4    rant.  And to tell me that I shouldn't decide this case because

5    there will be other cases that will want to have due process

6    mischaracterizes the role of the courts.  The courts are here

7    to resolve disputes.  In a trial, the dispute resolution is the

8    same as war is to diplomacy.  It's a failure for many reasons

9    and especially in this case where you are so close at least in

10   rhetoric to each other's position.  That's all I'm going to

11   say.

12           **MS. RICHARDS:**  And, your Honor, I didn't mean to

13   suggest that the Court's efforts weren't worthwhile in its

14   cases.  What I ment to suggest was, the reason we have subject

15   matter jurisdictional limitations is in part to limit the

16   number of cases like this that get brought.  And we reserve --

17           **THE COURT:**  Let me tell you something.  We go to what

18   I call remedial judges school.  We are required to go every two

19   years.  And they are wonderful seminars.  And they bring in

20   this professor from the west coat who is probably the best

21   speaker on the topic and may be the best speaker on any topic.

22   This man starts out on jurisdiction.  And he was at baby judges

23   school and he has just gone into private practice but he still

24   lectures us on jurisdiction.  And he starts with the point that

25   you make, that if you don't have jurisdiction you can't do

*18-11776; John Doe v. University of Michigan, et al.*

*Motion Hearing*
*Thursday, November 21, 2019*

Page 51

1  anything.

2      And then he says, if you take good notes, and this is a

3  very poor imitation of him, if you take good notes and explain

4  to your law clerks, you can go back to your office and dismiss

5  at least one and perhaps two or three cases on jurisdictional

6  grounds.

7      And I always sort of stopped listening there because I am

8  not here to figure out how to dismiss cases.  I am here now as

9  a senior judge slash volunteer to help people resolve disputes.

10  And it's very frustrating to me, and you have seen evidence of

11  that in this hearing, that the goal here is not to resolve

12  disputes but to educate the Judge on how to dismiss cases.

13  That's all.

14          **MS. RICHARDS:**  Your Honor --

15          **THE COURT:**  You don't have to respond.

16          **MS. RICHARDS:**  Well, I think it's a good point.  And

17  I share --

18          **THE COURT:**  That is about the fifth time you have

19  given me good points on good questions.

20          **MS. RICHARDS:**  I agree with your Honor.  I can't help

21  it.

22          **THE COURT:**  Yes, you can. You can count to five

23  before you respond.  I don't need your affirmation on whether I

24  am asking good questions or not.  I just need good answers.

25  And if you sea have something to add to what you already said I

*Motion Hearing*
*Thursday, November 21, 2019*

Page 52

1   am listening.

2          **MS. RICHARDS:**  I do.  There have been, there has been

3   a great deal of discussion about the issues around standing and

4   a little bit about ripeness.  I think we have exchanged our

5   views on those points and I would like to move on because we do

6   have a 12(B)(6) motion pending with respect to all the other

7   claims as well.  I would like to cover the remaining three

8   claims.

9          **THE COURT:**  You may.

10         **MS. RICHARDS:**  The legal standard for a procedural

11  due process violation which Mr. Doe alleges is that the

12  plaintiff was denied a protected interest. Was denied a

13  protected interest.  Now, a protected interest could be a

14  liberty interest or property interest or life.  Here we are

15  dealing with property because students have a property interest

16  in their continuing education in this Circuit.

17         So in order to state a claim for procedural due process

18  violation, we have to articulate that a protected interest, a

19  property interest in this case, was deprived.

20         Now, I would suggest to your Honor that separate and apart

21  from standing and ripeness, Mr. Doe cannot satisfy that burden.

22  He was not deprived of his educational --

23         **THE COURT:**  You made that point in your pleadings.

24  Go to your next point.

25         **MS. RICHARDS:**  Very good.  Title Nine is a similar

*Motion Hearing*
*Thursday, November 21, 2019*

Page 53

1  standard.  And this is a theme because almost all of these

2  legal standards are phrased in the past tense.  Title Nine

3  requires an erroneous outcome.  So what is the outcome in this

4  case that allows the plaintiff to show -- Title Nine requires

5  sex discrimination, of course -- that an erroneous outcome was

6  reached in his proceeding and that that erroneous outcome was

7  on account of gender?  Of course, the standard isn't making any

8  sense in this posture because there wasn't any outcome.

9          **THE COURT:**  You made that point well in your briefs.

10         **MS. RICHARDS:**  Thank you, your Honor. The Peloe case

11  is especially important on that point.  If you only read one

12  case on this point, please read Peloe versus University of

13  Cincinnati.  It's on all fours with this case.

14      And the last set of claims are ELCRA claims.  And I think

15  the argument with respect to ELCRA gets a little tricky because

16  of all the statutory definitions.  I want to simplify it if I

17  can.

18      ELCRA has two important articles.  It has an article that

19  relates to employers and an article that relates to educational

20  institutions.  Educational institutions is obviously the

21  operative one in this case because Mr. Doe was employed by us.

22  He was our student.  So they are being sued as an educational

23  institution.

24      Now, Ms. Gordon has agreed to dismiss claims barred by

25  sovereign immunity against the university and against all of

*Motion Hearing*
*Thursday, November 21, 2019*

Page 54

1    our folks in their individual -- I'm sorry -- in their official

2    capacities.  But what they haven't agreed to dismiss are the

3    claims in the individual capacities, in their personal

4    capacities.  And the important point here is that Article Two

5    allows personal capacity claims.  And the reason that it does

6    is because the definition of employer includes persons.  And

7    the definition of persons includes individuals.  Very

8    straightforward.  Educational institutions, however, same

9    statute, same set of definitions.  Does not include persons.

10   It only includes educational institutions because its own

11   definition does not include individuals.  There are no cases --

12           **THE COURT:**  Okay.  Stop.  Ms. Gordon, do you disagree

13   with what he just said?

14           **MS. GORDON:**  Well, I don't think there is any

15   dispute.  We are suing people in their individual capacities

16   and Elliot Larsen does allow for claims of gender

17   discrimination in educational institutions.

18           **MS. RICHARDS:**  There is no case that says that, your

19   Honor, not with respect to --

20           **THE COURT:**  Ms. Gordon, do you have a case in your

21   pleadings that you cited?

22           **MS. GORDON:**  Let my look, Judge.  The statute itself

23   says a whole section on educational institutions.

24           **THE COURT:**  There is no question educational

25   institutions are covered?

*Motion Hearing*
*Thursday, November 21, 2019*

Page 55

1          **MS. GORDON:**  So I have cited –– I have said this.

2    Michigan law is clear that individuals can indeed be held

3    liable in their individual capacities for violating the

4    anti-discrimination, anti-retaliation provisions of ELCRA.

5               **THE COURT:**  Obviously not an educational institution.

6          **MS. GORDON:**  Well, I don't see a distinction.  The

7    point is that individuals ––

8               **THE COURT:**  The statute has different language.  I

9    will deal with that in the Opinion.

10          **MS. GORDON:**  Okay.

11               **THE COURT:**  Anything else?

12          **MS. RICHARDS:**  Yes.  On the Motion For Summary

13    Judgment, your Honor, the Motion For Summary Judgment says on

14    its face that it is seeking only prospective injunctive relief.

15    However, the relieve that it seeks with respect to the first

16    ground isn't prospective at all.  It's retrospective.  It's

17    barred by sovereign immunity because she asks for a

18    retrospective Order saying something we used in the past was

19    unconstitutional.  But, of course, we can't do that because the

20    only claims she can bring are under ex parte Young.  And ex

21    parte Young only allows the Court's Order, an organ of the

22    state, to engage in prospective injunctive relief.  So that

23    portion of the relief is just barred by sovereign immunity.

24    You can't do it.

25               **THE COURT:**  But it doesn't bar the other portion of

Page 56

1   the relief.

2           **MS. RICHARDS:**  The other portion of the relief she is

3   seeking is --

4           **THE COURT:**  Is prospective?

5           **MS. RICHARDS:**  Prospective. I agree, your Honor.  And

6   let's talk again -- I'm not going to talk about standing.  I

7   will mention it in the context of demonstrating subject matter

8   jurisdiction is always the plaintiff's burden.  And at the

9   pleading stage that burden is less than at the summary judgment

10  stage. So in order to show that she is entitled to prospective

11  injunctive relief, she has to not just say but prove with facts

12  that she is entitled to exercise the Court's jurisdiction and

13  on that point, demonstrate actual injury related to those

14  things she is seeking.

15      So the Court's analysis is a little bit different on the

16  summary judgment basis.  So we are looking at essentially

17  asking the Court, and this gets back to what I said a second

18  ago, to make prospective Orders that are consistent with what

19  the university has already said it's going to do and has an

20  affidavit in the record saying it's going to do.  So Ms. Gordon

21  is asking you to say on a summary judgment motion, on a Rule 56

22  motion where any disputed fact precludes entry of an Order, she

23  wants you to take her prediction about the facts over  facts in

24  the record in an affidavit that we filed saying that we

25  disagree we are going to do those things.  I would say, your

*Motion Hearing*
*Thursday, November 21, 2019*

Page 57

1   Honor, under no reasonable or unreasonable set of circumstances

2   can Rule 56 relief be entered on that basis, period.

3          **THE COURT:**  Thank you.  Ms. Gordon, brief response.

4   It's lunch time.  Almost dinner time.

5          **MS. GORDON:**  Okay.  Let me talk about prospective

6   relief versus other kinds of relief.

7          **THE COURT:**  You have no dispute about Mr. Richards

8   saying I can't give retroactive relief.

9          **MS. GORDON:**  I do.  I asked for it in my original

10  Complaint that I filed with the TRO.  At that time I asked for

11  a ruling that their 2018 policy was unconstitutional.  I am

12  still entitled to a ruling.  That is exactly what my Motion For

13  Summary Judgment goes to.  It doesn't ask for -- he's calling

14  it relief.  It asks for a court Order stating that the policy

15  they used to put my client through six months of

16  unconstitutional procedure is unconstitutional.  That is not

17  asking for prospective or any other kind of relief. He has just

18  characterized it in a way that makes really no sense.  What he

19  would be talking about and typically in an employment case, if

20  I went back and sought lost wages, you know, where I can only

21  get equity.  That is what would be his point.  His point is

22  totally not well taken.

23      Of course this Court can rule as I asked originally that I

24  get an Order that the 2018 policy is unconstitutional, period.

25  That is not retrospective or prospective relief.  It's a

*18-11776; John Doe v. University of Michigan, et al.*

Page 58

1  summary judgment ruling.

2      With regard to the grant of summary judgment, they argued

3  in their papers -- they argued about facts.  And so I say in my

4  reply, you guys have literally every fact under the sun that

5  exists with regard to your policy and what is going on here,

6  why don't you tell us under Rule 56, why don't you come forward

7  with what material fact you think this Court needs to address

8  or be made mindful of?  They have nothing.  The facts are

9  uncontested.  We know what the policy was and we know exactly

10  what happened to my client.  Okay.  That equals a summary

11  judgment order from this Court.

12      Now, with regard to going forward, I am seeking an Order

13  as to what kind of procedure obviously I will be subjected to.

14  As to Mr. Richards' point that, my golly, you are going to have

15  people coming in here asking you to please strike down the

16  policy, let's be really honest about this and intellectually

17  honest.  The Statement Of Student Rights And Responsibilities

18  which does allow for due process, people are not running into

19  this building saying they have not gotten due process.  And the

20  reason is the policy is a due process policy.  The reason

21  people are running in on the sexual misconduct policy, me and

22  others across the country, is they don't allow due process.

23  So, yes, so long as you have a policy that does not allow for

24  due process, people will be running into the courts just like

25  if the policy is allowed to continue that they have now, there

*Motion Hearing*
*Thursday, November 21, 2019*

Page 59

1    will be more cases before this court.

2         So what this Court needs to do is enter an Order.  And the

3    other thing I want to say, according to Mr. Richards you should

4    now pour over that 44 page document, that new policy.  I think

5    it was incumbent on him to argue at some point from the day

6    they issued their new policy, Judge Tarnow, here is why we want

7    you to give your stamp of approval to this policy.  Note they

8    have never done that. They never made an argument to you.  Here

9    is exactly the language we want you to use.  The Sixth Circuit

10   remanded this to you so you could look at Doe versus Baum, you

11   could look at our policy.  I am really want you to take note of

12   the fact that they have never done that for you.

13              **MS. RICHARDS:**  It's in our brief, your Honor.

14              **MS. GORDON:**  Not really, but the Judge will have an

15   opportunity.  I have pointed out that the language is vague.

16   There is discretion and there is no requirement that where

17   credibility is at stake, a live hearing or Cross-Examination

18   must occur.  That is intentional and that cannot be allowed to

19   continue.

20         Now, as to something else they are doing here on this

21   order, of course, Judge, they understand they do not want my

22   client and I to get attorneys' fees.  So, you see, this is part

23   of the end game.  If they can convince you not to issue an

24   Order, even though it's because of my work and my client is

25   paying me for my work, that we got their process stopped before

*Motion Hearing*
*Thursday, November 21, 2019*

Page 60

1   my client was ruined potentially, that I am not a prevailing

2   party and I'm not entitled to anything even though they have

3   lost on all of their issues, they lost on the issue in front of

4   you.  They lost on the issue in Doe versus Baum.  But I am not

5   entitled to fees because they have made it all right and wee

6   all just need to accept their policy and go home.

7          So I need the Court to be mindful that we are a prevailing

8   party and I need an Order so stating in some sort of language

9   with regard to what is going to happen going forward.

10         With regard to Title Nine, our theory is that the hold on

11   my client's transcript for 50 days was based on an erroneous

12   outcome due to his gender, that an assumption was made about

13   him --

14              **THE COURT:**  That is under --

15              **MS. GORDON:**  Title Nine and 1983.

16              **THE COURT:**  Now can I finish my question?

17              **MS. GORDON:**  Yes. I'm sorry.

18              **THE COURT:**  That is based on Title Nine, Section Two

19   or Section Four, employee or education?

20              **MS. GORDON:**  Education.

21              **THE COURT:**  Thank you.

22              **MS. GORDON:**  So our Title Nine theory is the way the

23   courts view Title Nine, there must have been an erroneous

24   outcome by the educational institution and that erroneous

25   outcome must have been based in part on gender.  So that is

*18-11776; John Doe v. University of Michigan, et al.*

Page 61

1    what I am arguing.

2         **THE COURT:**  The erroneous outcome is the 50 days.

3         **MS. GORDON:**  Yes.  And the other thing we are arguing

4    is that the university immediately issued a very wide, wide

5    overly broad no contact order against my client with regard to

6    where he could be and couldn't be on the campus.  And they did

7    that, we believe, because he is a male, even though --

8         **THE COURT:**  That is not in effect now.  How many

9    days?

10        **MS. GORDON:**  That is in effect.  That is definitely

11   in effect for the University of Michigan.  In fact, I wrote to

12   Mr. Richards saying I believe that that no contact order given

13   the stay is no longer r in effect and he wrote back, absolutely

14   not, it's totally in effect.  My client cannot be anywhere near

15   the claimant, and if he inadvertently is, he can be

16   disciplined.  And that was issued in spite of the fact that she

17   has contacted him since the so-called alleged sexual assault.

18   Yet the onus was on him.  So I just want to point out to you

19   the Title Nine theories that are already ripe and ready to go.

20   And as a matter of fact I received discovery today, your Honor,

21   from guess who?  The University of Michigan.  They have now

22   started issuing subpoenas --

23        **THE COURT:**  But they are not a part of your summary

24   judgment motion.

25        **MR. SCHWARTZ:**  I will state that is not in this case.

*Motion Hearing*
*Thursday, November 21, 2019*

Page 62

1   That was in a different University of Michigan case.

2           **MS. GORDON:**  Well, I received it.

3           **MR. SCHWARTZ:**  You have three cases against the

4   University of Michigan.

5           **MS. GORDON:**  Then I would withdraw my statement.  I

6   just saw it on my cell phone as I was sitting hire.  Mr.

7   Schwartz is correcting me.

8           **THE COURT:**  Another reason you shouldn't have phones

9   in court.

10          **MS. GORDON:**  Anyway, Judge, we have a Title Nine

11  claim based on what happened.  And I just want to close by

12  imploring you, please issue an Order.  I have a motion for

13  attorney fees pending.

14          **THE COURT:**  Forget the attorney fees for now.

15          **MS. GORDON:**  But I just want to point out one thing

16  about that if I can interrupt you.  That lays out -- we talked

17  earlier about Goss (ph) versus Lopez and Carry versus Phipis

18  and you asked if it was in my briefing here, I laid that theory

19  about being a prevailing party out in that motion for attorney

20  fees.

21          **THE COURT:**  Okay.  Your summary judgment motion is

22  only to Count One?

23          **MS. GORDON:**  Yes.

24          **THE COURT:**  Thank you.  Thank you, all.

25          **MS. GORDON:**  Thank you, Judge.

*Motion Hearing*
*Thursday, November 21, 2019*

Page 63

1        **MR. SCHWARTZ:**  Thank you, your Honor.

2        **MS. RICHARDS:**  Thank you, your Honor.

3        **THE COURT:**  We're in recess.  Before we are in

4   recess, I'm taking it under advisement.  I am not deciding from

5   the bench.

6        **MS. GORDON:**  Thank you, Judge.

7                         –   –   –

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*18-11776; John Doe v. University of Michigan, et al.*

Page 64

**C E R T I F I C A T I O N**

1

2          I, Lawrence R. Przybysz, official court reporter

3    for the United States District Court, Eastern District of

4    Michigan, Southern Division, appointed pursuant to the

5    provisions of Title 28, United States Code, Section 753,

6    do hereby certify that the foregoing is a correct

7    transcript of the proceedings in the above-entitled cause

8    on the date hereinbefore set forth.

9          I do further certify that the foregoing

10   transcript has been prepared by me or under my direction.

11

12   s/Lawrence R. Przybysz

13   Official Court Reporter

14   Date: November 26, 2019

15                          -   -   -

16

17

18

19

20

21

22

23

24

25

*18-11776; John Doe v. University of Michigan, et al.*