UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JOHN DOE,** | : Case No. 18-cv-11776 |
| | : |
| Plaintiff, | : Hon. Arthur J. Tarnow |
| | : Mag. Elizabeth A. Stafford |
| v. | : |
| | : **DEFENDANTS' NOTICE OF** |
| **UNIVERSITY OF MICHIGAN**, *et al.*, | : **INTENT TO RELY ON** |
| | : **ADDITIONAL AUTHORITY** |
| Defendants. | : **IN SUPPORT OF THEIR** |
| | : **MOTION TO DISMISS** |
| | : **PLAINTIFF'S SECOND** |
| | : **AMENDED COMPLAINT** |
| | : |

DEBORAH GORDON LAW
Deborah L. Gordon
Elizabeth A. Marzotto Taylor
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan  48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

*Attorneys for Plaintiff*

SAUL EWING ARNSTEIN &
LEHR LLP
Joshua W. B. Richards
Amy L. Piccola
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102
(215) 972-7737
joshua.richards@saul.com
amy.piccola@saul.com


MILLER, CANFIELD, PADDOCK
AND STONE, P.L.C.
Brian M. Schwartz
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
schwartzb@millercanfield.com

*Attorneys for Defendants*

Defendants hereby give notice of their intent to rely on the February 11, 2020 Opinion issued by the United States Court of Appeals for the Sixth Circuit in *Qiu v. University of Cincinnati*, No. 19-3630 (6th Cir. Feb. 11, 2020) (attached hereto as Exhibit A) in support of their motion to dismiss Plaintiff John Doe's second amended complaint (*see* ECF No. 49). The plaintiff in *Qiu* argued, in relevant part, that he was denied due process when he was expelled from the university for academic dishonesty "because he was denied the chance to cross-examine his accuser." *Qiu*, 2020 WL 634036, at *5. The Sixth Circuit rejected this argument because neither the plaintiff nor the Court could "know whether a request for cross-examination of [plaintiff's accuser] would have been denied," given that the plaintiff "failed to appear at the scheduled hearing." *Id.* The Sixth Circuit upheld the district court's dismissal because "mere speculation on the part of a plaintiff" cannot be used to state a claim. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

So too here. Until the University is permitted to move forward with Doe's student conduct hearing, Doe can only speculate whether he will be afforded cross-examination. That is not enough. In *Qiu*, the plaintiff's hearing had already occurred. The Sixth Circuit still found his claims regarding that hearing to be speculative because he did not participate in the hearing. The reasons to dismiss Doe's claims are even stronger: since Doe's hearing has not yet occurred, Doe

-2-

cannot assert that he has been deprived of any due process rights.  *See Qiu*, 2020 WL 634036, at *5 (courts do "not give determinative weight to claims raising only 'a sheer possibility that a defendant *has acted* unlawfully'" (quoting *Iqbal*, 556 U.S. at 678) (emphasis supplied)).  Doe's claims must be dismissed.  (*See* ECF No. 49 at 7-17.)

February 13, 2020

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
Brian M. Schwartz
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
schwartzb@millercanfield.com

/s/ *Joshua W. B. Richards*
SAUL EWING ARNSTEIN & LEHR LLP
Joshua W. B. Richards
Amy L. Piccola
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102
(215) 972-7737
joshua.richards@saul.com
amy.piccola@saul.com

*Attorneys for Defendants*

# Exhibit A

2020 WL 634036
Only the Westlaw citation is currently available.
This case was not selected for publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial
decisions issued on or after Jan. 1, 2007. See also U.S.Ct. of App. 6th Cir. Rule 32.1.
United States Court of Appeals, Sixth Circuit.

JUNHE QIU, Plaintiff-Appellant,
v.
UNIVERSITY OF CINCINNATI, DR. NEVILLE G. PINTO, in his official capacity as President of
the University of Cincinnati, and DR. C. CATHERINE LOSADA, individually and in her official
capacity as Associate Professor of Music at the University of Cincinnati, Defendants-Appellees.

No. 19-3630
|
February 11, 2020

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

BEFORE: DAUGHTREY, KETHLEDGE, and THAPAR, Circuit Judges.

**Opinion**

MARTHA CRAIG DAUGHTREY, Circuit Judge.

 **\*1** Junhe Qiu, a Chinese citizen, entered the United States on an F-1 visa to study violin performance at the University of Cincinnati's prestigious College-Conservatory of Music (CCM). Defendant Catherine Losada, an associate professor of music at CCM, three times accused Qiu of cheating on homework assignments, leading the university to expel Qiu from the school in accordance with the provisions of the university's code of student conduct. Qiu then filed suit against the university, Losada, and defendant Neville G. Pinto, then the president of the university, alleging violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213; the Rehabilitation Act, 42 U.S.C. § 794; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2000e-17; 42 U.S.C. § 1981; and various statutory and tort provisions of Ohio law. The defendants moved to dismiss the complaint in its entirety, and the district court granted that motion in large part but declined to exercise supplemental jurisdiction over an Ohio tort-law claim.

Qiu now appeals, arguing that he stated claims for relief that are plausible on their face and thus are not subject to dismissal at this early stage of the litigation. We disagree and affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Because this appeal comes to us from a ruling on the defendants' motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, we limit our review "to the sufficiency of the allegations in the complaint." *Miller v. Currie*, 50 F.3d 373, 375 (6th Cir. 1995). Moreover, we must accept those allegations as true "even if doubtful in fact" and even if those allegations are contradicted by other evidence later introduced during the litigation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nevertheless, even when reviewing a Rule 12(b)(6) disposition, we may consider information contained in materials outside the pleadings as long as "those matters simply filled in the contours and details of the plaintiff's complaint, and added nothing new." *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).[1]

According to the facts alleged in his complaint, Qiu enrolled at the University of Cincinnati in August 2016 as a freshman seeking to major in violin performance. Three months later, while rehearsing with other students in the CCM orchestra rehearsal room, Qiu collapsed and was taken to the university hospital where he "was diagnosed with syncope and collapse from a heart defect." As a result, doctors surgically implanted in Qiu's chest a device to monitor his heart rhythms.

**\*2** During the Spring 2017 semester, Qiu enrolled in Professor Losada's music theory class, a required course for music majors. In March of that semester, Losada accused Qiu of academic dishonesty for submitting a homework assignment completed after referring to the instructor's manual. According to Losada, Qiu's answer was uncannily similar to the material in the manual that the students were not allowed to access. Even though Qiu claimed that he "never had the instructor manual," he confessed to the accusation, allegedly because he "was afraid of the power and vindictiveness of Defendant Losada."

A few weeks later, the scenario repeated itself with Losada again accusing Qiu of using the instructor's manual to complete another homework assignment and Qiu initially denying any wrongdoing. This time, however, Qiu requested review of the allegation by a college hearing panel. During that hearing, Qiu disclaimed any academic dishonesty, but Losada informed the panel that she stood by her accusation because Qiu's homework "answer was much too similar to the one in her instructor manual." The panel credited Losada's version of events, resulting in Qiu receiving a failing mark in the course.

Qiu returned to China during the fall of 2017 to receive medical treatment for chronic problems he experienced with his left shoulder and arm. Upon re-enrolling at the University of Cincinnati in the spring of 2018, he again signed up for Losada's class on music theory. As had happened previously, however, Losada again accused Qiu of accessing prohibited materials to complete an assignment, and Qiu again requested a hearing in order to clear his record. Qiu was informed that the hearing would convene on April 20, 2018, but Qiu failed to appear at the appointed time and place. According to Qiu, his absence was due to chest pains and syncope that prevented him from getting out of bed or even mustering "the strength to inform the Dean or anyone else that he was very sick."

In Qiu's absence, the hearing panel concluded that sufficient evidence had been presented to find the student guilty of a third instance of academic dishonesty, a violation requiring expulsion from the university. Qui appealed his dismissal, but not until weeks later did he request a new hearing as an accommodation for an alleged medical disability. That request was denied, however, because it was not made until after Qiu's appeals had been exhausted and after he had been dismissed from the university.

Because the continued validity of Qiu's F-1 visa depended upon his enrollment in a university degree program, he filed suit in federal district court in another effort to have the expulsion decision reversed. In his complaint, Qiu advanced the following seven causes of action against the University of Cincinnati, the university president, and Losada: (1) "violation of [Title II of the] Americans with Disabilities Act"; (2) "violation of Rehabilitation Act"; (3) "national origin, race, color discrimination"; (4) "hostile environment"; (5) "retaliation"; (6) "intentional infliction of physical pain and emotional distress"; and (7) "denial of due process." The complaint requested injunctive relief that would allow Qiu to register and attend classes at CCM, compensatory damages from all defendants "in excess of One Hundred Thousand Dollars ($100,000.00)," punitive damages, attorney's fees, costs, and any other appropriate relief. The defendants filed a motion to dismiss all of Qiu's causes of action for failure to state claims upon which relief could be granted. The district court granted the motion in large part, declined to exercise supplemental jurisdiction over the state-law claim of intentional infliction of physical pain and emotional distress, and closed the case on the court's docket. Qiu now appeals from that judgment.[2]

## II. DISCUSSION

### A. Standard of Review

**\*3** We review *de novo* a grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Swanigan v. FCA US LLC*, 938 F.3d 779, 783 (6th Cir. 2019). In conducting such a review, we recognize that Federal Rule of Civil Procedure 8(a)

(2)'s liberalized pleading standard requires that a complaint contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Nevertheless, even though a complaint need not contain "detailed factual allegations," *Twombly*, 550 U.S. at 555, it still must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In other words, we need not accept as true legal conclusions masquerading as allegations of fact or give determinative weight to claims raising only a sheer possibility that the defendants acted unlawfully. *Id.* Instead, we will find that "[a] claim has facial plausibility [only] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). With these guidelines in mind, we address each of Qiu's allegations against each of the three named defendants.

**B. Alleged Violations of the ADA and Rehabilitation Act**

In the first and second causes of action listed in his complaint, Qiu alleges that the defendants violated the ADA and the Rehabilitation Act by failing to accommodate his medical condition. Specifically, he argues that the defendants should have scheduled a new hearing on the allegations of academic misconduct as an accommodation for the heart condition that he insists prevented him from attending the original April 20, 2018, hearing. We conclude that the district court properly dismissed these claims against the defendants.

In relevant part, the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Given the similarities in the two statutory provisions, we long have merged our analyses under the ADA and Rehabilitation Act. *See, e.g.*, *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010). Thus, to establish his claim under either act, Qiu "must show that (1) [ ]he is handicapped or disabled as defined in each statute, (2) [ ]he is 'otherwise qualified' to continue in the program, and (3) [ ]he was dismissed from the program on the basis of [his] handicap or disability." *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998) (citations and footnotes omitted). A plaintiff will be considered to be "otherwise qualified" to participate in a university program if he "can meet the 'necessary' requirements of the program" "with 'reasonable accommodation.'" *Sandison v. Mich. High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1034 (6th Cir. 1995).

The district court appropriately dismissed Qiu's ADA and Rehabilitation Act claims against the university and against Pinto and Losada in their official capacities because the plaintiff could not show that his removal from the university was based upon his purported "handicap or disability." In fact, nothing in Qiu's complaint gives any indication that the dismissal was for any reason other than Qiu's repeated incidents of alleged academic dishonesty.

Furthermore, even if we were to conclude somehow that the adverse action taken against Qiu was based on his medical condition, we still would find that the plaintiff failed to state a claim under the ADA and the Rehabilitation Act because Qiu's proposed accommodation was not reasonable under these circumstances. Qiu alleges that he failed to appear at the April 20, 2018, disciplinary hearing because he was incapacitated due to his heart condition. At this stage of the litigation, we must, of course, accept that fact as true. By Qiu's own admission, however, he did not request any accommodation for that medical disability until well *after* May 22, 2018—the date on which the decision to dismiss him from the university was made. As explained by the district court in its ruling on the defendants' motion to dismiss, "The accommodation that plaintiff seeks, i.e., reinstatement and the provision of a new disciplinary hearing, amounts to retroactive leniency, not a reasonable accommodation, because plaintiff had already been dismissed from the university when he advised UC officials that his heart condition caused him to miss the disciplinary hearing." Indeed, we previously have held that a "College was not obligated to provide accommodation until plaintiff had ... requested specific accommodation." *Kaltenberger*, 162 F.3d at 437. Because the accommodation that Qiu

sought was not requested until after his dismissal from the university, the district court did not err in dismissing the ADA and Rehabilitation Act claims against the University of Cincinnati and Pinto and Losada in their official capacities.

**\*4** In challenging the dismissal of his ADA and Rehabilitation Act claims, Qiu relies heavily on the case of *Hostettler v. College of Wooster*, 895 F.3d 844 (6th Cir. 2018), a case standing for the unsurprising proposition that reasonable accommodations must be extended to individuals suffering from disabilities. *Hostettler*, however, was brought pursuant to the provisions of Title I of the ADA, which deals with disability discrimination in employment, rather than pursuant to Title II's protections accorded in the provision of public services. Moreover, *Hostettler* involved a situation in which the plaintiff *did* request job accommodations in a timely manner, was granted appropriate accommodations, and then had the accommodations rescinded. *Hostettler*, 895 F.3d at 849–51. Unlike Hostettler, Qiu did not request accommodation for his alleged disability until *after* the challenged adverse action had been completed. *Hostettler* thus does little to bolster Qiu's position on appeal.

Furthermore, the district court properly dismissed the ADA and Rehabilitation Act claims against Losada in her individual capacity. As we have held in numerous cases, "the proper defendant under a Title II claim is the public entity or an official acting in h[er] official capacity. ... Title II of the ADA does not, however, provide for suit against a public official acting in h[er] individual capacity." *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). *See also Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 808 n.1 (6th Cir. 1999); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404 n.6 (6th Cir. 1997).

### C. Alleged Violations of Due Process

Qiu also asserts that the defendants violated his Fourteenth Amendment right to due process by denying him "a full and fair hearing to challenge Defendant Losada's accusation of academic cheating/dishonesty which includes his right as the individual involved to be present at the college hearing panel (CHP)." As a remedy for that alleged violation, Qiu seeks both injunctive and monetary relief.

Qiu's claims for monetary damages against the University of Cincinnati and against Pinto and Losada in their official capacities are barred by the Eleventh Amendment to the United States Constitution. That amendment expressly provides that federal courts have no jurisdiction over "any suit in law or equity" filed "against one of the United States." U.S. Const. amend. XI. Because a public university like the University of Cincinnati is an arm of the state, it is entitled to Eleventh Amendment immunity from suit for compensatory and punitive damages. *See, e.g.*, *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000). Likewise, the due process claims against Pinto and Losada in their official capacities seeking monetary damages must be dismissed. As the United States Supreme Court made clear in *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (Citations omitted.)

Although federal-court claims for *retroactive* relief against a state, an arm of the state, or a state official acting in her or his official capacity are barred by the Eleventh Amendment, "a federal court may enjoin a 'state official' from violating federal law" *prospectively*. *Lawson v. Shelby Cty.*, 211 F.3d 331, 335 (6th Cir. 2000) (citing *Ex parte Young*, 209 U.S. 123 (1908)). As we explained in *Lawson*:

> The idea behind this exception is that a suit against a state officer is not a suit against the state when the remedy sought is an injunction against an illegal action, for an officer is not acting on behalf of the state when he acts illegally. In effect, the illegal act strips the state officer of his character as an agent of the state for the purposes of the Eleventh Amendment.

**\*5** *Id.*

Even so, Qiu has failed to state a claim against the state defendants upon which relief can be granted. Without question, "[s]tate universities must afford students minimum due process protections before issuing significant disciplinary decisions." *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017). "[U]niversities must 'at least' provide notice of the charges, an explanation of the evidence against the student, and *an opportunity* to present his side of the story before an unbiased decision maker." *Id.* at 399–400 (citations omitted) (emphasis added). *See also Endres v. Ne. Ohio Med. Univ.*, 938 F.3d 281, 301 (6th Cir. 2019). Qiu contends, citing both *University of Cincinnati* and *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018), that his due process rights have been violated in this matter because he was denied the chance to cross-examine his accuser. That assertion, however, fails to take into account the facts of this case.

Even if we were to hold explicitly that the Due Process Clause mandates an opportunity to cross-examine a professor alleging academic dishonesty, Qiu's claims against the university and against Pinto and Losada in their official capacities cannot survive the defendants' motion to dismiss. As we previously noted, the due process claim in Qiu's complaint contains no allegation that he was denied the opportunity to contest Losada's charges against him. Instead, he alleged simply that he had "a right to a full and fair hearing to challenge Defendant Losada's accusation of academic cheating/dishonesty which includes his right as the individual involved to be present at the college hearing panel (CHP)." Qiu admitted in his complaint, however, that he was aware of the charge against him, the substance of that charge, and that his request for a hearing had been granted. Qiu thus admits that he received exactly the due process he requested. That Qiu did not appear at the scheduled hearing, that he did not inform anyone of the reason for his absence until weeks later, and that he did not request a new hearing until after his dismissal from the university do not alter that fact. Because Qiu failed to appear at the scheduled hearing, he and we cannot know whether a request for cross-examination of Losada would have been denied. Because a motion to dismiss cannot be defeated by mere speculation on the part of a plaintiff, the district court did not err in dismissing the due process claims against the state entities. *See Iqbal*, 556 U.S. at 678 (Courts need not give determinative weight to claims raising only "a sheer possibility that a defendant has acted unlawfully.").

Likewise, the district court properly dismissed the due process claim against Losada in her individual capacity. Losada explained to Qiu the reason for accusing him of academic dishonesty. Furthermore, Qiu makes no allegation, credible or otherwise, that Losada herself played any role in developing the procedures for the school's disciplinary hearings, in determining that the hearing should be conducted in Qiu's absence, in ruling upon the allegation of academic dishonesty, or in denying his request for a new hearing. Qiu thus has failed to state a due process claim against Losada in her individual capacity upon which relief could be granted.

**D. Alleged Violation of 42 U.S.C. § 1981**

**\*6** Qiu also contends that the actions of the defendants that resulted in his dismissal from the university constituted discrimination based upon Qiu's national origin, race, and color in violation of the protections afforded by 42 U.S.C. § 1981. The relevant provisions of § 1981 "prohibit[ ] racial discrimination in the making and enforcement of contracts." *McCormick v. Miami Univ.*, 693 F.3d 654, 659 (6th Cir. 2012). And because "Ohio treats the relationship between a university and its students as 'contractual in nature,' " *Al-Dabagh v. Case W. Reserve Univ.*, 777 F.3d 355, 359 (6th Cir. 2015) (citing *Behrend v. State*, 379 N.E.2d 617, 620 (Ohio Ct. App. 1977)), Qiu's claim that he suffered from discriminatory treatment at the hands of the defendants can, in theory, be remedied through a § 1981 action.

However, any § 1981 claim for money damages against the defendants in their official capacities is barred by the Eleventh Amendment for the reasons discussed in section II.C. above. Moreover, Qiu also cannot pursue a § 1981 money-damages claim against Losada in her individual capacity in this case. As we recognized in *McCormick*, 42 U.S.C. "§ 1983 is the exclusive mechanism to vindicate violations of § 1981 by an individual state actor acting in h[er] individual capacity." *McCormick*, 693 F.3d at 661 (footnote omitted).

Even though the Eleventh Amendment does not bar suits for prospective injunctive relief against state officials and entities, *id.* at 662, Qiu's complaint failed to allege the elements necessary to establish his § 1981 claim. "[W]e review § 1981 claims under the same standard as Title VII claims." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 512 (6th Cir. 2009). Thus, we have

held that a plaintiff can establish a *prima facie* case of discrimination "in the context of [a] contractual relationship with" a university by alleging that:

> (1) [the plaintiff] is a member of a protected class; (2) [the plaintiff] suffered an adverse action at the hands of the defendants in [the plaintiff's] pursuit of [the plaintiff's] education; (3) [the plaintiff] was qualified to continue in [the plaintiff's] pursuit of [the plaintiff's] education; and (4) [the plaintiff] was treated differently from similarly situated students who are not members of the protected class.

*Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003).

Qiu asserts that the defendants discriminated against him because he is Chinese. With no dispute as to Qiu's national origin or to the fact that expulsion from the university is an adverse action, Qiu sufficiently has alleged the first two elements of a § 1981 action. But, even if we were to conclude that he was qualified to continue in his educational pursuits, there can be no doubt that Qiu's complaint fails to allege that he was treated differently from non-Chinese students. His complaint indicates that at least two other students of Asian origin were accused of academic dishonesty by Losada. He does not, however, include any allegation that non-Asian students have been treated differently by Losada or by the other defendants after committing similar indiscretions, or after being found guilty by a college hearing panel of three instances of academic dishonesty. Because Qiu failed to allege sufficient facts from which even a plausible claim of a § 1981 violation could be inferred, the district court did not err in dismissing that portion of Qiu's complaint.

**E. Alleged Violation of Title VII and Ohio Revised Code Section 4112.02**
Qiu's complaint, in its third cause of action, alleges that "Defendants' conduct constitutes prohibited or unlawful disparate treatment on the basis of national race, and color in violation of, *inter alia*, 42 U.S.C. § 2000(e) [sic] et seq., and ... under corresponding R.C. § 4112.02." Title VII, however, was enacted to prohibit discrimination in employment practices. Because Qiu was not an employee of the university, nor were defendants Pinto or Losada university employers, the district court properly dismissed the Title VII claim against all defendants.

**\*7** Furthermore, the claims against the defendants under Ohio Revised Code § 4112.02 properly were dismissed because the federal courts have no jurisdiction over those causes of action. To the extent that the State of Ohio—and, thus, its agencies and its employees acting in their official capacities—has waived its sovereign immunity from liability for violations of state law, it has consented to be sued only in Ohio's court of claims. *See* Ohio Rev. Code § 2743.02(A)(1).

Similarly, the federal courts have no jurisdiction over the state-law claims against Losada in her individual capacity. Ohio Revised Code section 2743.02(F) provides that claims against state officers or employees for acts "manifestly outside the scope of the officer's or employee's employment or official responsibilities" also must be filed first in the court of claims to determine "whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action. *See also McCormick*, 693 F.3d at 664–65.

**F. Alleged Retaliation for Exercise of Protected Activity**
In a final issue raised by Qiu on appeal, he submits that his complaint sufficiently alleged improper retaliation by the defendants for his exercise of protected activity. In the complaint, Qiu stated that the defendants dismissed him from the university in retaliation for "challenging Defendant Losada['s] accusations of homework cheating using the instructor's manual in March 2017 and requesting a college panel hearing." The complaint's allegation of retaliation fails, however, to indicate whether the cause of action arises under the ADA or under § 1981. Only in his appellate brief does Qiu make the oblique reference that

"the § 1981 action that includes the allegation of retaliation ... cannot be dismissed." Appellant's Br. at 25. We thus limit our examination of the sufficiency of the retaliation claim to case law relevant to § 1981 jurisprudence.

To survive dismissal of a retaliation claim brought pursuant to 42 U.S.C. § 1981, a plaintiff "must allege that (1) she engaged in protected activity; (2) her exercise of that activity was known by the Defendant; (3) the Defendant thereafter took an action that was materially adverse to her; and (4) there was a causal connection between the protected activity and the materially adverse action." *Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019). Here, Qiu appears to allege that the protected activity in which he engaged was challenging Losada's accusation of academic dishonesty by requesting a hearing before the college hearing panel. He makes no allegation, however, that the adverse action taken against him (dismissal from the university) was related to his request for a hearing rather than the more obvious reason—being found guilty of cheating on three occasions. Because Qiu failed to allege a plausible cause of action for retaliation under § 1981, the district court did not err in dismissing this claim as well.

### III. CONCLUSION

For the reasons set out above, we conclude that Qiu has failed to allege any cause of action that is plausible on its face. Consequently, we AFFIRM the judgment of the district court.

**All Citations**

--- Fed.Appx. ----, 2020 WL 634036

Footnotes

1   The district court docket items designated by the parties for inclusion in the appellate record include evidence offered both in support of and in opposition to a subsequent motion for a temporary restraining order filed by Qiu. To the extent that such evidence does not "fill in" details of Qiu's complaint, we do not consider it in evaluating the sufficiency of the claims asserted in Qiu's original filing.

2   In his appellate brief, Qiu does not argue that the district court's ruling on his causes of action for creation of a hostile environment and for intentional infliction of physical pain or emotional distress were erroneous. "[F]ailure to raise an argument in [an] appellate brief constitutes a waiver of the argument on appeal." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005) (citation omitted). Consequently, we do not address those claims in this opinion.

**End of Document**                                           © 2020 Thomson Reuters. No claim to original U.S. Government Works.

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2020, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to:

Deborah L. Gordon
dgordon@deborahgordonlaw.com

/s/ *Joshua W. B. Richards*
SAUL EWING ARNSTEIN & LEHR LLP
Joshua W. B. Richards
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102
(215) 972-7737
joshua.richards@saul.com

*Attorney for Defendants*