UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JOHN DOE**, *an individual*,

     Plaintiff,

vs.

                            Case No.: 18-cv-11776
                            Hon.  Arthur J. Tarnow

**UNIVERSITY OF MICHIGAN** et al.,     Mag.  Elizabeth A. Stafford

     Defendants.

---

**DEBORAH GORDON LAW**
**Deborah L. Gordon (P27058)**
**Elizabeth A. Marzotto Taylor (P82061)**
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

**MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.**
**Brian M. Schwartz (P69018)**
Attorney for Defendants
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
(313) 963-6420
schwartzb@millercanfield.com

**SAUL EWING ARNSTEIN & LEHR LLP**
**Joshua W.B. Richards**
**Amy L. Piccola**
Attorneys for Defendants
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102
(215) 972-7737
joshua.richards@saul.com
amy.piccola@saul.com

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS [ECF123]**

# TABLE OF CONTENTS

Index of Authorities .......................................................................................................ii

I.      INTRODUCTION.................................................................................................1

II.     RELEVANT PROCEDURAL HISTORY ........................................................6

III.    FACTS.................................................................................................................17

IV.     LEGAL STANDARD ........................................................................................22

V.      ARGUMENT ......................................................................................................24

        1.      Plaintiff did not intentionally or materially misrepresent his academic
                schedule ....................................................................................................24

        2.      Neither Plaintiff nor his counsel acted in bad faith .............................29

VI.     CONCLUSION...................................................................................................32

CERTIFICATE OF SERVICE .......................................................................................32

# INDEX OF AUTHORITIES

## Cases

*Chambers v. NASCO, Inc.,*
   501 U.S. 32 (1991) ...............................................................23

*Doe v. Baum,*
   903 F.3d 575 (6th Cir. 2018)................................... 7, 8, 9, 11

*Doe v. Univ. of Cincinnati,*
   872 F.3d 393 (6th Cir. 2017)....................................... 4, 6, 11

*First Bank of Marietta v. Hartford Underwriters Ins. Co.,*
   307 F.3d 501 (6th Cir. 2002)........................................ 23, 29

*In re Ruben,*
825 F.2d 977 (6th Cir. 1987) ...................................................23

*Metz v. Unizan Bank,*
   655 F.3d 485 (6th Cir. 2011)..................................................23

*Shimman v. Int'l Union of Operating Engineers, Local 18,*
   744 F.2d 1226 (6th Cir. 1984)...............................................23

*United States v. Wallace,*
   964 F.2d 1214 (D.C.Cir. 1992)..............................................31

*Williamson v. Recovery Limited Partnership,*
826 F.3d 297 (6th Cir. 2016) .................................................23

## Other Authorities

42 U.S.C. § 1983 .....................................................................6

## I.     INTRODUCTION

Defendants' current Motion for Sanctions is the culmination of a fallacious legal strategy based on a concerted decision to defy Sixth Circuit dictates. The motion was interposed recklessly and for an improper purpose. Defendants permanently cancelled the misconduct hearing at issue on April 16, 2020, and this case is now over. Nonetheless, Defendants have determined that they will expend State resources in an attempt to lash out at Plaintiff over his homework and exam schedule. Defendants appear incensed that Plaintiff sought a brief delay of the Office of Student Conduct Resolution (OSCR) hearing unilaterally scheduled for April 22, 2020, eight days before the conclusion of his final academic semester, and when no relief was forthcoming, filed a motion for injunctive relief.

In his request to OSCR for a delay and in his motion for injunctive relief Plaintiff documented his academic schedule for the period April 13 through April 30, 2020.  ECF 98-1. He submitted the schedule to Title IX Coordinator Elizabeth Seney on April 6, 2020. Defendants now falsely accuse Plaintiff of  submitting a document "replete with misrepresentations", "bad faith conduct", "misleading the court to try to delay a hearing…", "misrepresenting facts",  claiming "he did not simply make up a date or two – he represented more than a half dozen course requirements that *did not exist* as of the date he filed his motion…", and making statements that are "provably false" when he knew "that any inquiry would expose

1

him."  ECF 123, Page ID 3609-11, 3614, 3616, 3618.  They state that Doe's "sanctionable" conduct is "particularly offensive" because he asked for "anonymity for fear his good name would be tarnished by allegations of poor character" and because he "made credibility a central issue." *Id.* at Page ID 3618. These are extraordinarily damaging things to say about any person, much less a 24-year-old student at their university, who has successfully completed six years of study, obtained two degrees at the cost of approximately $400,000 and is about to move forward with his life.

Defendants' accusations are false.  The affidavit they offer in support is replete with incorrect statements of fact and relies on outdated information.  The affiant does not identify where she obtained her information, proving the unreliability of the affidavit and the motion. Once the University terminated live classes and exams, the pre-set academic schedule was changed by faculty as necessary to deal with the new circumstances.  Multiple changes were made to Plaintiff's schedule after the March 25, 2020 school closure.  As set forth below, all of the information he provided to the Title IX office on April 6, 2020 and to this Court on April 10, 2020 in the motion for injunctive relief was accurate.  Defendants seek attorney fees for a Response to the motion they never filed; nor did they attach the proposed response to this motion. Plaintiff acted in good faith. He presented his schedule accurately, as he believed it to be, and provided Defendants with a letter

from his therapist in an attempt to delay the hearing until after completion of the academic semester.  In spite of the pressure he was under, the University provided him with no relief.

Defense counsel was forewarned about the motion for sanctions he was about to file.  On May 1, 2020 he sought concurrence in the instant motion, stating that it would be filed at 2:00 p.m.  Plaintiff's counsel responded:

> "Having reviewed your papers I believe you are incorrect. <u>I can obtain information from my client that will assist you,</u> but will not be able to do so by your 2:00 cut off.  **Exhibit L** (emphasis added).

Defendants and their counsel ignored this offer and filed their motion at 2:08 p.m. ECF 123. They now seek sanctions for a Response they never filed because their own unilateral actions mooted the underlying Motion.

In addition to accusing Plaintiff of lying to the Court, Defendants made further false accusations, including that "Doe's strategy has consistently been obstruction and delay," resulting in "the ultimate windfall when claimant, who watched powerless for nearly two years as the University was enjoined from completing its investigation into her allegations of rape … would no longer participate in the hearing process…" ECF 123, Page ID 3610.

Defendants do not cite to the record in support of their statement as to "obstruction and delay" by Plaintiff because there is no such record. The University was "enjoined" because it refused to comply with the law and then sought a stay.

Plaintiff never received any "windfall". He sought to proceed with a due process hearing over two years ago and was anxious to clear his name. On March 23, 2020, this Court held that the 2018 Policy Defendants sought to apply to Plaintiff was indeed unconstitutional; Plaintiff was correct all along. Nor did the Claimant "watch[] powerless for nearly two years"— she successfully completed her education. Any delay of her ability to have a hearing was due solely to Defendants' continuing refusal to follow the law.

This case should never have been necessary. Defendants flaunted the law of the Sixth Circuit at least since August 1, 2017, the date *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017) was decided. In March 2018, *eight months* after *Cincinnati,* Defendants sought to adjudicate a sexual misconduct complaint against Plaintiff using a policy that clearly did not provide the required due process.

On July 6, 2018, this Court granted in part Plaintiff's motion for a temporary restraining order. ECF 30. It ordered that the University provide Plaintiff with a hearing, and citing to *Cincinnati,* further ordered that that "Plaintiff may question Claimant through the RO, RC, or Student Resolution Panel," only. *Id.* at Page ID 744. The case should have ended there. The University should have swiftly adjudicated the OIE complaint pursuant to the Court's order. The entire OIE matter would have been completed by the fall semester of 2018.

Instead, on July 25, 2018, Defendants filed a notice of an appeal and requested a stay of the entire matter, including the underlying administrative student conduct case. ECF 32, 33. They argued that without a stay, they would be "irreparably harmed" because they would be forced to forego adherence to their "written policies" *Id*. at Page ID 828. Plaintiff did not concur, arguing that time was of the essence in proceeding with the hearing. ECF 38, Page ID 1089. The stay was granted. ECF 41.

Nine months were wasted at the Sixth Circuit before the remand in April 2019. Thereafter, Defendants continued to dither, arguing that they should be allowed to proceed with the OIE hearing without a ruling from the Court as to due process. The Court rejected these arguments. ECF 78, 81.

As of January, 2020, $1.2 million has been spent by the University on this case. It appears that the current amount is at least $1.5 million and counting. Plaintiff presently has a motion for attorney fees pending seeking less than $300,000. ECF. 95. Defendants oppose his motion, characterizing the amount sought as "excessive," and arguing that Plaintiff "obtained only modest, technical relief." ECF 113, Page ID 2983. Defendants' March 25, 2020 appeal of the Court's order granting Plaintiff's Motion for Partial Summary Judgment is now clearly moot, as there is no remaining case or controversy, but Defendants refuse to dismiss it, requiring Plaintiff to file a

motion with the Sixth Circuit. *See* Case 20-1293, Doc. 14.  The State of Michigan has been ill-served by Defendants' conduct and the handling of this case.

Defendants motion for sanctions should be denied. It has no merit and is a gratuitous attack on a student who sought only to obtain constitutional protections.

## II.    RELEVANT PROCEDURAL HISTORY

### Plaintiff Attempts to Proceed with a Due Process Hearing; Defendants Waste Time Attempting to Elude Sixth Circuit Dictates

Prior to this litigation being filed, on May 29, 2018, Plaintiff sought to clear his name at a due process hearing.  Citing to *Cincinnati*, decided ten months earlier, his counsel made such a request to Vice President Timothy Lynch and Title IX Director Pamela Heatlie.  **Exhibit M.**

In June 2018, Plaintiff brought a motion for injunctive relief against Defendants pursuant to 42 U.S.C. § 1983 for due process violations under the Fourteenth Amendment to the United States Constitution. On July 6, 2018, this Court granted in part and denied in part Plaintiff's motion for a temporary restraining order.  ECF 30.  It ordered that the University provide Plaintiff with a hearing, and citing to *Cincinnati*, further ordered that that "Plaintiff may question Claimant through the RO, RC, or Student Resolution Panel," only. *Id.* at Page ID 744.  The case should have ended here. The University should have swiftly adjudicated the OIE complaint pursuant to the Court's order. The entire OIE matter would have been completed by the fall semester of 2018.

6

Instead, on July 25, 2018, Defendants filed a notice of an appeal and requested a stay of the entire matter, including the underlying administrative student conduct case. ECF 32, 33. They argued that without a stay, they would be " irreparably harmed" because "adhering to the court's order would set an irreversible internal University precedent departing from the University's written policies governing claims of sexual misconduct, and, "any alleged harm to plaintiff is outweighed by the harm to the University …" *Id*. at Page ID  828 (emphasis added).

Plaintiff did not concur, predicting precisely what came to pass:

> "Plaintiff would be substantially harmed by a stay of the preliminary injunction. His eligibility to continue his graduate education could be curtailed or even destroyed by Defendants finding that he sexually assaulted another student, and any resultant sanctions. It is also undeniably in the Claimant's best interest to proceed immediately under the Court's order, before the integrity of the adjudicatory process is negatively impacted by fading memories, and witnesses becoming unavailable or unwilling to participate."

ECF 38, Page ID 1089 (emphasis added). The stay was granted.  ECF 41.

Six days after Defendants' filed their motion for stay, *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) was argued in the Sixth Circuit Court of Appeals.  Judge Julia Gibbons took note on the record of Defendants' "defiance":

> "I can't get past the University's indifference, defiance, or whatever you want to call it to our Circuit precedent and the basic principles of due process." See Oral Argument Before Sixth Circuit Court of Appeals in Case No. 17-2213, John        Doe        v.        David        Baum,        et        al., http://www.opn.ca6.uscourts.gov/internet/court_audio/aud1.php,   at   29:06-29:26 (August 1, 2018).

The *Baum* oral argument provided ample evidence that Defendants should re-assess

their position and allow the OIE hearing to proceed.  They did not do so.

In September 2018, Plaintiff began classes at the University to obtain a

master's degree in engineering. The Claimant also returned to school for her senior

year. Both were scheduled to graduate eight months later, in late April 2020.

On September 7, 2018, this Court issued its opinion in Baum, holding that:

"Today we reiterate that… if a public university has to choose between
competing narratives to resolve a case, the university must give the accused
student or his agent an opportunity to cross-examine the accuser and the
adverse witnesses in the presence of a neutral fact-finder." 903 F.3d at 587
(emphasis added).

On September 9, 2018, the University filed an *En Banc* Petition with the Sixth

Circuit in Baum. *See Case No.* 17-2213, RE 49-1. There they admitted that,

"Appellees are no longer contesting whether the investigative model they have used

to date is sufficient, and understand that they must provide students in Title IX cases

with a live hearing including cross-examination." *Id.* at p. 8. In spite of this

admission, at that very moment they were still using their 2018 Policy, and continued

to do so for the next four months (the "Interim Policy" was issued on January 9,

2019). Defendants' *En Banc* Petition implored the Court not to require direct

examination, urging that "[p]revious decisions of this Court (and other courts) have

made clear that cross-examination in the form of written questions submitted

through a hearing officer is constitutionally sufficient…" *Id.* at p. 5. Notably, cross-

examination in the form of questions "submitted through the hearing officer" was exactly what this Court ordered them to provide Plaintiff in this case on July 6, 2018 (ECF 30 Page ID 743), and what they were, at that very moment, appealing.

After *Baum*, the University President voiced his dissatisfaction with the ruling:

> "The court ruled that a public university must give an accused student an in-person hearing when credibility is at issue in sexual misconduct cases and provide the opportunity for the accused student or their adviser to cross-examine the accuser and witnesses…but U-M respectfully submits that the Sixth Circuit got it wrong. In fact, even one of the three judges on the panel dissented." Mark Schlissel, University President, January 29, 2019 Letter to the Community.

ECF 47, Page ID 1341-42. Thereafter, Defendants persisted with their Appeal, needlessly allowing more time to pass. While Defendants dithered, the OIE matter remained stayed, at their request.

Eight months after Defendants requested the Stay, on April 10, 2019, the Sixth Circuit vacated the Court's TRO, and remanded the case for reconsideration in light of *Doe v. Baum* and the University's new 2019 Interim Policy ("Interim Policy") issued on January 9, 2019. *See Case Nos*. 18-1870, 18-1903, RE 35-1.

On June 5, 2019, Defendants filed a doomed motion to dismiss, rehashing their earlier arguments (which the Sixth Circuit declined to address) that Plaintiff's claims were not ripe and that he had no standing.  ECF 49.  This motion was another concerted decision by Defendants to significantly delay this case, and by extension,

the misconduct hearing.  The University was far more concerned with preventing this Court from issuing an order compelling due process than ensuring the Claimant received a timely hearing.

The University Director of Public Affairs and Internal Communications publicly explained Defendants' motivation to continue this needless legal battle:

> "Fitzgerald said the university's right to control its own policies is worth fighting for. 'We must retain the authority over our policies to do that in the best way we know how and we're willing to fight in court to maintain that authority,' he said. At the University of Michigan, 'we fight for our principles because it's the right thing to do and that means defending policies designed to protect the needs and rights of all students and standing up when a judge refuses to follow the law.'"

Gus Burns, UM Sexual Misconduct Policy Lawsuit has Cost $648,380 in legal fees so far, MLIVE (July 12, 2019), https://www.mlive.com/news/2019/07/um-sexual-misconduct-policy-lawsuit-has-cost-648380-in-legal-fees-so-far.html.

Before filing his June 10, 2019, Motion for Partial Summary Judgment (ECF 53), Plaintiff sought Defendants' concurrence in a simple order stating that the 2018 Policy applied to Plaintiff was unconstitutional; enjoining Defendants against further use of the 2018 Policy; and setting forth that Defendants would provide Plaintiff a live hearing with cross-examination. The University refused to concur in such relief, which would have permitted them to immediately proceed against Plaintiff. Response to Emergency Motion for Stay, ECF 79-1.

A motion hearing on Defendants' motion to dismiss and Plaintiff's motion for partial summary judgment was set for November 21, 2019. ECF 77. On October 21, 2019, Defendants filed a frivolous Emergency Motion for Stay of Motion Hearing (ECF 78) seeking to stay the entire case to give the University the chance to "moot" Plaintiff's due process claim. *Id.* at Page ID 2390. This Court denied Defendants' request for a stay, as it could not allow Defendants to proceed against Plaintiff before deciding this matter as the Sixth Circuit directed. ECF 81.

On March 23, 2020, this Court granted Plaintiff's Motion for Partial Summary Judgment. The Court held that Plaintiff was entitled to summary judgment as a matter of law on his due process claim; the 2018 Policy was unconstitutional, as were aspects of the 2019 Interim Policy; due process rudiments would be required at the eventual hearing; and also denied Defendants' Motion to Dismiss as to the due process issue. ECF 90, Page ID 2575, 2585, 2588, 2592, 2603-04. The Court noted:

> "From its inception to the University's appeal in Baum, the 2018 Policy was in violation of Circuit precedent. Five months before publishing its 2018 Policy and likely during its drafting, the Sixth Circuit held that cross-examination was "'essential to due process'" only where the finder of fact must choose "'between believing an accuser and an accused,'" and implored universities to provide a means for decision makers "to evaluate an alleged victim's credibility." *Cincinnati*, 872 F.3d at 405-06. The Court of Appeals further emphasized that deciding the plaintiff's fate without a hearing and cross-examination was a "disturbing . . . denial of due process." *Cincinnati*, 872 F.3d at 402." *Id.* at Page ID 2591-92.

The stay on the student conduct process was lifted. Judgment was entered on March 24, 2020. ECF 91. The next day, Defendants filed notice of yet another

appeal, this time of the Court's Order granting summary judgment against them. ECF 92.

**Defendants recklessly attempt to proceed against Plaintiff.**

On March 24, 2020, Defendants notified Plaintiff that they were moving forward immediately with a sexual misconduct hearing against him, which would take place remotely in the second half of April 2020. This hearing was of the utmost consequence and would have life-long ramifications for Plaintiff.

As Defendants were well aware, their timing was disastrous for Plaintiff. As of March 12, 2020, the University had shut down all live classes and activities due to the COVID-19 pandemic and directed students to leave the campus. *See* University of Michigan, *2019 Novel Coronavirus COVID-19*, Updated March 18, 2020, https://coronavirus.umich.edu. Plaintiff drove home to California, where he attempted to resituate himself and keep up with his ongoing classes, laboratories, and final examinations remotely. The academic calendar had been set long ago: classes were scheduled to end on April 21, 2020, "study days" began April 23, 2020, and final exams would take place between April 23-30, 2020. Plaintiff's final coursework and examination schedule was extraordinarily rigorous.

On March 25, 2020, Plaintiff wrote to Defendants explaining that his April 2020 schedule was so full of coursework, research, and examinations that he could not participate in a hearing during April:

"I have permanently relocated back home to California following the University's directives urging all students to leave campus and move home given the COVID-19 crisis. According to your March 25, 2020 email, you plan to schedule the hearing during the second half of April; I am taking the most advanced electrical engineering/applied physics courses at Michigan and have classes during the week. As well, I have final exams, papers and projects due in the second half of April, and as such, I will not be available in April for a hearing as I will be deeply immersed in my studies and programming complex simulations." **Exhibit J.**

On April 6, 2020, Defendants set the hearing date for April 22, 2020. Plaintiff responded again seeking a brief delay until after April 30, including his schedule, and explaining, "I have resumed treatment based on what's been happening since your March 25 email regarding the fast-tracking of the hearing in the busiest and most critical two weeks of the semester. You will receive a letter shortly from my therapist."  ECF 98-1. **Exhibit J.** Plaintiff's therapist requested a delay until after April 30, 2020.

The University refused to delay the hearing, prompting the motion for injunction to be filed on April 10, 2020.  As of that date, the all of the information Plaintiff provided to the University and this Court was accurate, excepting the dates for Plaintiff's term papers, which he had inadvertently conflated with the due date for his Research Paper. Notably, Plaintiff was unaware of this oversight until May 15, 2020. After Plaintiff's motion was filed some of the dates of assignments were again changed by faculty. Plaintiff inadvertently neglected to advise counsel of these changes because of his hectic, rapidly-changing schedule and high stress and

13

anxiety. Defendant did not file a Response brief, and cancelled the hearing, rendering the entire issue moot.

Much of Plaintiff's schedule as of April 6, 2020 reflected changes to the original course schedules and assignments based on disruptions caused by the COVID-19 pandemic. Due to the pandemic, the hearing was to occur remotely, with the parties participating from various locations. It was clear that no one would be returning to Ann Arbor, Michigan. Defendants' non-specific, ever-shifting explanations for why the hearing could not proceed after April 30, 2020 did not make sense.  For example, in that the hearing was going to be remote, the string of excuses offered that Claimant, the witnesses, and the hearing officer were unavailable every other day but April 22, 2020 (and were unavailable after April 30) was not plausible. Furthermore, Plaintiff has information that the University only contacted witnesses regarding their availability to attend the hearing on April 13, 2020—nearly a week after an email from the University claiming that witnesses were unavailable except on April 22, 2020. **Exhibit J**. There has never been any evidence that the hearing officer had a scheduling conflict that would have prevented the hearing from taking place after May 8, 2020. Nor was there an explanation as to why another hearing officer could not be used.

Defendants also falsely stated in an April 15, 2020 email that accommodating Plaintiff's academic schedule would not allow the hearing officer sufficient time to

complete a written report of his findings. *Id.* This is demonstrably false. Defendants'
2019 Interim Policy provides that the hearing officer's opinion should be issued
within two weeks of a hearing.  ECF 47-3, Page ID 1465 ("The hearing officer will
strive to issue the written notice of hearing outcome within fourteen (14) calendar
days of the hearing."). A hearing date of May 9, 2020 or shortly thereafter would
have provided the hearing officer nearly a month.

According to Defendants' counsel, their unwillingness to schedule the hearing
after May 8 was ultimately based in large part on their desire to take specific punitive
action against Plaintiff—withholding his degree.  *Id.*

Defendants also continue to perpetuate the false notion that the Claimant's
participation at the hearing was "required." ECF 123, Page ID 3611. The 2019
Interim Policy states that, "If the University learns that the Claimant, the
Respondent, or a material witness will not attend the hearing, the Title IX
Coordinator will determine in their discretion whether the University will proceed
with the hearing." *Id.* at Page ID 1462. It also states that the participation of all
parties and witnesses is "voluntary." *Id.* at Page ID 1456 ("Claimants, Respondents,
or witnesses may choose to participate or decline to participate in the investigative
resolution process.") The University's Policy permitted the Claimant's complaint to
be adjudicated in her absence. The University made a unilateral decision not to do
so.

15

**At the Last Minute, Defendants Close the Student Conduct Case, Blaming Plaintiff and the Courts**

On April 14, 2020, the Court set a telephonic conference on the motion for injunctive relief for April 16 at 3:00 p.m.  Defendants' response to Plaintiff's motion was due by 12:00 p.m. on April 16, 2020.  Four hours before the hearing, Plaintiff received the following email from Elizabeth Seney, Senior Associate Director & Title IX Coordinator University of Michigan, permanently ending the entire OIE process and hearing:

> "I am writing to let you know that I learned this morning that the Claimant no longer wants to proceed or participate in the investigative resolution process. As a result, the University is closing the investigative resolution process. The process will be permanently closed, the hearing will not occur, and no finding will be reached with respect to the Policy. The investigative resolution will not be able to be re-opened at a later date."  **Exhibit J**.

The decision not to proceed with the OIE hearing was solely in Defendants' control. There was no requirement that the Claimant be present for a hearing. ECF 47-3, Page ID 1462 ("The University expects that both Claimant and Respondent will attend a prehearing meeting and the hearing, but neither party is required to participate in the prehearing meeting or the hearing.") Defendants had made clear to Plaintiff that the hearing was going forward on April 22, 2020 whether or not he was present, and that "the OIE is not granting a request to further delay the hearing." *Id*. Defendants cannot tenably argue that that hearing had to be cancelled; it was a unilateral choice they made.

16

On April 17, 2020, Defendants filed a "Status Report on Further District Court Proceedings" with the Sixth Circuit. *See* Case No. 20-1248, RE 22. This document includes unsupported assertions as to Claimant, Plaintiff, and the Court:

> "Yesterday morning, after Doe's latest salvo in this flurry of ever-resurrecting litigation, the Claimant—who has for nearly two years watched Doe and the district court prevent the University from completing its investigation into her allegations of rape and from conducting a hearing—informed the University that she would no longer participate in this fitful process (even if the court were to permit the hearing)…Regrettably, this ending starkly illustrates why the federal courts should not "entangl[e] themselves" with unripe claims and "interfere[]" in an ongoing process…"*Id*. at Page 3-4

This statement sums up the entirety of Defendants' position in this case: Defendants believe they should have been allowed to proceed against Plaintiff in any way they wished, regardless of the Constitution, and only if Plaintiff were expelled should he be heard to complain. As the Court explained in its decision, there is no support for this position in the law. ECF 90. Despite a well-documented record that Defendants' strategy of attempting to elude Sixth Circuit dictates delayed and multiplied these proceedings, Defendants disclaim all responsibility for their actions.

## III.   FACTS

The table below sets forth the factual explanation and evidentiary basis for Plaintiff's final coursework and examination schedule, which Defendants challenge in their motion.

17

| CLASS 1 | | |
|---|---|---|
| **ASSIGNMENT** | **EXPLANATION** | **EVIDENCE** |
| Homework due April 13, 2020 | This course originally included a requirement to complete group in-class exercises as a means to ensure participation.<br><br>Due to the COVID-19 pandemic, and the resulting switch to online classes, during the March 16, 2020 lecture, Plaintiff's professor verbally communicated that the remaining in-class exercises would now be take-home exercises ("homework"). Accordingly, Plaintiff would have take-home homework exercises due during the April 13 and 20, 2020 lectures.<br><br>To ensure continuing participation in lecture and that these exercises were being completed, Plaintiff's professor would ask each team to verbally report on their answers to the homework during the lectures in which they were due. Plaintiff and his classmates were also questioned by the Professor about their answers.<br><br>During the April 6, 2020 lecture, Plaintiff's professor verbally confirmed that this assignment would be due April 13, 2020.<br><br>Plaintiff's professor did not record the March 16, 2020 or April 6, 2020 lectures.<br><br>The Canvas course page was not updated to reflect the changes to the exercises or their due dates. | **Exhibit A**<br><br>**Exhibit I** |
| Homework due April 20, 2020 | Due to the COVID-19 pandemic, and the resulting switch to online classes, during the March 16, 2020 lecture, Plaintiff's professor verbally communicated that the | **Exhibit B**<br><br>**Exhibit I** |

| | | |
|---|---|---|
| | remaining in-class exercises would now be take-home exercises ("homework"). Accordingly, Plaintiff would have homework exercises due during the April 13 and 20, 2020 lectures.<br><br>During the April 6, 2020 lecture, Plaintiff's professor verbally confirmed that the class would be responsible for a take-home homework exercise for the week of April 13, 2020, which would be due during the April 20, 2020 lecture.<br><br>During the April 13, 2020 lecture, Plaintiff's professor verbally confirmed that this take-home homework exercise would be due on April 20, 2020.<br><br>Plaintiff's professor did not record the March 16, April 6, or April 13, 2020 lectures. The Canvas course page was not updated to reflect this information. | |
| Final examination on April 27, 2020 | This examination was originally scheduled for April 23, 2020 by the UM Registrar's Office at the beginning of the semester. However, during the March 11, 2020 lecture, Plaintiff's professor verbally announced that it was delayed to April 27, 2020 due to expected disruption from the COVID-19 pandemic.<br><br>During the April 13, 2020 lecture, Plaintiff's professor stated that this examination was cancelled due to technical issues with conducting it remotely. Plaintiff's professor did not record of the April 13, 2020 lecture. | **Exhibit I**<br><br>**Exhibit C** |

19

| Term Presentation on April 30, 2020 | This presentation was originally scheduled for April 20, 2020, but during the March 11, 2020 lecture, Plaintiff's professor stated that it was delayed to April 30, 2020 due to expected disruption from the COVID-19 pandemic.<br><br>During the April 13, 2020 lecture, Plaintiff's professor verbally announced that this presentation was cancelled due to technical issues with conducting it remotely. Plaintiff's professor did not record the April 13, 2020 lecture. | **Exhibit D**<br><br>**Exhibit I** |
| --- | --- | --- |
| Term Paper due April 20, 2020 | Plaintiff's schedule inadvertently confused the April 30, 2020 due date for his Research Paper with the April 20, 2020 due date for this term paper.<br><br>Plaintiff's teammate submitted this term paper on April 20, 2020. Plaintiff's professor confirmed receipt of the paper on April 29, 2020. | **Exhibit I**<br><br>**Exhibit E** |
| **CLASS 2** | | |
| **EVENT** | **EXPLANATION** | **EVIDENCE** |
| Homework due on April 14, 2020 | This course included weekly homework assignments concerning each chapter covered. Based on the pacing of class lectures and material yet to be covered as of April 6, 2020, the homework for Chapter 8 would be due on April 14, 2020.<br><br>This homework was indeed assigned via a Canvas announcement on Monday, April 6, 2020, with a due date of April 14, 2020. | **Exhibit F** |
| Homework due on April 21, 2020 | As with the homework due on April 14, 2020, based on the pacing of class lectures and material yet to be covered as of April 6, | **Exhibit G**<br><br>**Exhibit I** |

| | 2020, the homework for Chapters 9 and 10 would be due on April 21, 2020.<br><br>Due to disruptions from the COVID-19 pandemic, during the April 14, 2020 lecture, Plaintiff's professor stated that since the April 21, 2020 due date for this assignment fell two days before the final examination date of April 23, 2020, and because it covered two chapters, it would not be graded.<br><br>He instructed that the class should instead complete the problems as preparation for the upcoming final examination. According to Plaintiff's professor, in order to do well on the exam, this assignment should be completed in due course.<br><br>Plaintiff's professor did not record the April 14, 2020 lecture, nor was the Canvas course page updated to reflect this information. | |
| Final examination on April 23, 2020 | This examination was originally scheduled for April 23, 2020 by the UM Registrar's Office at the beginning of the semester.<br><br>During the April 16, 2020 lecture, Plaintiff's professor stated that the examination date would be changed. On April 17, 2020, Plaintiff's professor changed the date of the examination to April 24, 2020 via email communication. | **Exhibit H** |
| Term Project | The deliverables for Plaintiff's term project comprised his paper and his presentation. The due date referenced in Plaintiff's Brief ECF 97, Page ID 2768 is April 30, 2020, because Plaintiff inadvertently conflated the due date for the last component, the term paper, with the due date for his Research | **Exhibit I** |

| | | |
|---|---|---|
| | Paper. ECF 98-1 does not reference a due date for the term project, but rather includes the paper and presentation due dates. | |
| Term Paper due April 15, 2020 | Plaintiff's schedule inadvertently confused the April 30, 2020 due date for his Research Paper with the April 15, 2020 due date for this term paper.<br><br>Plaintiff's teammate submitted this paper on April 15, 2020. Plaintiff's professor confirmed receipt of the paper on April 28, 2020. | **Exhibit K**<br><br>**Exhibit I** |
| **RESEARCH PAPER** | | |
| April 22, 2020 Research Paper meeting | Plaintiff inadvertently attributed this meeting to Class 2, rather than to his Research Paper. This Research Paper preparation meeting occurred on April 22, 2020.<br><br>This was a remote meeting with Plaintiff's teammates to write their paper. | **Exhibit I** |
| April 14-30, 2020<br><br>Research Paper simulation coding & debugging<br><br>Research Paper simulation work | Plaintiff inadvertently attributed these entries to Class 2. The simulation coding and debugging, and simulation work was performed as reflected on Plaintiff's schedule (ECF 98-1) but it was done for his Research Paper, not Class 2.<br><br>Plaintiff did perform simulation and coding for the Class 2 term paper during the first have of April 2020 as described in his brief that were not accounted for on his schedule ECF 98-1. | **Exhibit I** |

## IV.   LEGAL STANDARD

A court may assess attorney's fees under its inherent powers when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or when the conduct is tantamount to bad faith. *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32 at 45–46 (1991) and *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767 (1980). "Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Roadway Express,* 447 U.S. at 764.

A court may impose sanctions pursuant to its inherent powers only when it finds that the action in question was taken in bad faith. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002). *See also In re Ruben*, 825 F.2d 977, 983 (6th Cir. 1987) Bad faith generally falls within one of two categories: (1) bad faith occurring during the course of the litigation; and (2) bad faith in bringing an action or in causing an action to be brought. *Shimman v. Int'l Union of Operating Engineers, Local 18*, 744 F.2d 1226, 1230 (6th Cir. 1984). In *Williamson v. Recovery Limited Partnership*, the Sixth Circuit noted that the framing of the court's inquiry is slightly different depending on which variety of bad faith is alleged. 826 F.3d 297, 301-03 (6th Cir. 2016). Broadly, in *Williamson*, defendants defied a court order to produce records for an accounting of gold from a shipwreck through a variety of maneuvers. This went on for years. Plaintiffs sought sanctions under the court's inherent authority. While the Sixth Circuit ultimately upheld the

sanctions imposed against defendants, the court rejected the district court's use of the *Big Yank* test[1], finding that its use was limited to a situation in which the plaintiff is alleged to have filed a frivolous lawsuit (i.e. bad faith in the institution of the action) and "that test is not applicable to this case, which involved a motion for sanctions against a stonewalling attorney." *Id*. at 302.

The *Williamson* court framed the applicable analysis as two-pronged: "In our view, the proper question is whether Robol showed bad faith by ... hampering [the] enforcement of a court order. That inquiry requires us to ask two questions: Did the party or attorney engage in conduct that hampered the enforcement of a court order? If so, did that party or attorney act in bad faith?" *Id.*

## V.    ARGUMENT

### 1.    Plaintiff did not intentionally or materially misrepresent his academic schedule

As evidence in support of their Motion, Defendants introduced an affidavit and a screenshot from the Canvas course website for one of Plaintiff's two courses. The affiant, an Associate Dean of Students, does not have first-hand knowledge of Plaintiff's course requirements. Nor do Defendants explain how the Associate Dean came to be "familiar" with them. The Associate Dean neither discloses her sources

---

[1] In *Big Yank*, the Sixth Circuit held that a plaintiff can be sanctioned for advancing claims in bad faith if the court finds "[1] that the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose." 125 F.3d 308, 313 (6th Cir. 1997).

of information, nor states that she consulted any source other than Canvas. She notably fails to explain the purpose, use requirements, and context for Canvas, or explain how the platform was actually employed by Plaintiff's individual professors during the applicable timeframe. Defendants have not laid a proper foundation for Canvas's reliability—such as evidence that Plaintiff's professors were required to, and did, record each changing development on the site. Indeed, Defendants introduced no evidence at all establishing that the information reflected on Canvas, including the information in Exhibit 1, was accurate and up-to-date as of the date Plaintiff's motion, or their own motion were filed. There is therefore no foundation for the Court to accept the veracity of the screenshot attached at Exhibit 1, or the information contained in the affidavit otherwise derived from Canvas.

With respect to Class 1, Plaintiff adduced evidence of his homework assignments due on April 13 and 21, 2020, respectively. **Exhibits A, B, I.** Defendants relied on the screenshot of the Canvas course website in support of this argument, but attached nothing showing that Plaintiff's professor actually used the site to record outstanding assignments during the time period at issue. As set forth in Plaintiff's affidavit, his professor did not update the Canvas course website—or create any other documentation— to reflect the changes to the homework assignments due to the COVID-19 pandemic. *Id.* Defendants' claims as to these assignments are meritless.

25

Plaintiff further adduced evidence that on March 11, 2020, the due date for his term presentation was delayed to April 30, 2020. **Exhibits D, I**. Defendants failed to confirm with the professor whether disruptions from COVID-19 impacted course deadlines, and whether he used the Canvas course website to record these changes. These facts could easily be ascertained without identifying Plaintiff[2]. The presentation was cancelled on April 13, 2020. Plaintiff inadvertently neglected to advise counsel of this change because of his hectic, rapidly-changing schedule and high stress and anxiety. *Id.* However, as of April 10, 2020, when his motion was filed, his presentation was indeed due on April 30, 2020. While Plaintiff's schedule inadvertently confused the due date for this paper, he was unaware of this clerical error until May 15, 2020. He produced documentation of his professor's confirmation that it was timely submitted. *Id.*

Finally, Plaintiff provided evidence that his professor changed the date of this examination to April 27, 2020. **Exhibits C, I.** Defendants either failed to take basic steps to confirm the accuracy of their claims, or intentionally withheld information from the Court. Confirming the date of the final examination in this course as of April 10, 2020 could have been as easy as checking with the Registrar's office, or sending an email to the professor. Again, this could have been done without

---

[2] Plaintiff specifically objected to Defendants contacting his professors in order to change his course schedule, which could not be done without identifying him and linking him to the sexual misconduct complaint process.

26

identifying Plaintiff. The exam was verbally cancelled on April 13, 2020. **Exhibit I.** Plaintiff inadvertently neglected to advise counsel of this change because of his hectic, rapidly-changing schedule and high stress and anxiety. *Id.* However, as of April 10, 2020, when his motion was filed, his exam was indeed scheduled for April 27, 2020. **Exhibits C, I.**

Defendants' claims about Plaintiff's requirements for Class 2 are equally false. Despite purporting to rely on the Canvas system, Defendants failed to provide information to the Court from Canvas showing that Plaintiff's homework was due on April 14 2020. **Exhibit F.** Considering this was assigned via Canvas, it strongly appears that Defendants and the affiant intentionally sought to mislead the Court on this point. Furthermore, Plaintiff adduced evidence that although his professor decided on April 14, 2020 not to grade the homework originally due April 21, 2020, he was still obliged to complete it on time, and did so. **Exhibits G, I.**

Plaintiff further showed that he was scheduled to and did attend a paper preparation meeting with his Research Paper team on April 22, 2020. **Exhibit I.** While ECF 98-1 inadvertently attributed this meeting to the term paper for Class 2, this unintentional clerical error was unknown to Plaintiff until May 15, 2020. *Id.* Defendants produced no evidence he did not have this meeting, nor any evidence that any of Plaintiff's team meetings would be reflected on the Canvas course site.

Defendants also falsely asserted that as of the date his motion was filed, his final examination was not scheduled for April 23, 2020. Plaintiff adduced evidence that as of the date he filed his motion, this examination was scheduled for April 23, 2020, per the University's Registrar. **Exhibit H.** A day after the Court dismissed his motion as moot, his professor changed the date of the examination to April 24, 2020. *Id.* Considering Defendants' complete, unfettered access to all information as to when this examination was scheduled by the University, Defendants again appear to have intentionally misled the Court as to the date of this examination.

Finally, Plaintiff proved he was assigned a term paper for this class which was due on April 15, 2020. **Exhibits K, I.** Plaintiff's clerical error as to the due date for this paper was nothing more than an inadvertent oversight, and was unknown to him until May 15, 2020. His professor confirmed timely receipt of the paper on April 28, 2020. *Id.* Again, Defendants failed to examine their own documents and sources and confirm their allegations as to the existence of this paper with their employees with first-hand knowledge. Defendants' and the affiant recklessly, and seemingly intentionally failed to take even the most basic steps to corroborate the requirements for this course.

To sum up, Plaintiff's motion, brief, and ECF 98-1 provided a truthful account of his academic obligations as of the date it was filed. Plaintiff's course requirements changed multiple times in rapid succession, and most of these changes were not

documented. Plaintiff made inadvertent clerical errors which he was unaware of both at the time his schedule was filed and up until the date of this response. Moreover, Plaintiff inadvertently neglected to advise counsel of further changes to his schedule made during the pendency of the Motion because of his preoccupation with his coursework and high anxiety. As of both April 10, 2020 and April 16, 2020, Plaintiff was under the impression that ECF 98-1 was a true and accurate summary of his academic obligations.

Ultimately, Plaintiff's unintentional oversights were not substantively meaningful. Defendants flatly refused to move the date of the hearing to any day other than April 22, 2020. **Exhibit J.** Moreover, even in light of the changes to his schedule, Plaintiff still would have been unable to prepare for and attend the hearing on April 22, 2020 or any other date in April. His academic schedule remained too full to balance his coursework and research with a life-changing sexual misconduct hearing.

Defendants' affidavit and screenshot failed to provide up-to-date, first-hand information about his schedule. Nor did Defendants bother to corroborate their claims by checking their official records, or consulting employees who would have known the truth. The very source Defendants purported to rely on as the entire basis for their motion—Canvas—contradicts their assertions. Plaintiff did not engage in any sanctionable conduct.

### 2.      Neither Plaintiff nor his counsel acted in bad faith

"Bad faith presents an issue of intent that is a factual issue." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, n. 16 (6th Cir. 2002). As set forth above, Plaintiff did not misrepresent his schedule; he acted in good faith when he set forth his academic obligations as they were known to him on April 10, 2020. He was truthful, and did not file his Motion for Injunctive Relief with any intent to mislead. As of the date it was filed, Plaintiff believed that ECF 98-1 accurately reflected his academic obligations. His two inadvertent clerical errors as to the due dates of his term papers were neither ill-intended or known to him until May 15, 2020. The due dates did not change the fact that he was still responsible for completing two term papers and a research paper within April 2020.

Additionally, Plaintiff's course requirements changed multiple times in rapid succession, and most of these changes were not documented. Plaintiff inadvertently neglected to advise counsel of changes to his schedule made during the pendency of the Motion because of his preoccupation with his coursework and high anxiety. As of both April 10, 2020 and April 16, 2020, Plaintiff was under the impression that ECF 98-1 was a true and accurate summary of his academic obligations. There is no evidence that oversights were anything more than innocent mistakes made under pressure.

Ultimately, Plaintiff's unintentional oversights were not substantively meaningful. Under these conditions, Plaintiff would not have been able to prepare for and attend a hearing during April 2020. His academic schedule was too full to balance his coursework and research with a life-changing sexual misconduct hearing. Defendants failed to meet their evidentiary burden of introducing proof of any bad intent, and accordingly, their Motion should be denied.

For their part, Defendants' counsel failed to conduct an appropriate investigation into the facts that was reasonable under the circumstances. Particularly in light of the enormous disruption to the University caused by the COVID-19 pandemic, counsel should have taken steps to ensure their information was accurate. This could have been accomplished as easily as sending a few emails. Defendants refused to respond at all when Plaintiff offered to show proof that would have obviated their motion for sanctions. Instead, they ignored the known risk that COVID-19 would cause professors to change their course schedules on a rapid basis. *See United States v. Wallace,* 964 F.2d 1214, 1220 (D.C. Cir. 1992) .

Notably, Defendants improperly seek recovery of attorney fees for a response brief they never filed to a motion that was dismissed as moot. Further compounding the improper posture of their Motion, this response brief was never filed because of the Defendants' own unilateral actions—they decided to cancel the hearing and close the student conduct complaint process against Plaintiff, triggering the Court to deny

Plaintiff's motion as moot, and cancel the briefing schedule. Defendants failed to cite any cases where the Court provided attorney fees as sanctions for briefing that was never filed on a motion that was denied as moot because of the movant's actions before it was fully briefed, heard, or decided. Nor do they explain how the proceedings could be multiplied by a motion dismissed as moot before the response was filed. There was no bad faith by Plaintiff, although it does not appear the same can be said for Defendants. Their motion should be denied.

## VI.   CONCLUSION

Wherefore, Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion.

Dated:  May 15, 2020                    Respectfully submitted,

**DEBORAH GORDON LAW**
/s/ Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing and service of said documents to all parties through their counsel of record.

**DEBORAH GORDON LAW**

/s/<u>Deborah L. Gordon (P27058)</u>
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com