UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE, an individual,

     Plaintiff,

vs.

UNIVERSITY OF MICHIGAN (as to Title IX violations), et al.,

     Defendants.

Case No.: 18-cv-11776
Hon.  Arthur J. Tarnow
Mag.  Elizabeth A. Stafford

---

DEBORAH GORDON LAW
Deborah L. Gordon (P27058)
Elizabeth A. Marzotto Taylor (P82061)
Attorneys for Plaintiff

UNIVERSITY OF MICHIGAN
Timothy G. Lynch
Patricia M. Petrowski
Attorneys for Defendants

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
Brian M. Schwartz (P69018)
Attorney for Defendants

SAUL EWING ARNSTEIN & LEHR LLP
Joshua W.B. Richards
Amy L. Piccola
Attorneys for Defendants

---

## PLAINTIFF'S RENEWED MOTION FOR ATTORNEYS' FEES AND COSTS

Plaintiff, by and through his attorneys Deborah Gordon Law, and pursuant to 42 U.S.C.

§ 1983, Fed. R. Civ. P. 54(d), E.D. Mich. LR 54.1.2, and this Court's Bill of Costs Handbook,

Section I (B), p 1, files his Renewed Motion for Attorneys' Fees and Costs. Plaintiff relies on

the law and reasoning set forth in his attached Brief, the Federal Rules of Civil Procedure and

1

the files and records in this case. In accordance with E.D. Mich. LR 7.1, on January 8, 2021, Plaintiff's counsel sought concurrence in this motion, but such concurrence was not forthcoming. **Exhibit O**.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant Plaintiff's Motion and enter an Order awarding Plaintiff attorneys' fees and costs including:

A.    Attorney fees (Deborah Gordon Law) in the amount of $460,467.27. **Exhibit A**.

B.    Costs (Deborah Gordon Law) in the amount of $8,883.66. **Exhibit B**.

Dated:  January 8, 2021                    Respectfully submitted,

**DEBORAH GORDON LAW**
/s/ Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@debgordonlaw.com
emt@debgordonlaw.com

# TABLE OF CONTENTS

Index of Authorities.................................................................................................................iii

I.   Procedural Background...................................................................................................1

II.  Facts...............................................................................................................................3

     A.   Plaintiff is forced to file suit when Defendants refused to follow Sixth Circuit
          precedent..............................................................................................................3

     B.   Plaintiff succeeds in halting the unconstitutional proceeding and lifting the hold on
          his degree and transcript.....................................................................................4

     C.   Defendants appeal the District Court order requiring a hearing with written
          questions...............................................................................................................5

     D.   Or remand, Defendants refuse to stipulate to an order providing Plaintiff with a
          hearing...................................................................................................................7

     E.   The District Court grants Plaintiff's Motion for Partial Summary Judgment.........8

     F.   Defendants appeal the District Court's ruling for a second time.........................10

     G.   With their appeal pending, Defendants proceed with scheduling a disciplinary
          hearing.................................................................................................................10

     H.   Defendants' appeal becomes moot......................................................................11

III. Argument......................................................................................................................12

     A.   Legal Standard to Obtain Attorney Fees and Costs............................................12

     B.   Plaintiff is a "Prevailing Party.".............................................................................13

     C.   Plaintiff's Lodestar Amount..................................................................................20

     D.   Plaintiff's Attorneys' Fee Request is Reasonable................................................23

          1.   The Customary Fee..................................................................................23

i

2.       Time and Labor Involved............................................................................29

         a.       Plaintiff Provided Sufficient Documentation of Counsel's Time
                  Expended...................................................................................31

3.       The Amount Involved and the Results Achieved...................................35

4.       The Difficulty of the Case and the Skill Requisite to Perform the Legal
         Service Properly........................................................................................36

5.       The Undesirability of the Case.................................................................36

6.       The Nature and Length of the Professional Relationship with the Client...........37

E.       Plaintiff's  Costs were Reasonably Expended and are Recoverable ...............................37

F.       Plaintiff's Success on his Due Process Claim Necessitates a Fully Compensatory
         Fee ....................................................................................................................................40

III.     Conclusion .........................................................................................................................42

CERTIFICATE OF SERVICE .................................................................................................43

## INDEX OF AUTHORITIES

Cases

*Binta B. ex rel. S.A. v. Gordon,*
  710 F.3d 608 (6th Cir. 2013) ............................................................................... 12, 13

*Blair v. Harris,*
  993 F.Supp.2d 721 (E.D. Mich. 2014) ............................................................. 21

*Blanchard v. Bergeron,*
  489 U.S. 87 (1989) ................................................................................... 21, 22

*Blum v. Stenson,*
  465 U.S. 886 (1984) ........................................................................... 20, 24, 29

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.,*
  532 U.S. 598 (2001) ............................................................................ 3, 12, 18

*Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway,*
  46 F.3d 1392 (6th Cir. 1995) ....................................................................... 3, 21

*Cleveland Bd. of Realtors v. City of Euclid,*
  965 F.Supp. 1017 (N.D. OH 1997) ................................................................ 38

*Communities for Equity v. Michigan High Sch. Athletic Ass'n,*
  No. 1:98-CV-479, 2008 WL 906031, at *22 (W.D. Mich. Mar. 31, 2008) ......................... 39

*Deja Vu v. Metropolitan Government of Nashville and Davidson County, Tennessee,*
  421 F.3d 417 (6th Cir. 2005) ....................................................................... 3, 41

*Doe v. Baum,*
  903 F.3d 575 (6th Cir. 2018) ................................................................. Passim

*Doe v. Ohio,*
  2020 WL 728276, at *1, 11 (S.D. Ohio Feb. 12, 2020) ..................................... 27

Doe v. Univ. of Cincinnati,
  872 F.3d 393 (6th Cir. 2017) ............................................................ 3, 4, 5, 7, 9

*Farrar v. Hobby,*
   506 U.S. 103 (1992) ................................................................... 12, 14, 19

*Fialka-Feldman v. Oakland Univ. Bd. of Trs.,*
   639 F.3d 711 (6th Cir. 2011) ............................................................ 12

*Geier v. Sundquist,*
   372 F.3d 784 (6th Cir. 2004) ...................................................... 21, 23

*Granzeier v. Middletown,*
   173 F.3d 569 (6th Cir. 1999) ............................................................ 21

*Green Party of Tennessee v. Hargett,*
   767 F.3d 533 (6th Cir. 2014) ............................................................ 23

*Hamlin v. Charter Township of Flint,*
   165 F.3d 426 (6th Cir. 1999) ............................................................ 23

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983) ............................................... 23, 30, 35, 41, 42

*Hescott v. City of Saginaw,*
   757 F.3d 518 (6th Cir.2014) ............................................................ 18

*Horner v. Kentucky High Sch. Athletic Ass'n,*
   206 F.3d 685 (6th Cir. 2000) ............................................................ 12

*Imwalle v. Reliance Med. Prod., Inc.,*
   515 F.3d 531 (6th Cir. 2008) ...................................................... 31, 34, 38

*Johnson v. Georgia Highway Exp., Inc.,*
   488 F.2d 714 (5th Cir. 1974) ............................................................ 36

*Lipian v. Univ. of Michigan,*
   2020 WL 1164190, at *5 (E.D. Mich. Mar. 11, 2020) ..................... 28

*Mansfield, C. & L.M. Ry. Co. v. Swan,*
   111 U.S. 379 (1884) ......................................................................... 14

*McCombs v. Meijer, Inc.,*
395 F.3d 346 (6th Cir. 2005) ............................................................... 40, 41, 42

*McQueary v. Conway,*
614 F.3d 591 (6th Cir. 2010) ..................................................................... 13, 20

*Morrison v. Bd. Of Educ.,*
521 F.3d 602 (6th Cir. 2008) ........................................................................... 14

*Northcross v. Bd. of Ed. Of Memphis City Sch.,*
611 F.2d 624 (6th Cir. 1979) ........................................................................... 38

*Reed v. Rhodes,*
179 F.3d 453 (6th Cir. 1999) ..................................................................... 20, 21

*Sitz v. Michigan State Police,*
443 Mich. 744 (1993) ........................................................................................ 24

*Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist,*
489 U.S. 782 (1989) ...................................................................................... 13, 19

*The Ne. Ohio Coal. for the Homeless v. Husted,*
831 F.3d 686 (6th Cir. 2016) ........................................................................... 21

*Trustees of Sheet Metal Workers v. Traverse Bay Roofing Co.,*
2019 WL 1474023 (E.D. Mich. Mar. 18, 2019) ....................................... 22, 28

*Utah Animal Rights Coal. v. Salt Lake City Corp.,*
371 F.3d 1248, 1268 (10th Cir. 2004) ............................................................ 14

*Varlesi v. WSU, et al.,*
2:10-cv-14793-DPH-MJH, ECF No. 163 (2013) .......................................... 39

*Woods v. Willis,*
631 F. App'x 359 (6th Cir. 2015) .................................................................... 12

**Other Authorities**
42 U.S.C. § 1983 .................................................................................... Passim

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE, an individual,

      Plaintiff,

vs.

                                      Case No.: 18-cv-11776
                                      Hon.  Arthur J. Tarnow
UNIVERSITY OF MICHIGAN (as to Title IX        Mag.  Elizabeth A. Stafford
violations), et al.,

      Defendants.

---

| DEBORAH GORDON LAW | MILLER, CANFIELD, PADDOCK |
| Deborah L. Gordon (P27058) | AND STONE, P.L.C. |
| Elizabeth A. Marzotto Taylor (P82061) | Brian M. Schwartz (P69018) |
| Attorneys for Plaintiff | Attorney for Defendants |
| | |
| UNIVERSITY OF MICHIGAN | SAUL EWING ARNSTEIN & |
| Timothy G. Lynch | LEHR LLP |
| Patricia M. Petrowski | Joshua W.B. Richards |
| Attorneys for Defendants | Amy L. Piccola |
| | Attorneys for Defendants |

---

## PLAINTIFF'S RENEWED BRIEF IN SUPPORT OF HIS MOTION
## FOR ATTORNEYS' FEES AND COSTS

I.       Procedural Background

Plaintiff first sought attorney fees and costs on May 23, 2019. (ECF No. 48). Plaintiff's

Motion for Award of Interim Attorney Fees and Costs as to His Due Process Claim sought

fees and costs for the period of May 23, 2018 to April 10, 2019. (*Id.*, PageID.1496). In his

motion, Plaintiff argued that he was victorious in four respects: (1) the June 2018 Order

allowing him to receive his transcript and degree, (ECF No. 19); (2) the July 2018 Order

requiring Defendants to provide Plaintiff with a live hearing and cross-examination, (ECF No.

30); (3) the fact that the Sixth Circuit declined to take up Defendants' standing and ripeness

arguments on appeal of the July 2018 Order, allowing the case to move forward, (ECF No.

42); and (4) Defendants' abandonment of the 2018 policy.

On January 15, 2020, this Court denied Plaintiff's motion for interim attorney fees

without prejudice. (ECF No. 84). Nevertheless, the Court noted that despite the Sixth Circuit's

vacatur of Judge Tarnow's July 2018 Order, "[Plaintiff] has enjoyed at least some relief that

cannot be undone; he received his transcript and degree." (*Id.* at PageID.2518). This Court

determined that it could not yet declare Plaintiff a prevailing party while Defendants' motion

to dismiss for lack of subject matter jurisdiction (ECF No. 49) remained pending. (*Id.* at

PageID.2519).

Judge Tarnow's March 23, 2020 Order rejected Defendants' justiciability arguments,

both under the law-of-the-case doctrine and on the merits, and accordingly, denied in part

Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. (ECF No. 90,

1

PageID.2584-2588). On March 25, 2020, Defendants appealed the order. (ECF No. 92).

On April 7, 2020, following Judge Tarnow's March 23, 2020 order granting Plaintiff complete relief, Plaintiff filed his Motion for Attorneys' Fees and Costs seeking fees and costs from May 23, 2018 to April 7, 2020. (ECF No. 95). Defendants moved to stay determination of Plaintiff's claim for attorneys' fees pending appeal. (ECF No. 102).

On November 27, 2020, Judge Stafford recommended granting Defendants' Motion to Stay and denying without prejudice Plaintiff's Motion for Attorneys' Fees, allowing Plaintiff to refile, "if necessary, after the appellate litigation." (ECF No. 151, PageID.3924). Judge Stafford noted that if Plaintiff prevailed on appeal, he would be entitled to additional fees and if Judge Tarnow's ordered was *reversed* then Plaintiff would no longer be a prevailing party. (*Id.* at PageID.3923). On December 9, 2020, Defendants filed their objections to the Report and Recommendation. (ECF No. 153).

On December 23, 2020, the Sixth Circuit issued its order dismissing Defendants' appeal as moot and remanding the case to Judge Tarnow to vacate the judgment. (ECF No. 154). The Sixth Circuit noted that Plaintiff's Motion for Attorneys' Fees remained pending before this Court and stated "We also note that by vacating the district court's merits decision, we do not necessarily disturb [Plaintiff]'s status as a 'prevailing party' for purposes of attorney's fees. *Id.*

Judge Tarnow's March 23, 2020 order was a final judgment which bestowed 'prevailing party' status on Plaintiff. Defendants' attempted appeal of the order was dismissed

as moot. Accordingly, all that remains to be resolved in this matter is the issue of attorneys' fees.

II.    Facts

A.    **Plaintiff is forced to file suit when Defendants refused to follow Sixth Circuit precedent**

This lawsuit is the result of Defendants' intentional failure to provide constitutional due process to students accused of sexual misconduct, including Plaintiff.

Beginning in 2016, Defendants maintained two different polices applicable to student misconduct. The Statement of Student Rights and Responsibilities ("SSRR") covered all forms of student misconduct other than "sexual misconduct." For any student accused of wrongdoing, the SSRR provided for a live hearing and "the right to question" the accuser and witness, among other things. Students accused of sexual misconduct were excluded from coverage of the SSRR. Rather, a separate policy was created. That policy did not provide for a live hearing or any questioning of the accuser or witnesses. On September 1, 2016, on behalf of a different student, Plaintiff's current counsel filed a lawsuit challenging the then existing sexual misconduct policy. *Doe v. Baum, et al.,* Case No. 16-cv-13174, ECF No. 1. On October 10, 2017, the *Baum* Plaintiff filed an appeal of the district court's decision against him with the Sixth Circuit Court of Appeals.  *Doe v. Baum, et al.,* Case. No 17-2213.

On September 25, 2017, the United States Court of Appeals for the Sixth Circuit issued its Opinion in *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir.2017). The ruling required that where credibility is at stake, a live hearing and cross-examination of some type is required.

*Id.* at 399-400.  The Plaintiff in *Cincinnati* sought only to submit written questions through the hearing panel, the same procedure provided to students accused of other forms of misconduct.

Post *Cincinnati*, on February 7, 2018, the University of Michigan ("University") issued a replacement for the sexual misconduct policy at issue in *Baum*: The University of Michigan Policy and Procedures on Student Sexual and Gender-Based Misconduct and Other Forms of Interpersonal Violence ("2018 Policy"). Again, the new policy did not provide for a hearing or any questioning between the parties and witnesses. (ECF No. 4-2, PageID.206-216).

By April 2018, Plaintiff here had met all the requirements necessary to graduate. (ECF No. 47, PageID.1328, ¶ 17). On April 2, 2018, Plaintiff was advised by the University that a female student had filed a complaint of sexual misconduct against him. (*Id.*, PageID.1330, ¶ 30). Suspension and expulsion were possible penalties. (*Id.*, PageID.1331, ¶ 33). The University began an investigation pursuant to the 2018 Policy.

With the investigation ongoing, and no decision, on April 19, 2018, the University placed a hold on Plaintiff's transcript and degree. (*Id.*, PageID.1333, ¶ 44-45). On June 4, 2018, Plaintiff filed this lawsuit for violations of his rights under 42 U.S.C. § 1983, Title IX, 20 U.S.C. § 1681, *et seq.;* and the State of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL § 37.2101, *et seq.* (ECF No. 1).

### B.   Plaintiff succeeds in halting the unconstitutional proceeding and lifting the hold on his degree and transcript

On June 5, 2018, Plaintiff filed a Motion for a Temporary Restraining Order and

Preliminary Injunction ("TRO & PI") based on his § 1983 denial of due process claim. (ECF No. 4). Plaintiff asked that the hold on his transcript and degree be lifted and that the University provide him with the process set forth in the SSRR in lieu of the 2018 Policy.

On June 11, 2018, this Court held an on-the-record telephone conference to discuss releasing the hold on the degree and transcript. (ECF No. 20). Defendants agreed to do so. On June 14, 2018, this Court ordered that "Plaintiff's Motion for Temporary Restraining Order [4] is **GRANTED in part**, with remaining issues to be decided after a hearing" and "that Defendants immediately release to Plaintiff his official transcript pending resolution of this case." (ECF No. 19, PageID.269-270) (emphasis in original).

On July 6, 2018, Judge Tarnow granted in part and denied in part the balance of Plaintiff's Motion for TRO. (ECF No. 30). He ordered Defendants to apply the procedure set forth in the SSRR with one exception based on the 2017 *Cincinnati* decision: at the live hearing, the parties would write questions which would be posed by the hearing officer. (*Id.*, at PageID.744).

C.     Defendants appeal the District Court order requiring a hearing with written questions

On July 25, 2018, Defendants filed their Notice of Interlocutory Appeal and Motion for Stay. (ECF No. 32, 33). The appeal was based largely on their misplaced argument that the District Court lacked subject matter jurisdiction. Based on *Cincinnati*, Plaintiff filed a cross appeal on the basis that cross-examination questions at the hearing should be done in the same format as the SSRR hearing, in that the University already provide live cross-

examination in all other cases. (ECF No. 36). Both appeals were fully briefed by both sides.

(Case Nos. 18-1870: 23, 28, 33, 34 and Case No. 18-1903: 23, 28, 29, 30, 31, 32-1).

On August 1, 2018, present counsel argued *Doe v. Baum* at the Sixth Circuit.

One of the Judges made note of her concern about the path the University was taking:

> But I can't get past the University's indifference, defiance, or whatever you want
> to call it to our Circuit precedent and to the basic principles of due process."
> See Oral Argument Before Sixth Circuit Court of Appeals in Case No. 17-2213,
> *John        Doe         v.        David        Baum,        et        al.,*
> http://www.opn.ca6.uscourts.gov/internet/court_audio/aud1.php,    at    29:06-
> 29:26 (August 1, 2018).

On August 22, 2018, Judge Tarnow granted Defendants' Motion for Stay.  (ECF No.

41). On September 25, 2018, the Sixth Circuit issued it opinion in *Doe v. Baum*, 903 F.3d 575

(6th Cir. 2018). Similar to here, in *Baum*, a student accused of sexual misconduct challenged

the University's 2018 Policy for depriving him of a hearing with cross-examination. *Baum* held

that "if a public university has to choose between competing narratives to resolve a case, the

university must give the accused student or his agent an opportunity to cross-examine the

accuser and adverse witnesses in the presence of a neutral fact-finder." *Baum*, 903 F.3d at

578. This decision required the type of hearing Plaintiff had requested be provided for this

Plaintiff.

On January 9, 2019, Defendants abandoned the 2018 policy and replaced it with The

University of Michigan Interim Policy and Procedures on Student Sexual and Gender-Based

Misconduct and Other Forms of Interpersonal Violence ("2019 Policy" or "Interim Policy").

(*See* ECF No. 47-3).

On April 10, 2019, based on the *Baum* decision the Sixth Circuit vacated Judge

Tarnow's ruling as to the TRO and remanded the case for reconsideration:

> Since these appeals were docketed, the circuit published *Doe v. Baum*, 903
> F.3d 575 (6th Cir, 2018), and the University has implemented an interim policy
> that it says will not apply to Doe's case. The district court should consider the
> impact of *Baum* and Michigan's interim policy in the first instance. The district
> court's preliminary injunction is **VACATED**, and we **REMAN** for reconsideration
> in light of *Baum* and the University's interim policy. As a result, the University's
> motion to dismiss and Doe's motion for leave to file a sur-reply are **DENIED AS
> MOOT**.

*Doe v. Bd. of Regents of Univ. of Michigan, et al.*, Case Nos. 18-1870 & 18-1903, RE 35-1.

The Sixth Circuit declined to address Defendants' subject matter jurisdiction argument.

### D.      On remand, Defendants refuse to stipulate to an order providing Plaintiff with a hearing

Upon remand, Plaintiff took the position that the new January 2019 Policy did not

comply with *Cincinnati* or *Baum* in that it did not specifically allow for cross-examination. (*See*

ECF No. 59, PageID.1837-38). The district court judge urged that the parties engage in

settlement discussion as to what process Plaintiff would receive in light of *Baum*. (*Id.*,

PageID.1838-39). Plaintiff proposed to Defendants that the parties reach agreement on an

order that could be entered as to the due process Plaintiff would receive at his hearing.

Defendants refused to agree to any order and continued to argue that their January 2019

Policy must be applied. In an interview with the media on or around July 12, 2019, the

University Director of Public Affairs, Rick Fitzgerald, described explained why the University

would not agree to an order providing due process protections:

> <u>We must retain the authority over our policies</u> to do that in the best way we know how and we're willing to fight in court to maintain that authority…
>
> Our goal is to reduce and prevent all forms of sexual and gender-based misconduct on our campus, and we can't hand over control of that critical responsibility to keep our community safe…
>
> At the University of Michigan, we fight for our principles because it's the right thing to do" and "<u>that means defending policies designed to protect the needs and rights of all students and standing up when a judge refuses to follow the law.</u> (emphasis added)

(ECF No. 62, PageID.2131); *see also* Gus Burns, UM sexual misconduct policy lawsuit has cost $648,380 in legal fees so far, MLIVE, Jul.12, 2019, https://www.mlive.com/news/2019/07/um-sexual-misconduct-policy-lawsuit-has-cost-648380-in-legal-fees-so-far.html.

Plaintiff's refusal to agree to a stipulated order significantly delayed this matter and caused additional fees and costs to be incurred. Intensive litigation continued as to the 42 U.S.C § 1983 claim. In addition, Defendants filed two separate Petitions for Mandamus as to the district court judge with the Sixth Circuit, and in both instances, Plaintiff was asked to provide a response.  Case No. 19-1636, RE 13-1; Case No. 20-1248, RE 11. This case has been to the Sixth Circuit and back three times.

### E.   The District Court grants Plaintiff's Motion for Partial Summary Judgment

Based on the remand to consider the matter in light of *Baum* and the "Interim Policy," on March 23, 2020, Judge Tarnow issued his Opinion and Order as to all remaining issues and Judgment for Plaintiff as to the § 1983 claim. (ECF No. 90). He granted Plaintiff's Motion

for Partial Summary Judgment. (ECF No. 53. *Id.*, PageID.2575, .2604). He found against Defendants as to their arguments that Plaintiff's claim was not ripe, was moot, and that he had no standing. (*Id.*, PageID.2585, .2588). Judge Tarnow rejected Defendants' qualified immunity defense. (*Id.*, PageID.2592). As to the February 2018 Policy that Defendants had imposed on Plaintiff, and which caused the initiation of this lawsuit, Judge Tarnow found that it had always been unconstitutional:

> From its inception to the University's appeal in Baum, the 2018 Policy was in violation of Circuit precedent. Five months before publishing its 2018 Policy and likely during its drafting, the Sixth Circuit held that cross-examination was "'essential to due process'" only where the finder of fact must choose "'between believing an accuser and an accused,'" and implored universities to provide a means for decision makers "to evaluate an alleged victim's credibility." *Cincinnati*, 872 F.3d at 405-06.

(ECF No. 90, PageID.2591). As to the 2019 Interim Policy with which Defendants insisted on moving forward, the Judge found, in part, that "some aspects are still in need of revision for full compliance…" (*Id.*, PageID.2602). He further held, "[a]n accused students' rights must be guaranteed – not left open for interpretation." *Id.* With this ruling, Plaintiff directive succeeded on the ultimate issue: the hearing could not go forward unless Plaintiff was provided with the due process required in *Baum*. If not for Plaintiff's lawsuit, and subsequent success on the merits, he would have been subjected to a process, in which his property interest was in his education at issue, that did not comport with constitutional due process.

The Court dismissed Plaintiff's Title IX claim, which had not been a subject of his TRO motion or Motion for Partial Summary Judgment. Plaintiff is not seeking fees for his Response

9

to that motion. The Judge declined to exercise supplemental jurisdiction over Plaintiff's Elliott-Larsen Civil Rights Act claims. (*Id.*, PageID.2597).

### F.    Defendants appeal the District Court's ruling for a second time

On March 25, 2020, Defendants filed a notice of appeal of the district court's decision. (Notice of Appeal, RE 92).

Plaintiff filed his petition for attorney fees and costs on April 7, 2020. (ECF No. 95). Defendants subsequently moved to stay the determination of Plaintiff's request for attorney fees pending its appeal. The request for a stay was granted. (ECF No. 151).

### G.    With their appeal pending, Defendants proceed with scheduling a disciplinary hearing

On March 25, 2020, Defendants advised Plaintiff that they were immediately proceeding with the hearing. This occurred in the first weeks of the Covid-19 pandemic, after the University had closed the campus. Plaintiff drove home to California where he began taking his classes remotely and preparing for final exams. He sought a short adjournment of the hearing until the time when his exams were complete in April 2020. Defendants refused and set a hearing for April 22, 2020. On April 10, 2020, Plaintiff was forced to seek injunctive relief from this Court adjourning the hearing until Plaintiff could adequately prepare to defend himself against the allegations. (ECF No. 97).

On April 16, 2020, shortly before the hearing was to occur, Defendants abruptly and permanently closed the administrative complaint process then pending against Plaintiff—the University's adjudication against Plaintiff was over. In that the entirety of the underlying

litigation was based on whether Plaintiff would receive a due process hearing, there ceased to be a case or controversy.

### H.   Defendants' appeal becomes moot

The same day, Plaintiff's counsel requested that Defendants dismiss its appeal in that the case was now moot. They refused. On April 27, 2020, Plaintiff filed a Motion to Dismiss Defendant's appeal as moot.

Judge Tarnow referred Plaintiff's April 2020 petition for attorney fees and costs and Defendants' motion to stay to the Magistrate Judge for determination. (ECF No. 109). On November 27, 2020, the Magistrate issued a Report and Recommendation granting Defendant's motion to stay, and denying Plaintiff's petition without prejudice, "allowing the parties to refile them, if necessary, after the appellate litigation." (ECF No. 151, PageID.3924). The Report and Recommendation (ECF No. 151) also disposed of Plaintiff's motion to amend his bill of costs (ECF No. 106) and supplement to his petition (ECF No. 126) as well as Defendants' motion to compel (ECF No. 103). Plaintiff incorporates herein his motion to amend his bill of costs, which was dismissed as moot (ECF No. 151), and the supplement to his petition.

On December 23, 2020, the Sixth Circuit Court of Appeals granted Plaintiff's Motion to Dismiss Defendants' Appeal as Moot, remanding the case with instructions to vacate the judgment against Defendants. Again, the Sixth Circuit did not adopt the basis for the Defendants' appeal—that the district never had had subject matter jurisdiction.

The Sixth Circuit found that the district court was best positioned to decide Plaintiff's request for attorney fees and costs, and noted that pursuant to *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 717 (6th Cir. 2011), "'[b]y vacating the district court's merits decision,' we 'do not necessarily disturb [Doe]'s status as a 'prevailing party' for purposes of attorney's fees.'" (ECF No. 154, Page 4 (PageID illegible)).

Pursuant to University records and as of January 6, 2020, one year ago, Defendants spent $1,140,587.54 in attorneys' fees to defend this case (**Exhibit N**), using a total of nine different attorneys.

Plaintiff now seeks attorneys' fees and costs as a prevailing party.

III.    **Argument**

    A.    **Legal Standard to Obtain Attorney Fees and Costs**

In an action to enforce a provision of 42 U.S.C. § 1983, § 1988 of that title permits the court to award the prevailing Plaintiff costs, including reasonable attorney fees, as part of the costs. *Farrar v. Hobby*, 506 U.S. 103, 109 (1992). "The purpose of this provision is 'to ensure that federal rights are adequately enforced.'" *Woods v. Willis*, 631 F. App'x 359, 363 (6th Cir. 2015). A plaintiff is a prevailing party if he receives "at least some relief on the merits of his claims such as a judgment, an injunction, or a consent decree." *Horner v. Kentucky High Sch. Athletic Ass'n*, 206 F.3d 685, 698 (6th Cir. 2000); *see also Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 620 (6th Cir. 2013) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 603 (2001)).

12

In performing the "prevailing party" analysis, courts do not look to the number of claims on which the plaintiff succeeded, the magnitude of the relief obtained, or whether the plaintiff obtained the primary relief sought; the question is simply whether the plaintiff has won on at least one claim. *Binta B.*, 710 F.3d at 620 (citing *Farrar*, 506 U.S. at 114; *McQueary v. Conway*, 614 F.3d 591, 603 (6th Cir. 2010)); see also *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist*, 489 U.S. 782, 790, (1989) ("[T]he degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all.")

B.    Plaintiff is a "Prevailing Party."

It is indisputable that Plaintiff is a "prevailing party" in this action. He secured summary judgment on his 42 U.S.C. § 1983 claim and significant equitable relief.  As this Court stated,

> [t]here is no dispute that (1) on March 20, 2018, a female student accused Plaintiff of sexual assault in violation of the University's sexual misconduct policy; (2) a finding of guilt could have resulted in a serious sanction such as suspension or expulsion (Dkt. 47-1, pg. 38); (3) since there were no witnesses to the incident in question, a finding would have to be based on a credibility determination (Compl. ¶ 48; see Dkt. 49 & 50); (4) Defendants subjected Plaintiff to an investigation under the 2018 Policy that did not afford him a live hearing with cross-examination. (See Dkt. 47-1). Accordingly, Plaintiff is entitled to judgment as a matter of law on his due process claim.

(ECF No. 90, PageID.2601). Plaintiff also received his transcript and degree[1] which had been unjustly withheld prior to any final adjudication against him, and obtained an Order from this

---

[1] As Magistrate Judge Stafford acknowledged, this is relief that cannot be undone. ECF No. 84, PageID.2518.

Court 1) declaring Defendants' 2018 Policy unconstitutional; 2) deeming the possibility of a pre-hearing suspension under the 2019 Interim Policy unconstitutional; and 3) requiring that Plaintiff be given a "live hearing, in person or via video communication, with the opportunity to cross-examine witnesses and the Claimant." *Id.*, PageID.2603-04.

## Plaintiff achieved far more than a nominal or technical victory.

Nominal damages are "a symbolic recognition of harm that may be awarded without proof of actual harm and have only declaratory effect." *Morrison v. Bd. Of Educ.*, 521 F.3d 602, 610 (6th Cir. 2008). Nominal damages do not alter the legal rights or obligations of the parties and are awarded where parties fail to show that they suffered any actual, compensable injuries. *Id.; see also Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1268 (10th Cir. 2004) (nominal damages awarded in case where plaintiff failed to prove actual compensable injury, and was therefore awarded declaratory judgment and nominal damages); *see also Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 380 (1884) (plaintiffs prevailed on merits of contract action, but on appeal Supreme Court found that federal subject-matter jurisdiction was absent from the start; lower court's judgment was reversed, but Court found they "prevailed" in a "formal and nominal sense"); *see also Farrar v. Hobby*, 506 U.S. 103, 104, 107–08 (1992) (where sole relief sought was money damages, plaintiffs recovered only nominal damages of $1.00 from a jury for violation of their civil rights because of failure to prove essential elements of claims for monetary relief).

Here, the relief Plaintiff obtained significantly altered Defendants' legal obligations

toward him and enforced his legal rights. It materially changed the relationship between the parties. Defendants were ordered to provide Plaintiff a due process hearing that the Court found was not guaranteed under either the 2018 Policy or 2019 Interim Policy. Moreover, the Court unequivocally held that Plaintiff suffered actual injuries, and proved the essential elements of his due process claim. Plaintiff did not walk away emptyhanded with nothing more than "the moral satisfaction [that] results from any favorable statement of law." *Farrar*, 506 U.S. at 112 (internal quotations and citations omitted). Nor was the March 23, 2020 Order a "judicial pronouncement that the defendant has violated the Constitution, unaccompanied by an enforceable judgment on the merits." *Id.* at 112.  Defendants were barred from subjecting Plaintiff to an unconstitutional procedure. The Sixth Circuit approved this result when it returned the case to the district court for an analysis of whether the Interim Policy comported with *Baum*. This Court found that it did not.

Plaintiff achieved far more than a "technical victory." In *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989), the district court declared a school regulation requiring that after-school meetings be conducted only with prior approval from the principal unconstitutionally vague. This finding was a "technical victory" insufficient to sustain prevailing party status because there was no evidence that plaintiffs were refused permission to use school premises during non-school hours. In other words, despite winning this declaratory judgment, the plaintiffs did not alter the school board's behavior toward them for their benefit. In sharp contrast, the Court's March 23, 2020 Order explicitly altered

Defendants' behavior toward Plaintiff for his benefit. It required them to provide Plaintiff with procedural due process which, finding that the policies the University sought to use were insufficient.

Defendants' "voluntary offers" to adjudicate Plaintiff's hearing under the 2019 Policy are irrelevant to the analysis of Plaintiff's motion for attorney fees. The policies were found to be unconstitutional and Plaintiff properly declined the offer. (Notably, Plaintiff offered Defendants the opportunity to simply stipulate that Plaintiff would receive the due process components mandated in *Baum*: a hearing and cross-examination. They refused). The Sixth Circuit declined Defendants' request to be allowed to proceed immediately against Plaintiff under the 2019 Interim Policy. (*See* ECF 42).  The District Court also rejected this "voluntary offer" by Defendant:

> "Despite the existence of the Interim Policy that Defendants argue complies with current case law, the impetus for this suit remains: Plaintiff alleges due process violations against Defendants that have yet to be ruled on. Furthermore, this Court has not yet had a chance to prescribe constitutional safeguards, let alone evaluate whether the new policies adhere to them. Defendants cannot resume a disciplinary process while allegations of its adequacy have not been resolved." RE 81, Page ID 2417.
>
> ****
>
> "Voluntary cessation of a challenged conduct moots a case, however, only if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Assn., Inc.,* 393 U.S. 199, 203 (1968)." (ECF 90, Page ID # 2582).

The District Court found that multiple aspects of the 2019 Interim Policy, which Defendants "volunteered" to proceed against Plaintiff under, were unconstitutional. The Court specifically rejected the Policy's provisions regarding the conduct of hearings, finding that:

"the condition under which a hearing is required under the policy is vague. It merely states that a hearing will be provided 'where warranted,' without further explanation…The University's Interim Policy should be similarly clear in order to dispel confusion and hold their administration accountable to provide a fair process in every case. An accused student's rights must be guaranteed—not left open for interpretation." (ECF 90, Page ID 2602).

Defendants' "voluntary offers" amount to nothing more than doubling-down on their unconstitutional, injurious actions to Plaintiff, which the Court remedied with its Orders and Judgment against them.

Plaintiff is unaware of any case in which a court decreased a fee award on the basis that the losing party offered to stop injuring the prevailing party. As a practical matter, such a holding would make little sense in light of Defendants' demonstrable history of broken promises, constitutional violations, and staunch refusal to concur in the relief the Court ultimately granted Plaintiff. When the courts invalidated both the 2016 and 2018 policies, the 2019 Interim Policy resulted. When the Interim Policy came under fire, Defendants began work on the "umbrella policy," which replaced the Interim Policy in August, 2020. The law, and not Defendants' benevolence (or its ever-changing policies), propels Plaintiff's due process protections.

The difference between the relief the Court eventually provided and what Defendants "voluntarily offered" Plaintiff is obvious in light of the University's staunch refusal to concur in an order providing the same. Specifically, Defendants refused to concur in an order stating that the 2018 Policy applied to Plaintiff was unconstitutional; enjoining Defendants against further use of the 2018 Policy; and setting forth that Defendants would provide Plaintiff a live

17

hearing with cross-examination. In lieu of this simple, effective solution Defendants preferred to "fight in court" for the "right to control [their] own policies". Gus Burns, *UM sexual misconduct policy lawsuit has cost $648,380 in legal fees so far*, MLive (July 12, 2019), https://www.mlive.com/news/2019/07/um-sexual-misconduct-policy-lawsuit-has-cost-648380-in-legal-fees-so-far.html.

<u>Plaintiff remains a prevailing party for the purpose of obtaining</u>
<u>attorney fees and costs</u>

Even when the district court's March 23, 2020 Order is eventually vacated pursuant to the Sixth Circuit's order, Plaintiff will remain a prevailing party for the purpose of obtaining attorney fees and costs. Under 42 U.S.C. § 1988(b), the "prevailing party" in an action to enforce civil rights under § 1983 may recover "a reasonable attorney's fee as part of the costs" of litigation. *Hescott v. City of Saginaw,* 757 F.3d 518, 523 (6th Cir.2014). As set forth above, to be considered a prevailing party, a litigant must have "receive[d] at least some relief on the merits of his claim" amounting to "a court-ordered change in the legal relationship between the plaintiff and the defendant." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 603–04 (2001) (internal quotation marks and alterations in original omitted). *Green Party of Tennessee v. Hargett*, 767 F.3d 533, 552 (6th Cir. 2014).

Only when the court of appeals reverses on the merits of the underlying claims does the formerly prevailing party lose this status and along with it their right to fees. *See Am. Atheists, Inc. v. City of Detroit Downtown Dev. Auth.,* 567 F.3d 278, 301 (6th Cir.2009). A reversal not on the merits does not automatically upset the prevailing party's status. *Green*

18

*Party of Tennessee v. Hargett*, 767 F.3d 533, 552 (6th Cir. 2014); *see also Seegull Mfg. Co. v. NLRB,* 741 F.2d 882, 884–86 (6th Cir.1984) (mootness of appeal does not affect party's ability to seek attorney's fees).

"When plaintiffs clearly succeeded in obtaining the relief sought before the district court and an intervening event rendered the case moot on appeal, plaintiffs are still prevailing parties for the purposes of attorney's fees for the district court litigation." *Diffenderfer v. Gomez–Colon,* 587 F.3d 445, 454 (1st Cir. 2009) (affirming fee award to plaintiffs who obtained permanent injunction of Puerto Rico election law, where judgment was mooted by territory's voluntary change to the law); *see also  Roadway Express, Inc. v. Admin. Review Bd., U.S. Dep't of Labor,* 6 Fed.App'x. 297, 301 (6th Cir. 2001) (collecting cases).

Moreover, in assessing fee requests, courts eschew fact-based and speculative inquiries into why government bodies altered their conduct because these inquiries (1) "distract…from," not further, § 1988's goal of encouraging adequate representation for civil rights plaintiffs, and (2) waste scarce judicial resources on questions "which [are] almost impossible to answer."  *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989).  Rather, in considering whether a claimant directly benefitted from litigation, courts measure the plaintiff's gain based on the relief requested in his complaint, not based on the practical significance of the relief obtained.  *See Farrar v. Hobby,* 506 U.S. 103, 111–12 (1992); *see also Hewitt v. Helms*, 482 U.S. 755, 760-61 (1987).

Plaintiff became a "prevailing party" by succeeding on his due process claim. *Tex.*

19

*State Teachers Ass'n,* 489 U.S. at 790–91; *see also Farrar,* 506 U.S. at 111. There can be no dispute that the district court's March 23, 2020 Order was a "clear victory" for Plaintiff, which entitles him to costs and fees under § 1988. *McQueary,* 614 F.3d at 598. The Order caused a material change in the legal relationship between Plaintiff and Defendants, and directly benefitted Plaintiff by modifying Defendants' behavior toward him. *Farrar,* 506 U.S. at 111. Plaintiff succeeded in showing that Defendants' 2018 Policy and 2019 Interim Policy are unconstitutional, securing a victory on behalf of himself as well as many other students subject to the policies. *McQueary,* 614 F.3d at 603. Plaintiff successfully defended against Defendants' appeal of this Order in the Sixth Circuit. He also obtained earlier injunctive relief requiring Defendants to provide him due process. Regardless of any forthcoming vacatur, Plaintiff remains a prevailing party for the purpose of obtaining fees and costs.

## C.    Plaintiff's Lodestar Amount

"The primary concern in an attorney fee case is that the fee award is reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (citing *Blum v. Stenson*, 465 U.S. 886, 893 (1984)); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (noting a "reasonable" fee is one that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case).

In making this determination, courts use the "lodestar" method: "the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate, producing a

lodestar figure; the court can then adjust this figure to reflect the degree of success obtained." *Granzeier v. Middletown*, 173 F.3d 569, 577 (6th Cir. 1999); *see Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401(6th Cir. 1995) ("It is well settled that the "lodestar" approach is the proper method for determining the amount of reasonable attorneys' fees."). As a guideline, courts look to the prevailing market rate, which is defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record. *See Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). In doing so, courts may look to a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests. *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 716 (6th Cir. 2016). The party seeking attorney's fees bears the burden of documenting his entitlement to the award. *Reed*, 179 F.3d at 472.

Plaintiff's lead counsel, Deborah Gordon, seeks a rate of $600 per hour for her work on this difficult case. She charged the client the reduced rate of $350 based on the fact that anything higher would be utterly unaffordable. Indeed, "[w]hether or not [a litigant] agreed to pay a fee and in what amount is not decisive…Such arrangements should not determine the court's decision. *The criterion for the court is not what the parties agree but what is reasonable*." *Blair v. Harris*, 993 F.Supp.2d 721, 734 (E.D. Mich. 2014) (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 92 (1989)) (emphasis in original). Counsel also seeks a rate of $320 and $209 per hour for the work of attorney Elizabeth Marzotto Taylor and associate attorney

Alana Karbal, respectively, which is consistent with the complexity of the issues in this case and the State Bar of Michigan Survey on the Economics of Law Practice, **Exhibit K**.

Any attempt by Defendants to restrict Plaintiff's recovery under §1988 to the four corners of the fee agreement fails as a matter of law. The district courts determine a reasonable fee without regard to any contract between plaintiffs and their counsel. *See United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 504 (6th Cir. 1984) ("the determination of a reasonable fee is to be conducted by the district court regardless of any contract between plaintiff and plaintiff's counsel"). The text of Plaintiff's fee arrangement is irrelevant to the initial lodestar amount. *Blanchard*, 489 U.S. at 94. In drafting §1988, Congress used *Johnson* as its guide but rejected the *Johnson* Court's admonishment that a reasonable fee could never exceed the amount contracted for. *Id.* at 92-93. In *Blanchard*, the Court held that the presence of a pre-existing fee agreement does not impose a ceiling on an award of attorney's fees. *Id.* at 93-94. To the contrary, "[s]hould a fee agreement provide less than a reasonable fee calculated [using the lodestar], the defendant should nevertheless be required to pay the higher amount." *Id.*

Congress intended that in civil rights cases such as this one, defendants should pay a reasonable fee to all prevailing plaintiffs regardless of what the plaintiff is contracted to pay his or her counsel. The analysis under §1988 is not the same as that performed under Rule 37, which makes a prevailing party responsible for "reasonable expenses *incurred*". *Nelson*

22

*v. Ricoh, USA*, 2018 WL 6728392 (E.D. Mich. Mar. 1, 2018) (emphasis added). Ms. Gordon's discounted fee agreement with Plaintiff is not indicative of the prevailing market rate for her hourly fee, but rather the realities of representing a human being with limited financial resources.

### D.    Plaintiff's Requested Award is Reasonable

In determining the reasonableness of the fee charged and the hours incurred, the Court is to consider the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hamlin v. Charter Township of Flint*, 165 F.3d 426 (6th Cir. 1999) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983)); *Geier*, 372 F.3d at 792 (quoting *Hensley*, 461 U.S. at 434 n. 9 and noting factors are subsumed in lodestar).

Plaintiff's attorneys' verified time records and affidavits are attached as **Exhibits A**, **L**, **M**, **P** and **Q**. The following factors demonstrate the reasonableness of these fees.

### 1.    The Customary Fee [2]

---

[2] These facts also support and weigh in favor of the 'experience, reputation and ability of the

In order to determine whether the hourly rates claimed are reasonable, the court looks to "rates prevailing in the community for similar services by lawyers of reasonably comparable **skill, experience and reputation**." *Blum*, 465 at 896, n. 11 (emphasis added).

Ms. Gordon has been a practicing trial attorney for 43 years, specializing throughout that time in discrimination and civil rights violations. **Exhibit C**, Gordon CV.  She previously worked as an Assistant Attorney General, Civil Rights and Civil Liberties Division, for the State of Michigan, and as a trial attorney for the Equal Employment Opportunity Commission. She has been in private practice since 1980. She has been a member and officer of numerous professional organizations. She also has frequently lectured on employment and trial topics, and has contributed to a number of books in these areas.

Ms. Gordon was admitted to the Bar of the United States Supreme Court in 1985. She has been listed in The Best Lawyers in America, Woodward and White, 1987-2020, as one of the top lawyers in Michigan; and has been listed in Michigan Super Lawyers as one of the top 10 attorneys in Michigan. Ms. Gordon has filed and litigated over 230 cases in the USDC Eastern District alone. She has tried over 30 employment or civil rights cases to verdict, and has obtained several multimillion-dollar verdicts. Ms. Gordon has been a cooperating, pro bono attorney for the ACLU of Michigan in several important civil rights cases, including *Sitz v. Michigan State Police*, 443 Mich. 744 (1993), which resulted in the prohibition of drunk driving road blocks in the State of Michigan and *Tisha Prater v. City of Detroit*, 2:08-cv-14339,

---

attorneys' and 'skill requisite to perform the legal service properly' factors.

obtaining relief from discrimination for pregnant Detroit police officers.

Over a decade ago, Judge Paul Borman recognized in *Shuster v. Daimler Chrysler Corp.*, 01-70443 that Deborah Gordon was both "experienced and regarded counsel in this field." **Exhibit D**. Judge George Steeh also recognized Ms. Gordon as "an experienced and highly regarded counsel in the field," and he approved a rate then above the 95th percentile of other local practitioners. **Exhibit E**. In 2009, Judge Marianne Battani awarded Ms. Gordon $400/hour. **Exhibit F**. In 2012, retired Oakland County Judge Barry Howard awarded Gordon $450 per hour. **Exhibit G**. In 2017, Chief Judge Denise Page Hood awarded Ms. Gordon $500 per hour in *Varlesi v. Wayne State University, et al.*,10-14793. **Exhibit H**. On December 18, 2020, a JAMS Arbitrator awarded Ms. Gordon $600 per hour in connection with a lengthy and complex False Claims Act retaliation arbitration.

Additionally, Plaintiff claims $320 an hour for the work performed by attorney Elizabeth Marzotto Taylor. Ms. Marzotto Taylor graduated second in her class, summa cum laude, from Wayne State University Law School while employed full time as a civilian Equal Employment Opportunity Specialist for the U.S. Army. She has worked in litigation at the firm of Deborah Gordon Law for three years. Ms. Marzotto Taylor has provided significant work on a number of complex litigation cases, achieving exceptional results. She has been responsible for multiple briefs filed with the Sixth Circuit Court of Appeals as well as state and federal courts and has argued and won motions for summary judgment in federal court. In late 2020, Marzotto Taylor acted as co-counsel in an 18-day arbitration hearing of a complex, multi-

plaintiff False Claims Act retaliation case that ended in a multi-million-dollar award. On December 18, 2020, then-JAMS Arbitrator and current Wayne County Circuit Judge Mary Beth Kelly awarded Ms. Marzotto Taylor $320 per hour in connection with that matter. Marzotto Taylor is currently admitted to practice in all federal courts of Michigan and the United States Court of Appeals for the Sixth Circuit. She is also a member of the Labor and Employment Section of the State Bar of Michigan and the Michigan Association for Justice. **Exhibit I**, Marzotto Taylor C.V.

Plaintiff further claims $209 an hour for the work performed by Alana Karbal, an associate attorney at Deborah Gordon Law. Ms. Karbal worked in litigation at Deborah Gordon Law for approximately two years. Prior to joining the firm, Ms. Karbal earned her Bachelor's degree from the University of Michigan. She is a graduate of Wayne State University Law School, where she served as Assistant Editor and Note and Comment Editor of the Wayne Law Review. During law school, Ms. Karbal earned the Patrick J. Burkett Memorial Endowed Scholarship for best trial brief for her first-year class and a first-place award for drafting in the Transactional Law Competition. She is currently a member of the State Bar of Michigan, Michigan Association for Justice, the Oakland County Bar Association and the Women Lawyers Association of Michigan. **Exhibit J**, Karbal C.V.

The rates claimed by Plaintiff are consistent with the State Bar of Michigan Survey on the Economics of Law Practice, **Exhibit K**, 2020 State Bar Econ. of Law Practice at 4, 6, which analyzes billing rates as follows, as well as the complexity of the issues in this case:

The rates claimed by Plaintiff are consistent with the State Bar of Michigan Survey on the Economics of Law Practice, **Exhibit K**, 2020 State Bar Econ. of Law Practice at 4, 6-7. The 2020 report analyzes billing rates as follows, as well as the complexity of the issues in this case:

| By Field of Practice | Mean | 95th Percentile |
|---|---|---|
| Employment Law (Plaintiff) | $345 | $525 |
| Personal Injury (Plaintiff) | $439 | $750 |

| By Years in Practice | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|
| 1 to 2 years | $233 | $265 | $350 |
| 3 to 5 years | $242 | $275 | $365 |
| Greater than 35 years | $317 | | $600 |

This is not an education law case dealing with the laws governing school districts, teachers, FERPA and the like. It is a constitutional case that played out in a school setting. Suing the government under 28 USC § 1983 requires the same skills and knowledge of the same body of law whether the violation occurs in the educational or the employment context. Title VII, Title IX, and § 1983 all share a common legal framework. Nor is there any law requiring the Court's adhesion to rigid categories to arrive at a reasonable hourly rate. *See Doe v. Ohio*, 2020 WL 728276, at *1, 11 (S.D. Ohio Feb. 12, 2020), *report and recommendation adopted*, 2020 WL 996561 (S.D. Ohio Mar. 2, 2020) (adopting market rates ranging from over $500/hour to over $600/hour for attorneys with expertise in disability rights and complex litigation in a case regarding the right to a "free appropriate public education"

under the Individuals with Disabilities Education Act and Section 504 of the Rehabilitation Act of 1973). Moreover, a suit for money damages is one for personal injury.

The $485 per hour "civil rights" category previously touted by Defendants is well below the rate Gordon was awarded the last time she obtained fees under § 1988 against a university—and that was three years ago. (ECF 95-13; 95-9). By contrast, according to Reuters, the average partner billing rate at Jones-Day, one of Defendants' counsel's firm, is $950 per hour. Reynolds Holding, *Breakingviews – Holding: $1,745-an-hour lawyers due for disruption.* Reuters. https://www.reuters.com/article/us-usa-lawyers-breakingviews/breakingviews-holding-1745-an-hour-lawyers-due-for-disruption-idUSKCN1IQ2GN (last visited April 27, 2020). *See Trustees of Sheet Metal Workers v. Traverse Bay Roofing Co.,* 2019 WL 1474023 (E.D. Mich. Mar. 18, 2019) (quoting *Trustees of N.W. Ohio Plumbers and Pipefitters Pension Plan v. Helm & Associates, Inc.,* 2012 WL 3619827, at *2 (N.D. Ohio, Aug. 21, 2012)) (holding that the prevailing market rate can be ascertained in a number of ways, including citations to prior precedents showing reasonable rate adjudications for comparable attorneys or cases and rates charged by the opposition party). Moreover, this Court recently awarded Defendants' counsel $380 per hour in a § 1983 and Title IX matter. By contrast, Gordon has been practicing 29 years longer than Defendants' lead counsel, and successfully litigated significantly more § 1983 during those decades. *See* 2:18-cv-13321, ECF 153-2; *Lipian v. Univ. of Michigan,* 2020 WL 1164190, at *5 (E.D. Mich. Mar. 11, 2020); ECF 95-2. Gordon's three additional decades worth of experience naturally

28

require a higher hourly rate. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984) (to determine rates, courts should look to prevailing rates for lawyers with comparable skill and experience). Finally, mere weeks ago, Ms. Gordon was awarded a rate of $600 per hour by a JAMS Arbitrator.

### 2.   Time and Labor Involved

The time and labor involved in obtaining this Court's March 23, 2020 Order, those previous to it, and securing the dismissal of Defendants' latest appeal, were significant. Plaintiff was forced file a lawsuit against a University that refused to comply with the Sixth Circuit's ruling in *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017); file a Motion for Pseudonym and a complicated and detailed Motion for a TRO and PI; respond to Defendants' Appeal of this Court's July 6, 2018 Order granting in part and denying in part Plaintiff's Motion for TRO and PI; file a complex and intricate cross-appeal to Defendants' Appeal of this Court's July 6, 2018 Order; oppose a Motion to Quash/Dismiss Cross-Appeal and file a Motion for Leave to File Sur-Reply to Defendants' motion based on critical, newly acquired facts; respond to Defendants' Motion to Dismiss Second Amended Complaint and Defendants' Notice of Intent to Rely on Additional Authority; file a Motion for Partial Summary Judgment and oppose Defendants' Motion for Leave to File Sur-Reply to Plaintiff's motion; respond to two Emergency Petitions for Writ of Mandamus and an Emergency Motion to Stay Settlement Conference in the Sixth Circuit Court of Appeals; respond to a Motion for Leave to File Reply in Support of Petition for Writ of Mandamus; engage in settlement discussions with

Defendants who had little to no interest in settlement; and oppose an Emergency Motion for Stay of District Court's Ongoing Injunction Action.

As this Court's docket reflects, there were over a dozen substantive briefs and motions filed by Counsel. (ECF No. 2, 4, 23, 38, 48, 53, 55, 59, 62, 64, 69, 79, 86, 89). This does not include the following filings by Counsel in the Sixth Circuit Court of Appeals: Case No. 19-1636, RE 11, 16, 18; Case No. 18-1870: 28, 33, 34; Case No. 18-1903, RE 28, 30, 32; Case No. 20-1248, RE 18; Case No. 20-1293, RE 14, 22. These pleadings applied multifaceted and nuanced legal frameworks to a complex fact pattern.

Defendants have virtually unlimited resources. They were represented by three large corporate law firms as well as the University of Michigan's Vice President and General Counsel. By contrast, Deborah Gordon has handled Plaintiff's case almost entirely by herself with assistance from the associates at her small firm. Verified time records for Deborah Gordon Law are attached hereto as **Exhibit A**.  All time expended was reasonable and necessary to the processing of this case and by maintaining a lean staff on this case, Counsel reduced the risk of duplicative work. *See Hensley*, 461 U.S. at 434 ("Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary…"). Indeed, the hours expended by Deborah Gordon Law in this matter are understated. As set forth in that verification, the actual hours expended by the firm are in all likelihood significantly higher than those documented in the attached time sheets, as Plaintiff's counsel spent many additional hours, not tracked by the firm, in phone

calls with the client, discussions between counsel about the case, etc.

    a.    <u>Plaintiff Provided Sufficient Documentation of Counsel's Time
Expended</u>

In support of his Motion for Attorneys' Fees, Plaintiff submitted verified time records reflecting billing data compiled contemporaneously throughout this litigation. That this data was compiled into one document in support of this motion merely provides ease in the assessment of the reasonableness of the fee award.

In *Imwalle v. Reliance Med. Prod., Inc.*, the Sixth Circuit explained that

> "[t]he key requirement for an award of attorney fees is that the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation.... Although counsel need not record in great detail each minute he or she spent on an item, the general subject matter should be identified."

515 F.3d 531, 553 (6th Cir. 2008). The Sixth Circuit rejected defendants' argument, also raised here, that entries for "conference with," "research," "review file," and "review documents" were too vague. *Imwalle*, 515 F.3d at 553. In *Imwalle*, plaintiff's counsel's documentation specified, just as Plaintiff's documentation does, the date that time was billed, the individual who billed the time, the fractional hours billed, and the specific task completed. Just as in *Imwalle*, the time entries in Plaintiff's statement are listed separately and indicate the general nature of the tasks performed. *Id.* at 553-54.

The Sixth Circuit rejected the same conclusory arguments Defendants make here as to the specificity of the time entries, holding that, "explicitly detailed descriptions are not

required," and accepting documentation noting "only the briefest description of the task completed." *Id.* at 553-54 (approving entries for "research," "review file," "review documents"). Plaintiff's counsel's billing entries, when read in the context of the statement as a whole and in conjunction with the timeline of the litigation, support a determination that the hours charged were actually and reasonably expended in the prosecution of the litigation. *Id.; see also McCombs v. Meijer, Inc.,* 395 F.3d 346, 360 (6th Cir. 2005) (affirming district court's finding that entries were sufficient even if description for each entry was not explicitly detailed); *see also City of Riverview v. Operating Engineers Local 324 Pension Fund, et. al.,* 2019 WL 8301970, at *5 (E.D. Mich. Nov. 14, 2019), *report and recommendation adopted sub nom. City of Riverview v. Operating Engineers Local 324 Pension Fund,* 2020 WL 1443203 (E.D. Mich. Mar. 23, 2020) (holding that entries for "review new complaint and prior motion; research for and draft motion to dismiss" were sufficiently detailed).

In *Beard v. Hawkins,* the Court accepted documentation like that submitted here. Defendants in that case submitted invoices with the amounts of fees billed redacted—in other words, documents summarizing the number of hours expended by the attorneys. WL 2590344, at *2 (E.D. Mich. May 22, 2017), *report and recommendation adopted sub nom. Beard by & through Ford v. City of Southfield,* 2017 WL 2572179 (E.D. Mich. June 14, 2017). Similarly, in *Anderson v. Wilson,* 357 F. Supp. 2d 991, 999 (E.D. Ky. 2005), the court accepted as sufficient "itemized statements describing the subject matter, the attorney, the time allotment, and the charge for all work done on Plaintiffs' case." Similarly, Plaintiff

submitted a statement showing the hours expended by his attorneys, describing the subject matter, attorney, time allotment and subject of each entry.

Plaintiff's statement does not contain "block billing." (ECF 113, Page ID # 2980). "[B]lock billing refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *City of Riverview,* 2019 WL 8301970, at *5 (quoting *Potter v. Blue Cross Blue Shield of Michigan,* 10 F. Supp. 3d 737, 763 (E.D. Mich. 2014)). There are no entries in Plaintiff's supporting documentation that merely contain the total daily time spent on Plaintiff's case.

In *Perry v. AutoZone Stores, Inc.*, 624 F. App'x 370, 373 (6th Cir. 2015), plaintiff's counsel included more than a dozen identical entries stating "prepare and draft appellee brief'" totaling an "inordinate" 143 hours. Under these circumstances, the Court found that the entry description in question was not sufficiently detailed. Plaintiff's counsel's time records do not contain any such exorbitant or repetitive entries, and describe with sufficient detail the work that was done. In *Potter v. Blue Cross Blue Shield of Michigan*, the Court reduced the fee award by 10% across the board because the time entries included multiple, seemingly unconnected tasks, and did not specify how much time was allotted to each. For example, 6.75 hours were allotted to "research regarding administrative record; emails," but did not indicate how much time was dedicated to the research, and how much to the emails. 10 F. Supp. 3d 737, 764–65 (E.D. Mich. 2014). By contrast, Plaintiff's time entries are broken down

discretely by task. Moreover, Plaintiff's counsel's time entries indicate the subject matter of communications and tasks. *Potter*, 10 F. Supp. 3d at 764–65 (E.D. Mich. 2014).  Plaintiff's entries are sufficiently specific and detailed.

Nor does Plaintiff's statement contain duplicative entries. As this Court has noted, "[m]ultiple-lawyer litigation is common and not inherently unreasonable." *City of Riverview v. Operating Engineers*, 2019 WL 8301970 (E.D. Mich. Nov. 14, 2019).

Significantly, this Court recently determined that the type of supporting documentation Plaintiff proffers here is sufficient support for the award of attorney fees under § 1988. On July 21, 2017, Chief Judge Denise Page Hood awarded Plaintiff attorney fees under § 1988 in the case of *Varlesi v. Wayne State Univ., et. al.* ECF 95-9. Chief Judge Hood's grant of attorney fees and costs in that case was predicated on virtually identical documentation as that which was proffered in support of Plaintiff's Motion for Attorney Fees in this case. ECF 116. The Court accepted the verified documentation plaintiff submitted reflecting a summary of the hours expended throughout the litigation. Defendants' conclusory allegations that the award requested is excessive and that Plaintiff's counsel employed poor billing judgment do not suffice to undermine the award of fees requested. *Imwalle*, 515 F.3d at 553.

Defendants' counsel also recently submitted documentation similar to that which Plaintiff provides here in support of their request for attorney fees in another § 1983 and Title IX case. Defendants' documentation substantiating their request for fees did not consist of copies of bills. Rather, they submitted a spreadsheet summarizing their time, which is virtually

34

identical to Plaintiff's substantiating documentation in this case. **Exhibit R**. This Court found the documentation was of sufficient probative value. Plaintiff's virtually identical substantiating documentation, is similarly of sufficient detail and probative value to enable the Court to determine with a high degree of certainty that Plaintiff's hours were actually and reasonably expended.

### 3.   The Amount Involved and the Results Achieved

The most crucial factor in ascertaining the size of a reasonable attorney fee is the degree of success attained. *Hensley*, 461 U.S. at 436. Although district courts have discretion in determining the proper award, they must "consider the relationship between the extent of success and the amount of the fee award." *Id.* at 438. The "significance of the overall relief obtained by the plaintiff" influences the reasonableness of the time expended on the litigation. *Id.* at 435.  As set forth above, Plaintiff received the full relief sought—summary judgment as to his due process claim; his transcript and degree from the University; and an order declaring that Defendants' 2018 Policy is unconstitutional, the 2019 Policy is deficient, and Plaintiff is entitled to a live hearing with the opportunity to cross-examine witnesses and the Claimant. This relief is momentous as it personally relates to Plaintiff, but also as to future University students accused of sexual misconduct whose due process rights very likely may have otherwise been violated.

As Plaintiff's Renewed Verified Costs Itemization, **Exhibit B**, reveals, Plaintiff invested over $8,883.66 in costs in this matter to lodge and defend his due process claim.  Based on

the excellent achievements and results obtained, Plaintiff seeks recompense for all attorneys'

fees and costs associated with this substantial investment.

### 4. The Difficulty of the Case and the Skill Requisite to Perform the Legal Service Properly

This case has been very difficult in several respects.  First, it involves a difficult,

complex area of the law.  Second, it has a complicated procedural history, being back and

forth from the Sixth Circuit, three times. Third, the case involves a convoluted adjudicatory

process and a Sexual Misconduct Policy that is literally in flux, as well as Defendants who

continue to disregard the law and have unlimited resources. Fourth, the dispositive issues in

this case are complex and have hinged on nuanced aspects of constitutional and statutory

law. They also involve a rather passionate political climate. As set forth above, Ms. Gordon

has been very successful in her representation of Plaintiff despite these obstacles, and she

has done so almost entirely alone. Thus, the difficulty of this case also weighs in favor of a

full compensatory award.

### 5. The Undesirability of the Case

Plaintiff's counsel's office took this case despite the factors weighing against doing so.

As acknowledged in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir.

1974), the case from which the lodestar factors originate, "[c]ivil rights attorneys face

hardships in their communities because of their desire to help the civil rights litigant…

Oftentimes his decision to help eradicate discrimination is not pleasantly received by the

community or his contemporaries." This holds especially true for this case, as Ms. Gordon is

defending the constitutional rights of an individual who has been accused of sexual misconduct. Section 1983 claims are inherently difficult, involving complicated legal issues and the defense of qualified immunity.

### 6.    The Nature and Length of the Professional Relationship with the Client

Ms. Gordon has been representing Plaintiff for nearly two years and throughout this period of time, Plaintiff has been a student at the University. Given the nature of this case, and the fact that Plaintiff was a student—a young person attempting to obtain an education in the face of an unjust process—a great deal of additional attorney time has been expended that is not accounted for here.

### E.    Plaintiff's Costs were Reasonably Expended and are Recoverable

On April 7, 2020, pursuant to 28 U.S.C. § 1920, Plaintiff filed a Bill of Costs in the amount of $807.00. (ECF No. 94). Plaintiff inadvertently excluded the costs the court reporter's fees for the June 28, 2018 hearing transcript, which totaled $442.25. On April 8, 2020, the Clerk allowed $400.00 of the sought costs, but disallowed Plaintiff's request for the court reporter's fees ($272.00) and courier fees ($135.00). (ECF No. 96).

With respect to the court reporter fees, the Clerk noted that Plaintiff had not included documentation supporting how the corresponding hearing transcript was used by him. *Id.*, Pg. ID 2740. According to the Court's Bill of Costs Handbook, Section II (C) p. 3, the prevailing party is to provide the Clerk with information concerning how the transcript was utilized in the case (i.e., if used in motion practice, the title of the motion and the date it was filed and, if

applicable, the exhibit or attachment number.)

Attached hereto at **Exhibit B** is a Renewed Itemized Bill of Costs, which includes all costs Plaintiff seeks, including the $400.00 already awarded to Plaintiff by the Clerk on April 8, 2020. (*See* ECF No. 96). **Exhibit B** sets forth precisely how and when the June 28, 2018 and November 21, 2019 hearing transcripts for which Plaintiff sees costs were utilized in this case. *See* **Exhibit B**, Plaintiff's Supplemental Attachment to Bill of Costs. Additionally, **Exhibit B** contains documents that support the costs of obtaining these transcripts.

Section 1988 allows Plaintiff to recover costs for "incidental and necessary expenses incurred in furnishing effective and competent representation," *Northcross v. Bd. of Ed. Of Memphis City Sch.*, 611 F.2d 624, 639 (6th Cir. 1979), *holding modified by Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268 (6th Cir. 1983). This has been held to include reasonable photocopying and other costs such as were requested by Plaintiff. *Id.; see also Cleveland Bd. of Realtors v. City of Euclid*, 965 F.Supp. 1017 (N.D. OH 1997); *see also Communities for Equity v. Michigan High School Athletic Assn.*, 2008 WL 906031 (W.D. Mich. Mar. 31, 2008) (photocopying expenses, messenger services, postage, phone use, paralegal expense, travel costs, on line research recoverable under civil rights attorney fee statute, 42 U.S.C. § 1988 if reasonable).

Conclusory allegations that the award requested is excessive does not suffice to undermine it. *Imwalle*, 515 F.3d at 553. Furthermore, courts show deference to counsel for the prevailing party when determining what number of copies was reasonable. *Northcross,*

611 F.2d at 642 (the Court will not "second-guess" an attorney's decision on how many copies are necessary).

In *Community Schools,* Plaintiff sought $31,000 in photocopying and printing costs at a rate of 20 and then 25 cents per page. The court found "these copying costs are obviously reasonable litigation costs. The Court concluded that all of the requested photocopying and printing costs are reasonable and should be reimbursed in full." *Communities for Equity v. Michigan High Sch. Athletic Ass'n,* No. 1:98-CV-479, 2008 WL 906031, at *22 (W.D. Mich. Mar. 31, 2008). As Magistrate Judge Hluchaniuk found in his Report and Recommendation in *Varlesi v. WSU, et al.,* 2:10-cv-14793-DPH-MJH, ECF No. 163 (2013):

> "… As a practical matter, it would be difficult to document what every photocopy made in the course of pursuing a lawsuit of this nature was used for. This is not to say it would be impossible to do that when a large number of copies are made for a relatively discrete purpose. For example, on May 4, 2011, plaintiff identified 5,050 copies having been made over the prior two months and on January 23, 2013, plaintiff identified 6,160 copies having been made over a little more than a month. It is reasonable to assume that in those time periods some specific purpose for making a significant number of copies could have been documented. However, like the judge in *Citizens,* the undersigned finds that the overall amount of photocopying in this case (litigation that took over two years) was reasonable and that "some deference" should be given to counsel."

In further support of Plaintiff's requested costs, Plaintiff attaches to **Exhibit M** all postage spreadsheets associated with this case. The usage reports and associated documentation for copying costs associated with this case total approximately 100 pages and are not included with this briefing because of their size. These documents are available for review by Defendants and the Court upon request.

Plaintiff's counsel keeps one hard copy of each pleading for its hard copy file, and prints copies for each of the three attorneys working on this case as necessary. Plaintiff's counsel also prints hard copies of cases cited in pleadings for preparation for oral argument, and as needed while writing briefs. The pleadings filed on the lower court's docket total approximately 2,904 pages. Each of the 13 pleadings that included an index of authorities cited on average 23 cases per pleading. The substantive pleadings filed on the appellate docket totaled another roughly 680 pages alone. Courtesy copies of pleadings and exhibits for the Court were also generated by Plaintiff's counsel pursuant to the Local Rules. Plaintiff's counsel also printed copies of working drafts of documents, as well as relevant OIE investigation documents, University policies, correspondence, and research documents such as pleadings and decisions from other district courts. Plaintiff's supporting documentation amply demonstrates that the costs requested were necessary and reasonable. *McCombs*, 395 F.3d 346, 361 (6th Cir. 2005) (sufficient that supporting documents presented general descriptions of the charges; and that costs were "itemized" in an affidavit). Plaintiff's costs were necessarily and reasonably expended and are recoverable.

F. **Plaintiff's Success on his Due Process Claim Necessitates a Fully Compensatory Fee**

Plaintiff is entitled to a fully compensatory fee despite the fact that he did not prevail on his Title IX gender discrimination claim (Count II), and that this Court declined to exercise supplemental jurisdiction over Plaintiff's ELCRA claims (Counts III and IV). The Supreme Court has made it clear that "the court's rejection of...certain grounds [for relief] is not a

40

sufficient reason for reducing a fee" where the "claims for relief involve a common core of facts" and "related legal theories." *Hensley*, 461 U.S. at 435. Instead, in such situations it is appropriate to "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.; see also Deja Vu v. Metropolitan Government of Nashville and Davidson County, Tennessee*, 421 F.3d 417, 423 (6th Cir. 2005) ("[W]e have repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed.").

Plaintiff's claims arose out of a common core of facts and common course of conduct: Defendants' handling of a sexual misconduct complaint brought against him and its adjudication of said complaint under and pursuant to the University's unconstitutional 2018 Policy. Although Plaintiff asserted various legal theories, his Title IX and ELCRA claims were not "entirely distinct and separate" from his 42 U.S.C. § 1983 claim on which Plaintiff succeeded, and the facts and theories in this case are so intertwined that it would be extremely difficult if not impossible to divide the hours spent on a claim-by-claim basis.

It is well settled that a fee award should not be reduced because the plaintiff failed to prevail on every contention raised in his lawsuit. *Hensley,* 461 U.S. at 435. District courts have discretion in making this judgment. *Id.* at 436. For example, in *McCombs v. Meijer, Inc.,* plaintiff brought claims of sexual harassment and retaliation under Ohio Revised Code § 4112, Title VII of the Civil Rights Act of 1964 ("Title VII"), and Ohio public policy, as well as sexual harassment under Ohio common law. The public policy claim was never presented to

the jury, and plaintiff did not prevail on the retaliation claims or the sexual harassment claim under Ohio common law. 395 F.3d 346, 352 (6th Cir. 2005). The Sixth Circuit upheld the district court's decision not to reduce the fee award despite the fact that the plaintiff did not prevail on her retaliation claims, because the quantum of work would be approximately the same. *McCombs*, 395 F.3d at 360–61.

Here, Plaintiff did not seek attorney fees for the work performed solely on his ELCRA and Title IX claim. To the extent that there was overlap between work performed on these claims and his due process claim (for example in responding to Defendants' arguments regarding subject matter jurisdiction), fees are still fully compensable under § 1988. *Hensley*, 461 U.S. at 435 (where claims for relief involve common core of facts and are based on related legal theories, counsel's time will be devoted generally to the litigation as a whole, and the district court should not view the suit as a series of discrete claims, but rather focus on the significance of the overall relief obtained).

IV.    Conclusion

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant Plaintiff's Motion and enter an Order awarding Plaintiff attorneys' fees and costs including:

A.   Attorney fees (Deborah Gordon Law) in the amount of $460,467.27. **Exhibit A**.

B.   Costs (Deborah Gordon Law) in the amount of $8,883.66. **Exhibit B**.

Dated:  January 8, 2021                     Respectfully submitted,

**DEBORAH GORDON LAW**
<u>/s/ Deborah L. Gordon (P27058)</u>

42

Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing and service of said documents to all parties through their counsel of record.

**DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com