UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE,

      Plaintiff,                  Civil Action No.: 18-11776
                                        Honorable Arthur J. Tarnow
v.                               Magistrate Judge Elizabeth A. Stafford

UNIVERSITY OF MICHIGAN,
*et al*.,

      Defendants.
_____/

## REPORT AND RECOMMENDATION ON POST-JUDGMENT MOTIONS
## [ECF NOS. 159, 162, 167, 169, 171]

### I.    INTRODUCTION

Plaintiff John Doe sued the University of Michigan, Board of Regents of the University of Michigan, Pamela Heatlie, Robert Seller, Martin Philbert, Erik Wessel, Laura Blake Jones, E. Royster Harper, Suzanne McFadden, and Paul Robinson for violating his due process rights under 42 U.S.C. § 1983.  ECF No. 47.  Post-judgment, the Honorable Arthur J. Tarnow referred several motions to the undersigned for hearing and determination under 28 U.S.C. § 636(b)(1)(B).  ECF No. 177.  But this Court must prepare a report and recommendation on post-judgment

motions under § 636(b)(3).  *Fharmacy Records v. Nassar*, 465 F. App'x

448, 455 (6th Cir. 2012).

This case stems from an investigation of a female student's complaint

to the Office of Institutional Equity (OIE) about an alleged nonconsensual

sexual encounter she had with Doe.  ECF No. 90, PageID.2575.  Doe

alleged that the University's policies for adjudicating complaints of sexual

misconduct violated students' due process rights under the Fourteenth

Amendment.  *Id.*, PageID.2574.  As described below, Judge Tarnow

entered a judgment in favor of Doe, but the Sixth Circuit ordered that the

judgment be vacated because the case became moot.  On remand, Doe

filed a renewed motion for attorneys' fees and both parties filed other

related motions.  For the reasons below, the Court recommends that:

- Doe's renewed motion for attorneys' fees and costs under 42 U.S.C.

  § 1988 (ECF No. 159) be **GRANTED IN PART**, and that he be

  awarded $410,853.91 in attorneys' fees and costs.

- Defendants' motion to compel production of billing records (ECF No.

  162) be **DENIED**;

- Doe's ex parte motion for leave to file excess pages for his reply to his renewed motion for attorneys' fees and costs (ECF No. 167) be **GRANTED**;[1]

- Defendants' ex parte motion for leave to file excess pages for their reply in support of their motion to compel production of billing records (ECF No. 169) be **GRANTED**; and

- Defendants' motion for leave to file sur-reply to Doe's reply in support of his motion for attorneys' fees and costs (ECF No. 171) be **GRANTED**.

## II.    ANALYSIS

### A. Defendants' Motion to Compel Production of Billing Records

After Doe filed his renewed motion for attorneys' fees, defendants moved to compel Doe to produce his counsel's fee agreement and contemporaneous billing records.  ECF No. 162.  Doe then produced his fee agreement, so defendants now seek only billing records.  ECF No. 170.  Defendants assert that Doe's time records were "created after the fact . . . rather than contemporaneously with the time billed," and are thus

---

[1] Under LR 7.1(d)(3), the text of a reply brief, including footnotes and signatures, "may not exceed 7 pages."  But the Court finds that the parties' requests to file longer briefs, ECF No. 167; ECF No. 169, were warranted here.

insufficient to accurately determine the time reasonably expended.  ECF

No. 162.  Defendants also claim that Doe's materials are "unreliable and

vague," which make it impossible to determine "what amount Doe actually

spent on legal fees, how long his counsel actually spent working on his

case, and . . . whether the fee request is reasonable."  ECF No. 170.

       The motion to compel should be denied.  "A request for attorney's

fees should not result in a second major litigation."  *Hensley v. Eckerhart*,

461 U.S. 424, 437 (1983).  And when billing records are unreliable or

imprecise, the remedy is to reduce the attorneys' fees awarded.  *See*

*Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008).

As described below, the Court recommends that Doe's requested

attorneys' fees be reduced because some entries on his billing chart are

vague.

### B. Defendants' Motion for Leave to File Sur-Reply about Doe's Motion for Attorneys' Fees and Costs

       Doe attached a revised billing chart to his reply for his motion for

attorneys' fees.  ECF No. 168-4.  Defendants then moved for leave to file a

sur-reply to address the revised chart, reasoning that it was improper for

Doe to attach a brand-new billing chart to his reply.  ECF No. 171; ECF No.

171-1.  Defendants cite opinions stating that a party may not raise a new

issue in a reply brief.  *See, e.g.*, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d

546, 553 (6th Cir. 2008).  But defendants said that, if the Court were inclined to consider the revised billing chart, their sur-reply should be permitted.  ECF No. 171-1, PageID.4838.  The Court has considered Doe's revised billing chart and thus agrees that defendants sur-reply should be permitted.  "Although the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances, especially when new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated."  *Key v. Shelby Cty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (citation and internal quotation marks omitted).

After defendants moved to file their sur-reply, Doe filed yet another new billing chart, adding over $6,000 in attorneys' fees, and making corrections.  ECF No. 172-1.  He also responded to defendants' motion for leave to file a sur-reply that was effectively a sur-sur-reply and that included new exhibits.  ECF No. 173.  Doe did not move for leave to file those documents.  "As a matter of litigation fairness and procedure," Doe's new documents should not be considered because defendants have had no chance to respond.  *Scottsdale*, 513 F.3d at 553 (citation and internal

quotation marks omitted).  Thus, the analysis below addresses the billing

chart Doe included with his reply brief.  ECF No. 168-4.

### C. Motion for Attorneys' Fees and Costs

### 1.

Before turning to the merits of Doe's renewed motion for attorneys'

fees, the Court will address defendants' argument that the motion should

be denied for lack of subject matter jurisdiction.  ECF No. 164,

PageID.4251-4262.  Defendants contend that Doe never had Article III

standing, that his claims were never ripe, and that he never suffered an

injury that was fairly traceable to defendants' actions.  *Id*.  Judge Tarnow

has twice rejected defendants' jurisdictional arguments.

First, in July 2018, when granting in part Doe's motion for a

temporary restraining order, Judge Tarnow found the matter ripe for

adjudication.  *Doe v. Univ. of Michigan*, 325 F. Supp. 3d 821, 826 (E.D.

Mich. 2018), *vacated and remanded*, No. 18-1870, 2019 WL 3501814 (6th

Cir. Apr. 10, 2019).  Judge Tarnow reasoned that, under the University's

2018 policy for sexual assault claims, Doe faced an immediate risk of

expulsion without a hearing and other due process protections.  *Id.* The

Sixth Circuit vacated the July 2018 order so that Judge Tarnow could

consider *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) and the University's

6

interim policy changes.  2019 WL 3501814 at *1.  The Sixth Circuit's order did not question Judge Tarnow's findings on subject matter jurisdiction, and its silence on that issue speaks volumes.  "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, (2006).

Judge Tarnow again rejected defendants' challenge to subject matter jurisdiction in March 2020.  *Doe v. Univ. of Michigan*, 448 F. Supp. 3d 715, 724-27 (E.D. Mich. 2020), *appeal dismissed and remanded*, No. 20-1293, 2020 WL 9171175 (6th Cir. Dec. 23, 2020), *and vacated*, No. 18-11776, 2021 WL 3482950 (E.D. Mich. Mar. 22, 2021).  He said that the case was ripe for judicial review, and not merely premised on a hypothetical future injury.  *Id*. at 725.  He reasoned that, under the University's 2018 policy, it had adjudicated him without a hearing.  *Id*. at 725.  And although the University had enacted a 2019 interim policy, the case was not moot because the interim policy would "soon be replaced with an Umbrella Policy with unknown ramifications and procedural safeguards."  *Id*. at 726.

Judge Tarnow found that the University "failed to meet its burden of proving that the challenged policy will not be re-enacted. Plaintiff's due process claim is not moot."  *Id.* at 727.  He noted that Doe's case could

7

"only be mooted if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Id.* at 726 (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968) (internal quotation marks omitted). Judge Tarnow found the possibility of a pre-hearing suspension unconstitutional, and he ordered that the University provide Doe with a live hearing and the opportunity to cross-examine his accuser and other witnesses.  *Id*. at 733.  He thus granted in part Doe's motion for partial summary judgment.  *Id.*

The University later tried to schedule a hearing on the accusation against Doe, but his accuser no longer wished to proceed with her complaint, so the University permanently closed the investigation.  *See* ECF No. 150, PageID.3911.  On appeal, the Sixth Circuit found defendants' appeal of Judge Tarnow's entry of judgment moot because "[t]he University has since permanently closed his proceedings; thus, there is no relief we may grant that will make a difference to Doe's legal interests."  *Doe v. Univ. of Michigan*, No. 20-1293, 2020 WL 9171175, at *1 (6th Cir. Dec. 23, 2020).  The Sixth Circuit did not reach defendants' argument that Judge Tarnow never had jurisdiction because the University did not have enough legal interest for the appeal to proceed.  *Id.*

In their response to Doe's renewed motion for attorneys' fees, defendants mostly repeat arguments that Judge Tarnow rejected. *See* ECF No. 49, PageID.1593-1601; *Doe*, 448 F. Supp. 3d at 724-27. They add an argument that the fact that investigation against Doe is now closed is proof that he never had an injury. ECF No. 164, PageID.4256. But the Sixth Circuit found that the case *became* moot, not that it was moot from the beginning. *Doe*, 2020 WL 9171175 at *2. To decide whether to "simply dismiss the appeal, leaving the underlying judgment intact, or vacate the judgment," depended on the equities of the case, including whether defendants caused the case to become moot. *Id*. When assessing the equities, the Sixth Circuit said, "The defendants are not wholly responsible for Doe's case becoming moot, given that the district court required that Doe be given the opportunity to cross-examine the claimant and the claimant now declines to participate in the proceedings." *Id.* It is thus beyond reasonable dispute that the Sixth Circuit considered the accuser's decision to abandon the investigation as the inflection point for mootness.

And when remanding the case, the Sixth Circuit said that the vacatur of the judgment did not "'necessarily disturb [Doe's] status as a 'prevailing party' for purposes of attorney's fees.'" *Id.* at *2 (quoting *Fialka-Feldman v. Oakland Univ. Bd. of Trs*., 639 F.3d 711, 717 (6th Cir. 2011); *see also*

9

*McQueary v. Conway*, 614 F.3d 591, 595 (6th Cir. 2010) (finding that the district court erred in denying § 1988 attorney's fee to plaintiff who prevailed in obtaining a preliminary injunction even though action later became moot because of a change in the law).  As noted, the Sixth Circuit declined to address defendants' claim that the judgment was void ab initio because of a lack of subject matter jurisdiction.  *Doe*, 2020 WL 9171175 at *1.  But if the court had serious questions about Judge Tarnow's exercise of jurisdiction, it might have said so.  *See Lynch v. Leis*, 382 F.3d 642, 648 (6th Cir. 2004) (finding that an appellant court must vacate an award of attorney's fees if the district court lacked subject matter jurisdiction over the litigation); *O'Neill v. Coughlan*, 490 F. App'x 733, 737 (6th Cir. 2012) (distinguishing an award of attorney's fees in a case that became moot from one in which jurisdiction was lacking from the beginning).

For these reasons, this Court is not persuaded by defendants' argument that Judge Tarnow erred in finding that he had subject matter jurisdiction to consider Doe's claims.

**2.**

The Court next addresses whether Doe is the "prevailing party" under § 1983, which would allow him to recover "reasonable attorney's fee as part of the costs."  § 1988(b).  To be a prevailing party, Doe "must receive at

least some relief on the merits of his claim such as a judgment, an injunction, or a consent decree."  *Horner v. Kentucky High Sch. Athletic Ass'n*, 206 F.3d 685, 698 (6th Cir. 2000).  He must have succeeded on any significant issue in litigation which achieves some of the benefit he sought in bringing suit.  *Farrar v. Hobby*, 506 U.S. 103, 109 (1992).  To assess Doe's claim that he is the prevailing party, this Court must "look for a court-ordered, material, enduring change in the legal relationship between the parties."  *Miller v. Caudill*, 936 F.3d 442, 448 (6th Cir. 2019).  The essential inquiry into prevailing party status is the "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."  *Sole v. Wyner*, 551 U.S. 74, 82 (2007).

The Court agrees with Doe that he has achieved court-ordered, material, and enduring change in the legal relationship between him and the University, meaning that he is the prevailing party.  First, in a June 14, 2018 order, Judge Tarnow granted the portion of Doe's motion for temporary restraining order and required the University to release his official transcript.  ECF No. 19, PageID.270.  In the afternoon of June 11, 2018, an hour before a telephonic status conference with Judge Tarnow, the University had offered to release the transcript, but "with a modest notation reading 'Subject to Disciplinary Investigation,' or something similar

11

(and factually accurate) that we might negotiate."  ECF No. 164-1,

PageID.4293.  The University then resisted Doe's argument for the release

of a "clean transcript" during the telephonic conference.  ECF No. 20,

PageID.279-281, 285-286.  Judge Tarnow gave the University until the next

day to notify the Court and Doe's counsel whether the University would

release the clean copy of the transcript.  *Id*., PageID.286.

The University did not notify Judge Tarnow of its decision the next

day, so he "construe[d] their silence as [a] stipulation to the resolution of"

that issue and ordered that the University "immediately release" Doe's

official transcript after he "heard nothing" from the parties.  ECF No. 19,

PageID.270.  Thus, Doe prevailed in having his official transcripts released

without a notation stating that he was the subject of a disciplinary

investigation.

The next month, Judge Tarnow entered a preliminary injunction

requiring that the University provide Doe with a live hearing and the ability

to engage in circumscribed cross-examination as soon as practicable.  ECF

No. 30, PageID.743.  But the disciplinary hearing did not go forward

because, in August 2018, Judge Tarnow granted Doe's motion to stay all

proceedings, including the University's investigation into Doe's alleged

conduct, pending the University's interlocutory appeal of the preliminary

injunction.  ECF No. 41.  The Sixth Circuit vacated the preliminary injunction in April 2019 because, after its decision in another case about the same policies for sexual misconduct investigations, the University had adopted a new interim policy.  *Doe v. Bd. of Regents of Univ. of Michigan*, No. 18-1870, 2019 WL 3501814, at *1 (6th Cir. Apr. 10, 2019) (citing *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018)).  The court remanded the case to Judge Tarnow to "consider the impact of *Baum* and Michigan's interim policy in the first instance."  *Id*.

The University asserts that its agreement to provide Doe with a hearing under the interim policy means that he gained only an illusory victory when Judge Tarnow granted Doe's motion for partial summary judgment, and denied in part the University's motion to dismiss, in March 2020.  ECF No. 164, PageID.4263.  But as noted, in rejecting the University's mootness argument, Judge Tarnow reasoned that the University could replace the interim policy with a new "Umbrella Policy with unknown ramifications and procedural safeguards."  *Doe*, 448 F. Supp. 3d at 726.  To protect Doe from facing the possibility of an unconstitutional disciplinary process, Judge Tarnow ordered the University to provide Doe with a live hearing and the opportunity to cross-examine his accuser and other witnesses.  *Id*. at 733.

In short, Judge Tarnow found that the University's promise of a constitutional process under the interim policy may have been illusory because it could be replaced with a policy without the necessary safeguards.  The University's argument that Doe gained only an illusory victory from the March 2020 order clashes with Judge Tarnow's findings.

Thus, Doe obtained relief on significant issues in the case, meaning that he is the prevailing party.  Succeeding "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit" is enough to be a "prevailing party" for § 1988 attorney fee purposes.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).[2]

### 3.

As the prevailing party, Doe may recover reasonable attorneys' fees and costs under § 1988.  "A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney."  *Wayne v. Vill. of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994).  A reasonable attorney's fee is "'adequate to attract competent counsel, but . . . [does] not produce

---

[2] The Court rejects defendants' argument that Doe obtained only technical relief that is insufficient for him to be the prevailing party under § 1988. ECF No. 164, PageID.4262.  To support this argument, defendants cite several uninstructive cases to support their argument.  *See, e.g.*, *Farrar*, 506 U.S. at 115 (holding that plaintiff who received only $1 on a $17 million dollar claim was not entitled to attorneys' fees and costs under § 1988).

windfalls to attorneys.'" *Blum v. Stenson*, 465 U.S. 886, 895, 897 (1984)

(quoting S. Rep. No. 94–10011, p. 6 (1976)) (modifications supplied in

*Blum*).  "It is essential that the judge provide a reasonably specific

explanation for all aspects of a fee determination, including any award of an

enhancement."  *Perdue v. Kenny A. ex. rel. Winn,* 559 U.S. 542, 558

(2010).  The Court "should not be limited by the contractual fee agreement

between plaintiff and counsel."  *Blanchard v. Bergeron*, 489 U.S. 87, 96

(1989).

The starting point for determining the amount of reasonable

attorney's fees is the "lodestar" amount.  *Imwalle v. Reliance Med. Prods.,

Inc*., 515 F.3d 531, 551 (6th Cir. 2008).  The lodestar amount is calculated

by multiplying the number of hours reasonably expended on the litigation

by a reasonable hourly rate.  *Id*.  "The party seeking an award of fees

should submit evidence supporting the hours worked and rates claimed.

Where the documentation of hours is inadequate, the district court may

reduce the fee accordingly."  *Hensley*, 461 U.S. at 433.  A reasonable fee

calculation also excludes "hours that are not 'reasonably expended.'" *Id*. at

434.  "[T]he fee applicant bears the burden of establishing entitlement to an

award and documenting the appropriate hours expended and hourly rates."

*Hensley*, 461 U.S. at 437.

Courts have held that, once the lodestar figure is derived, an upward or downward adjustment is permitted based on twelve factors first listed in *Johnson v. Georgia Highway Express*, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).[3] But many of the *Johnson* "factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434, n.9. And more recently, the Supreme Court discouraged use of the *Johnson* factors except in rare or exceptional circumstances, finding the lodestar method more objective and reiterating that "the lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." *Perdue v. Kenny A. ex. rel. Winn*, 559 U.S. 542, 553 (2010) (citation and internal quotation marks omitted). There is a "strong presumption" that the lodestar figure is reasonable, and it should rarely be found inadequate. *Id.* at 554.

---

[3] Those factors are: "(1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Johnson*, 488 F.2d at 717-19.

Deborah Gordon Law, Doe's attorneys, request $472,907.27 for

attorneys' fees and $8,883.66 in costs.  ECF No. 159-2; ECF No. 168-4.

The Court finds that Deborah Gordon Law's hourly rates are reasonable,

but that the award should be reduced by 15% because of some

inadequacies in the firm's billing chart.

**4.**

A reasonable hourly rate is the prevailing market rate in the relevant

community for similar services by lawyers of reasonably comparable skill,

experience, and reputation.  *Fuhr v. Sch. Dist. of Hazel Park*, 364 F.3d 753,

762 (6th Cir. 2004).  Using the market rate "produces an award that *roughly*

approximates the fee that the prevailing attorney would have received if he

or she had been representing a paying client who was billed by the hour in

a comparable case."  *Perdue*, 559 U.S. at 551 (emphasis in original).  The

accepted benchmark for determining reasonable hourly rates in this district

is the State Bar of Michigan's most recent Economics of Law Practice

Survey.[4]  *Hazzard v. Schlee & Stillman, LLC*, 2014 WL 117411, at *3 (E.D.

Mich. Jan. 13, 2014), *adopted*, 2014 WL 634205 (E.D. Mich. Feb. 18,

2014).  Under the most recent survey, the median billing rate for plaintiff's

---

[4] *See* State Bar of Michigan, Economics of Law Practice Survey (2020),
https://www.michbar.org/file/pmrc/articles/0000155.pdf (last viewed
September 29, 2021).

personal injury attorneys is $400 per hour, and the top rate is $750.  The

top rate for attorneys with greater than 35 years of experience is $600 per

hour, and the top rate for attorneys with three to five years of experience is

$365.

Deborah Gordon, Doe's lead counsel, requests attorney's fees at the

rate of $600 per hour.  ECF No. 159-13, PageID.4147.  That hour rate is

reasonable and consistent with her 43 years of experience as a top lawyer

in civil rights and other personal injury litigation.  ECF No. 159-13,

PageID.4146.  The University argues that Gordon increased her hourly rate

from $550 in the original motion for attorneys' fees without explanation or

justification.  ECF No. 164, PageID.4273.  But the question before the

Court is whether her requested rate of $600 is reasonable, not whether she

justified the increase.  Besides, Gordon may request a higher hourly rate to

account for the passage of time since the stay.  *See Michigan Bldg. and

Const. Trades Council, AFL-CIO v. Snyder,* 11-13520, 2012 WL 1893516,

at *3 (E.D. Mich. May 23, 2012).

 Attorney Elizabeth Marzotto Taylor, an associate at Deborah Gordon

Law, requests attorney's fees at a rate of $320 per hour.  ECF No. 159-18,

PageID.4177.  This request is reasonable, as it is between the median of

$242 per hour for plaintiff's personal injury attorneys and the $365 per hour

for top rate for attorneys who, like Marzotto Taylor, have three to five years of experience.  *Id.*

Another associate of Deborah Gordon Law, Alana Karbal, requests $209 per hour for work performed in this case.  When the motion for attorney's fees was filed, she had more than two years but less than three-years' experience as an attorney.  ECF No. 159-17, PageID.4173.  Her request for attorney's fees at an hourly rate is less than the median for attorneys with that amount of experience, and for attorneys who practice in plaintiff's personal injury law.  The Court finds her requested hourly rate to be reasonable.

Lastly, the billing rate of $25 per hour for law clerks and staff is reasonable.

### 5.

The next question is the reasonableness of the hours Doe claims his attorneys spent on his case.  A court must review a prevailing party's claims about the hours it expended on the relevant matter, and "state with some particularity which of the claimed hours the court is rejecting, which it is accepting, and why.  Failure to provide such an explanation requires us to remand the case for further consideration."  *Sierra Club v. Hamilton Cty. Bd. of Cty. Comm'rs*, 504 F.3d 634, 645 (6th Cir. 2007) (citation and

internal quotation marks omitted).  Courts review billing claims for

"[e]xcessive, redundant, or otherwise unnecessary hours, or hours spent on

unsuccessful claims," which are usually excluded from fee awards.

*Butcher v. Bryson*, No. 3:12-00251, 2014 WL 4385876, at *3 (M.D. Tenn.

Sept. 5, 2014) (citing *Hensley*, 461 U.S. at 437).

Attorneys need not "record in great detail" each minute spent on an

item but must generally identify the subject matter.  *Imwalle v. Reliance*

*Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008) (internal citation and

quotation omitted).  "The key requirement . . . is that the documentation

offered in support of the hours charged must be of sufficient detail and

probative value to enable the court to determine with a high degree of

certainty that such hours were actually and reasonably expended in the

prosecution of the litigation."  *Id*. (internal citation and quotation omitted).  If

documentation is inadequate, a court may reduce the award.  *Id.*

In his revised billing chart, Doe claims that Deborah Gordon Law

spent about 1028.44 hours of work on his litigation.  ECF No. 168-4.

Defendants contend that the billing chart is vague, included fees related to

the underlying student conduct proceeding, and included administrative

and clerical tasks.  ECF No. 164, PageID.4277-4282.  In reply, Doe

withdrew his request for fees associated with purely administrative and

clerical entries that defendants cited in their response.  ECF No. 168, PageID.4662*; see also Salamango v. NCSPlus Inc.*, No. 2:14-CV-10189, 2014 WL 3900583, at *6 (E.D. Mich. Aug. 11, 2014) ("It is well-settled that purely clerical tasks, even performed by a paralegal, cannot be included in an award of attorney's fees.").  But defendants maintain that Doe's revised billing chart includes entries that are unreliable and vague.  ECF No. 171-1, PageID.4840.

The Court agrees with the University that some of Doe's billing entries are too vague.  In *Gratz v. Bollinger*, the court found that descriptions like "office conference," "telephone conference," "review article," and "review correspondence" lacked enough information for it to "determine whether the task was necessary for the litigation, whether the time expended on the task was reasonable, and whether the task was duplicated by other attorneys representing Plaintiffs." 353 F. Supp. 2d 929, 939 (E.D. Mich. 2005); *see also Potter v. Blue Cross Blue Shield of Michigan*, 10 F. Supp. 3d 737, 764-65 (E.D. Mich. 2014).

Doe's billing chart includes some entries describing emails, phone conferences, review of materials, meetings, the creation of case status

sheets, and unspecified research[5] "without any indication of the general subject matter of such communications or tasks . . . or any explanation to justify the time devoted to those tasks and communications." *Potter*, 10 F. Supp. 3d at 764-65.  Doe's counsel also billed for correspondence with the University's Office of Student Conflict Resolution without relating that correspondence to this litigation.  ECF No. 168-4, PageID.4763.  A court may reduce a percentage of a prevailing party's billed fees when billing entries are vague or otherwise inadequate.  *See Gratz*, 353 F. Supp. 2d at 939; *Potter*, 10 F. Supp. 3d at 765.

Defendants also contend that Doe's billing chart includes block billing and that the multiple updates and corrections to the chart show that his counsel did not keep contemporaneous records.  ECF No. 171-1, PageID.4840.  "[B]lock billing refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Potter*, 10 F. Supp. 3d at 763.  The practice of block billing is discouraged, though

---

[5] *See* ECF No. 168-4, entries for 5/7/2018, 5/30/2018, 7/15/2018, 7/17/2018, 8/8/2018, 8/23/2018, 8/29/2018, 9/9/2018, 10/26/2018, 5/8/2019, 6/19/2019, 6/24/2019, 9/17/2019, 9/25/2019, 9/26/2019, 10/7/2019, 10/20/2019, 11/13/2019, 12/6/2019, 2/19/2020.  *See also id*., with dates in March and July 2010.

not prohibited, and courts "have reduced fees because of a parties' use of vague block billing."  *Id.* at 764.

Doe argues that his billing chart does not include block billing as defined by *Potter*.  ECF No. 168, PageID.4654-4655.  But Doe's original and revised charts include several billing entries reflecting multiple days in one block.  ECF No. 159-2; ECF No. 168-4.  Doe's revised billing chart eliminated one of those blocks (1/21/19-1/30/19), but still includes entries for work done "1/21/19-1/30/19," "6/7/19-6/10/19," "7/31/19-8/5/19," "8/28/19-9/9/19" and "8/28/19-8/29/19."  *Id.*  The Court agrees with the University that these multiple-day entries—some spanning many days— render the entries vague and raise a question of whether Doe's counsel maintained contemporaneous records for those days.  "Courts in this circuit have reduced attorney fees on the basis of insufficient billing descriptions where the attorney did not maintain contemporaneous records of his time or the nature of his work."  *Imwalle*, 515 F.3d at 553 (citation and internal quotation marks omitted).

Defendants also argue that attorneys' fees and costs should be reduced because Doe achieved "limited success" in this case.  If "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly

rate may be an excessive amount." *Hensley*, 461 U.S. at 436.  This is true even when the "claims were interrelated, nonfrivolous, and raised in good faith." *Id*.

But when a plaintiff makes multiples claims that all "involve a common core of facts" or are "based on related legal theories," the "lawsuit cannot be viewed as a series of discrete claims."  *Id*. at 435.  Rather, the "court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *Id.* If the plaintiff "obtained excellent results, his attorney should recover a fully compensatory fee."  *Id.; see also DiLaura v. Township of Ann Arbor,* 471 F.3d 666, 673 (6th Cir. 2006) (finding that district court abused its discretion in reducing the plaintiffs' request for fees, and noting that "[b]y focusing on the fact that most of the plaintiffs' claims failed, the district court does what *Hensley* specifically forbids: it analyzes a series of related legal claims based on a common core of facts, and determines the amount of fees, not based on the plaintiffs' overall success, but based on the success or failure of the individual claims.").

Here, Doe filed multiple claims—including a Fourteenth Amendment procedural due process claim, a Title IX claim, and claims under the Elliot-Larsen Civil Rights Act—and prevailed only on the due process claim.  But

his claims all arose from a common core of facts: the sexual misconduct investigation and proceeding by the defendants.  Doe succeeded fully on his primary goals—Judge Tarnow ordered the University to release Doe's clean transcript and provide him with a constitutionally valid disciplinary hearing.  Doe received excellent results on those primary issues, and the Court rejects defendants' argument that he had only limited success.

That said, Doe does request attorneys' fees for many hours expended on collateral matters that were not resolved in his favor.  He requests attorneys' fees for hours spent for his May 2019 motion for interim attorneys' fees, but this Court denied the motion without prejudice.  *See* ECF No. 48; ECF No. 84; ECF No. 168-4, PageID.4757-4758.  Doe requests attorneys' fees for addressing the University's petition for writ of mandamus to stay a settlement conference.  ECF No. 168-4, PageID.4758-4759.  The Sixth Circuit sided with the University on this appeal, over Doe's opposition.  ECF No. 57; ECF No. 70.  And Doe's April 2020 motion for attorneys' fees was denied without prejudice because the University's motion to stay the attorneys' fees decision pending appeal was granted.  ECF No. 95; ECF No. 102; ECF No. 151; ECF No. 175.  Yet Doe includes

hours his attorneys spent on those motions in his billing chart.  ECF No.

168-4, PageID.4762-4763.[6]

In sum, the Court finds that Doe's award of attorneys' fees should be

reduced by 15% because of (1) the questions about whether some of Doe's

counsels' billing entries were supported by contemporaneous records; (2)

the other vague entries on Doe's billing chart; and (3) the hours on the

billing chart associated with collateral matters on which Doe did not prevail.

Thus, the total fee award should be $401,970.25.

### 6.

"Section 1988 permits district courts to award those 'incidental and

necessary expenses incurred in furnishing effective and competent

representation.'" *Waldo v. Consumers Energy Co*., 726 F.3d 802, 827 (6th

Cir. 2013) (quoting *Northcross v. Bd. of Educ. of Memphis City Schs*., 611

F.2d 624, 639 (6th Cir. 1979), *abrogation on other grounds recognized by L*

*& W Supply Corp. v. Acuity*, 475 F.3d 737, 739 & n.6 (6th Cir. 2007).

Recoverable out-of-pocket expenses are those "incurred by the attorney

which are normally charged to a fee-paying client, in the course of

---

[6] The Court recognizes that some hours Doe's counsel spent on the earlier motions for attorneys' fees may have saved them time on the renewed motion for attorneys' fees.  That is one reason why this Court is recommending only a limited reduction in Doe's requested attorneys' fees.

providing legal services," such as "[r]easonable photocopying, paralegal expenses, and travel and telephone costs."  *Northcross*, 611 F.2d at 639.

Doe requests an award of costs of $8,883.66 for copying and printing, mailing, postage, couriers, parking, and transcripts.  ECF No. 159-3, PageID.4089-4090.  Defendants argue that the costs are not reasonable because the descriptions lack specificity and because Doe's printing of 29,000 pages was unnecessary.  ECF No. 164, PageID.4284-4285.  But attorneys are afforded discretion to expend costs that they believe are reasonable and necessary to provide their clients with effective representation.  *See Waldo*, 726 F.3d at 827 (affirming finding that "costs for focus groups, mock trials, jury-selection services, and mediation were reasonable and necessary to provide Waldo with effective representation, because such services conferred a benefit to the prevailing party by helping to produce a favorable result.") (citation and internal quotation marks omitted); *Northcross*, 611 F.2d at 642 ("We do not believe that we should second-guess the attorneys' decision that four copies (for their own use, the use of witnesses and for the court) was necessary in order to efficiently and competently try this case.").

Deborah Gordon Law states that hard copies of each pleading are printed for each of the three attorneys, and that those copies add up.  ECF

No. 168, PageID.4664-4665.  The Court notes that much has changed since the 1979 *Northcross* decision; pleadings are now readily available in electronic form.  As a matter of Mother Nature, all legal professionals should consider how to reduce our paper usage with modern technology.  But as a matter of law, the Court finds no reason to second-guess Doe's lawyers' printing costs.

The Court thus recommends that Doe be awarded $8,883.66 in costs.

### III.   CONCLUSION

The Court **RECOMMENDS** that Doe's ex parte motion for leave to file excess pages for reply in support of his renewed motion for attorneys' fees and costs [ECF No. 167] be **GRANTED**; that defendants' ex parte motion for leave to file excess pages for reply in support of their renewed motion to compel [ECF No. 169] be **GRANTED**; and that defendants' motion for leave to file sur-reply [ECF No. 171] be **GRANTED**.  It also **RECOMMENDS** that Defendants' renewed motion to compel production of fee agreement and billing records [ECF No. 162] be **DENIED**.  Doe's motion for attorneys' fees and costs should be **GRANTED IN PART**, and he should be awarded **$410,853.91 in attorneys' fees and costs**.

28

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: November 19, 2021

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this

Report and Recommendation but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 19, 2021.

s/Marlena Williams<br>
MARLENA WILLIAMS<br>
Case Manager