UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE, an individual,

      Plaintiff,

vs.

UNIVERSITY OF MICHIGAN (as to Title IX
violations), et al.,

      Defendants.

Case No.: 18-cv-11776
Hon. Arthur J. Tarnow
Mag. Elizabeth A. Stafford

---

DEBORAH GORDON LAW
Deborah L. Gordon (P27058)
Elizabeth A. Marzotto Taylor (P82061)
Attorneys for Plaintiff

MILLER, CANFIELD, PADDOCK
AND STONE, P.L.C.
Brian M. Schwartz (P69018)
Attorney for Defendants

UNIVERSITY OF MICHIGAN
Timothy G. Lynch
Patricia M. Petrowski
Attorneys for Defendants

SAUL EWING ARNSTEIN &
LEHR LLP
Joshua W.B. Richards
Amy L. Piccola
Attorneys for Defendants

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
OBJECTIONS TO THE MAGISTRATE'S REPORT AND
RECOMMENDATION DENYING DEFENDANTS' MOTION TO
COMPEL AND GRANTING IN PART PLAINTIFF'S MOTION FOR
ATTORNEY FEES**

# TABLE OF CONTENTS

Index of Authorities.................................................................................................................ii

I.      INTRODUCTION ...................................................................................................... 1

II.     LEGAL STANDARD................................................................................................. 3

III.    ARGUMENT .............................................................................................................. 3

        A.      Objections 1 and 4: The Magistrate Judge Properly Denied Defendants'
                Motion to Compel and Found that Plaintiff's Supporting Documentation
                was Sufficient................................................................................................. 3

        B.      Objection 2: The Magistrate Judge Did Not Err by Rejecting Defendants'
                Failed Jurisdictional Arguments as to Article III Standing and Ripeness............... 10

        C.      Objection 3: The Magistrate Judge Did Not Err by Finding that Plaintiff
                Was a Prevailing Party.................................................................................. 14

        D.      Objection 5: The Magistrate Judge Properly Calculated the Lodestar.................... 16

        E.      Objection 6: The Magistrate Judge Did Not Err by Applying Only a 15%
                Reduction ..................................................................................................... 21

        F.      Objection 7: The Magistrate Judge Did Not Err by Awarding Plaintiff's
                Costs............................................................................................................. 23

IV.     CONCLUSION ......................................................................................................... 22

# INDEX OF AUTHORITIES

## Cases

*Anderson v. City of Bessemer, N.C.,*
  470 U.S. 564 (1985) .................................................................................. 3

*Anderson v. Wilson,*
  357 F. Supp. 2d 991 (E.D. Ky. 2005) ........................................................ 9

*Arbaugh v. Y&H Corp.,*
  546 U.S. 500 (2006) ................................................................................ 12

*Beard by & through Ford v. City of Southfield,*
  2017 WL 2572179 (E.D. Mich. June 14, 2017)................................... 5, 8, 9

*Blanchard v. Bergeron,*
  489 U.S. 87 (1989) ................................................................................ 5, 20

*Blum v. Stenson,*
  465 U.S. 886 (1984) ................................................................................ 17

*City of Riverview v. Operating Engineers Local 324 Pension Fund,*
  2020 WL 1443203 (E.D. Mich. Mar. 23, 2020)............................................ 10

City of Riverview v. Operating Engineers Local 324 Pension Fund, et. al.,
  2019 WL 8301970 (E.D. Mich. Nov. 14, 2019)........................................... 10

*DeLaura v. Township of Ann Arbor,*
  471 F.3d 666 (6th Cir. 2006) ....................................................................... 21

*Doe v. Ohio,*
  2020 WL 728276 (S.D. Ohio Feb. 12, 2020)................................................ 17

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983) ................................................................................ 7, 21

*Huguley v. Gen. Motors Corp.*
  1991 WL 88413 (E.D. Mich. May 26, 1991) ............................................... 8

*Imwalle v. Reliance Med. Prod., Inc.,*
515 F.3d 531 (6th Cir. 2008) ...................................................................7, 9, 10

*Knop v. Johnson,*
712 F. Supp. 571 (W.D. Mich. 1989)............................................................. 7

*Lipian v. Univ. of Michigan,*
2020 WL 1164190 (E.D. Mich. Mar. 11, 2020)........................................... 18

*Lynch v. Leis,*
382 F.3d 642 (6th Cir. 2004).................................................................12, 13

*McCombs v. Meijer, Inc.,*
395 F.3d 346 (6th Cir. 2005) ...................................................................... 10

*Nelson v. Ricoh, USA,*
2018 WL 6728392 (E.D. Mich. Mar. 1, 2018)............................................. 20

*Northcross v. Bd. of Educ. of Memphis City Schs.,*
611 F.2d 624 (6th Cir. 1979)....................................................................... 23

*Perry v. AutoZone Stores, Inc.,*
624 F. App'x 370 (6th Cir. 2015) .................................................................. 9

*Sedgwick Ins. v. F.A.B.E. Custom Downstream Sys., Inc.,*
47 F. Supp. 3d 536 (E.D. Mich. 2014) .......................................................... 3

*Sierra Club v. Hamilton Cty. Bd. of Cty. Comm'rs,*
504 F.3d 634 (6th Cir. 2007)....................................................................... 22

*Southerland v. International Longshoremen's Local 8,*
845 F.2d 796 (9th Cir.1988)......................................................................... 8

*Trustees of N.W. Ohio Plumbers and Pipefitters Pension Plan v. Helm & Associates, Inc.,* 2012
WL 3619827 (N.D. Ohio, Aug. 21, 2012) ................................................... 17

*Trustees of Sheet Metal Workers v. Traverse Bay Roofing Co.,*
2019 WL 1474023 (E.D. Mich. Mar. 18, 2019)........................................... 17

*United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v.
G&M Roofing and Sheet Metal Co., Inc.,*

732 F.2d 495 (6th Cir. 1984) ..................................................................... 19

*United States v. U.S. Gypsum Co.,*
    333 U.S. 364 (1948) ......................................................................... 3

*Walso v. Consumers Energy Co.,*
    726 F.3d 802 (6th Cir. 2013) ......................................................... 23

*Webb v. Bd. of Educ. of Dyer Cty., Tenn.,*
    471 U.S. 234 (1985) ......................................................................... 4

*Webb v. Cty. Bd. of Educ. of Dyer Cty., Tenn.,*
    715 F.2d 254 (6th Cir. 1983) ..................................................... 4, 5

*Westside Mothers v. Olszewski,*
    454 F.3d 532 (6th Cir. 2006) ....................................................... 13

**Statutes**
28 U.S.C. § 636(b)(1)(A) .......................................................................... 3
28 USC § 1983 ................................................................................... 2, 17
42 U.S.C. § 1983, § 1988 .......................................................................... 5

**Rules**
Fed. R. Civ. P. 12(h)(3); ......................................................................... 12

## I.   INTRODUCTION

Plaintiff achieved exceptional results in this case, including a hard-won TRO that stopped Defendants' ongoing violations of his constitutional rights; he was successful on Defendants' appeal of that decision, as the Sixth Circuit did not divest itself of this case, or direct this Court to dismiss it. Plaintiff next overcame Defendants' attempts to stay the case. ECF No. 78, PageID.2390; ECF No. 81.

On March 23, 2020, the District Court enjoined Defendants to provide a live hearing with direct (rather than circumscribed) cross-examination, as set forth in *Baum*. ECF No. 90, PageID.2603-04. The Order also granted Plaintiff's Motion for Partial Summary Judgment as to his due process claim, including an injunction prohibiting Defendants from using their 2018 Policy, placing a "hold" on Plaintiff's student account or withholding his certified transcripts or degree prior to a final adjudication, or imposing other pre-hearing serious penalty on Plaintiff; and enjoining Defendants to provide Plaintiff a live hearing with direct cross-examination. ECF No. 53, PageID.1786-87; ECF No. 90, PageID.2598-2604.

Defendants violated the Sixth Circuit's ruling in *Cincinnati* and Plaintiff's clearly established constitutional rights by subjecting him to the unconstitutional 2018 Policy. As Judge Tarnow noted in his Order of March 23, 2020:

> "From its inception to the University's appeal in *Baum*, the 2018 Policy was in violation of Circuit precedent. Five months before publishing its 2018 Policy and likely during its drafting, the Sixth Circuit held that cross-examination was '"essential to due process"' only where the finder of fact must choose '"between believing an accuser and an accused,"' and

1

> implored universities to provide a means for decision makers "to evaluate an alleged victim's credibility." *Cincinnati*, 872 F.3d at 405-06. The Court of Appeals further emphasized that deciding the plaintiff's fate without a hearing and cross-examination was a "disturbing . . . denial of due process." *Cincinnati*, 872 F.3d at 402." ECF No. 90, PageID.2591-2592.

Both Defendants' 2018 and 2019 Interim Policies were unconstitutional. Plaintiff also overcame the high hurdle of qualified immunity to hold the individual defendants liable under 28 USC § 1983.

Defendants immediately appealed this Court's decision to the Sixth Circuit. Subsequently, on April 16, 2020, Defendants advised Plaintiff that the University was permanently closing the investigative resolution process against him. When Defendants refused to dismiss their appeal, in that the case was now moot, Plaintiff moved to dismiss. In response to Plaintiff's motion to dismiss, Defendants again advanced the subject-matter jurisdiction and ripeness arguments set forth in Response to Plaintiff's fee petition and in their instant Objections. **Ex. A**, Response to Motion to Dismiss Appeal as Moot. The Sixth Circuit rejected these arguments and granted the Motion to Dismiss. ECF No. 154.

Plaintiff's successes prevented Defendants from withholding his degree pending the outcome of the student conduct process. *Id.* He achieved a decisive victory that will have long-lasting impacts for himself as well as other students at the University of Michigan and across the Sixth Circuit. As set forth in her Report and Recommendation and herein, the Magistrate Judge properly awarded attorney fees. She made no mistake of fact or legal error. Defendants' Objections should be rejected.

## II.    LEGAL STANDARD

A district judge reviewing a Magistrate Judge's ruling on a non-dispositive matter does so according to the "clearly erroneous" or "contrary to law" standard of review set forth in Rule 72(a). FED R. CIV. P. 26(a); *see also* 28 U.S.C. § 636(b)(1)(A). The Magistrate Judge's factual findings are accorded great deference. The "clearly erroneous" standard does not permit a district court to reverse the magistrate judge's finding simply because it would have decided the issue differently. *Anderson v. City of Bessemer, N.C.*, 470 U.S. 564, 573 (1985). Rather, a "finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). A magistrate judge's legal conclusions are "contrary to law" if they "contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Sedgwick Ins. v. F.A.B.E. Custom Downstream Sys., Inc.*, 47 F. Supp. 3d 536, 538 (E.D. Mich. 2014). Defendants failed to identify any mistaken factual findings or legal precepts that the Magistrate contradicted or ignored. They simply disagree with the recommended outcome and would have this Court decide it differently. Their objections should be rejected.

## III.   ARGUMENT

### A.    Objections 1 and 4: The Magistrate Judge Properly Denied Defendants' Motion to Compel and Found that Plaintiff's Supporting Documentation was Sufficient

Defendants' requests for the production of Plaintiff's counsel's billing records, and that Plaintiff's fee petition be denied in its entirety remain unsupported by fact and law and were properly denied. Defendants cite no case law under which applicants for attorney fees must attach a complete copy of all their relevant billing records in order to obtain fees. In *Webb v. Bd. of Educ. of Dyer Cty., Tenn.*, 471 U.S. 234, 238 (1985), the motion requesting attorney fees "was supported by an affidavit containing an itemized description of the time spent by the petitioner's counsel". In footnote 6 of the *Webb* opinion, the Court notes that, per the hearing transcript as to the motion for attorney fees, "the time schedule submitted by the petitioner was a reconstruction of the hours his counsel spent on the matter." *Webb*, 471 U.S. at 238 n. 6. The Court said only that "contemporaneously recorded time sheets are the *preferred* practice." *Id* (emphasis added). It did not hold that, as a matter of law, fees could not be granted without time sheets being introduced.

Likewise, the Court did not hold that it was unable to ascertain the accuracy of Webb's counsel's accounting without examining their billing records. Nor did the Court decline to award fees on the basis that counsel attached an affidavit rather than their billing records. To the contrary, the Court affirmed the Sixth Circuit Court of Appeals' award of fees based on the affidavit. *Id.* at 244. As to the affidavit, the Court of Appeals held as follows: "defendants contend that the plaintiff's attorney inadequately documented the number of hours devoted to the district court proceedings. We have reviewed the affidavit of plaintiff's attorney and conclude that this argument is without

merit." *Webb v. Cty. Bd. of Educ. of Dyer Cty., Tenn.,* 715 F.2d 254, 260 (6th Cir. 1983). Here, Plaintiff's counsel submitted verified time records reflecting billing data compiled contemporaneously throughout this litigation. As set forth above, the Sixth Circuit and the Supreme Court rejected the argument Defendants assert here, reasoning that such documentation is not deficient as a matter of law.

Significantly, as a matter of law, amounts billed to and/or paid for by Plaintiff do not impose a ceiling on an award of attorney's fees under § 1988. "Congress intended that all defendants in civil rights cases covered by Section 1988 pay a reasonable fee to all prevailing plaintiffs without regard to what the plaintiff must pay his or her counsel. *Id.* at 94." *Beard*, 2017 WL 2590344, at *3 (quoting *Blanchard v. Bergeron*, 489 U.S. 87 (1989)). Plaintiff was billed. But the mere fact that his counsel's affidavit did not, when providing a non-exhaustive list of examples of contemporaneous source documents underlying the billing records attached to his petition, use the precise words Defendants would have preferred is of no import, particularly in light of this well-settled law. The Magistrate Judge did not err in holding that the documentation Plaintiff provided was of sufficient probative value for her to decide his petition and declining to launch a "second major litigation" over fees. ECF No. 178, PageID.4913.

Nor did the Magistrate err as to the facts. Defendants failed to show that Plaintiff's counsel did not "maintain contemporaneous records" of the time or nature of their work. Plaintiff's counsel's affidavits do not say this. Nor do their affidavits say that Plaintiff submitted "a fee estimate" or "reconstructed estimate" in support of

Plaintiff's fee petition. *See* ECF No. 159-13. As the Magistrate recounted in her Report and Recommendation, these are Defendants' "claims", not the attestations of Plaintiff or his counsel. ECF No. 178, PageID.4912-13.

Plaintiff submitted verified time records reflecting billing data compiled contemporaneously throughout this litigation. That the contemporaneous data for each attorney and support staff member were, after-the-fact, compiled into one document is irrelevant. Defendant has cited no law to the contrary. The compilation provides ease in the assessment of the reasonableness of the fee award. Significantly, this Court recently determined that the type of supporting documentation Plaintiff proffers here is sufficient support for the award of attorney fees under § 1988. On July 21, 2017, the Hon. Denise Page Hood awarded Plaintiff attorney fees under § 1988 in the case of *Varlesi v. Wayne State Univ., et. al.* ECF 95-9. Chief Judge Hood's grant of attorney fees and costs in that case was predicated on virtually identical documentation as that which was proffered in support of Plaintiff's Motion for Attorney Fees in this case. ECF 116. The Court accepted the verified documentation plaintiff submitted reflecting a summary of the hours expended throughout the litigation.

On the basis of the factual record before her, the Magistrate Judge found only that five entries on Plaintiff's billing chart were "vague", and because they spanned multiple days, "**raise[ed] a question** of whether Doe's counsel maintain[ed] contemporaneous records **for those days**." *Id.* at PageID. 4913, 4932 (emphasis added). Rather than delve into a "second major litigation," the Magistrate resolved this

"question" in Defendants' favor by declining to award fees for these days. As a matter of law, this was the proper remedy based on her finding.

The Magistrate did not err in finding that the appropriate remedy for "unreliable or imprecise" or to use the Magistrate's word, "vague" billing records is to reduce the fees awarded. ECF No. 178, PageID.4913. In support of this accurate recitation of Sixth Circuit law, the Magistrate relied on *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008), which in turn relied on *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) for the proposition that, "Where the documentation is inadequate, the district court may reduce the award accordingly."

In *Knop v. Johnson*, 712 F. Supp. 571, 575 (W.D. Mich. 1989), the defendants made an analogous argument to the one Defendants advance here. The *Knop* defendants argued that because the plaintiffs' billing records made it impossible to determine exactly how much time was spent on unsuccessful claims, all of the hours claimed should be denied as inadequately documented. Similarly, Defendants argue here that because there were "questions" as to "some" of Plaintiff's entries, he should receive no attorney fees. The district court found this argument "completely unreasonable" as its acceptance would result in "almost complete denial of fees." *Knop*, 712 F. Supp. at 576.

The *Knop* court pointed to a Ninth Circuit case holding that "total denial of fees for poor documentation is a stringent sanction, to be reserved for only the most severe of situations" which it described as those "where the petition is unsupported by contemporaneous time records or is otherwise wholly undocumented." *Knop*, 712 F.

Supp. at 576 (citing *Southerland v. International Longshoremen's Local 8,* 845 F.2d 796, 801 (9th Cir.1988)). The Magistrate did not find that Plaintiff's petition was "wholly undocumented" or wholly unsupported by contemporaneous records, nor was there a factual basis upon which she could have made such a finding. Her decision to not award fees as to the entries she found "questionable" was not clearly erroneous or contrary to law.

Nor does *Huguley v. Gen. Motors Corp.* provide support for Defendants' position. There, the Court found "the documentation provided to be totally inadequate." 1991 WL 88413, *1 (E.D. Mich. May 26, 1991). There was no such finding here, or any basis for such a finding. In *Huguley*, the plaintiffs' documentation claimed time that was "double, triple, and even quadruple billed;" not sufficiently itemized; performed for parties other than the plaintiffs; for unnecessary or non-compensable services; and which was "excessive". *Id.* at *2. The lack of itemization in *Huguley* consisted of "bill[ing] forty hours for interviews with potential plaintiffs…over a six-month period" without any breakdown of "interviewees, how long each interview took, and how much time was spent on the interviews as opposed to preparing the complaint." *Id.* at *3. There is no reasonable comparison to be made between the documentation in *Huguley* and Plaintiff's documentation here, which the Magistrate properly found was of sufficient probative value, aside from five "vague" entries. She did not err in declining to compel Plaintiff's billing records or deny fees altogether.

In *Beard v. Hawkins*, the Court accepted documentation like that submitted here. Defendants submitted invoices with the amount of fees billed redacted—in other words, documents summarizing the number of hours expended by the attorneys. WL 2590344, at *2 (E.D. Mich. May 22, 2017), *report and recommendation adopted sub nom. Beard by & through Ford v. City of Southfield*, 2017 WL 2572179 (E.D. Mich. June 14, 2017). Similarly, in *Anderson v. Wilson*, 357 F. Supp. 2d 991, 999 (E.D. Ky. 2005), the court accepted as sufficient "itemized statements describing the subject matter, the attorney, the time allotment, and the charge for all work done on Plaintiffs' case."

In *Imwalle*, plaintiff's counsel's documentation specified, just as Plaintiff's documentation does, the date that time was billed, the individual who billed the time, the fractional hours billed, and the specific task completed. Just as in *Imwalle*, the Magistrate properly held that, with a handful of exceptions, Plaintiff's time entries were sufficiently specific, in that they were listed separately and indicated the general nature of the tasks performed. *Id.* at 553-54. The Sixth Circuit similarly rejected the Defendants' arguments as to the specificity of Plaintiff's time entries, holding that, "explicitly detailed descriptions are not required," and accepted documentation noting "only the briefest description of the task completed. *Id.* at 553-54 (approving entries for "research," "review file," "review documents"). Plaintiff's entries are easily distinguishable from those rejected in *Perry v. AutoZone Stores, Inc.*, where counsel had "more than a dozen time entries" reading "prepare and draft appellee brief" representing 143 total hours. 624 F. App'x 370, 373 (6th Cir. 2015). Defendants pointed

to no such entries in Plaintiff's records. Moreover, the Magistrate did not award fees as to the handful of entries she found were "vague".

Plaintiff's time entries, when read in the context of the statement as a whole and in conjunction with the timeline of the litigation, support a determination that the hours charged were actually and reasonably expended in the prosecution of the litigation. *Id.*; *see also McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir. 2005) (affirming district court's finding that entries were sufficient even if description for each entry was not explicitly detailed); *see also City of Riverview v. Operating Engineers Local 324 Pension Fund, et. al.,* 2019 WL 8301970, at *5 (E.D. Mich. Nov. 14, 2019), *report and recommendation adopted sub nom. City of Riverview v. Operating Engineers Local 324 Pension Fund,* 2020 WL 1443203 (E.D. Mich. Mar. 23, 2020) (holding that entries for "review new complaint and prior motion; research for and draft motion to dismiss" were sufficiently detailed). Similarly, Plaintiff submitted a verified statement showing the hours expended by his attorneys, describing the subject matter, attorney, time allotment and subject of each entry. Defendants' conclusory allegations that that Plaintiff's counsel failed to maintain or refer to contemporaneous records do not suffice to undermine the award of fees requested. *Imwalle*, 515 F.3d at 553.

**B.    Objection 2: The Magistrate Judge Did Not Err by Rejecting Defendants' Failed Jurisdictional Arguments as to Article III Standing and Ripeness**

Defendants have now advanced these same arguments <u>six</u> times before this Court and the Sixth Circuit[1]. The Magistrate correctly held that both this Court and the Sixth Circuit properly rejected them as a matter of law each time Defendant raised them, most recently in this Court's opinion partially granting Plaintiff's motion for summary judgment; and the Sixth Circuit's opinion dismissing Defendants' appeal as moot. ECF No. 90, PageID.2582-92; ECF No. 154. In opposition to Plaintiff's motion to dismiss the appeal, Defendants raised the same arguments they advance here. Their current argument that the Sixth Circuit was not "squarely tasked" with deciding these questions fails, in light of the fact that they were briefed by the parties and rejected by the Sixth Circuit. *See* Case: 20-1293, Doc. 19, Pg. 28-33. Rather than reiterate the substance of his counter arguments for the sixth time, Plaintiff herein incorporates these arguments and the Court's reasoning by reference. *See* ECF No. 53, 59, 62, 90; Case: 18-1903, Doc. 22, Pg. 35-56; Case 20-1248, Doc. 18, Pg. 26-41; Case: 20-1293, Doc. 22, Pg. 8-12.

As the Magistrate reasoned, the Sixth Circuit had the final say when it ruled that Defendants' appeal became moot because "[t]he University has since permanently closed [its] proceedings". ECF No. 178, Page ID.4917. In order to determine whether

---

[1] 1) Resp. to Pl.'s Mtn for TRO & PI, ECF No. 21, PageID.323-325; 2) Mtn to Quash/Dismiss Appeal, Case 18-1903, RE 23; 3) Defs.' Mtn to Dismiss SAC, ECF No. 49, PageID.1593-1601; 4) Resp. to Pl Mtn for Summary Judgment, ECF No. 60; 5) Resp to Pl Mtn to Dismiss Appeal as Moot, Case: 20-1293, RE 23. 6) Objections to Magistrate's Report & Recommendation, ECF No. 179. To raise these arguments again here is truly frivolous, particularly given the posture of this case, as set forth below. The Magistrate correctly held that Defendant's arguments are "beyond reasonable dispute". ECF No. 17, PageID.4918.

the appeal was moot, the Court necessarily had to determine when the case became moot. *Id.* at PageID.4918. The Sixth Circuit rejected Defendants' subject matter jurisdiction arguments when it agreed with Plaintiff that the "inflection point for mootness" was his accuser's decision to abandon the investigation. ECF No. 178, PageID.4918.

Nor did the Magistrate Judge err when she reasoned that the Sixth Circuit's earlier order "spoke volumes" in that it did not question this Court's jurisdictional findings. *Id.* at PageId.4916. The Sixth Circuit remanded the attorney fee dispute to this Court for determination, holding that his status as a prevailing party was not necessarily disturbed. *Id.* at PageID.4918. If the Court had found, as Defendants explicitly urged it to, that it or this Court lacked subject matter jurisdiction to decide Plaintiff's fee petition, it would have been bound by the law to state as much in its opinion. Fed. R. Civ. P. 12(h)(3); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Instead of granting the relief Defendants requested, it remanded the issue back to this Court for it to determine Plaintiff's motion for costs and fees, *not* for dismissal for lack of subject matter jurisdiction (as Defendants explicitly argued that it should). ECF No. 154. Defendants cannot square the Sixth Circuit's mandate on remand with their current argument given that the law requires appellate courts to vacate an award of fees if the district court lacked subject matter jurisdiction over the litigation. *See Lynch v. Leis*, 382 F.3d 642, 648 (6th Cir. 2004).

12

As this Court stated in its opinion partially granting Plaintiff's motion for summary judgment, the "mandate rule" requires that upon remand by the Sixth Circuit, this Court is "bound to proceed in accordance with the mandate and law of the case as established by the appellate court," and is required to "implement both the letter and the spirit" of the appellate court's mandate, "taking into account the appellate court's opinion and the circumstances it embraces." *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006) (internal citations omitted). The Sixth Circuit's unambiguous mandate was to close Defendants' appeal, and for this Court to determine Plaintiff's request for fees. The Magistrate did not err by relying on this Court's and the Sixth Circuit's holdings to reject Defendants' jurisdictional arguments.

The Magistrate properly found that Defendant sought to rely on uninstructive case law in support of its substantive jurisdictional arguments. In *Lynch v. Leis*, plaintiff lacked standing (and therefore could not be awarded attorney fees) because the Court was unwilling to assume that plaintiff would repeat the type of misconduct that would place him at risk of a constitutional injury. 382 F.3d 642, 648 (6th Cir. 2004). But as this Court previously held, Plaintiff had standing and his case was ripe because his subjection to the 2018 Policy denying him a hearing "*immediately* collides with the requirements of the Constitution." ECF No. 90, PageID.2585 (emphasis in original). And, as this Court and the Magistrate properly held, the University's shifting policies provided no guarantee of Plaintiff's constitutional rights. ECF No. 178, PageID.4916-19. *Schaffer v. Prudential Ins. Co. of Am.* is likewise distinguishable, as in that case the Court

13

lacked jurisdiction over the plaintiff's ERISA claim because she failed to exhaust her administrative remedies under her benefits plan, as required by law. 301 F. Supp. 2d 383, 386–87 (E.D. Pa. 2003). There is no similar statutory requirement here.

Defendant failed to cite a single case where a district court denied a motion for attorney fees and costs after previously deciding that as a matter of law it had subject matter jurisdiction over the case, and after the appellate court rejected an appeal of that decision as moot and opted not to dismiss the underlying case for lack of jurisdiction or direct the district court to do so. The Magistrate did not err in rejecting Defendants failed jurisdictional arguments.

## C.   Objection 3: The Magistrate Judge Did Not Err by Finding that Plaintiff Was a Prevailing Party

Plaintiff achieved far more than a nominal or technical victory. Defendants cite no case law holding that the relief Plaintiff was awarded in this case constitutes "nominal damages". As the Magistrate held, the relief Plaintiff obtained significantly altered Defendants' legal obligations toward him and enforced his legal rights. It materially changed their relationship. Plaintiff did not walk away emptyhanded with nothing more than moral satisfaction. As the Magistrate held, he obtained a "clean" transcript; a TRO halting Defendants' violation of his constitutional rights which he successfully defended on appeal; and an Order ensuring a hearing that was not guaranteed under the 2018 Policy, 2019 Interim Policy, or future iterations of the policy.

14

Plaintiff suffered actual injuries sufficiently traceable to Defendants' actions and proved the essential elements of his due process claim.

The Magistrate did not err in rejecting Defendants' argument based on their so-called "voluntary offers[2]" of relief. Defendants failed to cite a single case before the Magistrate or in their instant brief where a court decreased a fee award because the losing party offered to stop injuring the prevailing party. Nor did they cite any authority that an award should be reduced where these "offers" were accompanied by unconstitutional sanctions and a litany of appeals and public statements evincing Defendants' utter refusal to abide by the current state of the law.

As the Magistrate held, the record of this case demonstrates that Defendants' provision of a "clean" transcript and, ultimately, his degree, came only under pressure from his pending TRO, the Court's thorough probing of Defendants' position at a status conference, and a resultant order "constru[ing] their silence as [a] stipulation". ECF No.19, PageID.270; ECF 20; ECF No. 178, PageID.4921. Additionally, the Sixth Circuit declined Defendants' request to proceed immediately under the 2019 Interim Policy. *See* ECF 42. This Court also rejected this very argument multiple times. ECF No. 81, PageID.2417; ECF No. 90, PageID.2582 ("Although the University assures it

---

[2] Such "offers" were also squarely at odds with their contemporaneous public pronouncements that they preferred to litigate indefinitely rather than issue a policy guaranteeing a hearing. Gus Burns, *UM sexual misconduct policy lawsuit has cost $648,380 in legal fees so far*, MLive (July 12, 2019), https://www.mlive.com/news/2019/07/um-sexual-misconduct-policy-lawsuit-has-cost-648380-in-legal-fees-so-far.html.

will follow the law this time, Plaintiff is entitled to clarity."). Indeed, multiple aspects of the policy Defendants "volunteered" to proceed under were unconstitutional. ECF No. 90, PageID.2602. For example, Defendants' "voluntary offer" to proceed included "withhold[ing] Plaintiff's degree until 60 days after the issuance of a court order allowing the University to proceed with its student-conduct process," (Case No. 20-1248, RE 1, Page 32) in direct violation of this Court's holding that such a policy provision was unconstitutional. ECF No. 90, PageID.2602.

The Magistrate did not err when, relying on this Court's earlier opinions, she reasoned that Defendants' "voluntary offers" did nothing to undermine his prevailing party status. She correctly reasoned that because "the University could replace the interim policy with a new 'Umbrella Policy with unknown ramifications and procedural safeguards" the Court intervened to protect Doe from the imminent threat of an unconstitutional disciplinary process by ordering the University to provide him a live hearing with the opportunity for cross-examination. ECF No. 178, PageID.4922. As set forth above, Plaintiff incurred substantial fees to obtain and then defend this relief from Defendants. Defendants' current argument as to the timing of Plaintiff's attorney fees in light of these "offers" remains unavailing. The Magistrate did not err in finding that Plaintiff was a prevailing party.

### D.   Objection 5: The Magistrate Judge Properly Calculated the Lodestar

The Magistrate did not err by assessing the reasonableness of the hourly rates Plaintiff requested against the median billing rates for "personal injury" work and the median rates based on attorneys' years of experience. Defendants ignore the simple fact that a suit for money damages is one for personal injury. Nor have they ever cited law requiring the Court's adhesion to rigid categories to arrive at a reasonable hourly rate.

To the contrary, in *Doe v. Ohio*, 2020 WL 728276, at *1, 11 (S.D. Ohio Feb. 12, 2020), *report and recommendation adopted*, 2020 WL 996561 (S.D. Ohio Mar. 2, 2020), the court adopted relevant market rates ranging from over $500/hour to over $600/hour for attorneys with expertise in disability rights and complex litigation in a case litigating the right to a "free appropriate public education" under the Individuals with Disabilities Education Act and Section 504 of the Rehabilitation Act of 1973. Just as in *Doe v. Ohio*, this is not a straightforward "education law" case dealing with the laws governing school districts, teachers, FERPA and the like. It is a constitutional case that played out in a school setting. As a practical matter, suing the government under 28 USC § 1983 requires the same skills and knowledge of the same body of law whether the violation occurs in the educational or the employment context. Title VII, Title IX, and § 1983 share a common legal framework.

As set forth in *Blum v. Stenson*, 465 U.S. 886, 895 (1984), to determine rates, courts should look to prevailing rates for lawyers with comparable skill and experience. In *Trustees of Sheet Metal Workers v. Traverse Bay Roofing Co.*, 2019 WL 1474023 (E.D. Mich. Mar. 18, 2019) (quoting *Trustees of N.W. Ohio Plumbers and Pipefitters Pension Plan v. Helm*

17

*& Associates, Inc.*, 2012 WL 3619827, at *2 (N.D. Ohio, Aug. 21, 2012)), this Court held that the prevailing market rate can be ascertained in a number of ways, including by citations to prior precedents showing reasonable rate adjudications for comparable attorneys or cases and rates charged by the opposition party. The Magistrate did not err as a matter of fact or law when she did just that.

The $485 per hour "civil rights" category is well below what Gordon was awarded the last time she obtained fees under § 1988 against a university several years ago. By contrast, in April 2020 the average partner billing rate at Jones-Day, Defendants' counsel's firm, is $950 per hour. Reynolds Holding, *Breakingviews – Holding: $1,745-an-hour lawyers due for disruption.* Reuters. https://www.reuters.com/article/us-usa-lawyers-breakingviews/breakingviews-holding-1745-an-hour-lawyers-due-for-disruption-idUSKCN1IQ2GN (last visited April 27, 2020). Moreover, this Court recently awarded Defendants' counsel $380 per hour in a § 1983 and Title IX matter. *See* 2:18-cv-13321, ECF 153-2; *Lipian v. Univ. of Michigan*, 2020 WL 1164190, at *5 (E.D. Mich. Mar. 11, 2020)[3]; ECF 159-2. By contrast, Gordon has been practicing 30 years longer than Defendants' counsel, and successfully litigated significantly more § 1983 cases during those decades.

---

[3] In sharp contrast to their current position, Defendants' documentation in *Lipian* substantiating their request for fees did not consist of copies of their billing records. Instead, they submitted a spreadsheet summarizing their time, which was virtually identical to Plaintiff's substantiating documentation in this case.

The Magistrate did not err by awarding hourly rates for Gordon and Marzotto Taylor that were higher than the hourly rates originally sought. As the Magistrate held, Plaintiff's Renewed Fee Petition amply justified these increases[4]. First, in dismissing Plaintiff's original motion without prejudice, the Magistrate Judge expressly contemplated that Plaintiff could file a renewed petition reflecting an increased hourly rate to mitigate prejudice to Plaintiff associated with the stay. *See* ECF No. 151, PageID.3923-24. Second, both Gordon and Marzotto Taylor were, in the interim between filing the original and renewed fee petitions, awarded the higher hourly rates sought in their renewed motion. That award was premised on the same legal standard applicable here and was confirmed by this Court. *See* Case No. 2:20-cv-10004-AJT-DRG, ECF No. 30, 36-2, 40. Because Plaintiff provided ample justification that the requested rates were reasonable, the Magistrate did not err in awarding them. Defendants cited no law that the Magistrate ignored or misconstrued.

Nor did the Magistrate err by rejecting Defendants' attempt to restrict Plaintiff's recovery under §1988 to the four corners of the fee agreement. This argument fails as a matter of law. The district courts determine a reasonable fee without regard to any contract between plaintiffs and their counsel. *See United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing and Sheet Metal Co., Inc.,*

---

[4] It is worth nothing that these increases failed to take Gordon and Marzotto Taylor's hourly rates within striking distance of the average partner billing rate at Jones-Day, Defendants' counsel's firm. *Supra* at 18.

732 F.2d 495, 504 (6th Cir. 1984) ("the determination of a reasonable fee is to be conducted by the district court regardless of any contract between plaintiff and plaintiff's counsel"). The text of Plaintiff's fee arrangement is irrelevant to the initial lodestar amount. *Blanchard*, 489 U.S. at 94. In drafting §1988, Congress used *Johnson* as its guide but rejected the *Johnson* Court's admonishment that a reasonable fee could never exceed the amount contracted for. *Id.* at 92-93. In *Blanchard*, the Court held that the presence of a pre-existing fee agreement does not impose a ceiling on an award of attorney's fees. *Id.* at 93-94. To the contrary, "[s]hould a fee agreement provide less than a reasonable fee calculated [using the lodestar], the defendant should nevertheless be required to pay the higher amount." *Id.*

Ms. Gordon's discounted fee agreement with Plaintiff is not indicative of the prevailing market rate for her hourly fee, but rather the realities of representing a human being with limited financial resources. Congress intended that in civil rights cases such as this one, defendants should pay a reasonable fee to prevailing plaintiffs regardless of what the plaintiff contracted to pay their counsel. The analysis under §1988 does not simply look to "reasonable expenses *incurred*". *Nelson v. Ricoh, USA*, 2018 WL 6728392 (E.D. Mich. Mar. 1, 2018) (emphasis added).

Finally, it is uncontested that as of January 20, 2020 Defendants have invested over $1.1 million of taxpayer dollars in the same litigation, with significantly more spent since that date. ECF 95-15. This number has certainly increased substantially since 2020, given the level of activity in this case. Defendants' mock outrage that the reasonable,

20

discounted award granted by the Magistrate is a "windfall" lacks all candor in light of their own fees. Defendants' attempts to disclaim responsibility for Plaintiff incurring attorney fees is similarly meritless in light of the record of this case. The Magistrate did not err as a matter of fact or law when calculating the lodestar.

### E.       Objection 6: The Magistrate Judge Did Not Err by Applying Only a 15% Reduction

Defendants' first argument fails because Magistrate did not err as a matter of fact or law in rejecting their assertion that Plaintiff achieved only "limited success" in this case overall. The Magistrate Judge first summarized controlling Sixth Circuit case law holding that where, as here, a plaintiff makes multiple claims based on a common core of facts, the proper inquiry as to the extent of his success should focus on the significance of the overall relief obtained in relation to the hours spent. ECF No. 178, PageID.4933 (citing *Hensley,* 461 U.S. at 436). The Magistrate properly applied this law to the facts of the instant case and held that because of the common core of facts and Plaintiff's having "succeeded fully on his primary goals" and "received excellent results on those primary issues" she could not find, as a matter of fact or law, that Plaintiff only achieved limited success. ECF No. 178, PageID.4933-34 (citing *DeLaura v. Township of Ann Arbor*, 471 F.3d 666, 673 (6th Cir. 2006).

Defendants next appear to argue that the Magistrate erred because her Report and Recommendation was not premised on non-controlling Ninth Circuit case law[5]. The Magistrate properly cited and relied on applicable, controlling Sixth Circuit case law. ECF No. 178, PageID.4928. The Magistrate Judge did not err by relying on *Sierra Club v. Hamilton Cty. Bd. of Cty. Comm'rs*, 504 F.3d 634, 645 (6th Cir. 2007) for the proposition that her Report and Recommendation must state with some particularity which of the claimed hours the Magistrate was rejecting, which she accepted, and why. The Magistrate provided a highly-detailed, well-reasoned, and legally sound Report and Recommendation detailing why a 15% overall reduction was recommended. Defendants proffer no argument, explanation, or Sixth Circuit case law as to why the Magistrate's reliance on the above Sixth Circuit case law was in error. This argument is without merit.

The Report and Recommendation amply met the requirements of *Sierra Club*. The Magistrate dedicated no less than six pages to identifying with particularity which time entries she was rejecting and why. ECF No. 178, PageID.4928-32, 4934-35. After pinpointing which entries were rejected and giving detailed explanations why, along with facts and case law supporting her recommendation of an overall percentage reduction, the Magistrate assessed a generous reduction of 15% which the totality of her analysis shows she considered proportional under the circumstances. Defendants

---

[5] The Magistrate's highly detailed Report and Recommendation is more than sufficient to meet the non-controlling requirements of the Ninth Circuit.

failed to provide any Sixth Circuit case law holding that the Magistrate's 30-page Report and Recommendation was insufficiently detailed, as a matter of law. This objection also fails.

### F. Objection 7: The Magistrate Judge Did Not Err by Awarding Plaintiff's Costs

Defendants' objection ignores the Magistrate's reliance on well-settled Sixth Circuit case law holding that, as the Magistrate Judge put it "attorneys are afforded discretion to expend costs they believe are reasonable and necessary to provide effective representation." ECF No. 178, PageID.4935-36 (citing *Walso v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013) and *Northcross v. Bd. of Educ. of Memphis City Schs.*, 611 F.2d 624, 639 (6th Cir. 1979). Defendants point to no factual "mistake" by the Magistrate here. Nor have they ever cited controlling Sixth Circuit case law holding that Plaintiff's printing costs were not compensable. This objection should also be denied.

## IV. CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that this Honorable Court deny Defendants' Objections and adopt the Magistrate Judge's Report and Recommendation.

Dated: December 21, 2021          Respectfully submitted,

**DEBORAH GORDON LAW**
/s/ Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304

(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing and service of said documents to all parties through their counsel of record.

**DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com