UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JOHN DOE,**<br><br>　　　　　　Plaintiffs,<br><br><br>　　vs.<br><br><br>**UNIVERSITY OF MICHIGAN, ET AL.,**<br><br><br>　　　　　　Defendants. | **2:18-cv-11776-TGB**<br><br><br>**ORDER ACCEPTING REPORT AND RECOMMENDATION (ECF No. 178)** |

On March 12, 2018, a female student at the University of Michigan ("Claimant") filed a complaint with the University of Michigan's Office of Institutional Equity ("OIE") about an alleged nonconsensual sexual encounter she had with John Doe, the Plaintiff in this case.  In response, Doe brought this action, alleging that the University's policies for adjudicating complaints of sexual misconduct violated students' due process rights under the Fourteenth Amendment.  Doe sued the University of Michigan, the Board of Regents of the University of Michigan, Pamela Heatlie, Robert Seller, Martin Philbert, Erik Wessel,

Laura Blake Jones, E. Royster Harper, Suzanne McFadden, and Paul Robinson, "(Defendants") for violating his due process rights under 42 U.S.C. § 1983. ECF No. 47.

This case was initially assigned to the Honorable Arthur J. Tarnow. Addressing a number of pretrial motions, Judge Tarnow granted partial summary judgment in favor of Doe, and entered a judgment in his favor. The Court found that the University violated Doe's right to due process, and directed that Doe was entitled to a live hearing that included an opportunity to cross-examine the claimant. ECF No. 90. Defendants appealed, and the Sixth Circuit ordered that the judgment be vacated because the University had closed proceedings against Doe and therefore, the case became moot. ECF No. 154. On remand, Doe filed a renewed motion for attorney's fees and both parties filed other related motions. These motions were referred to Magistrate Judge Elizabeth A. Stafford for hearing and determination under 28 U.S.C. § 636(b)(1)(B).

On November 19, 2021, Magistrate Judge Stafford issued a report and recommendation ("R&R") (ECF No. 177), recommending that Doe's renewed motion for attorneys' fees and costs be granted in part (ECF No. 159), that Defendants' motion to compel production of billing records

(ECF No. 162) be denied, that both parties' motions to file excess pages for their replies be granted (ECF Nos. 167 and 169), and that Defendant's motion for leave to file a sur-reply to Doe's reply (ECF No. 171) be granted. Defendants object to the R&R's granting Doe's renewed motion for attorney's fees and costs (ECF No. 159) and to its denial of Defendants' motion to compel production of billing records (ECF No. 162).

## STANDARD OF REVIEW

After a Report and Recommendation is issued, the law provides that either party may serve and file written objections "[w]ithin fourteen days after being served with a copy of the report and recommendation." 28 U.S.C. § 636(b)(1). Defendants filed timely objections to the report and recommendation. ECF No.179. In considering the merits of such objections, the district court will make a "de novo determination of those portions of the report . . . to which objection is made." *Id*.

## DISCUSSION

Defendants raise seven objections to the Report and Recommendation which can be summarized as follows:

(1) The recommendation to deny Defendants' Motion to Compel Billing Records was clearly erroneous;

(2) Doe never had Article III standing and that the case was not ripe for review;

(3) Doe is not a prevailing party for the purposes of claiming attorney fees;

(4) The fees requested by Plaintiff are not supported by contemporaneous records;

(5) The Magistrate Judge's application of the Lodestar method relied on incorrect rates and ignored counsel's rate increase and Doe's agreed upon rate;

(6) The recommendation to reduce Plaintiff's attorneys fees by 15% was insufficient given Doe's limited success and the unreliable support for his petition; and

(7) Doe's unsubstantiated costs are unrecoverable.

The Court will address each objection in order of significance.

## I.   The R&R did not err in finding that the Court had standing to review Doe's claims (Objection 2).

Defendants claim the R&R erred in finding that this Court had subject matter jurisdiction because Doe never demonstrated Article III standing or that his case was ripe for review. ECF No. 179, PageID.4960. Specifically, Defendants assert that Plaintiff Doe never suffered any

injury—a requirement of standing—because his student misconduct hearing never actually took place. *Id.* Additionally, Defendants claim that the R&R erroneously concluded that "(1) the Sixth Circuit's silence on [subject matter jurisdiction] 'speaks volumes'; (2) the Sixth Circuit found only that the case became moot, not that it was moot from the beginning; and (3) if the Sixth Circuit had serious questions about this Court's exercise of jurisdiction, it might have said so." *Id.* at PageID.4962 (citing ECF No. 178, PageID.4916).

In June 2018, Doe filed a Motion for Temporary Restraining Order and Preliminary Injunction. ECF No. 4. In response, Defendants contested the existence of Article III standing, arguing that "in the absence of a decision determining [that Doe] violated the University's [2018 Sexual Misconduct Policy] and imposing a significant sanction, [Doe] has no claim to be adjudicated." ECF No. 21, PageID.324.

But under the 2018 Policy, once the Claimant filed a complaint of sexual misconduct against Doe, an indefinite hold was placed on his official transcript and engineering degree which prevented him from applying for employment as an engineer or for admission to graduate school. ECF No.1, at PageID.21-2. Additionally, the investigation process

outlined by the 2018 Policy did not require that Doe be given proper notice of the complaint made against him and prevented him from any meaningful opportunity to be heard, either through a hearing or cross-examination. *Id.* at PageID.22.

At the time Doe filed this suit, he had been under investigation for 84 days, during which period he had no ability to access his university transcript and faced the threat of sanctions including expulsion. ECF No.1, PageID.10. "When a defendant's actions have threatened and impaired a plaintiff's constitutionally protected property interest in his education and future employment, irreparable injury is presumed." *Univ. of Cincinnati*, 872 F.3d 393, 407 (6th Cir. 2017) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)). Judge Tarnow found the injury Doe suffered and alleged at the time he filed his complaint was sufficient to confer standing.

Judge Tarnow granted Doe's TRO Motion, in part, and required the University to release his official transcript. ECF No. 19, PageID.270. He also rejected Defendants' jurisdictional arguments, reasoning that, "under the University's 2018 policy for sexual assault claims, Doe faced an immediate risk of expulsion without a hearing and other due process

protections." ECF No. 178, PageID.4915 (citing *Doe v. Univ. of Michigan*, 325 F. Supp. 3d 821, 826 (E.D. Mich. 2018), *vacated and remanded*, No. 18-1870, 2019 WL 3501814 (6th Cir. Apr. 10, 2019).

On September 7, 2018, in a separate case involving the University of Michigan, the Sixth Circuit issued its opinion in *Doe v. Baum*[1], which prompted Defendants to concede that a policy change was required. The University therefore implemented an "Interim Policy" specific to sexual misconduct cases.[2] ECF No. 59, PageID.1837. On appeal, the Sixth Circuit vacated and remanded Judge Tarnow's July 2018 order for "reconsideration in light of *Baum* and the University's new interim policy," and did not address or question Judge Tarnow's legal rulings on

[1] "[I]f a public university has to choose between competing narratives to resolve a case, the university must give the accused student or his agent an opportunity to cross-examine the accuser and adverse witnesses in the presence of a neutral fact-finder. Because the University of Michigan failed to comply with this rule, we reverse." *Doe v. Baum, et al*, 903 F.3d 575, 578 (6th Cir. 2018).

[2] Defendants admitted to the Policy's unconstitutionality in their Petition for Rehearing en banc after *Doe v. Baum*: "Appellees are no longer contesting whether the investigative model they have used to date is sufficient, and understand that they must provide students in Title IX cases with a live hearing including cross-examination." ECF No. 53, PageID.1801.

the issue of standing. ECF No. 178, PageID4916; *Doe v. Univ. of Michigan*, No. 18-1870, 2019 WL 3501814 at *1 (6th Cir. April 10, 2019).

While Defendant objects to this part of the R&R, the Court agrees with Magistrate Judge Stafford's conclusion that the Sixth Circuit's failure to disturb Judge Tarnow's findings on subject matter jurisdiction "speaks volumes." ECF No. 178, PageID.4916. "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, (2006). Defendants raised the issue of standing on appeal, and if their position were correct it would have required the complete dismissal of the complaint, not a remand for further "reconsideration in light of *Baum* and the University's new interim policy." The Sixth Circuit's failure to address this question, despite Defendants raising the issue on appeal, strongly suggests that the Court of Appeals saw the district court as retaining subject matter jurisdiction to "reconsider" the merits of the claims before it. The Magistrate Judge did not err in concluding the same.

Judge Tarnow again rejected Defendants' challenge to subject matter jurisdiction in March 2020. *Doe v. Univ. of Michigan*, 448 F. Supp.

3d 715, 724-27 (E.D. Mich. 2020), *appeal dismissed and remanded*, No. 20-1293, 2020 WL 9171175 (6th Cir. Dec. 23, 2020), *and vacated*, No. 18-11776, 2021 WL 3482950 (E.D. Mich. Mar. 22, 2021). He said that the case was ripe for judicial review, and not merely premised on a hypothetical future injury. *Id*. at 725. He reasoned that, under the University's 2018 policy, it had adjudicated Doe without a hearing. *Id*. at 725. And although the University had enacted a 2019 interim policy, the case was not moot because the interim policy would "soon be replaced with an Umbrella Policy with unknown ramifications and procedural safeguards." *Id*. at 726.

Voluntary cessation of alleged illegal conduct will moot a case only where there is no reasonable expectation the alleged violation will recur, and the interim relief has eradicated the effects of the violation. *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979). Determining whether the conduct could not reasonably be expected to recur must consider the totality of the circumstances surrounding the cessation. *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767-68 (6th Cir. 2019). When examining the totality of the circumstances, the Sixth Circuit looks at whether (1) the process leading to change was a legislative-like procedure or ad-hoc and

easily reversible and (2) whether the University has continued to defend the use of the challenged conduct. *Id*. at 768, 770.

The Court agrees with Judge Tarnow's conclusion that Defendants' Interim Policy did not moot Doe's claim. Defendants did not present any evidence regarding the process or procedure used to create the Interim Policy or evidence proving that the new policy's due process protections were permanent and that the harm suffered by Doe could not be reasonably expected to recur. Instead, after the Sixth Circuit decided *Baum*, University of Michigan President Mark Schlissel issued a public statement declaring his disagreement with the decision stating, in part, "[t]he [2019 Interim Policy] was necessary to follow the law, but U-M respectfully submits that the Sixth Circuit got it wrong" and that the process outlined in the 2018 Policy was "the best way to determine truth and minimize harm to all students involved." ECF No.47, PageID.1341.

Therefore, based on President Schlissel's statement and the use of the title "Interim Policy," the R&R's acceptance of Judge's Tarnow's finding that the policy "will be replaced with an Umbrella Policy with unknown ramifications and procedural safeguards" was reasonable. ECF No. 178, PageID.4917 (quoting *Doe v. University of Michigan*, 448

F.Supp.3d 715, 726 (2020)). The University of Michigan failed to meet its burden of proving that the challenged 2018 Policy would not be re-enacted and thus, Doe's due process claim was not moot.

On December 23, 2020, the Sixth Circuit concluded that the University's appeal of Judge Tarnow's March 23, 2020 order granting partial summary judgement in favor of Doe's due process claim was moot. The Court of Appeals reasoned that "[t]he University had since permanently closed [Doe's] proceedings; thus, there [was] no equitable relief [it could] grant that [would] make a difference to Doe's legal interest." *Doe v. University of Michigan*, No. 20-1293, 2020 WL 9171175, at *1 (6th Cir. Dec. 23, 2020). Again, the Sixth Circuit remained silent on the issue of subject matter jurisdiction.

Defendants claim that the R&R's conclusion that the Sixth Circuit's silence on the issue of Doe's standing "speaks volumes" overlooks the fact that "the Sixth Circuit was never tasked with squarely addressing . . . jurisdictional arguments in light of the procedural posture of the case." ECF No. 179, PageID.4962. However, "[f]ederal courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge by any party," and if the court

11

finds that it lacks subject-matter jurisdiction, "it must dismiss the complaint in its entirety." *Arbaugh v. Y&H.*, 546 U.S. 500, 514 (2206).

Therefore, regardless of whether the Sixth Circuit was explicitly tasked with addressing subject-matter jurisdiction, if a genuine lack of subject-matter jurisdiction existed, the court was required to state so in its opinion. It should also be noted that Defendants *did* raise subject matter jurisdiction arguments in both appellate briefs, so the issue was presented to the appellate court.  Such a posture does suggest that, if the Sixth Circuit had thought the University was right, it would have said so, but it was silent on the issue. *See* Case: 18-1870; Case 20-1248.

Additionally, as Magistrate Judge Stafford noted, when determining whether to dismiss the appeal or vacate Judge Tarnow's decision on the merits due to the case becoming moot, the Sixth Circuit also considered the equities of the case. *Doe v. Univ. of Michigan,* 2020 WL 9171175 at *2. When assessing equities, the question of fault is central to the determination and the Sixth Circuit stated that "defendants are not wholly responsible for case becoming moot . . . [given] the claimant now declines to participate in proceedings." *Id*. Thus, the Sixth Circuit determined the claimant's refusal to participate in the

hearing was the earliest relevant inflection point when mootness was presented.

This Court agrees with the R&R that had the Sixth Circuit determined the case was either moot from the beginning or at some point prior to the claimant's refusal to participate, it would have articulated so in its findings. Additionally, if this court lacked subject matter jurisdiction over the litigation, the Sixth Circuit would have been required to vacate an award of attorneys' fees and costs. Instead, it explicitly noted that its decision to vacate the merits of the judgment "[did] not necessarily disturb [Doe's] status as a 'prevailing party' for the purposes of attorneys' fees." Accordingly, Objection 2 is overruled.

## II.   The R&R did not err in finding Doe's supporting documentation of attorney fees and costs sufficient (Objections 1 & 4).

Defendants object to the R&R's denial of their Motion to Compel, contending that (1) without contemporaneous billing records, neither the Court nor Defendants can ascertain whether there must be a complete denial of the petition in its entirety or a further reduction in fees (Objection 1), and (2) Doe's counsel admitted that the fee request was not supported by contemporaneous records and therefore compelling

production of billing records is proper (Objection 4). ECF No. 179, PageID.4958-59.

On January 8, 2021, Doe filed a Renewed Motion for Attorney Fees and Costs. ECF No. 159. In response, Defendants filed a Motion to Compel Production of Billing Records (ECF 162), contending among other things, that Doe failed to provide the requisite contemporaneous billing records for the Court to determine whether the requested fees are reasonable. The R&R denied Defendants' Motion to Compel, concluding that although *some* of the entries were "vague and raise[d] a question of whether Doe's counsel maintained contemporaneous records," overall the record was sufficient to award attorney fees. ECF No.178, PageID.4932.

Section 1988 of Title 42 of the United States Code provides that in a § 1983 federal civil rights action, a district court has the discretion to allow the prevailing party to recover reasonable attorney fees as part of the costs. A key requirement for an award of attorney fees is that "sufficient documentation must be offered in support of hours charged–[documentation] must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that the hours were

14

actually and reasonably expended in . . . litigation." *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 553 (6th Cir. 2008).

Counsel is considered to have met its burden of supplying sufficient documentation when the court is provided with "itemized statements describing the subject matter, the attorney, the time of allotment, and the charge for all work done on Plaintiffs' case." *Id*. (quoting *Anderson v. Wilson*, 357 F.Supp.2d 991, 999 (E.D. KY. 2005)).

Here, in addition to sworn affidavits, Attorney Deborah Gordon submitted a 11-page itemized spreadsheet containing billing data compiled throughout the litigation which includes dates, descriptions of task/subject matter, attorney, time allotment and hourly rate charged. ECF No. 181, PageID.5047; ECF No. 168-4; ECF No.159-13; ECF No.159-17; ECF No.159-18. Defendants argue Doe's affidavit statement that documentation provided was "from a review of [her] files, including drafting, notes, pleadings, emails and other documents," (Gordon Aff. ECF No.159-13, PageID.4146; ECF No.162, PageID.4203), is proof that the spreadsheet is an "after-the-fact summary spreadsheet . . . based on a retrospective review" and is therefore "presumptively suspect". ECF No.179, PageID.4958 (citing *United Slate, Tile & Composition Roofers,*

*Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984)).

First, while the Court finds that certain entries are vague or incorporate block billing such that some might require additional scrutiny, when considered as a whole Gordon's records are adequate and allow this Court to ascertain a reasonable attorney fees award. As Magistrate Judge Stafford noted, "[c]ourts in this circuit have reduced attorney fees on the basis of insufficient billing descriptions where the attorney did not maintain contemporaneous records of his time or the nature of his work." *Id.* (citing *Imwalle*, 515 F.3d at 553 (citation and internal quotation marks omitted)). In this case, Magistrate Judge Stafford reduced the award because of the insufficiency of some of the billing entries.

Second, nowhere in the record does Gordon state her billing records were recorded after-the-fact and her affidavit in no way implies that the data included in the spreadsheet was determined based on a retrospective review. Rather, the more logical inference from the statement is that based on the work completed throughout the life of this

case, Doe's litigation team accrued the hours recorded in the submitted spreadsheet.

Additionally, Defendants fail to cite any binding case law that suggests actual billing records are required where some entries included in billing documentation are found to be insufficient. Although it is preferred that records are maintained "in a way that will enable a reviewing court to identify distinct claims," it is also true that "excessive detail on each minute spent on the litigation is not required." *Hensley v. Eckerhart*, 461 U.S. 414, 437 no.12 (1983).

Therefore, the court concurs with the R&R's conclusion that Doe's records of fees and costs were sufficient. Objections 1 and 4 are overruled.

### III. The R&R did not err in finding that Doe was a prevailing party for the purposes of recovering attorney fees (Objection 3).

Defendants object to the R&R's finding that Doe is a prevailing party for the purposes of recovering reasonable attorney fees as part of his costs. Defendants claim the relief Doe obtained, including (1) the release of his official transcript without notation and (2) offer of a live hearing with cross-examination, do not qualify as creating "court-ordered, material and enduring change" to his legal relationship with the

University because all relief was voluntarily offered to Doe prior to court orders requiring the same relief. ECF No. 179, PageID.4963.

To determine whether an individual is a 'prevailing party' to recover attorney fees under 42 U.S.C. § 1988, a party must "receive at least some relief of the merits of his claims such as a judgment, an injunction, or a consent decree. *Horner v. Kentucky High Sch. Athletic Ass'n*, 206 F.3d 685, 698 (6th Cir 2006) (quoting *Hewitt v. Helms*, 482 U.S. 755, 760-61 (1987)). To qualify, the relief received must amount to a court-ordered change in the legal relationship between plaintiff and defendant. *Green Party of Tennessee v. Hargett*, 791 F.3d 684, 697 (20150. However, if a defendant voluntarily changes its behavior, a plaintiff will not be considered a prevailing party even if the plaintiff received the relief they sought. *Buckhannon Bd. Care Home, Inc v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001).

The R&R was correct in finding that Doe prevailed in obtaining the release of his transcript, without notation. Defendants claim that Doe was voluntarily provided with his clean transcript on June 12, two days prior to Judge Tarnow's June 14, 2018 order. ECF No.179, PageID.4963. However, Defendants fail to acknowledge that in the June 11, 2018,

telephone status conference regarding Doe's Motion for Temporary Restraining Order and Preliminary Injunction, they consistently resisted requests for release of a clean transcript. ECF No. 20, PageID.279-281, 285-286.

Instead, Defendants claim that their offer, made one hour prior to the conference call, to release Doe's transcript with a notation reading "Subject to Disciplinary Investigation," or something similar, was sufficient. ECF No. 164-1, PageID.4293. But Doe rejected the offer – a transcript with a notation of pending disciplinary hearings is worse than having no transcript at all. ECF No. 20, PageID278. Judge Tarnow gave Defendants until the next day to notify the court of its decision on whether they would release a clean transcript. *Id*. at PageID.286.

On June 14, upon hearing nothing from the parties, Judge Tarnow ordered the immediate release of Doe's transcript. ECF No. 19, PageID.270. Although Defendants released the clean transcript two days prior to the Court's order, they failed to notify the Court of their decision to do so, resulting in Judge Tarnow's order that the University "immediately release" Doe's official transcript after he "heard nothing" from the parties. ECF No. 19, PageID.270. Therefore, the R&R did not

err in finding that Doe had prevailed in having his official transcript released without notation.

Second, Defendants claim that this Court's March 2020 order granting Doe a live hearing with cross-examination was an illusory victory – the court simply ordered Defendants to do what they had previously volunteered. ECF No. 164, PageID.4263. Defendants claim that upon adoption of the Interim Policy on January 9, 2019, Doe was voluntarily offered the opportunity for a hearing as early as January 19, 2019. ECF No. 113-1, PageID.2998. However, as stated, Judge Tarnow rejected the University's mootness argument, finding that the University could replace the interim policy with a new "Umbrella Policy with unknown ramifications and procedural safeguards." *Doe*, 448 F. Supp. 3d at 726.

The Court agrees with the Magistrate Judge's R&R, that Doe is the prevailing party. Accordingly, Objection 3 is overruled.

## IV. The R&R did not err in its application of the Lodestar factors (Objection 5 & 6).

Defendants assert that the R&R erred in concluding that Doe's counsel rates were reasonable because (1) it incorrectly relied on billing rates for personal injury lawyers; (2) it disregarded counsel's hourly rate

increase from \$540/hour to \$600/hour, and (3) it failed to properly consider the \$350/hour rate counsel charged Doe. ECF No. 179, PageID.4967-68. However, the Court finds no clearly erroneous error in Magistrate Judge Stafford's calculation of attorney's fees and the objection is denied for the reasons explained below.

When a court finds that an award of fees is appropriate, it must then arrive at a reasonable amount of fees to award. *Glob. Tech., Inc. v. Ningbo Swell Indus. Co.*, 2021 WL 5444761 (E.D. Mich. July 29, 2021) (citing *Bldg. Serv. Local 7 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1400 (6th Cir. 1995)). To do so, the Court must use the "lodestar" method to determine the appropriate amount of attorney fees. *Barnes v. City of Cincinnati*, 401 F. 3d 729, 745 (6th Cir. 2005). "To determine the lodestar figure, the court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Gascho v. Global Fitness Holdings*, LLC, 822 F.3d 269, 279 (6th Cir. 2016). In assessing the "reasonable hourly rate" component of the lodestar method, the district court should assess the "prevailing market rate in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The prevailing market rate is "that which

lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Addock-Ladd v. Sec. of Treasury*, 227 F. 3d 343, 350 (6th Cir. 2000).

First, although this Court agrees that Doe's counsel's attorney fees should be assessed under the prevailing market rate for a civil rights lawyer, the Court agrees with the R&R's conclusion that Gordon's request for $600 is reasonable. The State Bar of Michigan's 2020 Economics of Law Practice Survey[3] indicates that the 95th percentile rate for civil rights lawyers is $550/hour. The 95th percentile rate for a lawyer who has practiced for more than 35 years is $600/hour and Gordon has over 40 years of trial practice experience.

Second, Gordon's increase from $540/hour to $600/hour is permissible. As Judge Stafford noted, Gordon may request a higher hourly rate to account for the passage of time since the stay. *See Michigan Bldg. and Const. Trades Council, AFL-CIO v. Snyder,* 11-13520, 2012 WL 1893516, at *3 (E.D. Mich. May 23, 2012). "In setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by

---

[3] *See* State Bar of Michigan, Economics of Law Practice Survey (2020), https://www.michbar.org/file/pmrc/articles/0000155.pdf (last viewed May 12, 2021).

basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 282, 109 S. Ct. 2463, 2468, 105 L. Ed. 2d 229 (1989). This action was brought in 2018 and the parties have been contesting the delegation of fee awards for two years. A $60 fee increase is reasonable given the delay in resolving this matter.

Third, district courts have the discretionary authority to determine a reasonable fee based on the prevailing market, notwithstanding counsel's fee agreement. *See United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 504 (6th Cir. 1984) ("the determination of a reasonable fee is to be conducted by the district court regardless of any contract between plaintiff and plaintiff's counsel").

Therefore, the negotiated fee agreement between Doe and counsel does not preclude Gordon from qualifying for the prevailing market rate owed to her based on her time spent and expertise.

Defendants also claim the R&R erroneously failed to reduce Doe's fees in proportion to his lack of success. Defendants cite to *Harper v. BP Epl. & Oil, Inc.*, where the Sixth Circuit held attorneys' fees should be

awarded in proportion to the degree of success achieved. 3 F. App'x 204, 207 (6th Cir. 2001). However, the Court finds that the R&R's disposition is appropriate here.  Although Doe prevailed only on his due process claim, the Court agrees with the R&R that all of Doe's claims "involve a common core of facts" or are "based on related legal theories," and thus it would be inappropriate to only award Doe's counsel for fees related solely to his due process claim because the "lawsuit cannot be viewed as a series of discrete claims." ECF No. 178, PageID.4933 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

Accordingly, Objections 5 and 6 are overruled.

## V.    The R&R did not err in concluding that Doe's unsubstantiated costs are recoverable (Objection 7).

Finally, Defendants argue that the R&R erred in recommending that all of Doe's requested, but unsubstantiated, costs totaling $8,883.66 are recoverable under Section 1988. ECF No. 179, PageID.4972.

Under Section 1988, a prevailing party may recover "incidental and necessary expenses incurred in furnishing effective and competent representation." *Northcross v. Bd. of Ed. of Memphis City Sch.*, 611 F.2d 624, 636-37 (6th Cir. 1979), *abrogation on other grounds recognized by L&W Supply Corp. v. Acuity*, 475 F.3d 737, 739 & n.6 (6th Cir. 2007). Defendants contend that Magistrate Judge Stafford erred in concluding that Doe

was the prevailing party and that the requested fees were "necessary" expenses. The Court has already established Doe is the prevailing party. The Court finds no clear error in Magistrate Judge Stafford's awarding of expenses. Accordingly, Objection 7 is overruled.

## CONCLUSION

Accordingly, it is hereby **ORDERED** that Magistrate Judge Stafford's Report and Recommendation of November 19, 2021, (ECF No. 178) is **ACCEPTED** and **ADOPTED**, and that Defendants' objections (ECF No. 179) are **OVERRULED**.

**IT IS SO ORDERED.**

Dated: June 28, 2022          s/Terrence G. Berg
                             TERRENCE G. BERG
                             UNITED STATES DISTRICT JUDGE