UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JOHN DOE,** <br><br>                 Plaintiff, <br><br>     vs. <br><br><br> **UNIVERSITY OF MICHIGAN,** <br> ***et al.,*** <br>              Defendant. | **2:18-CV-11776-TGB-EAS** <br><br> HON. TERRENCE G. BERG <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SECOND RENEWED MOTION FOR ATTORNEYS' FEES AND COSTS** <br> **(ECF NO. 192)** |

Plaintiff John Doe was accused of sexual assault by another student in 2018 when he was an undergraduate student at Defendant the University of Michigan. Before the University's investigation had concluded and before any discipline had been issued, Doe filed the instant lawsuit against the University, the Board of Regents of the University of Michigan, and Pamela Heatlie, Robert Seller, Martin Philbert, Erik Wessel, Laura Blake Jones, E. Royster Harper, Suzanne McFadden, and Paul Robinson, all employees of the University, alleging that the University's disciplinary procedures for cases involving alleged sexual assault violated his due-process rights under 42 U.S.C. § 1983.

After significant motion practice and three separate appeals to the Sixth Circuit Court of Appeals, the last of which held that Doe was the prevailing party only as to his due process claim seeking release of his

transcript, and remanding for recalculation of attorney fees, Plaintiff filed the instant Second Renewed Motion for Attorneys' Fees and Costs. ECF No. 192. This motion has been fully briefed. The Court has carefully considered the parties' submissions and does not believe that oral argument will aid in its disposition of this motion; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). ECF No. 198.

For the reasons set forth below, the Court will grant in part and deny in part Plaintiffs' Second Renewed Motion for Attorneys' Fees and Costs.

## I.   BACKGROUND

On March 20, 2018, Plaintiff John Doe, then an undergraduate student at Defendant the University of Michigan, was accused by a fellow student ("the complainant") of sexual assault. ECF No. 47, PageID.1329. At that time, the University's policy for adjudicating claims of sexual harassment and assault did not grant accused students a live hearing or permit them to cross-examine their accusers. 2018 Policy, ECF No. 47-1, PageID.1391–97. The Policy instead required that an investigator separately interview both the complainant and the accused student and prepare a preliminary report to which both parties could respond. *Id.* PageID.1391. The investigator would then issue a final report containing the investigator's findings, *id.* PageID.1397, and if the investigator found

a violation of the Policy, the Office of Student Conflict Resolution ("OSCR") would issue a sanction. *Id.*

Consistent with the 2018 Policy, the University notified Doe that he was under investigation for alleged sexual assault on April 2, 2018. ECF No. 21-1, PageID.386. The investigator then interviewed both the complainant and Doe and prepared an initial report and sent it to Doe and the complainant on May 24, 2018, inviting feedback. Doe responded on May 29, 2018. *Id.* PageID.386–88. According to the investigator, "Doe's comments in total exceeded eighty pages, and accommodating Doe's requests necessarily extended the length of the investigation." *Id.* PageID.389. Meanwhile, on April 19, 2018, the University had placed a temporary hold on Doe's student account that prevented him from accessing his transcript while the investigation was pending. ECF No. 47, PageID.1333.

On June 4, 2018, before the investigator had issued her final report and before the University had issued any discipline, Doe filed the instant lawsuit. ECF No. 1.[1] Doe alleged that the temporary transcript hold under the 2018 Policy constituted a denial of due process, in violation of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. He further alleged that he would be denied due process because the yet-to-be

---

[1] This case was originally assigned to the late Honorable Arthur J. Tarnow, who presided over this case until February 17, 2022, at which time this case was reassigned to the undersigned.

conducted proceedings would not provide a live hearing or an opportunity to cross-examine the complainant. *Id.* PageID.22–24. Doe also alleged claims of gender discrimination under Title IX, 20 U.S.C. § 1681, *et seq.*, and the Michigan Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101, *et seq. Id.* PageID.24–32. Doe requested injunctive and declaratory relief, monetary damages, and attorney fees and costs. *Id.* PageID.32–33.

The next day, on June 5, 2018, Doe filed a motion for a temporary restraining order and a preliminary injunction. ECF No. 4. Doe asked the Court to order the University to "immediately release[] the 'hold' on [Doe's] official transcript and graduation credentials; halt[] the investigation and process currently under way, which intentionally deprives [Doe] of due process; and enjoin[] Defendants from using, for any student, the [2018 Policy] in any case where credibility is an issue." *Id.* PageID.135. The Court held a telephonic status conference with the parties on June 11, 2018 to discuss, in part, the temporary hold on Doe's transcript. ECF No. 20, PageID.275–76. The Court strongly encouraged the University to release the hold on Doe's transcript, and the University initially offered to release the transcript with a notation that Doe was under a disciplinary investigation. *Id.* PageID.278–79. The next day, the University released Doe's unmarked transcript. *See Doe v. Univ. of Mich.*, 78 F.4th 929, 936 (6th Cir. 2023). Then, on June 14, 2018, the Court, having heard nothing from the parties, issued an order granting in part

Doe's motion for a preliminary injunction and ordering the University to release an unmarked copy of Doe's official transcript. ECF No. 19, PageID.269–70.

On June 28, 2018, the Court held a hearing on Doe's motion for preliminary injunction to consider Doe's broader challenge to the 2018 Policy, and on July 6, 2018 the Court granted the preliminary injunction and ordered the University to provide Doe with a "live hearing" and the opportunity to cross-examine the complainant at least indirectly. *Doe v. Univ. of Mich.*, 325 F. Supp. 3d 821 (E.D. Mich. 2018) (Tarnow, J.), *vacated and remanded by* 2019 WL 3501814 (6th Cir. Apr. 10, 2019).

The University appealed and asked the district court to stay the injunction pending the appeal, which the Court did. The University argued on appeal, as it did before the district court, that the district court did not have jurisdiction. Doe cross-appealed, arguing that he had a due process right to direct examination of the complainant. While this appeal was pending, the Sixth Circuit decided *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018), which held that "[i]f a university is faced with competing narratives about potential misconduct, the administration must facilitate some form of cross-examination in order to satisfy due process." *Id.* at 581. After *Baum* was issued, the University revised its policy for adjudicating cases of sexual misconduct to allow for a hearing and cross-examination, and this revision took effect in January of 2019. ECF No. 47-3, PageID.1426–75. In light of the *Baum* decision and the University's

5

changed policy, the Sixth Circuit vacated the district court's opinion and remanded for reconsideration. *Doe v. Bd. of Regents of Univ. of Mich.*, Nos. 18-1870, 18-1903, 2019 WL 3501814 (6th Cir. Apr. 10, 2019).

Doe then filed a second amended complaint reasserting the same allegations and adding a facial challenge to the constitutionality of the revised policy. ECF No. 47. The Defendants filed a motion to dismiss the second amended complaint, again arguing that Doe lacked Article III standing and that his claims were unripe, ECF No. 49, and Doe filed a motion for partial summary judgment, seeking an order (1) that the 2018 Policy violated due process and enjoining the University from returning to it, (2) that the University provide him with a live hearing and opportunity to cross-examine witnesses, and (3) enjoining the University from placing a hold on his transcript or student account. ECF No. 53. The Court issued an Order on March 23, 2020 denying in part and granting in part the University's motion to dismiss and Doe's motion for partial summary judgment. *Doe v. Univ. of Mich.*, 448 F. Supp. 3d 715, 734 (E.D. Mich. 2020) (Tarnow, J.), *appeal dism'd and remanded by* Case No. 1293, 2020 WL 9171175 (6th Cir. Dec. 23, 2020), *and vacated by* 2021 WL 3482950 (E.D. Mich. Mar. 22, 2021). The Court concluded:

> Defendants' 2018 Policy is unconstitutional. The possibility of a pre-hearing suspension under Defendants' 2019 Policy is also unconstitutional. The University may proceed with its disciplinary proceedings against Plaintiff. Because the outcome of his disciplinary action rests on competing narratives, Plaintiff is entitled to a live hearing, in person or

via video communication, with the opportunity to cross-examine witnesses and the Claimant.

*Id.* at 733 (the Court also dismissed Doe's Title IX and state-law claims of gender discrimination). The Court entered a final judgment on March 24, 2020. ECF No. 91.

Defendants appealed the district court's judgment. However, while that appeal was pending, the complainant was no longer interested in participating in the disciplinary process and so the investigation was permanently closed. *Doe v. Univ. of Mich.*, No. 20-1293, 2020 WL 9171175 (6th Cir. Dec. 23, 2020) (per curiam). Doe moved to dismiss the appeal as moot, and the Sixth Circuit held that the appeal was moot and that vacatur of the district court's judgment was warranted because "[t]he defendants are not wholly responsible for Doe's case becoming moot, given that the district court required that Doe be given the opportunity to cross-examine the claimant and the claimant now declines to participate in the proceedings." *Id.* at *2.

On January 8, 2021, Doe filed a renewed motion for attorney fees, seeking $460,467.27 in attorney fees and $8,883.66 in costs. ECF No. 159.[2] The magistrate judge issued a report and recommendation ("R&R") recommending that Doe's motion be granted in part and that Doe be

---

[2] Doe had filed a bill or costs and motion for attorney fees shortly after the Court entered its Judgment in this case. ECF Nos. 94, 95. However, the bill of costs and motion for fees were denied without prejudice pending the appeal. ECF No. 151.

awarded attorneys' fees at a 15% reduced rate totaling $410,853.91 and costs at the full rate requested. ECF No. 178. The Court adopted the R&R over the University's objections, ECF No. 183, and the University appealed. ECF No. 184.

The Sixth Circuit issued an opinion on August 21, 2023. *Doe v. Univ. of Mich.*, 78 F.4th 929 (6th Cir. 2023). The Sixth Circuit found that,

> the district court had jurisdiction over Doe's due-process claim regarding the deprivation of his transcript until the parties reached an agreement that the University would release the transcript during the pendency of its investigation and the district court issued its order memorializing that agreement on June 14, 2018. As of that date, Doe's transcript-deprivation injury had been redressed and his claim had therefore become moot.

*Id.* at 943 (internal citations omitted) (describing Doe's injury with regarding to his transcript as "fleeting"). The Sixth Circuit found however that Doe lacked standing as to <u>all</u> remaining claims and that those claims were not ripe for adjudication. *Id.* at 943–50. The Sixth Circuit accordingly held that:

> Doe only had one claim for which he had Article III standing and that was ripe for adjudication: a denial-of-due-process claim for his withheld transcript. After he obtained his transcript, that claim became moot. The district court lacked jurisdiction over his remaining claims because Doe lacked standing to bring those claims, they were unripe, or they were moot. *Doe was therefore the prevailing party only with respect to his due-process claim for his withheld transcript, which was resolved within two weeks of his filing this lawsuit.*

*Id.* at 955 (emphasis added). The Sixth Circuit thus vacated this Court's order granting attorney fees and remanded this matter "for recalculation of attorney fees, *taking into account Doe's very limited success in this lengthy litigation.*" *Id.* (emphasis added).

On January 2, 2024, Doe filed the instant Second Renewed Motion for Attorney Fees and Costs, now seeking $210,558.15 in attorneys' fees and $3,982.37 in costs. ECF No 192. The requested fees relate to four time periods of the litigation:

(1) obtaining Doe's transcript (5/23/18 through 6/14/18) ($29,181.00);

(2) obtaining this Court's decision on Doe's first motion for attorney fees (3/26/20 through 6/2/22) ($84,557.25);

(3) the appeal of that decision (10/24/22 through 8/21/23) ($68,125.00); and

(4) attempts to resolve the fee issue on remand and filing the instant motion for fees (9/20/23 through 1/2/24) ($28,694.90).

ECF No. 192-2.

The University filed a response opposing Doe's motion, asking the Court to significantly deny or reduce any award of attorneys' fees and costs to Doe's counsel. ECF No. 194. Defendants assert that Doe's requested fees should be reduced to less than one-third of his requested fees and costs incurred before receiving his transcript on June 14, 2018, "to exclude work done on claims over which the Sixth Circuit has held this Court lacked subject matter jurisdiction and to account for the

deficiencies in Doe's request for fees and costs," and that he be awarded no fees and costs thereafter. *Id.* Such an award would amount to approximately $9727 and would only cover the time frame between May 23 and June 14, 2018.

Doe filed a reply brief in support of his motion for fees. ECF No. 197.

## II.  LEGAL STANDARD

The prevailing party in an action under 42 U.S.C. § 1983 can recover attorney's fees under 42 U.S.C. § 1988(b). To qualify as a prevailing party, a party must receive "at least some relief on the merits of his claim." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). The relief secured must "directly benefit" the plaintiff at the time of the judgment, generally by requiring the defendant to modify their behavior to the plaintiff's benefit. *Id.* This relief and the subsequent change in the legal relationship between the parties must also be "judicially sanctioned" in some way: a lawsuit that results in a voluntary change in the defendant's conduct, without any court order or other "judicial *imprimatur*," does not suffice. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001).

Assuming a finding of prevailing party status, the actual award of fees is discretionary, and courts must determine what fee is reasonable. *Hensley v. Eckerhart*, 461 U.S. 424 (1983). In the Sixth Circuit, courts are instructed to use the lodestar method to calculate a reasonable fee, which

10

involves "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008) (citing *Hensley*, 461 U.S. at 433). "The district court ... should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 435.

## III.   ANALYSIS

### A. Doe is a "Prevailing Party" Only with Respect to His Due Process Claim for Withholding His Transcript

The Supreme Court has given a "generous formulation" to the term "prevailing party" which means that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar*, 506 U.S. at 109. "[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement ...." *Id.* at 111 (internal citations omitted).

The Sixth Circuit expressly found that Doe is a "prevailing party *only* with respect to his due-process claim for his withheld transcript, which was resolved within two weeks of his filing this lawsuit." *Doe v. Univ. of Mich.*, 78 F.4th at 955 (emphasis added). "After he obtained his

11

transcript, that claim became moot." *Id.* The parties do not dispute that holding.

However, with respect to Doe's remaining claims challenging the 2018 Policy and Interim 2019 Policy, the Sixth Circuit held that Doe cannot be a prevailing party as to those claims because "Doe never had standing to challenge the 2018 Policy or the Interim Policy, and therefore *an award of attorney fees on that basis must be vacated.*" *Id.* at 954 (emphasis added and internal citation omitted). The court recognized that "[i]f [the plaintiff] never had standing to bring the case, he is not a proper prevailing party." *Id.* (quoting *Lynch v. Leis*, 382 F.3d 642, 646 (6th Cir. 2004)); *see also Lynch*, 382 F.3d at 648 ("[A]n appellate court must vacate an award of attorney's fees if the district court did not have subject matter jurisdiction over the litigation.") (quoting *Greater Detroit Res. Recovery Auth. & Combustion Eng'g v. United States EPA*, 916 F.2d 317, 320 (6th Cir. 1990)).

Accordingly, the Court finds that Doe was a prevailing party solely as to his due process claim for his withheld transcript, which was resolved within two weeks after Doe filed this lawsuit.[3]

---

[3] Contrary to Defendants' contention in their response brief, there is not a separate standard to be deemed a prevailing party entitled to attorney fees at the appellate level. Defendants cite to *Kelly v. Metropolitan County Board of Education*, 773 F.2d 677, 682 (6th Cir. 1985), for the proposition that a party must "substantially prevail" at the appellate level to be entitled to attorney fees. ECF No. 194, PageID.5322. However,

### B. Reasonable Attorney Fees for Doe's Due Process Claim for His Withheld Transcript

"The basic federal approach for determining the amount of attorneys' fees to award [under 42 U.S.C. § 1988] was set forth by the Supreme Court in *Hensley v. Eckerhart*." *Harper v. BP Expl. & Oil Co.*, 3 F. App'x 204, 207 (6th Cir. 2001). The amount of attorney fees is determined by the "lodestar" method, in which fees are calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. *Hensley*, 461 U.S. at 434. "In making this determination, the court must exclude time spent on unsuccessful claims that are unrelated to a plaintiff's successful claims—that is, the

---

as Doe points out in his Reply brief, there is not a separate "substantially prevailed" standard required to recover fees incurred on appeal. Rather, "the generally accepted proposition [is] that an award of attorney fees to a prevailing party also typically will include fees incurred by a party for defending a judgment on appeal." *RJ Control Consultants, Inc. v. Multiject, LLC*, No. 16-10728, 2024 WL 4511480, at *2 (E.D. Mich. Oct. 15, 2024) (Lawson, J.) (citing *Friends of Tuhaye, LLC v. Tuhaye Homeowners Ass'n*, 777 F. App'x 903, 915 (10th Cir. 2019) ("[A]s the HOA is the prevailing party it is also permitted to attorney's fees on appeal. Accordingly, we grant the HOA's request for attorney's fees for the costs associated with litigating this appeal.")); *Tyson v. John R. Serv. Ctr., Inc.*, No. 13-13490, 2019 WL 5162957, at *3 (E.D. Mich. Oct. 15, 2019) (Levy, J.) ("[T]he Sixth Circuit has repeatedly upheld awards of appellate attorney fees for the prevailing party where such awards are otherwise authorized by law.") (collecting cases). Although the Sixth Circuit in this case found that Plaintiff achieved only "limited success," it nevertheless determined that Plaintiff was a prevailing party as to his claim regarding his transcript.

unsuccessful claims that are based on 'different facts and legal theories' than the successful claims." *Harper*, 3 F. App'x at 207 (citing *Hensley*).

"After the initial lodestar calculation, the district court has discretion to adjust the award based on relevant considerations 'peculiar to the subject litigation.'" *Adcock-Ladd v. Sec'y of Treas.*, 227 F.3d 343, 349 (6th Cir. 2000); *see also Hensley*, 461 U.S. at 434 (noting "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward[.]"). "The most critical factor in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar*, 506 U.S. at 111. And "[t]his factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Hensley*, 461 U.S. at 434. If a plaintiff achieves only limited success, as in this case, the lodestar calculation may reflect an excessive award, "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* at 436; *see also Isabel v. City of Memphis,* 404 F.3d 404, 416 (6th Cir. 2005) (stating that where "a plaintiff obtains 'limited success, the district court should award only that amount of fees that is reasonable in relation to the success obtained.'") (quoting *Hensley,* 461 U.S. at 435). "Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436

"There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37. In any event, "[a] request for attorney's fees should not result in a second major litigation." *Id.* at 437. "When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Id.*

In this case, even though the Sixth Circuit held that Doe's only redressable "injury" in this case was "fleeting" and that his due-process claim related to his transcript was resolved "within two weeks of his filing this lawsuit," and that Doe thus achieved "very limited success in this lengthy litigation," *Doe*, 78 F.4th at 943, 955, Doe seeks $210,558.15 in attorney fees (reduced from his last request for $460,467.27 in attorney fees one year earlier, ECF No. 159)[4] for the following four categories of time:

(1) obtaining his transcript in June 2018 ($29,181.00),

---

[4] Doe has filed four motions for attorney fees during the pendency of this litigation: (1) May 23, 2019 Motion for Attorney Fees (ECF No. 48) seeking $109,246.50 in fees; (2) April 7, 2020 Motion for Attorney Fees (ECF No. 95) seeking $266,140.87 in fees; (3) January 21, 2021 Renewed Motion for Attorney Fees (ECF No. 159) seeking $460,467.27 in fees; and (4) the instant January 2, 2024 Second Renewed Motion for Attorney Fees (ECF No. 192) seeking $210,558.15 in fees.

(2) obtaining the prior decision on attorneys' fees in June 2022, ($84,557.25),

(3) the appeal of that decision through August 2023 ($68,125.00), and

(4) attempting to resolve the fee issue on remand and briefing the instant motion for fees ($28,694.90).

ECF No. 192. Doe's requested fees in the amount of $210,558.15 represent 100 percent of a lodestar that rests upon hourly rates of (1) $710 for attorney Deborah Gordon, (2) $350 for attorney Elizabeth Marzotto Taylor, (3) $300 for attorneys Molly Savage and Alana Karbal, and (4) $25 for staff. According to counsel's billing records, Gordon worked 185.29 hours, Marzotto Taylor worked 108.75 hours, Savage worked 114.46 hours, Karbal worked 20.45 hours, and staff worked 15.83 hours, for a total of 444.88 hours.

For the reasons set forth below, because Doe's success in this case was only "very limited" and "fleeting," the Court finds that the lodestar amount must be reduced accordingly. *See Hensley*, 461 U.S. at 439 ("[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained."). Doe, as the fee applicant, bears the burden to produce evidence to support that his request is reasonable. *See id*. at 433. "Doe only had one claim for which he had Article III standing and which was ripe for adjudication: a denial-of-due-process claim for his withheld

16

transcript," which was resolved on June 14, 2018, ten days after he filed this lawsuit. *Doe v. Univ. of Mich.*, 78 F.4th at 955. That claim became moot at that point. This Court never had jurisdiction over Doe's remaining due-process claims and he cannot be awarded attorney fees for such claims. *Id.* at 954 ("Doe never had standing to challenge the 2018 Policy or the Interim Policy, …and therefore the award of attorney fees on that basis *must be vacated*.") (emphasis added). The Court finds that Doe did not achieve the level of success sufficient to justify his requested attorneys' fees in the amount of $210,558.15 and that such an award would be a windfall to his attorneys. *Farrar*, 506 U.S. at 114–16 ("Fee awards under § 1988 were never intended to produce windfalls to attorneys.").

First, the Court will award Doe his requested **$28,694.90** in fees for attempting to resolve the attorney fee issue following remand from the Sixth Circuit and for briefing the instant motion for fees. The fees requested for this fourth category of attorney fees pertain solely to Doe's transcript-hold claim, on which he prevailed, and appear to be reasonably incurred.

However, the attorney fees requested in the first three categories of fees in Doe's motion, totaling $181,863.25, include time for work pertaining to claims over which this Court never had jurisdiction, and Doe makes no attempt to parse out his claimed attorney fees related to the transcript-hold claim as opposed to his other due process claims. He

argues that he was "forced to extensively litigate his eligibility to obtain fees" and to appeal the district court's decisions and that the legal theories were "interconnected," and thus he is entitled to all fees incurred. ECF No. 192, PageID.5214, 5230–32; ECF No. 197, PageID.5425. Plaintiff contends that the "facts and theories were so intertwined that it would be extremely difficult if not impossible to divide the hours spent on a claim-by-claim basis." ECF No. 192, PageID.5232. However, as the Supreme Court recognized in *Hensley*, if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley*, 461 U.S. at 436. "Having considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness, … or multiplying 'the number of hours reasonably expended … by a reasonable hourly rate." *Farrar*, 506 U.S. at 115 (internal citations omitted). The Court cannot determine from Doe's counsel's billing statements supporting the first three categories of fees requested in his motion the number of hours expended on the due process claims, for which the Court lacked jurisdiction, as opposed to the hours expended on the limited transcript hold claim on which Doe prevailed.  The Court therefore will exercise its discretion and choose to reduce those hours expended by a percentage

amount and will apply an across-the-board reduction in fees to those first three categories.

In determining an appropriate amount of attorney fees, the Supreme Court has cautioned that "trial courts need not, and indeed should not, become green-eyeshade accountants" and that "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). As stated above, "[t]here is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436. Nevertheless, "[t]he district court still must 'provide a concise but clear explanation of its reasons for the award.'" *Binta B, ex rel. S.A. v. Gordon*, 710 F.3d 608, 628 (6th Cir. 2013) (quoting *Hensley*, 461 U.S. at 437).

The Court recognizes that Plaintiff's counsel obtained a release on the hold on Doe's transcript 10 days after filing this lawsuit and that Doe then continued to litigate, both in the district court and on appeal, the appropriateness of attorney fees from early 2020 through August 2023, at least seemingly in part related to his limited success in removing the hold on his transcript. However, "taking into account Doe's very limited success in this lengthy litigation," *Doe v. Univ. of Mich.*, 78 F.4th at 955, the Court will, in the exercise of its discretion, award Plaintiff **20%** of his remaining requested fees ($181,863.25), or **$36,372.65**, for fees incurred

from May 2018 through August 2023, for a total attorney fee award of **$65,067.55** when including his fee award of **$28,694.90** for filing the instant motion.

"[T]he award of attorney's fees must … be proportional to [plaintiff's] recovery." *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 449 (6th Cir. 2009) (citing *Granzeier v. Middleton*, 173 F.3d 568, 578 (6th Cir. 1999)). "In determining what is proportional, … courts should look at 'the degree of the plaintiff's overall success.'" *Id.* (internal citation omitted) (quoting *Farrar*, 506 U.S. at 114); *see also Hensley*, 461 U.S. at 440 (the court "should award only that amount of fees that is reasonable in relation to the results obtained"). Here, Plaintiff's only compensable injury was "fleeting," and his recovery was "very limited." *Doe v. Univ. of Mich.*, 78 F.4th at 943, 955. Accordingly, his fees should be similarly limited. *See Granzeier*, 173 F.3d at 578 (concluding that plaintiffs were entitled to only 33% of the lodestar amount in view of their limited success where plaintiffs "prevailed on only one of two distinct issues, that the issue they prevailed on was concluded early in the litigation, before much of the work was done, and that it was 'ancillary to the key issue for which plaintiffs sought redress.'").

The Court finds that while Plaintiff now argues that removing the hold on his transcript was "the most pressing harm to him," ECF No. 197, PageID.5418, it is undisputed that, at the time of the filing of his original Complaint and the motion for temporary restraining order and

20

preliminary injunction, in addition to seeking the release of the hold on his transcript, Doe also requested that the Defendants halt the investigation underway against him, and to enjoin the Defendants from applying the 2018 Policy in any student's case. ECF Nos. 1, 4. Moreover, while Plaintiff's prior motions for attorney fees filed on April 7, 2020 and January 8, 2021, for which Plaintiff seeks recovery here, relied in part on the work done pertaining to his claim regarding his transcript, which had been resolved as of June 14, 2018 and was thus moot, Plaintiff's arguments in those motions focused primarily on litigation over Plaintiff's rights to a live hearing and cross-examination—his due process claims. Those were the issues which the parties continued to litigate and as to which  the Sixth Circuit has now determined this Court lacked jurisdiction. This much can be seen from a review of the arguments Plaintiff made in his motions. *See, e.g.*, ECF No. 95, PageID.2644 ("Plaintiff received the full relief sought—summary judgment as to his due process claim; his transcript and degree from the University; and an order declaring Defendants' 2018 Policy unconstitutional and that the 2019 Policy is deficient and ordering that he be given a live hearing with the opportunity to cross-examine witnesses and the Claimant."); *see also* ECF Nos. 119, 159, PageID.4046 ("Defendants were ordered to provide Plaintiff a due process hearing that the Court found was not guaranteed under either the 2018 Policy or 2019 Interim Policy."), PageID.4066 ("Plaintiff received the full relief sought—

summary judgment as to his due process claim; his transcript and degree from the University; and an order declaring that Defendants' 2018 Policy is unconstitutional, the 2019 Policy is deficient, and Plaintiff is entitled to a live hearing with the opportunity to cross-examine witnesses and the Claimant."). Similarly, Plaintiff's briefing in response to Defendants' motion to stay determination of fees pending appeal, for which Plaintiff seeks fees here, focused primarily on Plaintiff's due process claims, which the parties continued to litigate and over which it has now been determined Plaintiff lacked standing. *See e.g.* ECF No. 117, PageID.3472 ("It is undisputed that Defendants subjected Plaintiff to the unconstitutional 2018 Policy, which deprived him of a hearing and cross-examination."). But, as the Sixth Circuit found, attorney fees cannot be awarded for Plaintiff's due process claims regarding the University's policies because the Court never had jurisdiction over those claims. *See Doe v. Univ. of Mich.*, 78 F.4th at 954 ("the award of attorney fees on that basis [Doe's challenge of the 2018 Policy or the Interim Policy] must be vacated").

The Court further finds that an across-the-board reduction is appropriate to account for Plaintiff's counsel's high requested hourly billing rates that are at or above the highest hourly rate within the relevant categories of the State Bar of Michigan 2023 Economics of Law Survey. *See Strickland v. City of Detroit*, No. 18-12640, 2023 WL 8930067, at *3 (E.D. Mich. Dec. 27. 2023) (Edmunds, J.) (rejecting

counsel's high requested hourly rate in determining across-the-board reduction in fee award).[5] The sole issue on which Doe prevailed in this case was not complex, and the Court notes that in Doe's earlier motions for attorney fees, Attorney Gordon sought a rate of $540/hour and $600/hour for much of the same work, and that Gordon billed Doe at a rate of $350/hour. *See* ECF Nos. 95, 159. *See Blair v. Harris*, 993 F. Supp. 2d 721, 734 (E.D. Mich. 2014) (Rosen, C.J.) (recognizing that "while 'the presence of a pre-existing fee agreement may aid in determining reasonableness,' … it is not determinative") (internal citation omitted).

Numerous courts have reduced attorney fee awards based on a plaintiff's limited success. *See Strickland*, 2023 WL 8930067, at *3-4 (awarding plaintiff 40% of the time submitted, based on plaintiff's limited success and counsels' high billing rates); *Hescott v. City of Saginaw*, No. 10-cv-13713, 2015 WL 13589671, at *9 (E.D. Mich. June 19, 2015) (Ludington, J.) (reducing attorney fee award by 80% to "accurately and fairly reflect[] the results reached by [plaintiff's] counsel" and "in keeping with such limited success" after the jury awarded plaintiff $5,000 following a demand for nearly $300,000 and a $15,000 offer of judgment);

---

[5] Defendants also argue that some of Doe's requested fees are not recoverable because they are vague, duplicative, and/or include administrative or clerical tasks. ECF No. 194, PageID.5332–35. Doe's counsel agreed to withdraw some of these requested fees "for purely administrative tasks" and for "Law clerk and time" entries, totaling approximately $1675.75. ECF No. 197, PageID.5434.

*Gratz v. Bollinger*, 353 F. Supp. 2d 929, 938 (E.D. Mich. 2005) (Duggan, J.) (imposing 50 percent reduction given plaintiff's limited success); *Richard v. Oak Tree Grp. Inc.*, No. 1:06-CV-362, 2009 WL 3234159, at *4 (W.D. Mich. Sept. 30, 2009) (decreasing attorney fee award by 85% to $3,082 where plaintiff recovered minimal statutory damages); *see also Zook v. Brown*, 865 F.2d 887, 896 (7th Cir. 1989) (reducing attorneys' fees by 75% to account for limited success in civil rights action); *see also Valencia v. Carrington Mortg. Servs., LLC*, No. 10–00558, 2013 WL 3223628 (D. Haw. June 25, 2013) (adopting recommendation of magistrate judge that fee award be reduced by 80% under state law fee-shifting statute).

In *Zook v. Brown*, the Seventh Circuit affirmed a similar fee reduction where a plaintiff brought a 42 U.S.C. § 1983 suit attempting to invalidate certain local county sheriff's operating procedures as unconstitutional. The plaintiff, Stephen Zook, was a sheriff's deputy in Champaign County, Illinois. "[W]hile off-duty, deputy Zook wrote a letter to the editor of the Champaign–Urbana News–Gazette" concerning a controversial ambulance policy that was being implemented in the county. *Zook*, 865 F.2d at 888. The "[s]heriff ... had not approved the publication of the letter and was irritated over its contents." *Id.* at 889. As a result, the sheriff issued an official letter of reprimand to Zook alleging Zook's actions were "in conflict with the Champaign County Sheriff's Department Operating Procedures Manual[.]" *Id.* at 889. The

24

letter stated that Zook's actions implicated standards concerning "Abuse of Position" and "Public Statements and Appearances." *Id.* Zook requested that the letter of reprimand be redacted. When that request was denied "Zook then filed a complaint in the district court seeking compensatory damages from [the] Sheriff ..., [the] Chief Deputy ... and Champaign County, a declaration that Standards 2.19 and 4.4 are unconstitutional infringements of free speech (both on their face and as applied to him), an injunction against their further enforcement, and the removal of the reprimand from his employment file." *Id.* at 889–90.

Ultimately, after an appeal and remand, the Seventh Circuit upheld the district court's final determination that neither standard challenged by Zook was unconstitutional on its face, but that one of the two standards was unconstitutional as applied to him. The district court also determined, following a bench trial, that part of the letter of reprimand could be redacted, but that it would remain in Zook's file. The district court awarded Zook twenty-five percent of his requested attorneys' fees. In reviewing the fee award, the Seventh Circuit noted that "Zook sought essentially two results in this litigation: first, that Standards 2.19 and 4.4 be declared unconstitutional; and second, that the letter of reprimand be removed from his employment file." *Id.* at 896. But "[a]fter a bench trial and review by this court, both regulations remain in full force and effect; the letter of reprimand, though a portion has been expunged, remains in Zook's file; and two defendants are

immune from damage liability while Champaign County is liable only for nominal damages." *Id.* On that basis, the Seventh Circuit held that Plaintiff achieved only "limited results" even though "he did prevail on one significant issue[.]" *Id.* The issue on which Zook prevailed was significant and dealt with an important constitutional challenge "but the fee award [reduced by 75%] reflect[ed] that success." *Id.*

The same can be said here. Doe successfully lifted the hold on his transcript 10 days after filing his Complaint. But the Court lacked jurisdiction over Doe's remaining claims because he lacked standing to bring those claims, they were unripe, or they were moot. Although such an exercise is necessarily an application of "rough justice," after reviewing the relevant record the Court finds that a fair and reasonable allocation of the work devoted to obtaining and preserving the transcript claim through appeal would be to estimate that it amounted to no more than 20% of the total. An 80% reduction in attorney fees claimed for time incurred releasing the hold on Doe's transcript and preserving that claim through appeal ($36,372.65), and an award of fees incurred attempting to resolve the fees issue following the Sixth Circuit's remand and drafting the instant motion ($28,694.90) still compensates Doe's counsel **$65,067.55** for a case in which Doe achieved his limited success 10 days after the Complaint was filed. While Doe's counsel will receive only approximately 30% of the fees requested, the Court notes that fee-shifting statutes "were not designed as a form of economic relief to

26

improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986). Rather, "the aim of such statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws." *Id.* In the Court's opinion, a fee award of **$65,067.55** to secure removal of a hold on Doe's transcript 10 days after this lawsuit was filed aptly meets that aim.

### C. Costs

Section 1988 also permits district courts to award those "incidental and necessary expenses incurred in furnishing effective and competent representation as part of the award of attorney fees." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013) (quoting *Sigley v. Kuhn*, 205 F.3d 1341, 2000 WL 145187, at *9 (6th Cir. 2000)) (table)). These expenses include paralegal expenses, photocopying, travel costs, and telephone expenses. *Id.* The district court may use its "best judgment" to determine what expenses are "reasonable and necessary[.]" *Id.* (internal quotation marks and citation omitted).

Doe requests costs in the amount of $3,982.37 for expenses including copies, postage, filing fees, and travel expenses. ECF No. 192-3. Defendants argue that Doe fails to meet his burden to establish that his requested costs, specifically those for "copies" and "postage," are

"necessary and reasonable" "particularly given that no discovery occurred and all court filings are electronic." ECF No. 194, PageID.5336–37.

Upon review, the Court finds that Doe's requested costs are reasonable and of the type generally recoverable under 42 U.S.C. §1988. *See Waldo*, 726 F.3d at 827; *Stanley v. Macomb Cnty.*, No. 19-11589, 2024 WL 95673, at *8 (E.D. Mich. Jan. 9, 2024) (Lawson, J.) (finding that "[r]ecoverable expenses [under §1988] include those typically charged to a fee-paying client, such as photocopying, paralegal expenses, and travel and telephone costs."); *see also Charboneau v. Severn Trent Labs., Inc.*, No. 5:04-CV-116, 2006 WL 897131, at *1 (W.D. Mich. Apr. 6, 2006) (stating that permissible photocopying expenses include "costs for photocopying documents necessary for maintenance of the action, including copies attributable to discovery, copies of pleadings, correspondence, documents tendered to the opposing party, copies of exhibits, and documents prepared for the court's consideration.") (quotation marks and citations omitted). Accordingly, the Court will award Doe costs under 42 U.S.C. § 1988 in the amount of **$3,982.37**.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Second Renewed Motion for Attorney Fees and Costs, ECF No. 192, is **GRANTED IN PART** and **DENIED IN PART**.

Plaintiff is awarded attorney fees in the amount of **$65,067.55**, and costs in the amount of **$3,982.37**.

**IT IS SO ORDERED.**

Dated: December 27, 2024      /s/Terrence G. Berg
                              HON. TERRENCE G. BERG
                              UNITED STATES DISTRICT JUDGE